No. 25-2166

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Troy Lewald,

Plaintiff-Appellant,

v.

Pennsylvania Department of Corrections, et al.

Defendants-Appellees.

On Appeal from a Final Judgment of the
United States District Court for the Eastern District of Pennsylvania
Case No. 2:22-cv-04625, Hon. Chad F. Kenney

## SEPARATELY BOUND JOINT APPENDIX

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street, NW, FNT 1  #33821
Washington, D.C. 20033

Kiarra Alleyne*
Lindsey Gradowski*
Galen K. Green*
 Student Counsel
*Motion to authorize student
practice pending

Becca Steinberg
D.C. Bar No. 1736190
Brian Wolfman
Natasha Khan
GEORGETOWN LAW APPELLATE
 COURTS IMMERSION CLINIC
600 New Jersey Ave., NW, Suite
 312
Washington, D.C. 20001
 (202) 662-9549

Counsel for Plaintiff-Appellant Troy Lewald

March 11, 2026

# Table of Contents

## Addendum

Memorandum Opinion (ECF 100) .....................................................Add. 1

Memorandum Opinion (ECF 139) ................................................Add. 20

Order (ECF 140) .........................................................................Add. 35

Notice of Appeal (ECF 63)...........................................................Add. 36

## Separately Bound Joint Appendix

Docket Entries .................................................................................JA 1

Complaint (ECF 1) .......................................................................JA 20

Defendants' Motion for Summary Judgment (ECF 130)..................JA 97

    Exhibit 1: Lewald Deposition (ECF 130-2) ...............................JA 107

    Exhibit 2: Work History (ECF 130-3)..........................................JA 141

    Exhibit 4: PADOC Policy Statement (ECF 130-5).....................JA 143

    Exhibit 5: 2017 Inmate Handbook (ECF 130-6) ........................JA 164

    Exhibit 6: Medical Records (ECF 130-7) ....................................JA 169

    Exhibit 7: Receipt of Inmate Handbook (ECF 130-8)................JA 172

Lewald's Motion in Opposition (ECF 135) ......................................JA 175

    A-1: PADOC Policy Statement (ECF 135)...................................JA 228

    A-2: PADOC Procedures Manual (ECF 135)..............................JA 249

    A-3: 2017 Inmate Handbook (ECF 135) .....................................JA 266

    A-5: Medical Records User Manual § 2 (ECF 135) .....................JA 279

    A-6: Medical Records User Manual § 3 (ECF 135) .....................JA 305

    A-13: Healthcare Procedures Manual § 17 (ECF 135) ..............JA 316

P-1: Initial Examination (ECF 135-1) .........................................JA 325

P-2: Feb. 2019 Transfer Exam (ECF 135-1)................................JA 331

P-4: May 2019 Transfer Exam (ECF 135-1)...............................JA 341

P-6: 5/24/19 Medical Progress Note (ECF 135-1)......................JA 349

P-8: 12/29/21 Request to Staff (ECF 135-1) .............................JA 352

P-9: Dec. 2021 Transfer Exam (ECF 135-1)...............................JA 354

P-10: 1/13/22 Request to Staff (ECF 135-1) ..............................JA 365

P-11: 1/14/22 Grievance (ECF 135-1) ........................................JA 367

P-12: Sick Call Log (ECF 135-1) .................................................JA 377

P-14: 2/4/22 Grievance (ECF 135-1) ..........................................JA 380

P-15: 2/7/22 Request to Staff (ECF 135-1) .................................JA 390

P-16: 2/18/22 Request to Staff (ECF 135-1) ...............................JA 392

P-17: 2/18/22 Grievance No. 1 (ECF 135-1)................................JA 394

P-18: 2/18/22 Grievance No. 2 (ECF 135-1)................................JA 403

P-19: Release from Work Assignment (ECF 135-1)....................JA 415

P-20: 2/23/22 Medical Progress Note (ECF 135-1).....................JA 417

P-21: 2/28/22 Request to Staff (ECF 135-1) ...............................JA 420

P-22: 3/3/22 Medical Progress Note (ECF 135-1).......................JA 422

P-23: 3/14/22 Medical Progress Note (ECF 135-1)......................JA 425

P-24: 3/29/22 Grievance (ECF 135-1) ........................................JA 429

P-26: 4/22/22 Medical Progress Note (ECF 135-1).....................JA 442

P-31: Apr. to Aug. 2023 Sick Call Requests (ECF 135-2)...........JA 445

P-33: 4/14/23 Grievance (ECF 135-2) ........................................JA 449

CLOSED,APPEAL,PSO

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:22-cv-04625-CFK

LEWALD v. PENNSYLVANIA DEPARTMENT OF
CORRECTIONS et al
Assigned to: DISTRICT JUDGE CHAD F. KENNEY
Case in other court:  U.S. Court of Appeals for the Third Circuit,
                25-02166
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 11/16/2022
Date Terminated: 06/24/2025
Jury Demand: None
Nature of Suit: 555 Prisoner Petitions:
Prison Condition
Jurisdiction: Federal Question

**Plaintiff**

**TROY LEWALD**
                represented by  **TROY LEWALD**
NS-1262
SCI PHOENIX
1200 MOKYCHIC DRIVE
COLLEGEVILLE, PA 19426
PRO SE

V.

**Defendant**

**PENNSYLVANIA DEPARTMENT OF
CORRECTIONS**
*"PADOC"*
                represented by  **Alfred J Vogt**
DOJ-USAO
Civil Division
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
215-861-8416
Email: Alfred.Vogt@usdoj.gov
*TERMINATED: 01/10/2024*
*LEAD ATTORNEY*

**Brendan Mullen**
PA Office of the Attorney General
1600 Arch Street
Philadelphia, PA 19103
215-560-2402
Email: bmullen@attorneygeneral.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**WELLPATH HOLDINGS LLC**
*"WELLPATH"*
*TERMINATED: 11/30/2023*
                represented by  **Keanna Adinae Seabrooks**
Weber Gallagher Simpson Stapleton Fires &
Newby LLP
Four Ppg
5th Floor

**JA 1**

Pittsburgh, PA 15222
412-281-4541
Email: kseabrooks@wglaw.com
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
Weber Gallagher
Four PPG Place, 5th Floor
Pittsburgh, PA 15222
412-480-5248
Email: sforeman@wglaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**KIP HALLMAN**
*TERMINATED: 11/30/2023*

represented by    **Keanna Adinae Seabrooks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**GEORGE M. LITTLE**
*TERMINATED: 11/30/2023*

represented by    **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**KERI MOORE**
*TERMINATED: 11/30/2023*

represented by    **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**JOHN SILVA**
*TERMINATED: 11/30/2023*

represented by    **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**DARINA VARNER**
*TERMINATED: 11/30/2023*

represented by    **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**MICHAEL R. CLARK**
*TERMINATED: 11/30/2023*

represented by    **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**JA 2**

**JAMIE SORBER**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**TREVOR WINGARD**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**PAUL ENNIS**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**TAMMY FERGUSON**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**ROBERT TERRA**
*TERMINATED: 08/31/2023*

**Defendant**

**MELINDA ADAMS**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**JOSEPH TERRA**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**MANDY BISER-SIMPLE**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**TERI REID**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**JA 3**

**ANTHONY LITIZIO**
*TERMINATED: 11/30/2023*

represented by **Keanna Adinae Seabrooks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CAROL ANNINO**
*TERMINATED: 11/30/2023*

represented by **Keanna Adinae Seabrooks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**JACKIE WOOD**
*TERMINATED: 11/30/2023*

represented by **Keanna Adinae Seabrooks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BRITNEY HUNER**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**TIFFANY WILLS**
*TERMINATED: 11/30/2023*

represented by **Keanna Adinae Seabrooks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MONIQUE SAVAGE**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**KIM WAIDELICH**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**JA 4**

**Defendant**

**TARA JACKSON**
*TERMINATED: 08/31/2023*

**Defendant**

**JASON STIMMEL**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**BRIAN KLINE**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**COURTNEY CIONE**
*TERMINATED: 11/30/2023*

represented by **CASSIDY L. NEAL**
MATIS BAUM O'CONNOR
912 FORT DUQUESNE BLVD
PITTSBURGH, PA 15222
412-338-4717
Email: cneal@bocclawfirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**JANE RIEGER**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**SUSAN NARDELLA**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**KELLY SHEERAN**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**REGINA CURBY**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**DENNIS COTTON**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)

**JA 5**

*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**MELISSA DELLIPONTI**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**ROBERT POLI**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**LISA DURANT**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**CHARLES HENSLEY**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**JOHN MUICK**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**PAUL NOEL**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**LEANDRA STRENKOSKI**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**SHANDA DESHIELD**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**JA 6**

**ROBERT CHOATE**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**ANTHONY MATTEO**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**EMPLOYEE NINAN**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**EMPLOYEE FITGERALD-YOUNG**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**EMPLOYEE GRENNON**
*TERMINATED: 11/30/2023*

represented by **Alfred J Vogt**
(See above for address)
*TERMINATED: 11/30/2023*
*LEAD ATTORNEY*

**Defendant**

**LISA BAIRD**
*TERMINATED: 11/30/2023*

represented by **Keanna Adinae Seabrooks**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SAMUEL H. FOREMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 11/16/2022 | 1 | COMPLAINT against MELINDA ADAMS, CAROL ANNINO, LISA BAIRD, MANDY BISER-SIMPLE, ROBERT CHOATE, COURTNEY CIONE, MICHAEL R. CLARK, DENNIS COTTON, REGINA CURBY, MELISSA DELLIPONTI, SHANDA DESHIELD, LISA DURANT, TAMMY FERGUSON, EMPLOYEE FITGERALD-YOUNG, EMPLOYEE GRENNON, KIP HALLMAN, CHARLES HENSLEY, BRITNEY HUNER, TARA JACKSON, BRIAN KLINE, ANTHONY LITIZIO, GEORGE M. LITTLE, ANTHONY MATTEO, KERI MOORE, JOHN MUICK, SUSAN NARDELLA, EMPLOYEE NINAN, PAUL NOEL, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ROBERT POLI, TERI REID, JANE RIEGER, MONIQUE SAVAGE, KELLY SHEERAN, JOHN SILVA, JAMIE SORBER, JASON STIMMEL, LEANDRA STRENKOSKI, JOSEPH TERRA, ROBERT TERRA, DARINA VARNER, KIM WAIDELICH, WELLPATH HOLDINGS LLC, TIFFANY WILLS, |

| | | |
|---|---|---|
| | | TREVOR WINGARD, JACKIE WOOD, filed by TROY LEWALD. (FILING FEE NOT PAID; IFP NOT FILED)(fdc) (Main Document 1 replaced on 11/21/2022) (tjd). (Entered: 11/18/2022) |
| 11/18/2022 | 2 | MOTION for Leave to Proceed in forma pauperis filed by TROY LEWALD..(fdc) (Entered: 11/21/2022) |
| 11/18/2022 | 3 | Prisoner Trust Fund Account Statement by TROY LEWALD. (fdc) (Entered: 11/21/2022) |
| 11/18/2022 | 4 | PRO SE NOTICE RE:GUIDELINES (fdc) (Entered: 11/21/2022) |
| 11/21/2022 | | DOC. 4 MAILED TO PRO SE. (sg) Modified on 11/21/2022 (sg). (Entered: 11/21/2022) |
| 01/19/2023 | 5 | ORDER THAT PLAINTIFF'S 2 MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS IS GRANTED. SIGNED BY HONORABLE CHAD F. KENNEY ON 1/19/23.1/19/23 ENTERED & MAILED TO LEWALD. ORDER FAXED TO SUPERINTENDENT OF SCI PHOENIX, U.S. MARSHAL SERVICE. (fdc) (Entered: 01/19/2023) |
| 01/19/2023 | 6 | Summons Issued as to MELINDA ADAMS, CAROL ANNINO, LISA BAIRD, MANDY BISER-SIMPLE, ROBERT CHOATE, COURTNEY CIONE, MICHAEL R. CLARK, DENNIS COTTON, REGINA CURBY, MELISSA DELLIPONTI, SHANDA DESHIELD, LISA DURANT, PAUL ENNIS, TAMMY FERGUSON, EMPLOYEE FITGERALD-YOUNG, EMPLOYEE GRENNON, KIP HALLMAN, CHARLES HENSLEY, BRITNEY HUNER, TARA JACKSON, BRIAN KLINE, ANTHONY LITIZIO, GEORGE M. LITTLE, ANTHONY MATTEO, KERI MOORE, JOHN MUICK, SUSAN NARDELLA, EMPLOYEE NINAN, PAUL NOEL, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ROBERT POLI, TERI REID, JANE RIEGER, MONIQUE SAVAGE, KELLY SHEERAN, JOHN SILVA, JAMIE SORBER, JASON STIMMEL, LEANDRA STRENKOSKI, JOSEPH TERRA, ROBERT TERRA, DARINA VARNER, KIM WAIDELICH, WELLPATH HOLDINGS LLC, TIFFANY WILLS, TREVOR WINGARD, JACKIE WOOD. Forwarded To: U.S. Marshal Service on 1/19/23 (fdc) (Entered: 01/19/2023) |
| 01/30/2023 | 7 | Letter dated 1/24/23 by TROY LEWALD (sbt) (Entered: 01/30/2023) |
| 01/30/2023 | 8 | Letter dated 1/30/23 Re: Status Update (Attachments: # 1 Docket Sheet)(sbt) (Entered: 01/30/2023) |
| 02/01/2023 | | Doc. #8 mailed to Lewald. (fdc) (Entered: 02/01/2023) |
| 02/03/2023 | 9 | MOTION for Clarification filed by TROY LEWALD..(fdc) (Entered: 02/06/2023) |
| 02/06/2023 | 10 | ORDER THAT PLAINTIFF'S 9 MOTION FOR CLARIFICATION IS DENIED AS MOOT. SIGNED BY HONORABLE CHAD F. KENNEY ON 2/6/23.2/6/23 ENTERED. NOT MAILED TO LEWALD.(fdc) (Entered: 02/06/2023) |
| 02/07/2023 | | MAILED OUT ORDER ENTRY 10 TO PLAINTIFF ON 2/7/23. (jaa, ) (Entered: 02/07/2023) |
| 02/09/2023 | 11 | Letter dated 2/6/23 by TROY LEWALD (fdc) (Entered: 02/10/2023) |
| 02/13/2023 | 12 | MOTION to Appoint Counsel filed by TROY LEWALD, Certificate of Service.(fdc) (Entered: 02/14/2023) |
| 02/23/2023 | 13 | ORDER THAT PLAINTIFF'S MOTION TO APPOINT COUNSEL 12 IS GRANTED IN PART AND DENIED IN PART. SIGNED BY HONORABLE CHAD F. KENNEY ON 2/23/23. 2/23/23 ENTERED AND MAILED TO LEWALD (fdc) (Entered: 02/23/2023) |
| 03/13/2023 | 14 | Letter dated 3/8/23 by TROY LEWALD (fdc) (Entered: 03/14/2023) |

| 03/14/2023 | 15 | Letter dated 2/7/23 by TROY LEWALD (fdc) (Entered: 03/14/2023) |
| 03/15/2023 | 16 | NOTICE AND ORDER. NOTICED THAT THE ABOVE-CAPTIONED MATTER IS IN SUSPENSE 13 . THE "DATE TERMINATED:2/23/23" IS NOT A TRUE TERMINATION OF THE CASE, BUT REFERS TO THE DATE IN WHICH THE CASE WAS PLACED IN SUSPENSE 13 . THE ABOVE-CAPTIONED MATTER IS NOT "TERMINATED" OR "CLOSED". THERE IS NO NEED FOR PLAINTFF TO REFILE THE COMPLAINT. THE U.S. MARSHAL SERVICE WILL CONTINUE TO SERVE SUMMONS AND COMPLAINT ON ALL DEFENDANTS DURING THE SUSPENSE PERIOD. SIGNED BY HONORABLE CHAD F. KENNEY ON 3/15/23. 3/15/23 ENTERED AND COPY MAILED TO LEWALD. COPY E-MAILED TO U.S. MARSHAL SERVICE. (fdc) (Entered: 03/15/2023) |
| 04/07/2023 | 17 | US Marshal Return Re: MELINDA ADAMS, CAROL ANNINO, LISA BAIRD, MANDY BISER-SIMPLE, ROBERT CHOATE, MICHAEL R. CLARK, DENNIS COTTON, REGINA CURBY, MELISSA DELLIPONTI, SHANDA DESHIELD, LISA DURANT, PAUL ENNIS, TAMMY FERGUSON, EMPLOYEE FITGERALD-YOUNG, EMPLOYEE GRENNON, KIP HALLMAN, CHARLES HENSLEY, BRITNEY HUNER, BRIAN KLINE, ANTHONY LITIZIO, GEORGE M. LITTLE, ANTHONY MATTEO, KERI MOORE, JOHN MUICK, SUSAN NARDELLA, EMPLOYEE NINAN, PAUL NOEL, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ROBERT POLI, TERI REID, JANE RIEGER, MONIQUE SAVAGE, KELLY SHEERAN, JOHN SILVA, JAMIE SORBER, JASON STIMMEL, LEANDRA STRENKOSKI, JOSEPH TERRA, ROBERT TERRA, DARINA VARNER, KIM WAIDELICH, WELLPATH HOLDINGS LLC, TIFFANY WILLS, TREVOR WINGARD Served. TARA JACKSON, JACKIE WOOD, COURTNEY CIONE Not Served. (va) (Entered: 04/07/2023) |
| 04/20/2023 | 18 | NOTICE of Appearance by SAMUEL H. FOREMAN on behalf of CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS with Certificate of Service(FOREMAN, SAMUEL) (Entered: 04/20/2023) |
| 04/20/2023 | 19 | NOTICE of Appearance by Keanna Adinae Seabrooks on behalf of CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS with Certificate of Service(Seabrooks, Keanna) (Entered: 04/20/2023) |
| 04/20/2023 | 20 | MOTION for Extension of Time to File *Response to Plaintiff's Complaint* filed by CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS.Certificate of Service. (Attachments: # 1 Text of Proposed Order)(Seabrooks, Keanna) (Entered: 04/20/2023) |
| 04/21/2023 | 21 | ORDER THAT DEFENDANTS' 20 MOTION FOR EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT IS GRANTED. DEFENDANTS' RESPONSE TO PLAINTIFF'S COMPLANT IS DUE ON JUNE 18, 2023. SIGNED BY HONORABLE CHAD F. KENNEY ON 4/21/23.4/21/23 ENTERED & E-MAILED. NOT MAILED TO LEWALD.(fdc) (Entered: 04/21/2023) |
| 04/24/2023 | | MAILED OUT ORDER ENTRY 21 TO PLAINTIFF ON 4/24/23. (jaa, ) (Entered: 04/24/2023) |
| 04/25/2023 | 22 | Letter dated 4/20/23 by TROY LEWALD (sbt) (Entered: 04/26/2023) |
| 04/26/2023 | 23 | Letter dated 4/26/23 Re: Status Update (Attachments: # 1 Docket Sheet)(sbt) (Attachment 1 replaced on 4/26/2023) (sbt). (Entered: 04/26/2023) |

**JA 9**

| | | |
|---|---|---|
| 05/08/2023 | 24 | AFFIDAVIT of Service by U.S. Marshal Service re: Summons & Complaint for Tara Jackson, Jackie Wood, Courtney Cione were Unexecuted. (fdc) (Entered: 05/08/2023) |
| 05/11/2023 | 25 | ORDER THAT THE CLERK OF COURT SHALL ISSUE SUMMONSES AS TO ECF NO.24 AND PROVIDE THE U.S. MARSHALS WITH A COPY OF ECF NO.24 AND THIS ORDER. SERVICE OF THE SUMMONSES AND THE COMPLAINT SHALL BE MADE BY THE U.S. MARSHALS SERVICE, UPON THOSE DEFENDANTS NAMED IN ECF NO.24 AND ONLY TO THE NEWLY LISTED ADDRESSES PROVIDED THEREIN. ALL OTHER PROVISIONS SET FORTH IN THE COURT'S ORDER 5 SHALL REMAIN IN FULL FORCE AND EFFECT. THE ABOVE-CAPTIONED MATTER SHALL REMAIN IN SUSPENSE 13 UNTIL FURTHER ORDER OF THE COURT. SIGNED BY HONORABLE CHAD F. KENNEY ON 5/11/23. 5/11/23 ENTERED & E-MAILED. MAILED TO LEWALD. (fdc) (Entered: 05/11/2023) |
| 05/11/2023 | 26 | Summons Issued as to Tara Jackson, Jackie Wood, Courtney Cione. E-mailed to U.S. Marshal Service on 5/11/23 (fdc) (Entered: 05/11/2023) |
| 05/11/2023 | | Order #25, Affidavit of Service #24, Complaint #1, and Summons E-mailed to U.S. Marshal Service. (fdc) (Entered: 05/11/2023) |
| 05/23/2023 | 27 | AFFIDAVIT of Service by U.S. Marshal Deputy Clerk re: served Summons & Complaint upon Jackie Wood by Electronic Service on 5/23/23, answer due 6/13/203. (fdc) Modified on 5/24/2023 (tjd). (Entered: 05/23/2023) |
| 05/30/2023 | 28 | USM 285 Form Returned Unexecuted by TROY LEWALD as to TARA JACKSON. (fdc) (Entered: 05/30/2023) |
| 06/05/2023 | 29 | Letter dated 6/1/23 by TROY LEWALD (sbt) (Entered: 06/08/2023) |
| 06/08/2023 | 30 | Letter dated 6/8/23 Re: Status Update (Attachments: # 1 Docket Entries)(sbt) (Entered: 06/08/2023) |
| 06/09/2023 | 31 | NOTICE of Appearance by Alfred J Vogt on behalf of PENNSYLVANIA DEPARTMENT OF CORRECTIONS with Certificate of Service(Vogt, Alfred) (Entered: 06/09/2023) |
| 06/12/2023 | 32 | AFFIDAVIT of Service by USMS Deputy Clerk re: served Summons & Complaint upon Courtney Cione by Personal Service on 6/5/23 (fdc) (Entered: 06/12/2023) |
| 06/20/2023 | 33 | NOTICE of Appearance by SAMUEL H. FOREMAN on behalf of CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD with Certificate of Service(FOREMAN, SAMUEL) (Entered: 06/20/2023) |
| 06/20/2023 | 34 | MOTION for Extension of Time to File Response/Reply filed by CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD.Response to Complaint on Behalf of All Medical Defendants including Jackie Wood. (Attachments: # 1 Proposed Order)(Seabrooks, Keanna) (Entered: 06/20/2023) |
| 06/20/2023 | 37 | MOTION for Extension of Time filed by TROY LEWALD..(fdc) (Entered: 06/21/2023) |
| 06/21/2023 | 35 | ORDER THAT THE 34 MOTION FOR A 10-DAY EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT IS GRANTED. THE MEDICAL DEFENDANTS' RESPONSE TO PLAINTIFF'S COMPLAINT IS DUE ON OR BEFORE 6/30/23. SIGNED BY HONORABLE CHAD F. KENNEY ON 6/21/23.6/21/23 ENTERED & E-MAILED. MAILED TO LEWALD.(fdc) (Entered: 06/21/2023) |

| 06/21/2023 | 36 | NOTICE of Appearance by Keanna Adinae Seabrooks on behalf of CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD with Certificate of Service(Seabrooks, Keanna) (Entered: 06/21/2023) |
|---|---|---|
| 06/22/2023 | 38 | ORDER THAT PLAINTIFF'S 37 MOTION FOR EXTENSION OF TIME IS DENIED AS PREMATURE. SIGNED BY HONORABLE CHAD F. KENNEY ON 6/22/23.6/22/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 06/22/2023) |
| 06/27/2023 | 39 | NOTICE to plaintiff dated 6/27/23 docketed and mailed on 6/27/23. re: Appointment of Counsel on the Court's Extranet site.(ib) (Entered: 06/27/2023) |
| 06/30/2023 | 40 | MOTION to Dismiss *Plaintiff's Complaint at ECF No. 1* filed by CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD.Certificate of Service. (Attachments: # 1 Text of Proposed Order)(Seabrooks, Keanna) (Entered: 06/30/2023) |
| 06/30/2023 | 41 | Memorandum re 40 MOTION to Dismiss *Plaintiff's Complaint at ECF No. 1* filed by CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Seabrooks, Keanna) (Entered: 06/30/2023) |
| 06/30/2023 | 42 | NOTICE by CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD (Seabrooks, Keanna) (Entered: 06/30/2023) |
| 07/03/2023 | 43 | Notice Regarding Placement on a Prisoner Panel by TROY LEWALD. (fdc) (Entered: 07/05/2023) |
| 07/11/2023 | 44 | NOTICE of Appearance by CASSIDY L. NEAL on behalf of COURTNEY CIONE (NEAL, CASSIDY) (Entered: 07/11/2023) |
| 07/12/2023 | 45 | AFFIDAVIT of Service *Waiver of Service of Summons* (NEAL, CASSIDY) (Entered: 07/12/2023) |
| 07/12/2023 | 46 | MOTION for Extension of Time to Serve Process filed by TROY LEWALD..(fdc) (Entered: 07/13/2023) |
| 07/18/2023 | 47 | ORDER THAT PLAINTIFF'S 46 MOTION FOR EXTENSION OF TIME FOR SERVICE OF PROCESS UPON DEFENDANT TARA JACKSON IS GRANTED IN PART AND DENIED IN PART. SIGNED BY HONORABLE CHAD F. KENNEY ON 7/18/23.7/18/23 ENTERED & E-MAILED. COPY SENT TO U.S. MARSHAL SERVICE. NOT MAILED TO LEWALD.(fdc) (Entered: 07/18/2023) |
| 07/18/2023 | 48 | Summons Issued as to TARA JACKSON. E-mailed to U.S. Marshal Service on 7/18/23 (fdc) (Entered: 07/18/2023) |
| 07/19/2023 | | Order #47 mailed to Lewald. (fdc) (Entered: 07/19/2023) |
| 08/02/2023 | 49 | Letter Request for Copy Work by TROY LEWALD. Envelope. (Attachments: # 1 Response) (va) (Entered: 08/03/2023) |
| 08/04/2023 | 50 | MOTION to Dismiss *Plaintiff's Complaint* filed by COURTNEY CIONE..(NEAL, CASSIDY) (Entered: 08/04/2023) |
| 08/04/2023 | 51 | Memorandum in Support re 50 MOTION to Dismiss *Plaintiff's Complaint* filed by COURTNEY CIONE. (NEAL, CASSIDY) (Entered: 08/04/2023) |

## JA 11

| 08/04/2023 | 52 | ORDER THAT THIS CASE SHALL REMAIN IN SUSPENSE FOR NO MORE THAN SIX MONTHS FROM THE DATE OF THIS ORDER UNLESS CONTINUED IN SUSPENSE STATUS BY FURTHER ORDER OF THE COURT. SIGNED BY HONORABLE CHAD F. KENNEY ON 08/04/2023. 08/04/2023 ENTERED AND COPIES NOT MAILED TO PRO SE AND E-MAILED.(nd) (Entered: 08/04/2023) |
|---|---|---|
| 08/14/2023 | 53 | ORDER THAT THE ABOVE-CAPTIONED MATTER BE REMOVED FROM SUSPENSE. THIS CASE SHALL BE REMOVED FROM THE PRISONER CIVIL RIGHTS PANEL. PLAINTIFF TROY LEWALD SHALL FILE OF RECORD A RESPONSE TO THE MOTIONS TO DISMISS (ECF NOS. 40 AND 50) ON OR BEFORE 9/14/23. SIGNED BY HONORABLE CHAD F. KENNEY ON 8/14/23. 8/14/23 ENTERED & E-MAILED. NOT MAILED TO LEWALD. (fdc) (Entered: 08/14/2023) |
| 08/14/2023 | 54 | Nunc Pro Tunc MOTION for Extension of Time filed by TROY LEWALD.(fdc) (Entered: 08/15/2023) |
| 08/14/2023 | 55 | APPLICATION to Waive of Accrue Reproduction Costs until the Finality of Judgment by TROY LEWALD. (fdc) (Entered: 08/15/2023) |
| 08/14/2023 | 56 | MOTION to Compel filed by TROY LEWALD..(fdc) (Entered: 08/15/2023) |
| 08/15/2023 | | DOC. NO. 53, ALONG WITH MOTIONS TO DISMISS (DOC. NOS. 40 AND 50), MAILED TO PRO SE ON 8/15/2023. (md) (Entered: 08/15/2023) |
| 08/16/2023 | 57 | RESPONSE in Opposition re 56 MOTION to Compel *Defendants to Serve Documents* filed by COURTNEY CIONE. (NEAL, CASSIDY) (Entered: 08/16/2023) |
| 08/16/2023 | 58 | Request for Default TROY LEWALD against COURTNEY CIONE. (fdc) (Entered: 08/17/2023) |
| 08/16/2023 | 59 | MOTION to Strike 50 MOTION to Dismiss *Plaintiff's Complaint* filed by TROY LEWALD..(fdc) (Entered: 08/17/2023) |
| 08/16/2023 | 63 | Letter dated 8/12/23 by TROY LEWALD (sbt) (Entered: 08/22/2023) |
| 08/21/2023 | 60 | RESPONSE in Opposition re 59 MOTION to Strike 50 MOTION to Dismiss *Plaintiff's Complaint and Plaintiff's Request for Entry of Default Against Defendant Cione* filed by COURTNEY CIONE. (NEAL, CASSIDY) (Entered: 08/21/2023) |
| 08/21/2023 | 61 | Summons Returned Unexecuted by TROY LEWALD as to TARA JACKSON. (fdc) Modified on 8/29/2023 (fb). (Entered: 08/21/2023) |
| 08/21/2023 | 62 | Response in Opposition to Defendant Courtney Cione's Motion to Dismiss filed by TROY LEWALD..(fdc) (Main Document 62 replaced on 8/23/2023) (tjd). (Entered: 08/22/2023) |
| 08/22/2023 | 64 | Letter dated 8/22/23 Re: Status Update (Attachments: # 1 Docket Sheet)(sbt) (Entered: 08/22/2023) |
| 08/23/2023 | 65 | ORDER THAT THE CLERK OF COURT SHALL REMOVE THE GAVEL FROM ECF NO.62 AND MODIFY THE DOCKET TEXT TO REFLECT: "PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT COURTNEY CIONE'S MOTION TO DISMISS 50 ." SIGNED BY HONORABLE CHAD F. KENNEY ON 8/22/23.8/23/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 08/23/2023) |
| 08/23/2023 | 66 | ORDER THAT PLAINTIFF'S 54 MOTION FOR EXTENSION OF TIME IS DENIED WITHOUT PREJUDICE TO REFILE AFTER THE COURT RULES ON THE PENDING MOTIONS TO DISMISS. SIGNED BY HONORABLE CHAD F. KENNEY |

**JA 12**

| | | |
|---|---|---|
| | | ON 8/22/23.8/23/23 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 08/23/2023) |
| 08/23/2023 | 67 | ORDER THAT PLAINTIFF'S 56 MOTION TO COMPEL IS DENIED AS MOOT. SIGNED BY HONORABLE CHAD F. KENNEY ON 8/22/23.8/23/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 08/23/2023) |
| 08/23/2023 | 68 | ORDER THAT PLAINTIFF'S 59 MOTION TO STRIKE IS DENIED. SIGNED BY HONORABLE CHAD F. KENNEY ON 8/22/23.8/23/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 08/23/2023) |
| 08/23/2023 | 69 | Petitioner, Troy Lewald's Nunc Pro Tunc Petition to Strike 50 Medical Defendants' Motion to Dismiss. (fdc) (Entered: 08/25/2023) |
| 08/23/2023 | 70 | MOTION for Judicial Notice of Medical Defendants' Service of Filings filed by TROY LEWALD, Certification Statement. (fdc) (Entered: 08/25/2023) |
| 08/24/2023 | 71 | Declaration of TROY LEWALD in Opposition to Defendant Cione's Motion to Dismiss. (fdc) (Entered: 08/25/2023) |
| 08/29/2023 | 72 | REPLY to Response to Motion re 62 MOTION *to Dimiss Plaintiff's Complaint* filed by COURTNEY CIONE. (NEAL, CASSIDY) (Entered: 08/29/2023) |
| 08/31/2023 | 73 | NOTICE from Chambers of Judge Kenney. Re: It is hereby Noticed that the Court is separately mailing a copy of the Motions to Dismiss (ECF Nos. 40, 50), a copy of the Courts Order (ECF No. 53), a copy of this Notice and a copy of the docket to: Mr. Troy Lewald at NS-1262, SCI Phoenix, 1200 Mokychic Drive, Collegeville, PA 19426.Plaintiff Troy Lewald shall file of record a response to the Motions to Dismiss (ECF Nos. 40 and 501) on or before September 14, 2023 53 . (fdc) (Entered: 08/31/2023) |
| 08/31/2023 | 74 | ORDER THAT DEFENDANTS MANDY BISER-SIMPLE, ROBERT CHOATE, MICHAEL R. CLARK, REGINA CURBY, MELISSA DELLIPONTI, SHANDA DESHIELD, LISA DURANT, TAMMY FERGUSON, EMPLOYEE FITGERALD-YOUNG, EMPLOYEE GRENNON, CHARLES HENSLEY, BRITNEY HUNER, BRIAN KLINE, GEORGE M. LITTLE, ANTHONY MATTEO, KERI MOORE, JOHN MUICK, SUSAN NARDELLA, PAUL NOEL, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, MONIQUE SAVAGE, KELLY SHEERAN, JOHN SILVA, JASON STIMMEL, LEANDRA STRENKOSKI, JOSEPH TERRA, DARINA VARNER, KIM WAIDELICH, TREVOR WINGARD SHALL FILE A RESPNSOVE PLEADING TO THE COMPLAINT 1 ON OR BEFORE 9/20/203 BY 12:00 PM. SIGNED BY HONORABLE CHAD F. KENNEY ON 8/30/23. 8/31/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 08/31/2023) |
| 08/31/2023 | 75 | ORDER THAT PLAINTIFF SHALL PROVIDE THE CORRECT ADDRESSES AND FULL NAME(S) FOR THOSE DEFENDANTS LISTED IN FOOTNOTE 1, ON OR BEFORE 9/27/23. SIGNED BY HONORABLE CHAD F. KENNEY ON 8/30/23. 8/31/23 ENTERED AND COPIES MAILED AND E-MAILED. COPY FORWARDED TO U.S. MARSHAL SERVICE.(fdc) (Entered: 08/31/2023) |
| 08/31/2023 | 76 | Summons Issued as to MELINDA ADAMS, DENNIS COTTON, PAUL ENNIS, EMPLOYEE NINAN, ROBERT POLI, TERI REID, JANE RIEGER, JAMIE SORBER. Forwarded To: U.S. Marshal Service on 8/31/23 (fdc) (Entered: 08/31/2023) |
| 08/31/2023 | 77 | ORDER THAT THE CASE AGAINST DEFENDANT TARA JACKSON IS DISMISSED WITHOUT PREJUDICE. THE CLERK OF COURT IS DIRECTED TO TERMINATE DEFENDANT TARA JACKSON. SIGNED BY HONORABLE CHAD F. KENNEY ON 8/30/23. 8/31/23 ENTERED AND COPIES MAILED AND E-MAILED. (fdc) (Entered: 08/31/2023) |

| 08/31/2023 | 78 | RESPONSE in Opposition re 59 MOTION to Strike 50 MOTION to Dismiss *Plaintiff's Complaint* filed by CAROL ANNINO, LISA BAIRD, KIP HALLMAN, ANTHONY LITIZIO, WELLPATH HOLDINGS LLC, TIFFANY WILLS, JACKIE WOOD. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B)(Seabrooks, Keanna) (Entered: 08/31/2023) |
|---|---|---|
| 09/07/2023 | 79 | MOTION for Temporary Restraining Order and Preliminary Injunction filed by TROY LEWALD, Brief.(fdc) (Entered: 09/08/2023) |
| 09/11/2023 | 80 | MOTION for Extension of Time filed by TROY LEWALD, Certificate of Service.(fdc) (Entered: 09/12/2023) |
| 09/11/2023 | 81 | MOTION to Strike Medical Defendant's Motion to Dismiss filed by TROY LEWALD, Certificate of Service.(fdc) (Entered: 09/12/2023) |
| 09/11/2023 | 82 | Omnibus MOTION to Reopen Orders and in Limine filed by TROY LEWALD.(fdc) (Entered: 09/12/2023) |
| 09/13/2023 | 83 | ORDER THAT THE APPLICATION TO WAIVE OR ACCRUE REPRODUCTION COSTS TILL FINALITY OF JUDGMENT 55 IS DENIED. THE NUNC PRO TUNC 69 MOTION TO STRIKE IS DENIED. THE MOTION FOR JUDICIAL NOTICE 70 IS DENIED. THE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION 79 IS DENIED. THE MOTION TO STRIKE MEDICAL DEFENDANTS' MOTION TO DISMISS 81 IS DENIED. THE OMNIBUS MOTION TO REOPEN ORDERS AND IN LIMINE 82 IS DENIED. SIGNED BY HONORABLE CHAD F. KENNEY ON 9/13/23.9/13/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) Modified on 9/13/2023 (tjd). Modified on 9/13/2023 (tjd). (Entered: 09/13/2023) |
| 09/13/2023 | 84 | ORDER THAT MR. LEWALD'S MOTION FOR EXTENSION OF TIME 80 IS GRANTED. MR. LEWALD SHALL FILE A RESPONSIVE PLEADING TO THE MEDICAL DEFENDANTS' MOTION TO DISMISS 40 ON OR BEFORE 11/13/23. MR. LEWALD MAY SUPPLEMENT HIS RESPONSE TO COURTNEY CIONE'S MOTION TO DISMISS 50 ON OR BEFORE 11/13/23. SIGNED BY HONORABLE CHAD F. KENNEY ON 9/13/23. 9/13/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 09/13/2023) |
| 09/14/2023 | 85 | MOTION to Defer Defendant Cione's Motion to Dismiss filed by TROY LEWALD.(fdc) (Entered: 09/15/2023) |
| 09/20/2023 | 86 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction filed by MELINDA ADAMS, MANDY BISER-SIMPLE, ROBERT CHOATE, MICHAEL R. CLARK, DENNIS COTTON, REGINA CURBY, MELISSA DELLIPONTI, SHANDA DESHIELD, LISA DURANT, PAUL ENNIS, TAMMY FERGUSON, EMPLOYEE FITGERALD-YOUNG, EMPLOYEE GRENNON, CHARLES HENSLEY, BRITNEY HUNER, BRIAN KLINE, GEORGE M. LITTLE, ANTHONY MATTEO, KERI MOORE, JOHN MUICK, SUSAN NARDELLA, EMPLOYEE NINAN, PAUL NOEL, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ROBERT POLI, TERI REID, JANE RIEGER, MONIQUE SAVAGE, KELLY SHEERAN, JOHN SILVA, JAMIE SORBER, JASON STIMMEL, LEANDRA STRENKOSKI, JOSEPH TERRA, DARINA VARNER, KIM WAIDELICH, TREVOR WINGARD.Memorandum, Certificate of Service. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit A, # 3 Exhibit B)(Vogt, Alfred) (Entered: 09/20/2023) |
| 09/25/2023 | 87 | Certificate of Merit by TROY LEWALD (fdc) (Entered: 09/26/2023) |

**JA 14**

| 09/26/2023 | 88 | Summons Returned Unexecuted by TROY LEWALD as to PENNSYLVANIA DEPARTMENT OF CORRECTIONS. (fdc) (Entered: 09/26/2023) |
|---|---|---|
| 10/10/2023 | 89 | MOTION for Extension of Time filed by TROY LEWALD..(fdc) (Entered: 10/11/2023) |
| 10/13/2023 | 90 | ORDER THAT PLAINTIFF TROY LEWALD'S 89 MOTION FOR EXTENSION OF TIME TO FILE A RESPONSE TO THE COMMONWEALTH DEFENDANTS' 89 MOTION TO DISMISS IS GRANTED. PLAINTIFF TROY LEWALD SHALL FILE A RESPONSIVE PLEADING TO THE MOTION TO DISMISS 86 ON OR BEFORE 11/13/23. SIGNED BY HONORABLE CHAD F. KENNEY ON 10/12/23.10/13/23 ENTERED & E-MAILED. NOT MAILED TO LEWALD. (fdc) (Entered: 10/13/2023) |
| 10/13/2023 | 91 | Letter dated 10/9/23 by TROY LEWALD (sbt) (Entered: 10/19/2023) |
| 10/13/2023 | | Copy of Doc. 90 mailed to Pro Se. (mas) (Entered: 10/20/2023) |
| 10/19/2023 | 92 | Letter dated 10/19/23 Re: Status Update (Attachments: # 1 Docket Entries)(sbt) (Entered: 10/19/2023) |
| 10/19/2023 | 93 | Plaintiff's Rule 56 Motion to Convert Commonwealth Defendants' Motion to Dismiss, Declaration, Certificate of Service.(fdc) (Entered: 10/20/2023) |
| 11/01/2023 | 94 | Certificate of Merit by TROY LEWALD (fdc) Modified on 11/3/2023 (tjd). (Entered: 11/02/2023) |
| 11/14/2023 | 96 | RESPONSE in Opposition re 86 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction filed by TROY LEWALD. (fdc) (Entered: 11/20/2023) |
| 11/16/2023 | 95 | MOTION to Reinstate and Substitute filed by TROY LEWALD, Certificate of Service. (fdc) (Entered: 11/17/2023) |
| 11/20/2023 | 97 | Troy Lewald's Nunc Pro Tunc Motion in Opposition to Commonwealth Defendants' 93 Motion to Dismiss.(fdc) (Entered: 11/21/2023) |
| 11/24/2023 | 98 | Request for Status Update dated 11/22/23 by TROY LEWALD (sbt) (Entered: 11/29/2023) |
| 11/29/2023 | 99 | Clerks Office Response to Status Update (Attachments: # 1 Docket Sheet)(sbt) (Entered: 11/29/2023) |
| 11/30/2023 | 100 | MEMORANDUM AND OPINION. SIGNED BY HONORABLE CHAD F. KENNEY ON 11/29/23. 11/30/23 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 11/30/2023) |
| 11/30/2023 | 101 | MEMORANDUM AND ORDER THAT 1. THE MEDICAL DEFENDANTS' MOTION TO DISMISS 40 IS GRANTED IN FULL; 2. DEFENDANT CIONE'S MOTION TO DISMISS 50 IS GRANTED IN FULL; 3. THE COMMONWEALTH DEFENDANTS' MOTION TO DISMISS 86 IS GRANTED IN PART AND DENIED IN PART. THE COMMONWEALTH DEFENDANTS' MOTION 86 IS DENIED ONLY AS TO LEWALD'S REHABILITATION ACT CLAIM AGAINST THE PENNSYLVANIA DEPARTMENT OF CORRECTIONS AND GRANTED AS TO ALL OTHER CLAIMS AGAINST ALL OTHER DEFENDANTS. 4. DEFENDANT PENNSYLVANIA DEPARTMENT OF CORRECTIONS SHALL FILE A RESPONSIVE PLEADING TO THE COMPLAINT 1 ON OR BEFORE 12/13/23. 5. ASIDE FROM LEWALD'S REHABILITATION ACT CLAIM AGAINST PADOC, ALL OTHER CLAIMS AGAAINST ALL OTHER DEFENDANTS ARE DISMISSED WITHOUT PREJUDICE FOR LEWALD TO FILE AN AMENDED COMPLAINT BY 1/16/24. IF NO AMENDED COMPLAINT IS FILED BY THAT DATE, THE COURT WILL |

| | | |
|---|---|---|
| | | CONDISER THOSE CLAIMS DISMISSED WITH PREJUDICE. 6. IT IS FURTHER ORDERED THAT THE PLAINTIFF'S MOTION TO DEFER 85 , PLAINTIFF'S RULE 56 MOTION 93 AND PLAINTIFF'S MOTION TO REINSTATE AND SUBSTITUTE 95 AND PLAINTIFF'S NUNC PRO TUNC MOTION 97 ARE ALL DENIED AS MOOT. SIGNED BY HONORABLE CHAD F. KENNEY ON 11/29/23. 11/30/23 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 11/30/2023) |
| 12/01/2023 | 102 | Proof of Service re: served Subpoena upon Sgt. Klimas on 11/9/2023. (fdc) Modified on 12/5/2023 (tjd). (Entered: 12/04/2023) |
| 12/04/2023 | 103 | AFFIDAVIT of Service by Troy Vincent Lewald re: served Subpoena upon C.O. Hopson by U.S. Mail on 11/9/23. (fdc) (Entered: 12/05/2023) |
| 12/05/2023 | 104 | AFFIDAVIT of Service by Troy Vincent Lewald re: served Subpoena upon Joseph Terra by U.S. Mail on 11/9/23 (fdc) (Entered: 12/05/2023) |
| 12/13/2023 | 105 | ANSWER to 1 Complaint,,, together with Affirmative Defenses by PENNSYLVANIA DEPARTMENT OF CORRECTIONS.(Vogt, Alfred) (Entered: 12/13/2023) |
| 12/21/2023 | 106 | PETITION by TROY LEWALD TO ENFORCE SUBPOENA FOR PRODUCTION OF DOCUMENTS DEFENDANT JOSEPH TERRA, CERTIFICATE OF SERVICE. (JL) (Entered: 12/22/2023) |
| 01/04/2024 | 107 | Response in Opposition re 106 Application/Petition *with Certificate of Service* by PENNSYLVANIA DEPARTMENT OF CORRECTIONS. (Attachments: # 1 Exhibit A - Grievance) (Vogt, Alfred) (Entered: 01/04/2024) |
| 01/05/2024 | 108 | NOTICE of Appearance by Brendan Mullen on behalf of PENNSYLVANIA DEPARTMENT OF CORRECTIONS with Certificate of Service(Mullen, Brendan) (Entered: 01/05/2024) |
| 01/10/2024 | 109 | NOTICE of Withdrawal of Appearance by Alfred J Vogt on behalf of PENNSYLVANIA DEPARTMENT OF CORRECTIONS(Vogt, Alfred) (Entered: 01/10/2024) |
| 01/10/2024 | 110 | TROY LEWALD MOTION FOR EXTENSION OF TIME.(JL) (Entered: 01/11/2024) |
| 01/18/2024 | 111 | ORDER THAT PLAINTIFF'S PETITION 106 IS DENIED. SIGNED BY HONORABLE CHAD F. KENNEY ON 1/17/24. 1/18/24 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 01/18/2024) |
| 01/18/2024 | 112 | ORDER THAT PLAINTIFF TROY LEWALD'S 110 MOTION FOR EXTENSION OF TIME IS DENIED. SIGNED BY HONORABLE CHAD F. KENNEY ON 1/17/24.1/18/24 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 01/18/2024) |
| 01/19/2024 | 113 | Plaintiff's Brief in Support of his Petition to Enforce Subpoena, Certificate of Service. (fdc) (Entered: 01/22/2024) |
| 01/26/2024 | 114 | Objections to Order Dated 1/17/24 112 by TROY LEWALD. (fdc) (Entered: 01/26/2024) |
| 03/01/2024 | 115 | MOTION FOR PRETRIAL VIDEOCONFERENCE filed by TROY LEWALD..(fdc) (Entered: 03/01/2024) |
| 03/04/2024 | 116 | ORDER THAT PLAINTIFF'S MOTION FOR A PRETRIAL VIDEOCONFERENCE 115 IS DENIED WITHOUT PREJUDICE. THE CLERK OF COURT SHALL ATTEMPT TO APPOINT COUNSEL FROM THE COURT'S PRISONER PANEL FOR PRO SE PLAINTIFFS IN PRISONER CIVIL RIGHTS CASES BY PLACING THIS CASE ON THE COURT'S EXTRANET SITE FOR REVIEW BY ATTORNEYS WHO ARE MEMBERS OF THE PANEL; AND THIS CASE IS PLACED IN SUSPENSE FOR SIXTY (60) DAYS. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 3/4/24. |

| | | |
|---|---|---|
| | | 3/4/24 ENTERED & E-MAILED. NOT MAILED TO LEWALD. (fdc) (Entered: 03/04/2024) |
| 03/05/2024 | | DOC. 116 MAILED TO PRO SE. (sg) (Entered: 03/05/2024) |
| 03/18/2024 | 117 | MOTION for Permission to Engage in Discovery filed by TROY LEWALD, Certificate of Service. (fdc) (Entered: 03/20/2024) |
| 03/21/2024 | 118 | ORDER THAT THE ABOVE-CAPTIONED ACTION SHALL BE REMOVED FROM SUSPENSE AND PLACED IN STAY. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 3/21/24. 3/21/24 ENTERED AND COPIES MAILED AND E-MAILED. (fdc) (Entered: 03/21/2024) |
| 03/25/2024 | 119 | Request for Status Update dated 3/21/24 by TROY LEWALD (sbt) (Entered: 03/26/2024) |
| 03/26/2024 | 120 | Clerks Office Response to Status Update (Attachments: # 1 Docket Sheet)(sbt) (Attachment 1 replaced on 3/26/2024) (sbt). (Attachment 1 replaced on 3/26/2024) (sbt). (Entered: 03/26/2024) |
| 04/03/2024 | 121 | ORDER THAT PLAINTIFF TROY LEWALD MOTION FOR PERMISSION TO ENGAGE IN DISCOVERY IS DENIED WITHOUT PREJUDICE; ETC.. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 4/2/24.4/3/24 ENTERED AND MAILED TO PRO SE AND E-MAILED.(JL) (Entered: 04/03/2024) |
| 06/18/2024 | 122 | ORDER THAT THE ABOVE-CAPTIONED MATTER BE REMOVED FROM STAY. THIS CASE SHALL BE REMOVED FROM THE PRISONER CIVIL RIGHTS PANEL. THE CLERK OF COURT IS DIRECTED TO MAIL A COPY OF THIS ORDER TO PRO SE PLAINTIFF TROY LEWALD. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 6/18/24. 6/18/24 ENTERED & E-MAILED. NOT MAILED TO LEWALD.(fdc) (Entered: 06/18/2024) |
| 06/20/2024 | | Copy of Order #122 mailed to Lewald. (fdc) (Entered: 06/20/2024) |
| 07/11/2024 | 123 | MOTION FOR PRETRIAL VIDEOCONFERENCE filed by TROY LEWALD, Certificate of Service.(fdc) (Entered: 07/11/2024) |
| 07/29/2024 | 124 | SCHEDULING ORDER. ORDER THAT ALL FACT DISCOVERY IS DUE BY 10/24/24. EXPERT DISCOVERY IS DUE BY 1/9/25. MOTIONS IN LIMINE ARE DUE BY 4/21/25. MOTIONS FOR SUMMARY JUDGMENT AND DAUBERT MOTIONS ARE DUE BY 2/6/25. PLAINTIFF PRETRIAL MEMO DUE BY 4/28/25. DEFENDANT PRETRIAL MEMO DUE BY 4/28/25. TRIAL DATE SET FOR 5/27/25 AT 9:00 AM IN COURTROOM 11B BEFORE DISTRICT JUDGE CHAD F. KENNEY. PLAINTIFF'S MOTION FOR PRETRIAL VIDEOCONFERENCE 123 IS DENIED AS MOOT. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 7/26/24. 7/29/24 ENTERED & E-MAILED. NOT MAILED TO LEWALD.(fdc) (Entered: 07/29/2024) |
| 07/30/2024 | | DOC. NO. 124 MAILED TO PRO SE 7/30/24. (amas) (Entered: 07/30/2024) |
| 08/14/2024 | 125 | MOTION to Take Deposition from Troy Lewald filed by PENNSYLVANIA DEPARTMENT OF CORRECTIONS.Certificate of Service.(Mullen, Brendan) (Entered: 08/14/2024) |
| 08/15/2024 | 126 | ORDER THAT DEFENDANT'S 125 MOTION TO DEPOSE PLAINTIFF IS GRANTED. IT IS FURTHER ORDERED THAT SAID DEPOSITION SHALL TAKE PLACE, PURSUANT TO WRITTEN NOTICE, AT THE CORRECTIONAL INSTITUTION AT WHICH PLAINTIFF IS INCARCERATED AND MAY BE TAKEN BY COUNSEL FOR DEFENDANT VIA A REMOTE VIDEO-CONFERENCE SERVICE. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 8/15/24.8/15/24 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 08/15/2024) |

| 12/09/2024 | 127 | Request for Status Update dated 11/25/2024 by TROY LEWALD (pjm) (Entered: 12/09/2024) |
| 12/09/2024 | 128 | Clerks Office Response to Status Update (Attachments: # 1 Partial Docket Sheet)(pjm) (Entered: 12/09/2024) |
| 01/22/2025 | 129 | ORDER THAT THE PARTIES NEED NOT MEET AND CONFER PRIOR TO THE FILING OF ANY RULE 56 MOTIONS. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 1/22/25. 1/22/25 ENTERED AND COPIES E-MAILED. PRO SE PLAINTIFF NOT MAILED. (va) (Entered: 01/22/2025) |
| 01/23/2025 | | PAPER #129 MAILED TO PRO SE (JL) (Entered: 01/23/2025) |
| 02/06/2025 | 130 | MOTION for Summary Judgment filed by PENNSYLVANIA DEPARTMENT OF CORRECTIONS.Memorandum, Certificate of Service. (Attachments: # 1 Exhibit Index of Exhibits, # 2 Exhibit Deposition of Plaintiff Transcript, # 3 Exhibit Plaintiff's Work Assignments, # 4 Exhibit Plaintiff's Redacted Medical Records, # 5 Exhibit DC-ADM 006 Reasonable Accommodations for Inmates with Disabilities, # 6 Exhibit Inmate Handbook 2017 Edition Section XI Work Assignments, # 7 Exhibit Medical Status - Restrictions, # 8 Exhibit Receipt of Inmate Handbook & Administrative Directives) (Mullen, Brendan) (Entered: 02/06/2025) |
| 02/07/2025 | 131 | MOTION for Leave to File *Motion for Summary Judgment* filed by PENNSYLVANIA DEPARTMENT OF CORRECTIONS.Memorandum and Certificate of Service.(Mullen, Brendan) (Entered: 02/07/2025) |
| 02/12/2025 | 132 | Request for Status Update dated 02/06/2025 by TROY VINCENT LEWALD (pjm) (Entered: 02/12/2025) |
| 02/12/2025 | 133 | Clerks Office Response to Status Update (Attachments: # 1 Partial Docket Sheet)(pjm) (Entered: 02/12/2025) |
| 02/12/2025 | 134 | ORDER THAT DEFENDANT PENNSYLVANIA DEPARTMENT OF CORRECTIONS' 131 MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT IS GRANTED. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 2/12/25.2/12/25 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 02/12/2025) |
| 02/28/2025 | 135 | MOTION in Opposition to Motion for Summary Judgment filed by TROY LEWALD.. (Attachments: # 1 part2, # 2 part3, # 3 envelope)(fdc) Modified on 3/6/2025 (nd). (Entered: 02/28/2025) |
| 03/10/2025 | 136 | Objections to Defendant's 130 MOTION for Summary Judgment (Exhibit 6 (ECF. 130-7) filed by TROY LEWALD. (fdc) (Entered: 03/12/2025) |
| 03/18/2025 | 137 | MOTION to Stay *or Extend Deadlines* filed by PENNSYLVANIA DEPARTMENT OF CORRECTIONS.Memorandum, Certificate of Service.(Mullen, Brendan) (Entered: 03/18/2025) |
| 03/19/2025 | 138 | ORDER THAT DEFENDANT'S 137 MOTION FOR STAY OF DEADLINES IS GRANTED. ALL REMAINING DEADLINES AND THE TRIAL DATE IN THE SCHEDULING ORDER 124 ARE STAYED UNTIL FURTHER NOTICE FROM THE COURT. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 3/19/25.3/19/25 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 03/19/2025) |
| 06/03/2025 | 139 | MEMORANDUM AND OPINION. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 6/3/25. 6/3/25 ENTERED AND COPIES MAILED AND E-MAILED. (fdc) (Entered: 06/03/2025) |

## JA 18

| 06/03/2025 | 140 | MEMORANDUM AND ORDER THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 130 IS GRANTED. THE CLERK OF COURT IS HEREBY DIRECTED TO CLOSE THIS CASE. SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 6/3/25. 6/3/25 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 06/03/2025) |
|---|---|---|
| 06/12/2025 | 141 | NOTICE OF APPEAL as to 140 Order (Memorandum and/or Opinion), by TROY LEWALD. IFP PREVIOUSLY GRANTED. (ENVELOPE ATTACHED) (dt) (Entered: 06/20/2025) |
| 06/18/2025 | 142 | MOTION TO BE HEARD ON THE FULL RECORD filed by TROY LEWALD.CERTIFICATE OF SERVICE.(ENVELOPE ATTACHED)(dt) Modified on 6/23/2025 (tjd). (Entered: 06/20/2025) |
| 06/18/2025 | 143 | Praecipe to Produce Memorandum by TROY LEWALD. (envelope attached). (dt) Modified on 6/23/2025 (tjd). (Entered: 06/20/2025) |
| 06/18/2025 | 144 | MOTION OF PRO SE PLAINTIFF TROY LEWALD FOR CONTINUATION IN FORMA PAUPERIS. (ENVELOPE ATTACHED) (DT) Modified on 6/23/2025 (tjd). (Entered: 06/20/2025) |
| 06/20/2025 | 145 | MOTION for Leave to Proceed in forma pauperis filed by TROY LEWALD..(fdc) (Entered: 06/23/2025) |
| 06/20/2025 | 146 | Prisoner Trust Fund Account Statement by TROY LEWALD. (fdc) (Entered: 06/23/2025) |
| 06/24/2025 | 147 | NOTICE of Docketing Record on Appeal from USCA re 141 Notice of Appeal filed by TROY LEWALD. USCA Case Number 25-2166 (fdc) (Entered: 06/24/2025) |
| 06/24/2025 | 148 | ORDER THAT THE CLERK OF COURT SHALL TRANSFER FILINGS (ECF NOS. 142,143,144,145 AND 146) TO THE U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT (USCA #25-2166). SIGNED BY DISTRICT JUDGE CHAD F. KENNEY ON 6/24/25. 6/25/25 ENTERED AND COPIES MAILED AND E-MAILED. ABOVE-LISTED DOCS. TRANSFERRED TO USCA.(fdc) (Entered: 06/25/2025) |
| 06/30/2025 | 149 | Objections to 140 Order (Memorandum and/or Opinion), by TROY LEWALD, Certificate of Service. (fdc) (Entered: 07/01/2025) |
| 06/30/2025 | 150 | Praecipe to Produce Memorandum dated 6/3/25 by TROY LEWALD. (fdc) (Entered: 07/01/2025) |
| 08/18/2025 | 151 | Filing fee: $ 157.49, receipt number 20031638 (sbt) (Entered: 08/20/2025) |
| 09/23/2025 | 152 | Filing fee: $ 244.90, receipt number 20032366 (sbt) (Entered: 09/24/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/26/2026 14:38:28 | | |
| **PACER Login:** | becca.steinberg | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:22-cv-04625-CFK |
| **Billable Pages:** | 19 | **Cost:** | 1.90 |

# JA 19

Date Filed: 03/11/2026    Page: 23    Document: 35    Case: 25-2166

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TROY VINCENT LEWALD,    )
PLAINTIFF        )
V.           )  Civil Action No._____
PENNSYLVANIA DEPARTMENT )
OF CORRECTIONS, ("PADOC");  )
WELLPATH HOLDINGS LLC,   )
("WELLPATH"); KIP HALLMAN;  )
GEORGE M. LITTLE; KERI MOORE; )
JOHN SILVA; DARINA VARNER;  )  42 U.S.C. SECTION 1983
MICHAEL R. CLARK; JAIME SORBER; )
TREVOR WINGARD; PAUL ENNIS; )
TAMMY FERGUSON; ROBERT TERRA; )
MELINDA ADAMS; JOSEPH TERRA; )
MANDY BISER-SIPPLE; TERI REID; )
ANTHONY LITIZIO; CAROL ANNINO; )
JACKIE WOOD; BRITNEY HUNER; )
TIFFANY WILLS; MONIQUE SAVAGE; )
KIM WAIDELICH; TARA JACKSON; )
JASON STIMMEL; BRIAN KLINE;  )
COURTNEY CIONE; JANE RIEGER; )
SUSAN NARDELLA; KELLY SHEERAN; )
REGINA CURBY; DENNIS COTTON; )
MELISSA DELLIPONTI; ROBERT POLI; )
LISA DURANT; CHARLES HENSLEY; )
JOHN MUICK; PAUL NOEL;   )
LEANDRA STRENKOSKI;    )
SHANDA DESHIELD;     )
ROBERT CHOATE;      )
ANTHONY MATTEO;     )
"EMPLOYEE" NINAN;     )
"EMPLOYEE" FITZGERALD-YOUNG; )
"EMPLOYEE" GRENNON;    )
LISA BAIRD;       )
et al.,         )
DEFENDANTS      )



JURY TRIAL DEMANDED

VERIFIED COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

## I. INTRODUCTION

1. This is a §1983 action filed by Plaintiff Troy Vincent Lewald, a state prisoner, alleging Constitutional injuries including denial of equal protection and due process in violation of the 14th Amendment; cruel and unusual punishment, failure to protect, denial of medical care and deliberate indifference in violation of the 8th Amendment; unreasonable seizure in violation of the 4th Amendment; retaliation in violation of the 1st Amendment. Plaintiff also alleges the torts of technical assault and battery, negligence and malpractice. Plaintiff is seeking injunctive relief and money damages for physical and Constitutional injuries. Plaintiff also seeks an injunction and damages pursuant to the American with Disabilities Act ("ADA"), the Rehabilitation Act, and the Protection and Advocacy for Individuals with Mental Illness Act ("PAMII").

## II. JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution of the United States.

3. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1343 in that this action seeks to redress the deprivation, under color of state law, of rights secured by Acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§2283 and 2284, and Rule 65 of the Federal Rules of Civil Procedure.

Date Filed: 03/11/2026    Page: 24    Document: 35    Case: 25-2166

Date Filed: 03/11/2026    Page: 25    Document: 35    Case: 25-2166

5. The United States District Court of Pennsylvania is an appropriate venue under 28 U.S.C. §1391(b)(2)because it is where a substantial part of the events and omissions giving rise of this claim occurred.

6. The Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. §1369.

7. The Plaintiff filed a notice of claim concerning the occurrences complained of with the Attorney General of Pennsylvania within 6 months of the occurrences, as required by Pennsylvania statue §5522(a)(1),and the Attorney General has failed to settle Plaintiff's claim.

8. The Plaintiff has filed a complaint with the United States Department of Justice and the United States Department of Justice has failed to take action.

## III. PARTIES

9. Plaintiff Troy Vincent Lewald at all times relevant was confined by the Pennsylvania Department of Corrections ("PADOC"). Between the dates of January 24th 2019 and February 8th 2019, Plaintiff was housed at the State Correctional Institute at Phoenix ("SCI-PHX"), 1200 Mokychic Dr., Collegeville, PA 19426. Between the dates of February 8th 2019 and May 21st 2019, Plaintiff was housed at State Correctional Institute at Camphill ("SCI-CAM"), 2500 Lisbum Rd., Camphill, PA 17001. Between the dates of May 21st 2019 and December 28th 2021, Plaintiff was housed at the State Correctional Institute at Albion ("SCI-ALB"), 10745 State Route 18, Albion, PA 16475. Between the dates of December 28th 2021 and the present, Plaintiff was returned to SCI-PHX on "promotional" Incentive-Based Transfer ("IBT"). Plaintiff a documented history of atherosclerosis affecting the major function of his circulatory system and degenerative disc disease affecting the major function

Date Filed: 03/11/2026    Page: 26    Document: 35    Case: 25-2166

of his nervous and skeletal systems and has been regarded as disabled since his initial commitment into the PADOC. Plaintiff has several discs on watch for suspect herniation, including possible re-herniation of a disc previously repaired by spinal surgery. Plaintiff has a history of mental health issues, including psychiatric disorder, anxiety disorder, mood disorder, emotional disorder, Post Tramatic Stress Disorder ("PTSD"), Obsessive-Compulsive Disorder ("OCD"), manic-depressive disorder, insomnia, depression, early morning arousal, and was prescribed Mirtazapine (trade name "Remeron") at doses varying between 15mg and 45mg at various times during his incarceration. Plaintiff's major life activities of performing manual tasks, sleeping, walking, standing, lifting, bending, jumping, concentrating, thinking, communicating, and working are severely limited, precluding Plaintiff from a large category of jobs. Plaintiff has remained Custody-Level 2 ("CL2"), misconduct free, never faced disciplinary hearing or segregation, and continues to display model inmate behavior. Plaintiff is otherwise qualified to participate in programs as demonstrated during his participation for 8 months in the education program, 14 months in the work program, 24 months in the psychology program, and 31 months in the medical program at SCI-ALB. Plaintiff has also demonstrated he is qualified to participate in programs by his participation in the previous 7 months in the vocational program and 5 months in the educational program at SCI-PHX.

10. Defendant Kip Hallman, President, WELLPATH. As such, they are responsible for overseeing the prevention, treatment and management of illness and the preservation of well-being through services offered by the medical and allied health professionals. They at all relevant times were acting under color of state law and are being sued in their official capacity.

11. Defendant George M. Little, Secretary, PADOC Central Office. As such, they are responsible for the operation of each Correctional

Institution, the overall welfare of all inmates within the Department and presides over the administration and the enforcement of Central Office policies at local facilities. They at all relevant times were acting under color of state law and are being sued in the official capacity.

12. Defendant Keri Moore, Chief Grievance Officer Assistant, PADOC Central Office. As such, they are responsible for to coordinate grievance documents, present issues to Chief Grievance Officer, decide on and sign final decisions. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

13. Defendant John Silva, Director of Health Care Services, PADOC Central Office. As such, they are responsible to govern the affairs of the medical department operations of each Correctional Institution, the overall medical care of all inmates within the Department and presides over the medical administration and the enforcement of state, federal and Central Office medical policies at the local facilities. They at all relevant times were acting under color of state law and are being sued in their official capacity.

14. Defendant Darina Varner, Chief Grievance Officer, PADOC Central Office. As such, they are responsible to respond to the lamentation over declining standards and has the authority to override local decisions of injustice and enforce Central Office policies. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

15. Defendant Michael R. Clark, Superintendent, PADOC SCI-ALB. As such, they are responsible for the supervision and direction of the facility, the overall welfare of all local inmates, presides over the local administration, and enforcement of Central Office policies at the local facility. They at all relevant times were

acting under color of state law and are being sued in the official capacity.

16. Defendant Jaime Sorber, Superintendent, PADOC SCI-PHX. As such, they are responsible for the supervision and direction of the facility, the overall welfare of all local inmates, presides over the local administration and enforcement of Central Office policies at the local facility. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

17. Defendant Trevor Wingard, Deputy Secretary, PADOC Western Region. As such, they are responsible as an empowered person acting as the Secretary and exercising full authority in the absence of the superior and with equal authority during emergencies. They oversee all facilities within the Western Region, responsible for the overall welfare of inmates within their zone, presides over the administration of facilities within their zone, and enforcement of Central Office policies at each local facility. They at all relevant times were acting under color of state law and are being sued in their official capacity.

18. Defendant Paul Ennis, Deputy Superintendent of Central Medical Services, PADOC SCI-ALB. As such, they are responsible as an empowered person acting as the Superintendent and exercising full authority in the absence of the superior and with equal authority during emergencies. They are responsible for the supervision and direction of Central Services at the facility, the overall welfare of all local inmates, presides over the Central Medical Services administration and enforcement of state, federal and Central Office medical policies at the local facility. They at all relevant times were acting under color of state law and are being sued in the official capacity.

19. Defendant Tammy Ferguson, Deputy Secretary, PADOC Eastern Region. As such, they are responsible as an empowered person acting as

the Secretary and exercising full authority in the absence of the superior and with equal authority during emergencies. They oversee all facilities within the Eastern Region, responsible for the overall welfare of inmates within their zone, presides over the administration, presides over the administration of facilities within their zone, and enforces Central Office policies at the local facilities. They at all relevant times were acting under color of state law and are being sued in the official capacity.

20. Defendant Robert Terra, Deputy Superintendent of Centralized Services, PADOC SCI-PHX. As such, they are responsible as an empowered person acting as the Superintendent and exercising full authority in the absence of the superior and with equal authority during emergencies. They are responsible for the supervision and direction of Centralized Services at the facility, the overall welfare of all local inmates, presides over the Centralized Services administration and enforcement of state, federal and Central Office policies at the local facility. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

21. Defendant Melinda Adams, Deputy Superintendent of Centralized Services, PADOC SCI-ALB. As such, they are responsible as an empowered person acting as the Superintendent and exercising full authority in the absence of the superior and with equal authority during emergencies. They are responsible for the supervision and direction of Centralized Services at the facility, the overall welfare of all local inmates, presides over the Central Services administration and enforcement of state, federal and Central Office policies at the local facility. They at all relevant times were acting under color of state law and are being sued in their official capacity.

22. Defendant Joseph Terra, Deputy Superintendent of Centralized Services, PADOC SCI-PHX. As such, they are responsible as an

Case: 25-2166    Document: 35    Page: 29    Date Filed: 03/11/2026

empowered person acting as the Superintendent and exercising full authority in the absence of the superior and with equal authority during emergencies. They are responsible for the supervision and direction of Central Services at the facility, the overall welfare of all local inmates, presides over the Central Services administration and enforcement of state, federal and Central Office policies at the local facility. They at all relevant times were acting under color of state law and are being sued in the official capacity.

23. Defendant Mandy Biser-Sipple, Deputy Superintendent of Centralized Services, PADOC SCI-PHX. As such, they are responsible as an empowered person acting as the Superintendent and exercising full authority in the absence of the superior and with equal authority during emergencies. They are responsible for the supervision and direction of Centralized Services at the facility, the overall welfare of all local inmates, presides over Centralized Services administration and enforcement of state, federal and Central Office policies at the local facility. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

24. Defendant Teri Reid, Medical Records Technician, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible to compile, process and maintain medical records of patients in a manner consistent with medical, administrative, ethical, legal and regulatory requirements of the health care system following state, federal, Central Office, and HIPAA regulations. They organize and manage health information data by ensuring that it maintains its quality, accuracy, accessibility and security in both paper files and electronic systems. They work regularly with Registered Nurses and other health care professionals to clarify diagnosis or to get additional information to make sure records are complete and accurate. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

Case: 25-2166    Document: 35    Page: 30    Date Filed: 03/11/2026

25. Defendant Dr. Anthony Litizio, Chief Medical Director, WELPATH SCI-PHX. As such, they are the PADOC subcontractor responsible to govern the affairs of the medical program at the local institution, provide appropriate care and attention to the medical needs of local inmates, direct the administration and enforcement of state, federal, regulatory, and Central Office policies, and represent the facility at investor meetings or on governing boards. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

26. Defendant Dr. Carol Annino, Medical Doctor, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible to take and review medical histories, examine inmates, order and interpret diagnostic tests, diagnose an injury or illness, give treatments, educate and counsel, prescribe medicine, assess and record progress, research the latest treatments to ensure quality of care, talk to groups about managing diseases and promoting wellness. All states require them to be licensed and have earned the highest academic awarded by a university in the discipline of healing arts training. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

27. Defendant Jackie Wood, Health Care Administrator, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible for planning, directing and coordinating the medical program at the local facility, including management and supervision of underlying medical care and the overall welfare of local inmates and the enforcement of state, federal, regulatory, and Central Office medical policies at the local facility. They at all relevant times were acting under color of state law and are being sued in their official capacity.

28. Defendant Britney Huner, Correctional Health Care Administrator, PADOC SCI-PHX. As such, they are responsible for planning, directing and coordinating the medical program at the local facility, including management and supervision of underlying medical care and

the overall welfare of local inmates and the enforcement of state, federal, regulatory, and Central Office medical policies at the local facility. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

29. Defendant Tiffany Wills, Correctional Health Care Administrator, PADOC SCI-ALB. As such, they are responsible for planning, directing and coordinating the medical program at the local facility, including management and supervision of underlying medical care and the overall welfare of local inmates and enforcement of state, federal, regulatory, and Central Office medical policies at the local facility. They at all relevant times were acting under color of state law and are being sued in their official capacity.

30. Defendant Monique Savage, Advanced Registered Nurse Supervisor, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible for the administration and supervision of the medical program, including underlying medical staff, ensuring the recording of inmate medical histories and symptoms, performance of exams and observation of inmates, create inmate care plans and contribution to existing plans, review performance and diagnostic tests, diagnosis of various health problems, analyze test results or changes in an inmates' condition and alter treatment plans as needed, give inmates medicines and treatments, consult with doctors and other health care professionals as needed, counsel and teach inmates to stay healthy, manage their illnesses or injuries, and conduct research. They're focused on patient-centered care, which means understanding a patient's concerns and lifestyle before choosing a course of action. They are required to have a Registered Nurse license, complete an accredited graduate-level program, pass a national certification exam and obtain an Advanced license. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

31.Defendant Kim Waidelich, Registered Nurse Supervisor, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible for the administration and supervision of the medical program, including underlying medical staff, ensuring the recording of inmate medical histories and symptoms, performance of exams and observation of inmates, create inmate care plans and contribution to existing plans, review performance and diagnostic tests, diagnosis of various health problems, analyze test results or changes in an inmates' condition and alter treatment plans as needed, give inmates medicines and treatments, consult with doctors and other health care professionals as needed, counsel and teach inmates to stay healthy, manage their illnesses or injuries, and conduct research. They're focused on patient-centered care, which means understanding a patients' concerns and lifestyle before choosing a course of action. They are required to have a Registered Nurse license, complete an accredited graduate-level program, pass a national certification exam. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

32.Defendant Tara Jackson, Medical Assistant, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible for the recording of inmate medical history and personal information, measuring vital signs, helping physicians with examinations, giving injections or medications as directed by physician and as permitted by law, scheduling appointments, and preparing samples for laboratory tests. Medical assistants who do not have a post-secondary education certificate learn their skills through on-the-job training. Physicians or other medical assistants may teach a new medical assistant medical terminology, the names of instruments, how to do daily tasks, how to interact with inmates and other tasks that help keep the medical program running smoothly. Must have analytical skills, be detail oriented, interpersonal skills and technical skills. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

33. Defendant Jason Stimmel, Correctional Counselor II, PADOC SCI-PHX. As such, they are responsible to give advice and assist with program changes, pre-parole matters and personal problems. They are given an office on the housing unit to discuss issues with inmates face-to-face and act as the first point of contact for inmate grievances with facility administration, refer inmates to other programs and resources, such as job placement and support groups, and general inmate grievances. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

34. Defendant Brian Kline, Lieutenant Food Services, PADOC SCI-PHX. As such, they are responsible as an empowered person acting as the Captain and exercising full authority in the absence of the superior and with equal authority during emergencies. They plan, direct and coordinate the operations of Food Services and duty includes formulating policies, managing daily operations and planning the use of materials and human resources. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

35. Defendant Courtney Cione, Licensed Psychiatrist, PADOC SCI-PHX. As such, they are responsible as the primary mental health physician to diagnose and treat mental illnesses through a combination of personal counseling, psychotherapy, psychoanalysis, medication, meeting regularly with inmates to discuss problems and help find solutions through changes in behavioral patterns, exploration of past experiences and lead group therapy sessions, perform long-term psychoanalysis and ongoing counseling, diagnose disorders, research and identify behavioral or emotional patterns, and prescribe medications to correct chemical imbalances that cause some mental illnesses. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

Case: 25-2166    Document: 35    Page: 35    Date Filed: 03/11/2026

36. Defendant Jane Rieger, Medical Records Technician, WELLPATH SCI-ALB. As such, they are the PADOC subcontractor responsible to compile, process and maintain medical records of patients in a manner consistent with medical, administrative, ethical, legal and regulatory requirements of the health care system following state, federal, Central Office, and HIPAA regulations. They organize and manage health information data by ensuring that it maintains its quality, accuracy, accessibility and security in both paper files and electronic systems. They work regularly with Registered Nurses and other health care professionals to clarify diagnosis or to get additional information to make sure records are complete and accurate. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

37. Defendant Susan Nardella, Licensed Psychology Manager, PADOC SCI-PHX. As such, they are responsible to govern the affairs of the psychology program and the treatment of inmates suffering from mental, emotional and behavioral issues, develop programs that abide by state, federal and Central Office policies, manage, supervise and coordinate employees of the psychology program, develop, recommend and review inmate treatment goals and plans, coordinate referrals with other resources, services and groups. They are required to have a master's degree, 4,000-8,000 hours of supervised clinical experience and pass a state-issued license exam, along with yearly continuing education requirements. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

38. Defendant Kelly Sheeran, Psychology Services Specialist, PADOC SCI-PHX. As such, they are responsible for the supervision of counselors and assistants within the psychology program, the treatment of inmates suffering from mental, emotional and behavior health issues, evaluate inmates' needs and readiness for treatment, administer and coordinate treatment programs according to state, federal, Central Office and industry-standard guidelines, assist

Case: 25-2166    Document: 35    Page: 36    Date Filed: 03/11/2026

inmates in developing skills and behaviors necessary to modify their behavior, refer inmates to other resources and services, such as work program and support groups, work with psychologists, psychiatrists, social workers, physicians and registered nurses to develop treatment plans and coordinate cure for inmates. All states require them to have a master's degree and 2,000-4,000 hours of supervised clinical experience and complete continuing education every year. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

39. Defendant Regina Curby, Licensed Practical Nurse, WELLPATH SCI-PHX. As such, they are the PADOC subcontractor responsible for working under the direction of Registered Nurses and doctors, monitoring health, administering basic care, discussing the care they are providing and listening to concerns, reporting status and concerns to Registered Nurses and doctors, and keeping records. In some states, LPNs supervise and direct other LPNs and unlicensed medical staff. In all states, becoming an LPN requires completing a state-approved educational program and passing a national exam. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

40. Defendant Dennis Cotton, Correctional Food Services Manager, PADOC SCI-PHX. As such, they are responsible for planning, directing and coordinating the operations of the Food Services department, managing daily operations, planning the use of materials and human resources, administration of personnel, the management of supervisors, ensuring a safe working environment, and compliance with state, federal, regulatory and Central Office policies. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

41. Defendant Melissa Delliponti, Correctional Education & Vocational Coordinator, PADOC SCI-PHX. As such, they are responsible for assignments in the work program, educational program and

Case: 25-2166    Document: 35    Page: 37    Date Filed: 03/11/2026

vocational program, set and modify pay rates, process promotions and demotions, provide deposits for monthly program payments to inmates' trust accounts and support reporting and administrative tasks associated with program assignments and inmate finances. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

42. Defendant Robert Poli, Correctional Food Services Supervisor, PADOC SCI-PHX. As such, they are in charge of the supervision of the Food Services department instructors, inmate employees, maintenance of sanitary conditions, ensuring a safe working environment, and compliance with state, federal, regulatory, and Central Office policies. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

43. Lisa Durant, Correctional Unit Manager, PADOC SCI-PHX. As such, they are responsible to direct the affairs and supervision of housing unit operations, including inmate complaints and safety oversight. They are given an office on the housing unit to discuss issues with inmates face-to-face and act as the second point of contact for inmate grievances with facility administration. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

44. Defendant Charles Hensley, Major Unit Management, PADOC SCI-PHX. As such, they are responsible to plan, direct and coordinate the operations of the housing unit management, formulate housing unit administrative policies, managing daily operations, plan the use of material and human resources, conduct research, prepare reports, handle information requests, and train and supervise housing unit staff. They at all relevant times were acting under color of state law and are being sued in their official capacity.

45. Defendant John Muick, Corrections Classification Program Manager, PADOC SCI-PHX. As such, they are responsible for the coordination and administration of programs within the local facility, oversight of the program staff, develop and implement program plans, maintain program records, work with individuals and groups to promote optimum program experience, formulate policies, manage daily operations and enforcement of state, federal, regulatory, and Central Office policies. They are responsible for the management of the Corrections Education & Vocational Coordinator and the Corrections Education & Vocational Assistant. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

46. Defendant Dr. Paul Noel, Corrections Health Care Director, PADOC Central Office. As such, they are responsible to plan, direct and coordinate the operations of medicine and health care programs within the Department of Corrections, including formulating policies, managing daily operations, planning the use of materials and human resources, maintaining budgets, and enforcement of subcontractor compliance with state, federal, regulatory and Central Office policies. They at all relevant times were acting under color of state law and are being sued in their official capacity.

47. Defendant Leandra Strenkoski, Corrections Unit Manager, PADOC SCI-PHX. As such, they are responsible to direct the affairs and supervision of housing unit operations, including inmate complaints and safety oversight. They are given an office on the housing unit to discuss issues with inmates face-to-face and act as the second point of contact for inmate grievances with facility administration. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

48. Defendant Shanda Deshield, Corrections Food Services Instructor, PADOC SCI-PHX. As such, they are responsible for the first-line instruction, supervision and management of inmates working in the Food Services production line. They delegate responsibilities to

Case: 25-2166    Document: 35    Page: 38    Date Filed: 03/11/2026

inmate workers, coordinate activities between workers, ensure safety of inmates and designated work areas, provide knowledge to workers, maintain sanitation standards, give orders, resolve conflicts, and direct the overall operations of production workers. Food Service workers have one of the highest rates of injuries and illnesses of all occupations and the work is strenuous, requiring physical stamina. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

49. Defendant Robert Choate, Corrections Food Services Supervisor, PADOC SCI-PHX. As such, they are responsible for the supervision of the Food Services department instructors, inmate workers, maintenance of sanitary conditions, ensuring a safe working environment, and compliance with state, federal, regulatory, and Central Office policies. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

50. Defendant Dr. Anthony Matteo, Corrections Licensed Psychology Manager, PADOC SCI-PHX. As such, they are responsible to oversee the psychology program, evaluate the quality of the staff's work, develop reports and budgets, observe, interview and survey inmates, research behavioral or emotional patterns, test for patterns that will help them better understand and predict behavior, write articles, research papers and reports to share findings and educate others, supervise clinicians, specialists and counseling professionals, set guidelines and monitor treatment programs, formulate procedures and enforce state, federal, regulatory and Central Office policies. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

51. Defendant "EMPLOYEE" Ninan, Corrections Medical Records Supervisor, PADOC Central Office. As such, they are responsible for the supervision, organization and management of PADOC health

information data by ensuring that it maintains its quality, accuracy, accessibility and security in both paper and electronic systems, reviewing inmates' records for timeliness, completeness, accuracy and appropriateness of data, organization and maintenance of data for clinical databases and registries, tracking inmates' outcomes for quality assessment, using classification software to assign clinical codes for data analysis, supervision of record data for collection, storage, analysis, retrieval and reporting, maintaining confidentiality of records in accordance with state, federal, regulatory and Central Office policies. They at all relevant times were acting under color of state law and are being sued in their official capacity.

52. Defendant "EMPLOYEE" Fitzgerald-Young, Major of Guard, PADOC SCI-PHX. As such, they are responsible for the training and supervision of Corrections Officers, review officers' daily logs, prepare reports with details of extraordinary occurrences of inmate behavior or security issues, enforcement of strict institutional policies, regulations, operations and security procedures within the facility, and inspect facilities to ensure they meet security and safety standards. They at all relevant times were acting under color of state law and are being sued in their official capacity.

53. Defendant "EMPLOYEE" Grenno, Corrections Officer, PADOC SCI-PHX. As such, they are responsible for overseeing individuals who have been sentenced to serve time, enforce rules and regulations and keep order within the prison, supervise the activities of inmates, inspect facilities to ensure they meet security and safety standards, search inmates for contraband, report on inmate conduct, escort and transport inmates to medical facilities or other destinations, maintain security by preventing disturbances, assaults and escapes, and write reports and fill out daily logs detailing inmate behavior and anything else of note that occurred during their shift. Training typically lasts several months and involves training in the states' Peace Officer Standards and Training ("POST") program. Academy trainees receive instruction in a number of

subjects, including self-defense, institutional policies, regulations, operations and security procedures. Corrections Officers must use both their training and common sense to quickly determine the best course of action and to take the necessary steps to achieve a desired outcome. Corrections Officers follow and enforce strict procedures in correctional facilities to ensure everyone's safety. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

54. Defendant Lisa Baird, UNKOWN TITLE, Wellpath SCI-ALB. They at all relevant times were acting under color of state law and are being sued in both their individual and official capacities.

55. Defendant Pennsylvania Department of Corrections ("PADOC"), which upon information and belief, receives federal funding.

56. Defendant Wellpath Holdings LLC ("WELLPATH"), formerly incorporated as Corrections Care Solutions ("CCS"). As such, they are the PADOC subcontractor responsible for the medicine and health care programs. Their missing statement is: "A pillar of Wellpath's mission is to provide quality care to every patient with compassion, and we maintain a culture to always do the right thing for our patients, our people and our partners."

## IV. EXHAUSTION OF AVAILABLE REMEDIES

56-A. Plaintiff has exhausted his administrative remedies prior to filing this complaint.

## V. FACTUAL STATEMENT

57. On January 24 2019, Plaintiff was transported from Montgomery County Correctional Facility to SCI-PHX, to begin his term of sentenced confinement.

58. On January 25 2022, Plaintiff was seen by medical professional Ana Wakeman, CRNP, for initial medical intake screening. Plaintiff described the history of his disabilities and Ms. Wakeman documented it in the PADOC SAPPHIRE medical documentation system, prescribed

Case: 25-2166    Document: 35    Page: 42    Date Filed: 03/11/2026

Motrin 600mg tablets and assigned bottom-bunk status. No lifting note was added by Ms. Kathleen Lock and no lifting herniated disc note was added by Ms. Erica Gipe. [PADOC Policy DC-ADM006 Medical Services Accommodations for Inmates with Disabilities (VI)(A)(1) states: "Qualified health care personnel will give you a medical, dental, and mental health screening/appraisal, including if you are an intra-system transfer, within 14 days of your commitment."][PADOC Policy DC-ADM006(VI)(A)(2) states: "The facility health care department, through qualified personnel or specialists, and in conjunction with you, shall make the diagnosis of a qualified disability, unless previously diagnosed, and shall determine the level of accommodation(s) you may need, and provide the appropriate medical treatment, as required by the condition."]

59. On February 8 2019, Plaintiff was transferred to SCI-CAM Correctional Diagnostic and Classification Center ("CDCC") for further processing.

60. On February 8 2019, DC-485A Intra-System Medical Record Transfer Checklist - Sending Facility, was processed by Ms. Tonya Summers at SCI-PHX.

61. On February 8 2019, DC-479 Intra-System Transfer Reception Screening was recieved by Ms. Monica Effin, RN, at SCI-CAM.

62. On February 14 2019, Plaintiff was seen by medical provider Ms. Amy Flatt Manning, PA, who documented DC-472 Progress Note. [PADOC Policy DC-ADM006(VI)(A)(1)].

63. On February 26 2019, Plaintiff was seen by medical provider Mr. Greg Forsyth, PA, who documented DC-472 Progress Note. [PADOC Policy DC-ADM006(VI)(A)(1)].

64. On May 21 2019, DC-485A Intra-System Medical Record Transfer Checklist - Sending Facility, was processed by Ms. Peggy Hartman at SCI-CAM.

65. On May 21 2019, Plaintiff was transported to SCI-ALB to serve committed sentence of confinement.

66. On May 21 2019, DC-479 Intra-System Transfer Reception Screening was recieved by Ms. Rachel Smerick, RN, at SCI-ALB.

67. On May 22 2019, Mr. Daniel Stroup, PA, entered note in SAPPHIRE to schedule follow-up to asses restrictions and deleted medical restrictions.

69. On May 24 2019, Daniel Stroup, PA, examined Plaintiff, stated restrictions were incorrectly entered into the SAPPHIRE system and needed to be fixed. Mr. Stroup also added further restrictions into SAPPHIRE noting: "no lifting more than 10 pounds, no standing/sitting more than 4 hours, no impact jobs/sports, no jumping/climbing, no excessive bending, bottom-bunk, lite-duty work assignment, no food service-handle/janitor, NOT MEDICALLY CLEARED FOR FOOD SERVICES." on DC-472 Progress Note. [PADOC Policy DC-ADM006(VI)(A)(1)].

70. On or about October 14 2020, Plaintiff was moved to Custody Level II Honor Block housing unit D/B.

71. On or about October 21 2020, Plaintiff interviewed with Inmate Employment Ms. Giles and Adult Basic Education ("ABE") teacher Mr. Smay. At the conclusion of the interview Ms. Giles states: "this really would be the perfect job for you, given your severe work restrictions." Mr. Smay said he agreed and Plaintiff thanked them for their time and the opportunity.

72. On or about November 3 2020, Plaintiff was given job assignment notification for Block Tutor job, starting at Class III, Step "A" pay rate of $0.33/hr. by Sergeant Provident to sign and return. [PADOC Policy DC-ADM816(1)(F)(1)(c) states: "class III - skilled, work requires a great deal of skill."]

73. On or about January 10 2021, Plaintiff was given job review form DC-48B and was promoted to Class III, Step "B" pay rate of $0.35/hr., by Sergeant Provident.

74. On April 20 2021, Plaintiff wrote Unit Manager Ms. Frith to inquire about a 60 day review and if Plaintiff was possibly being punished. Ms. Frith stated Plaintiff hadn't done anything wrong. Reviews and raises were currently on hold due to COVID. [PADOC Policy DC-ADM816 (XI) Work Assignments (E) Pay Changes (1) states: "Pay raises and demotions will be at the discretion of the work supervisor based upon your performance as documented on the DC-48B, Inmate Progress Report. You are not entitled to pay raises and they are not automatic. Raises may be awarded only in one-step increments and are based on your work performance. The first pay raise and later increases will not be granted until you complete two months of satisfactory performance. Pay raises are effective in the first full pay period of the month following the approval of the raise."]

75. On or about August 3 2021, Plaintiff was given job review form DC-48B and was promoted to Class III, Step "C" pay rate of $0.38/hr., by Sergeant Mazone.

76. On August 5 2021, Plaintiff was paid $41.58 for the month of pay from the work program.

77. On or about September 6 2021, Plaintiff spoke with Unit Counselor Ms. Herr about applying for "promotional" Incentive-Based Transfer ("IBT") to Region 1 SCI near Philadelphia. Plaintiff agreed to apply if he would be paid the same monthly payment at his new facility and Ms. Herr confirmed Plaintiff would continue to be paid the same amount monthly, according to policy. [PADOC Policy 11.01.1(2)(A) states: "A CL-2 inmate may be considered for an IBT. An IBT should be used to facilitate program participation, reentry, and continuity of care."][PADOC Inmate Handbook (O)(1)(A) states: "The following criteria, at a minimum, will be used for processing an inmate for incentive based Custody Level-2 transfer: 1) the transfer should be closer to your home region if sufficient rationale exists; placement outside of home region may be considered; 2) if you are currently in a program that you need to complete, you will not be transferred until you complete the program; 3) you must be following your Correctional Plan; 4) you must not be scheduled for Parole review in the next nine months; 5) you must be free from Class I misconducts for two years and no more than one Class II misconduct in the past year; 6) you must have complied with Section V.C. (DNA Collection) and V.D. (Megan's Law Registration) if applicable; 7) you must have served two years in the facility."]

78. On September 8 2021, Plaintiff was paid $41.58 for the month of pay from the work program.

79. On or about October 4 2021, Unit Counselor Ms. Herr called Plaintiff into her office and advised him he had been approved for IBT and be prepared to be moved within the next one year.

*- Technical Assault & Battery, Negligence, Due Process -*

80. On or about October 6 2021, unbenounced to the Plaintiff, action taken within the electronic processing system to prepare Plaintiff for transfer, deleted all medical work restrictions, without written notice, without hearing, without the opportunity to present witnesses and evidence, without the right to confront opposing evidence, without a statement of the decision and without reason for the removal of classification.

81. On October 7 2021, Plaintiff was paid $46.20 for the month of pay from the work program.

82. On November 5 2021, Plaintiff was paid $44.10 for the month of pay from the work program.

83. On December 2 2021, Plaintiff was given job review form DC-48B and was promoted to Class III, Step "D" pay rate of $0.42/hr., by Sergeant Mazone.

84. On December 7 2021, Plaintiff was paid $39.90 for the month of pay from the work program.

85. On December 28 2021, Plaintiff was transported back to SCI-PHX to continue serving sentence.

*- Technical Assault & Battery, Negligence, Due Process -*

86. On December 28 2021, DC-485A Intra-System Medical Record Transfer Checklist - Sending Facility was processed by Jane Rieger at SCI-ALB and certified complete with missing medical restrictions.

Date Filed: 03/11/2026     Page: 45     Document: 35     Case: 25-2166

*- Technical Assault & Battery, Negligence, Due Process -*

87. On December 29 2021, DC-479 Intra-System Medical Record Transfer Reception Screening was processed by Regina Curby, LPN, at SCI-PHX and certified complete with missing medical restrictions.

88. On December 29 2021, Plaintiff spoke with Unit Counselor Jason Stimmel to confirm pay rate of $0.38/hr. was active and pay rate of $0.42/hr. was scheduled to begin on January 2 2022. Mr. Stimmel stated job assignment was listed as Incentive-Based Transfer General Labor Pool ("IBT-GLP") and the active pay rate was $0.38/hr., but no notes about $0.42/hr. pay rate becoming active after January 2 and Plaintiff would need to contact Inmate Employment who controls pay rates. [PADOC Policy DC-ADM816 Inmate Compensation Manual (1) General (U) Compensation when the Inmate is Transferred or Released (4) states: "An inmate who is granted an incentive based or CL2 reduction transfer shall keep his/her pay rate when transferred to another Department facility. The inmate does not have to be placed in the exact job assignment to keep his/her same rate, unless he/she was previously on a Community Work Project (CWP), and there are no openings on a CWP at that time of his/her job assignment. In this case, he/she will have the pay rate Class 3, Step D."].

89. On December 29 2022, Plaintiff wrote Inmate Employment on form DC-135A Inmate Request to Staff Member stating he was transferred from SCI-ALB where he was a block tutor and requested confirmation of pay rate and employment status. Plaintiff stated he was lite-duty work assignment and requested to be interviewed for block tutor job or in-class tutor if block tutor job was unavailable.

*- Technical Assault & Battery, Negligence, Due Process -*

90. On December 30 2022, DC-485A Intra-System Medical Record Transfer Checklist - Receiving Facility was processed by Teri Reid at SCI-PHX and certified complete with missing medical restrictions.

*- Deliberate Indifference, Due Process, Negligence, Failure to Accommodate, Failure to Protect -*

91. On January 6 2022, Plaintiff received a response from request to Inmate Employment by Melissa Delliponit stating: "All go on GLP until work assignment placement is made into work assignment. Write Education Principal to be considered for Block tutor."

92. On January 6 2022, Plaintiff wrote Education Principal Matthew Schwenk requesting block tutor or in-class tutor work assignment.

*- Technical Assault & Battery, Deliberate Indifference, Due Process, Negligence,*
*Failure to Accommodate, Failure to Protect, Equal Protection, Cruel & Unusual Punishment,*
*Intentional Infliction of Emotional Distress -*

93. On January 6 2022, Plaintiff received a green door tag "Notification of Work Assignment" issued by Melissa Delliponti stating Plaintiff was assigned to work in the Food Services department starting January 17th between the hours of 05:00 and 12:00 on days Thursday - Monday and "Per DC-ADM816 Inmate Compensation Policy Section 1, B. Eligibility and Compensation #6 A medically cleared inmate must accept any work/school Assignment regardless of the amount of compensation offered in return. No inmate has a right to be assigned or Continue in any specific work/school assignment."

*- Technical Assault & Battery, Deliberate Indifference, Due Process, Negligence,*
*Failure to Accommodate, Failure to Protect, Equal Protection,*
*Intentional Infliction of Emotional Distress -*

94. On or about January 6 2022, Plaintiff spoke with Unit Counselor Mr. Stimmel telling him he had a personal problem with the work program assignment he received from Inmate Employment and it's an emergency that required his assistance. Plaintiff explained the history of his disability and his severe work restrictions that were previously entered at SCI-ALB prior to his IBT. Plaintiff explained his inability to work in Food Services as the "Notification of Work Assignment" demanded. Mr. Stimmel asked Plaintiff: "what do you want ME to do?" Plaintiff requested Mr. Stimmel call or email Ms. Delliponti or someone else who could help resolve the issue with him being assigned to a heavy-duty

Date Filed: 03/11/2026    Page: 47    Document: 35    Case: 25-2166

**JA 44**

job in the work program. Mr. Stimmel said: "I'm not doing any of that, that's not my job. You can leave now." and requested Plaintiff to leave his office. [PADOC Handbook (II) Daily Operations (F) Resolution of Problems (2) states: "Your counselor is the first person to discuss treatment matters with. Your counselor can also help you with program changes, pre-parole matters and personal problems."] [PADOC Policy DC-ADM804 (I) Inmate Grievance System (2) states: "For emergency you should speak to the nearest staff person as soon as possible."]

95. On January 13 2022, Plaintiff wrote Inmate Employment on Form DC-135A Inmate Request to Staff Member Melissa Delliponti detailing the previous request about being a block tutor prior to IBT (Class III job assignment), demotion to Class I job assignment, lite-duty medical work restriction and inability to perform kitchen job duties.

96. On January 14 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #964348 complaining of Class III to Class I demotion and removal of lite-duty work restrictions, after speaking with the Unit Sergeant Mr. Garmin and Unit Corrections Officer Ms. Stubbs about the events with Mr. Stimmel and Ms. Delliponti, and they agreed Plaintiff had followed proper chain of command and PADOC policy and was his only recourse was via the grievance procedures.

*- Deliberate Indifference, Due Process, Negligence, Failure to Accommodate, Failure to Protect, Equal Protection, Cruel & Unusual Punishment -*

97. On January 17 2022, Plaintiff reported to Food Services work assignment and immediately spoke with Corrections Food Services Supervisor Robert Choate detailing his medical work restrictions, previous Block Tutor work assignment at SCI-ALB prior to IBT and Class III, Step "D" pay rate. Mr. Choate stated he would check the computer to confirm and get back to him later, but in the mean time to report to line #5 service area and follow the Instructor's orders. Plaintiff reported to Corrections Food Service Instructor Shanda Deshield and explained his lite-duty medical restrictions and Ms. Deshield stated she would look into it.

*- Technical Assault & Battery, Deliberate Indifference, Due Process, Negligence,*
*Failure to Accommodate, Failure to Protect, Equal Protection, Cruel & Unusual Punishment,*
*Intentional Infliction of Emotional Distress -*

98. On January 18 2022, Plaintiff spoke with Unit Manager Lisa Durant explaining his disability, medical lite-duty work restrictions prior to IBT, recent heavy-duty work program assignment, and conversation with Mr. Stimmel who said it's not his job and asked him to leave his office. Plaintiff requested Ms. Durant call or email Ms. Delliponti or someone else who could help resolve the issue with him being assigned to a heavy-duty job in the work program and Ms. Durant said there's nothing she can do and he must report to work daily or lose all pay and be issued a misconduct, which may include loss of IBT, transfer back to SCI-ALB and parole consequences.

99. On January 18 2022, Plaintiff filed a Medical Sick Call Request complaining of heavy-duty work assignment and medical restrictions detailing lite-duty work at previous facility SCI-ALB.

*- Deliberate Indifference, Due Process, Negligence, Failure to Accommodate, Failure to Protect,*
*Equal Protection, Cruel & Unusual Punishment -*

100. On January 20 2022, Plaintiff received a response from request to Inmate Employment Melissa Delliponti stating: "Per Policy you can be placed in any job regardless of pay offered. If you refuse you are placed without pay and lose your pay rate. If Educ. hires you you will change jobs."

101. On January 22 2022, Plaintiff received Reject Form from Facility Grievance Coordinator Ms. Orlando stating Grievance #964348 was rejected with rationale: "grievance based upon different events must be presented seperately."

102. On January 24 2022, Plaintiff revised language of Grievance #964348 to comply with policy and resubmitted to Facility Grievance Coordinator Ms. Orlando.

103. On January 24 2022, Plaintiff filed a Medical Sick Call Request complaining of heavy-duty work assignment and medical restrictions detailing lite-duty work at previous facility SCI-ALB.

Case: 25-2166    Document: 35    Page: 50    Date Filed: 03/11/2026

*- Technical Assault & Battery, Deliberate Indifference, Due Process, Negligence,*
*Malpractice, Failure to Accommodate, Failure to Protect, Equal Protection,*
*Failure to Treat, Failure to Diagnose, Failure to Test,*
*Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

104. On January 25 2022, Plaintiff was sent to medical to see Ms. Tara Jackson. Plaintiff sat in the seat provided in the corner of examination room #1 and waited for Ms. Jackson to finish the paperwork she was working on. Ms. Jackson asked Plaintiff why he was sitting so close to her and staring at her. Plaintiff backed the chair up and looked somewhere else why Ms. Jackson finished her paperwork. When Ms. Jackson was finished writing, Plaintiff explained the history of his disability, IBT from SCI-ALB, previous work restrictions, and recent assignment to a heavy-duty job in the work program. Ms. Jackson stated there is no documentation of any disability in her system and Plaintiff needs to contact SCI-ALB to have medical file transferred. Ms. Jackson stated: "I'm not a records specialist and I can't help you." Plaintiff asked Ms. Jackson to provide a new assessment, take new notes and offered to show Ms. Jackson his scar as evidence of spinal surgery and gave Ms. Jackson  the name of his surgeon. Ms. Jackson refused to perform any examination or attempt to find previous assessment documented in SAPPHIRE. Ms. Jackson stated: "I don't have time for all that" and asked Plaintiff "why are you wasting my time?" Plaintiff apologized and left to go back to his housing unit.

*- Due Process, Negligence, Failure to Protect, Equal Protection -*

105. On January 26 2022, Plaintiff received notice from Facility Grievance Officer Ms. Orlando approving revised Grievance #964348 for submission and assigned the grievance to Melissa Delliponti, the staff directly involved, violating PADOC policy. [PADOC Policy DC-ADM804 Grievances & Initial Review (1) Initial Review (3) states: "If the Facility Grievance Coordinator/designee determines that the grievance is properly submitted according to this procedures manual, the Facility Grievance Coordinator/designee will designate a staff member to serve as the Grievance Officer for that grievance. The staff member who serves as the Grievance Officer shall not be directly involved in or named as the subject of the grievance in Section A and/or B of the DC-804, Part 1."]

**JA 47**

Date Filed: 03/11/2026    Page: 51    Document: 35    Case: 25-2166

*- Due Process, Unreasonable Seizure, Financial Exploitation, Misapplication of Entrusted Property -*

106. On January 27 2022, Plaintiff was paid $8.64 for the month of work program.

107. On January 27 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #966040 complaining of work program pay rate of $0.14/hr. instead of $0.42/hr.

108. On January 27 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #966041 complaining of work program pay rate of $0.38/hr. instead of $0.42/hr.

109. On January 27 2022, Plaintiff wrote Psychology on Form DC-135A Inmate Request to Staff to Kelly Sheeran asking if he could talk to someone from psychology as he was feeling overwhelmed.

110. On January 27 2022, Plaintiff wrote Deputy Mandy Biser-Sipple on Form DC-135A Inmate Request to Staff requesting help transferring medical restrictions and assignment of heavy-duty work, demotion of work class and pay class.

111. On January 31 2022, Plaintiff received Initial Response from Melissa Delliponti for Grievance # 964348 stating the PADOC CAPTOR system does not show restrictions, quotes DC-ADM813(1)(U) (4) and marked the grievance as frivolous.

*- Technical Assault & Battery, Deliberate Indifference, Due Process, Negligence, Malpractice, Failure to Accommodate, Failure to Protect, Equal Protection, Timely Access to Medical, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

112. On February 2 2022, Plaintiff filed a Medical Sick Call Request complaining of heavy-duty work assignment and medical restrictions detailing lite-duty work at previous facility SCI-ALB.

113. On February 2 2022, Plaintiff received Reject Form from Facility Grievance Coordinator Ms. Orlando stating Grievance #966040 was rejected with rationale: "grievance not submitted within fifteen (15) working days after the events upon which claims are based."

114. On February 2 2022, Plaintiff received Reject Form Form from Facility Grievance Coordinator Ms. Orlando stating Grievance #966041 was rejected with rationale: "grievance not submitted within fifteen (15) working days after the events upon which claims are based."

115. On February 3 2022, Plaintiff revised language of Grievance #966040 to comply with policy and resubmitted to Facility Grievance Coordinator Ms. Orlando.

116. On February 3 2022, Plaintiff revised language of Grievance #966041 to comply with policy and resubmitted to Facility Grievance Coordinator Ms. Orlando.

117. On February 3 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #966445 complaining of pay raise not being applied to rate after IBT.

118. On February 3 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #966446 complaining of missing medical restrictions after IBT.

*- Assault & Battery, Deliberate Indifference, Due Process, Equal Protection, Negligence,*
*Failure to Accommodate, Failure to Protect, Cruel & Unusual Punishment,*
*Intentional Infliction of Emotional Distress -*

119. On February 4 2022, at approximately 0815 hours, Corrections Food Service Instructor Shanda Deshield ordered Plaintiff to carry and process large amounts of trays in the food tray washing and disposal area. Plaintiff explained he is unable to carry large amounts of anything due to his disability and he is unable to stabilize himself in a high-risk work environment. Ms. Deshield said her supervisor told her there are no lite-duty workers on her line and not performing the tasks she requested would constitute disobeying a direct order. Plaintiff asked Ms. Deshield to investigate the issue because his disability has been documented in the system since January 2019. Ms. Deshield told Plaintiff to follow her to talk to Corrections Food Services Supervisor Robert Poli. Ms. Deshield told Mr. Poli that Plaintiff was refusing her direct order claiming he had a disability. Mr. Poli said he didn't have time to check the CAPTOR system right now or talk about it and he would look into it when he had time and walked away. Ms. Deshield gave Plaintiff back his ID card and told him go back to the housing unit.

Date Filed: 03/11/2026    Page: 52    Document: 35    Case: 25-2166

120. On February 4 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #967268 complaining Ms. Deshield ordered him to do heavy-duty work outside the scope of his physical abilities and was sent back to the housing unit when he explained to her he was lite-duty and unable to perform heavy-duty work she was requesting.

*- Due Process, Equal Protection, Financial Exploitation, Misapplication of Entrusted Property -*

121. On February 4 2022, Plaintiff received notice from Facility Grievance Coordinator Ms. Orlando approving revised Grievance #966040 for submission and assigned the grievance to Melissa Delliponti, the staff directly involved, violating PADOC poliy.

*- Due Process, Equal Protection, Financial Exploitation, Misapplication of Entrusted Property -*

122. On February 4 2022, Plaintiff received notice from Facility Grievance Coordinator Ms. Orlando approving revised Grievance #966041 for submission and assigned the grievance to Melissa Delliponti, the staff directly involved, violating PADOC poliy.

123. On February 4 2022, Plaintiff received Reject Form Form from Facility Grievance Coordinator Ms. Orlando stating Grievance #966445 was rejected with rationale: "grievance disputes previous grievances, appeal decisions, or staff members who rendered those decisions."

124. On February 4 2022, Plaintiff received Reject Form Form from Facility Grievance Coordinator Ms. Orlando stating Grievance #966446 was rejected with rationale: "grievance not submitted within fifteen (15) working days after the events upon which claims are based."

125. On February 5 2022, Plaintiff received notice from Facility Grievance Coordinator Ms. Orlando approving revised Grievance #967268 for submission and assigned the grievance to Brian Kline.

**JA 50**

*- Assault & Battery, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Failure to Protect, Neglect of Care-Dependent Person, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

126. On February 7 2022, Plaintiff filed First-Level Appeal of Grievance #964348 to Facility Manager Jaime Sorber complaining of demoted job class, loss of lite-duty job restrictions, stating his health and safety are in jeopardy and is unable to perform tasks, requests his office contact SCI-ALB to address averments, information omitted from CAPTOR and mailed a copy of the First-Level Appeal to SCI-ALB Facility Manager Michael R. Clark.

*- Assault & Battery, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Failure to Protect, Neglect of Care-Dependent Person, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

127. On February 7 2022, Plaintiff wrote Mandy Biser-Sipple on Form DC-135A Inmate Request to Staff Member stating he needed assistance with getting medical restrictions transferred from SCI-ALB medical system, that he had submitted multiple sick calls, two requests to her and staff stated she is the only one who can help. Plaintiff made 3 copies, dropped one in the internal mailbox and had one places in Ms. Deshield's mailbox and one places in Mr. Poli's mailbox in the Food Service manager's office.

*- Technical Assault & Battery, Failure to Protect, Equal Protection, Negligence, Neglect of Care-Dependent Person, Failure to Accommodate, Intentional Infliction of Emotional Distress -*

128. On February 8 2022, Plaintiff filed a Medical Sick Call Request complaining of heavy-duty work assignment and medical restrictions detailing lite-duty work at previous facility SCI-ALB.

*- Assault & Battery, Deliberate Indifference, Equal Protection, Failure to Accommodate, Failure to Protect, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

129. On February 8 2022, Plaintiff went to Unit Manager Leandra Strenkoski's office to explain the events of February 4, explain heavy-duty work assignment, lost medical restrictions detailing lite-duty

work assignment, multiple sick calls not getting any resolution, Ms. Jackson's refusal to help, Mr. Stimmel's refusal to help and Ms. Biser-Sipple's refusal to respond. Plaintiff requested she call or email Ms. Delliponti or Ms. Biser-Sipple to help resolve the issue. Ms. Strenkoski said there's nothing she can do, Plaintiff must continue to report to work or lose all pay and be issued a misconduct, which may include loss of IBT, transfer back to SCI-ALB and possible parole consequences.

*- Technical Assault & Battery, Failure to Protect, Equal Protection, Negligence, Neglect of Care-Dependent Person, Failure to Accommodate, Intentional Infliction of Emotional Distress -*

130. On February 14 2022, Plaintiff filed a Medical Sick Call Request complaining of heavy-duty work assignment and medical restrictions detailing lite-duty work at previous facility SCI-ALB.

*- Assault & Battery, Deliberate Indifference, Equal Protection, Failure to Accommodate, Negligence, Malpractice, Neglect of Care-Dependent Person, Failure to Protect, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

131. On February 15 2022, Plaintiff was sent to medical to see Ms. Tara Jackson. Plaintiff told Ms. Jackson about lite-duty medical restrictions prior to transfer to SCI-PHX, history of disability and the heavy-duty work assignment he was currently being forced to report to because Food Services stated there are no work restrictions showing in the CAPTOR system. Ms. Jackson asked Plaintiff "why do you keep harassing me about this? I told you before, I'm not a records specialist, I can't help you!" Ms. Tara went on ranting about how she don't know how to get lite-duty and bottom bunk status in CAPTOR, she uses a system called SAPPHIRE. Plaintiff left and thanked her for her time.

*- Technical Assault & Battery, Failure to Protect, Equal Protection, Negligence, Neglect of Care-Dependent Person, Failure to Accommodate, Intentional Infliction of Emotional Distress -*

132. On February 16 2022, Plaintiff filed a Medical Sick Call Request complaining of heavy-duty work assignment and medical restrictions detailing lite-duty work at previous facility SCI-ALB.

**JA 52**

*- Assault & Battery, Deliberate Indifference, Equal Protection, Failure to Accommodate, Negligence,*
*Neglect of Care-Dependent Person, Failure to Protect, Cruel & Unusual Punishment,*
*Timely Access to Medical, Intentional Infliction of Emotional Distress -*

133. On February 18 2022, at approximately 0715, Plaintiff was ordered by Ms. Deshield to unload stacks of trays from the tray cart into line #5 work area. While carrying a stack of trays, Plaintiff felt a pop in his back and dropped the stack of trays he was carrying as the pain radiated through his arms, shoulders and shooting down his sciatic nerve. Plaintiff grabbed his back and went to the side counter holding his back and screaming in pain. Ms. Deshield entered the line #5 work area and told Plaintiff to go back to the washing and disposal area to process the loads of trays. Plaintiff told Ms. Deshield that he was injured, in severe pain and in need of immediate emergency medical attention. Ms. Deshield stated she wasn't going to send him to medical and instead she was sending him back to the housing unit. Plaintiff again requested he be sent to medical for emergency attention for his injury to his spine. Ms. Deshield gave Plaintiff his ID card and told him report back to the housing unit. Plaintiff returned to the housing unit as ordered and immediately told Corrections Officer Ms. Grennon that he was injured at work and needed immediate medical attention and requested to go to the medical department. Ms. Grennon told Plaintiff to lock-in to his cell. Plaintiff locked-in to his cell as ordered and Ms. Grennon announced on the cell intercom that he needs to file a sick call to be seen by the medical department. Plaintiff told Ms. Grennon it was an emergency and needed immediate medical attention that couldn't wait till Wednesday (5 days) to be seen by medical. Ms. Grennon said there's nothing she can do, it doesn't look like an emergency to her and Plaintiff needed to file a sick call. When "block out" was offered at 13:00 hours, Plaintiff went to see Unit Manager Ms. Strenkoski. Plaintiff explained he was injured at work, in severe pain and Food Services Instructor Ms. Deshield sent him back to the block when requesting medical attention and Corrections Officer Ms. Grennon refused to send him to the medical department and told him to file a sick call. Ms. Strenkoski said she would see if there's something she can do to help. Plaintiff left and after not hearing back from Ms. Strenkoski at 13:45 hours again returned to Ms. Strenkoski's office requesting emergency medical attention. Ms. Strenkoski stated there's nothing she can do and Plaintiff was to file a sick call.

134. On February 18 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #968790 complaining of Ms. Jackson's inability to enter or transfer missing medical restrictions.

Case: 25-2166    Document: 35    Page: 56    Date Filed: 03/11/2026

**JA 53**

Date Filed: 03/11/2026    Page: 57    Document: 35    Case: 25-2166

*- Deliberate Indifference, Failure to Protect, Equal Protection, Due Process, Failure to Accommodate,*
*Cruel & Unusual Punishment, Timely Access to Medical, Negligence,*
*Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

135. On February 18 2022, Plaintiff wrote Corrections Health Care Administrator Britney Huner on Form DC-135 Inmate Request to Staff requesting assistance, outlining the previous events of the day, the injury at work and the refusals of staff to implement emergency medical proceedures.

*- Deliberate Indifference, Failure to Protect, Equal Protection, Due Process, Failure to Accommodate,*
*Cruel & Unusual Punishment, Timely Access to Mental Health Program, Negligence,*
*Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

136. On February 18 2022, Plaintiff wrote Kelly Sheeran on Form DC-135 Inmate Request to Staff stating inability to get anything done and feeling overwhelmed.

137. On February 18 2022, Plaintiff filed a Medical Sick Call Request complaining of work injury, severe pain and refusal of staff to implement emergency medical procedures.

138. On February 18 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #968960 complaining of Ms. Deshield's refusal to send Plaintiff to see medical and treating him with reckless disregard, gross negligence, intentional indifference and conscious disregard.

*- Due Process, Unreasonable Seizure, Financial Exploitation, Misapplication of Entrusted Property -*

139. On February 18 2022, Plaintiff was paid $53.20 for the month of work program.

140. On February 22 2022, Plaintiff received an Initial Response from Melissa Delliponti for Grievance #966040 stating DOCNET lists Class III, Step "C" at SCI-ALB, Mr. Stimmel must have provided him with the wrong information and she cannot comment on that. Quotes PADOC Policy DC-ADM816(1)(U)(4).

**JA 54**

Date Filed: 03/11/2026    Page: 58    Document: 35    Case: 25-2166

141. On February 22 2022, Plaintiff received an Initial Response from Melissa Delliponti for Grievance #966041 stating DOCNET lists Class III, Step "C" at SCI-ALB, Mr. Stimmel must have provided him with the wrong information and she cannot comment on that. Quotes PADOC Policy DC-ADM816(1)(U)(4).

142. On February 22 2022, Plaintiff received notification from Facility Grievance Coordinator Ms. Orlando approving Grievance #968790 for submission and assigned the grievance to Monique Savage.

143. On February 23 2022, Plaintiff received Reject Form from Facility Grievance Coordinator Ms. Orlando stating "Grievances based upon different events must be presented separately."

*- Deliberate Indifference, Failure to Protect, Equal Protection, Failure to Accommodate, Cruel & Unusual Punishment, Timely Access to Medical, Negligence, Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

144. On February 23 2022, 5 days after being injured at work, Plaintiff was sent to medical to be seen by Ms. Ayse Nermin Safak-Tezcan who examined Plaintiff, took notes during assessment and prescribed 600mg Motrin three times a day, bottom bunk status for 6 months and 3 weeks no work.

145. On February 23 2022, Plaintiff wrote the Pennsylvania Prison Society, 230 S. Broad St, Suite 605, Philadelphia, PA 19102 detailing abuses by prison and medical personnel and requesting assistance.

*- Deliberate Indifference, Failure to Protect, Equal Protection, Failure to Accommodate, Negligence, Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

146. On February 23 2022, Plaintiff wrote Dr. Anthony Matteo on Form DC-135A Inmate Request to Staff Member requesting to be seen by psychology and highlighting no reply from unit psychologist.

146-A. On February 23 2022, Plaintiff revised the language of Grievance #968960 to comply with policy and resubmitted to Facility Grievance Coordinator Ms. Orlando.

Date Filed: 03/11/2026    Page: 59    Document: 35    Case: 25-2166

147. On February 25 2022, Plaintiff received a white door tag "Notification of Work Assignment Release" issued by Melissa Delliponti, stating Plaintiff was released from Food Services.

148. On February 25 2022, Plaintiff filed First-Level Appeal of Grievance #966040 to Facility Manager Jaime Sorber complaining of being demoted to Class III, Step "C" since IBT.

149. On February 25 2022, Plaintiff filed First-Level Appeal of Grievance #966041 to Facility Manager Jaime Sorber complaining of being demoted to Class III, Step "C" since IBT.

*- Deliberate Indifference, Failure to Protect, Equal Protection, Failure to Accommodate,
Negligence, Cruel & Unusual Punishment, Timely Access to Medical,
Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

150. On February 28 2022, Plaintiff received reply from From DC-135A Inmate Request to Staff Member Britney Huner with response: "Please see sick call physician - for evaluation. *No work/medically unemployed 2/23/22-3/16/22," signed by Monique Savage, ARNS.

*- Deliberate Indifference, Failure to Protect, Equal Protection, Failure to Accommodate,
Unreasonable Seizure, Financial Exploitation, Misapplication of Entrusted Property,
Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

151. On March 2 2022, Plaintiff received Facility Manager's Response to Grievance #964348 stating Inmate Employment is following policy and medical restrictions were added February 15 2022.

*- Deliberate Indifference, Failure to Protect, Equal Protection, Failure to Accommodate,
Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

152. On March 3 2022, Plaintiff received an Initial Response from Brian Kline for Grievance #967268 stating restrictions expired on 10/6/2021, more restrictions added since 2/15/22. No restrictions 2/4/22.

153. On March 3 2022, Plaintiff received notification from Facility Grievance Coordinator Ms. Orlando approving Grievance #968960 for submission and assigned the grievance to Brian Kline.

Case: 25-2166    Document: 35    Page: 60    Date Filed: 03/11/2026

*- Assault & Battery, Deliberate Indifference, Failure to Accommodate, Negligence, Malpractice, Neglect of Care-Dependent Person, Failure to Treat, Failure to Diagnose, Failure to Test, Failure to Medicate, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

154. On March 3 2022, 13 days after being injured at work, Plaintiff was sent to medical to be seen by Dr. Carol Annino, MD. Plaintiff explained his work injury on February 18, was examined and prescribed medicine on February 23 by Ms. Ayse Nermin Safak-Tezcan but was never issued any medication. Dr. Annino told Plaintiff he can buy Motrin on commissary and to stop wasting her time. Plaintiff explained he was in severe pain that was getting worse, he couldn't sleep and he can only order one bottle of 50 pills that are 200mg each that only last for 5.5 days and it takes 10 days to get the order from commissary and he had already been through two bottles, had ordered more and they weren't helping. Plaintiff requested to have an xray or ultrasound or CAT scan or MRI or some other diagnostic test done as he has degenerative disc disease and a documented history of spine and nerve damage. Dr. Annino said there's nothing else she can do and said the Plaintiff can leave now. Plaintiff thanked her and left.

155. On March 6 2022, Plaintiff wrote Melissa Delliponti on Form DC-135A Inmate Request to Staff Member thanking her for her reply to Grievance #964348 and stating she had informed Plaintiff he was at pay rate $0.42/hr., although for pay period 12/28/2021-01/17/2022 was paid $0.38/hr. for IBT-GLP and for pay period 01/17/2022-02/17/2022 was paid $0.38/hr. for work in Food Services.

156. On March 6 2022, Plaintiff filed Final Appeal Grievance #964348 to Central Office Chief Grievance Coordinator Darina Varner complaining of medical file not forwarded to SCI-PHX, medical restrictions deleted from the system, demoted pay rate Class III, Step "C" and injured at work.

*- Due Process, Unreasonable Seizure, Financial Explotation of a Care-Dependent Person, Misapplication of Entrusted Property, Embezzlement -*

157. On March 7 2022, Plaintiff filed First-Level Appeal Grievance #967268 to Facility Manager Jaime Sorber complaining of medical restrictions not implemented on IBT, not seen within 14 days of transfer for medical intake examination, no accommodations for disability, no medical record

**JA 57**

maintenance, highlighting it's the Department's responsibility to maintain medical records accurately and being injured at work.

158. On March 8 2022, Plaintiff received an Initial Response to Grievance #968790 from Monique Savage stating restrictions were added by Ms. Tara Jackson on 2/15/2022.

159. On March 8 2022, Plaintiff filed a Medical Sick Call Request complaining about missing medical restrictions detailing lite-duty work assignment at previous facility.

*- Technical Assault & Battery, Deliberate Indifference, Failure to Protect, Equal Protection,*
*Due Process, Failure to Accommodate, Negligence, Malpractice,*
*Neglect of Care-Dependent Person, Failure to Treat, Failure to Diagnose, Failure to Test,*
*Failure to Medicate, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

160. On March 9 2022, 19 days after being injured at work, Plaintiff was sent to medical to be seen by Ms. Tara Jackson. Ms. Jackson stated there's no notes in the system about restrictions expiring on October 6 2021, no notes in the system about Plaintiff having any surgery or spine issues, no lite-duty work restrictions and she doesn't know how to enter any lite-duty work restrictions in the system. She said she just entered some specific notes about physical labor and her restrictions are partial lite-duty that Inmate Employment can look into the computer to see work restrictions and her work restrictions don't expire. Plaintiff stated he was in severe pain and asked about the medication ordered on February 23 that was never issued and asked if we can run some tests to see what was causing all this pain in his spine and running down his leg and she said she doesn't see any medications prescribed, she's not prescribing anything and she's not running any tests. Plaintiff was taking notes on her words and she grabbed her pen and scribbled out a one of Plaintiff's notes and told him not to write that.

161. On March 11 2022, Plaintiff filed a Medical Sick Call Request for medical mattress license.

162. On March 11 2022, Plaintiff filed First-Level Appeal Grievance #968790 to Facility Manager Jaime Sorber complaining of medical restrictions not implemented on IBT, not seen within 14 days of transfer for medical intake examination, no accommodations for disability, no medical record

maintenance, highlighting it's the Department's responsibility to maintain medical records accurately and previous note in SAPPHIRE stating "NOT MEDICALLY CLEARED FOR FOOD SERVICES."

163. On March 14 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Melissa Delliponti with response: ".38 was the previous pay rate you had at ALB."

164. On March 14 2022, 21 days after being injured at work, Plaintiff was sent to medical to be seen by Ms. Corina Campos, CRNP. Plaintiff told Ms. Campos about his severe pain, lack of medical attention, lack of medication, history of spine injury and degenerative disc disease, injury at work on February 8, no diagnostic tests performed, continuing muscle spasms, and prescribed medicine on February 23 but never issued. Plaintiff explained his suffering and sleep deprivation and requested a medical mattress, diagnostic tests and anything else she could help provide to ease the pain and discomfort. Ms. Campos stated she would help in any way she could, but she was not familiar with a medical mattress license, but would look into it and prescribe it if she could figure out how that works. Ms. Campos said she would fix the 600 mg Motrin prescription and add 10mg Baclofen for 10 days to relax spasms.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person,*
*Misapplication of Entrusted Property, Embezzlement -*

165. On March 23 2022, Plaintiff received Facility Manager's Response to Grievance #966040 stating response previously provided was appropriate and there's no evidence of a demotion.

166. On March 23 2022, Plaintiff received Facility Manager's Response to Grievance #966041 stating response previously provided was appropriate and there's no evidence of a demotion.

*- Technical Assault & Battery, Deliberate Indifference, Failure to Protect, Equal Protection*
*Due Process, Failure to Accommodate, Neglect of a Care-Dependent Person,*
*Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

167. On March 23 2022, Plaintiff received Facility Manager's Response to Grievance #967268 stating response previously provided was appropriate and medical restrictions expired.

Date Filed: 03/11/2026    Page: 63    Document: 35    Case: 25-2166

168. On or about March 24, 2022, Plaintiff filed Final Appeal Grievance #966040 to Central Office Chief Grievance Coordinator Darina Varner complaining of being paid $0.14/hr. and not $0.42/hr.

169. On or about March 24, 2022, Plaintiff filed Final Appeal Grievance #966041 to Central Office Chief Grievance Coordinator Darina Varner complaining of being paid $0.38/hr. and not $0.42/hr.

*- Deliberate Indifference, Failure to Protect, Equal Protection,*
*Due Process, Failure to Accommodate, Neglect of Care-Dependent Person,*
*Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

170. On March 28 2022, Plaintiff received an Initial Response to Grievance #968960 from Brian Kline stating Plaintiff was removed from employment in the kitchen and grievance is resolved.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person,*
*Misapplication of Entrusted Property, Embezzlement -*

171. On March 28 2022, Plaintiff was paid $9.66 for the month of work program.

172. On March 28 2022, Plaintiff wrote Melissa Delliponti on Form DC-135A Inmate Request to Staff Member requesting a breakdown of the basis for being paid $9.65 for the month of February.

173. On or about March 28, 2022, Plaintiff received reply from Prison Society stating to reply if he would like to speak with a volunteer. Plaintiff immediate replied stating he would.

174. On March 29, 2022, Plaintiff filed Final Appeal Grievance #967268 to Central Office Chief Grievance Coordinator Darina Varner complaining of medical restrictions not implemented on IBT, not seen within 14 days of transfer for medical intake examination, no accommodations for disability, no medical record maintenance, highlighting it's the Department's responsibility to maintain medical records accurately and previous note in SAPPHIRE stating "NOT MEDICALLY CLEARED FOR FOOD SERVICES."

*- Due Process, Unreasonable Seizure, Embezzlement in Connection with Health Care,*
*Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property -*

175. On March 29, 2022, Plaintiff noticed $10.00 was taken out of his account upon logging into the kiosk to check his trust account balance. Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #973843 complaining of $10.00 charge for injurt sustained at work in Food Services and no notice of any charges at the time of service and no signature authorizing charges. [PADOC Policy DC-ADM820(1)(C) states" At the time of service, medical staff will inform you whether a fee will be charged for the medical service..."] [PADOC Policy DC-ADM820(1)(D) states: "If a fee is to be charged for the medical service, you will be required to sign an authorization form which describes the medical service provided, the amount that will be taken from your inmate account, and authorizes the Department to take the funds. The DC-138A, Cash Slip, will be used for this purpose."] [PADOC Policy DC-ADM820(1)(B) Medical Services Resulting in Non-Charge (12) states: "medical services provided to an inmate during a medical emergency..." (13) states: "medical services provided as a result of an injury or illness arising from an inmate's facility work assignment."]

176. On March 29, 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #973840 complaing of pay for "No Work/Medical" medical lay-in after being injured on 02/18/22. Pay does not match Class III, Step "D" pay of $0.42/hr. x 140 hours work as PADOC Policy DC-ADM 816(F)(1) states inmate to continue at pay rate prior to the day of injury.

177. On March 30 2022, Plaintiff received Facility Manager's Response to Grievance #968790 stating response previously provided was appropriate and medical restrictions expired.

178. On March 30 2022, Plaintiff received notification from Facility Grievance Coordinator Ms. Orlando approving Grievance #973840 for submission and assigned the grievance to Melissa Delliponti, the staff directly involved, violating PADOC policy.

179. On March 30 2022, Plaintiff received notification from Facility Grievance Coordinator Ms. Orlando approving Grievance #973843 for submission and assigned to Mandy Biser-Sipple.

Case: 25-2166    Document: 35    Page: 64    Date Filed: 03/11/2026

**JA 61**

180. On April 3 2022, Plaintiff filed First-Leval Appeal Grievance #968960 to Facility Manager Jaime Sorber complaining of medical restrictions not properly transferred from SCI-ALB, not seen for medical intake screening within 14 days of transfer per PADOC Policy DC-ADM006(A)(1) and placed in Food Services to perform heavy-duty work where he was injured and placed on medical lay-in pay at reduced earnings in violation of PADOC Policy DC-ADM816(F)(1) and Food Services Supervisor's failed to provide injury report referencing the medical department's examination and being charged by medical for injury at work.

181. On April 4 2022, Plaintiff wrote Kelly Sheeran on Form DC-135A Inmate Request to Staff Member requesting to talk to someone, feeling overwhelmed, noting it was the 3rd unanswered request to psychology.

182. On April 5 2022, Plaintiff filed Final Appeal Grievance #968790 to Central Office Chief Grievance Coordinator Darina Varner complaining of medical restrictions not properly transferred to SCI-PHX, not getting assistance needed at medical to transfer pre-existing medical restrictions, not seen for medical intake screening within 14 days of transfer per PADOC Policy DC-ADM006(A) (1)&(2), noting PADOC Policy 13.2.1 Section 17 states it's the Department's repsonsibility to maintain records and previous note in SAPPHIRE stating "NOT MEDICALLY CLEARED FOR FOOD SERVICES."

183. On April 6 2022, Plaintiff was called into the Sergeant's office to meet in private with Susan Nardella and Talia Drummond. Plaintiff explained deleted medical restrictions upon IBT, being partially disabled and placed in Food Services, getting injured on the job, not getting assitance from Unit Counselor or Unit Managers, not getting assistance from psychology, not being able to sleep, not being able to concentrate, not being able to think, not being able to control emotional wellbeing and requested entry into psychology treatment programs. Plaintiff went on to explain the various psychology treatment programs he was involved in at his previously facility SCI-ALB. Ms. Nardella and Ms. Drummond apologized for the delay due to overload of cases and stated they would make referrals to the psychiatry, medical program, work program and education program. Ms. Nardella and Ms. Drummond stated there are no psychology treatment programs available for Plaintiff.

Case: 25-2166    Document: 35    Page: 65    Date Filed: 03/11/2026

184. On April 6 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Melissa Delliponti with response: "$2.16 Medical Rest removed 3/16-3/20/2022, $7.50 Medical GLP 15 days @ .50/day 2/21/2022-3/15/2022."

*- Deliberate Indifference, Due Process, Failure to Accommodate, Failure to Train, Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Neglect of Care-Dependent Person, Intentional Infliction of Emotional Distress, Embezzlement -*

185. On April 18 2022, Plaintiff received Initial Response Grievance #973840 from Melissa Delliponti stating CAPTOR does not state injured job related, listed as No Work Medically not cleared - no report received. The medical department must complete Medical Lay-in Report (attachment 1-F) per PADOC Policy DC-ADM816(1)(O)(2) and has not done that in this case.

186. On or about April 20 2022, Plaintiff received reply from Pennsylvania Prison Society stating a volunteer in the area would be in touch to discuss issues at SCI-PHX.

*- Deliberate Indifference, Failure to Accommodate, Due Process, Neglect of Care-Dependent Person, Intentional Infliction of Emotional Distress -*

187. On April 21 2022, Plaintiff received Facility Manager's Response to Grievance #968960 stating response by Mr. Kline is accurate, removed from employment in kitchen 2/22/2022. Nobody knew you had gone to medical to request restrictions. Swas not aware he went to medical.

*- Deliberate Indifference, Due Process, Failure to Accommodate, Failure to Train, Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Neglect of Care-Dependent Person, Embezzlement in Connection with Health Care, Intentional Infliction of Emotional Distress -*

188. On April 21 2022, Plaintiff received Initial Response Grievance #973843 from Mandy Biser-Sipple stating Plaintiff should have been $15.00 and he needs to contact staff since no injury report.

Date Filed: 03/11/2026    Page: 66    Document: 35    Case: 25-2166

**JA 63**

189. On April 24 2022, Plaintiff filed First-Level Appeal Grievance #973840 to Facility Manager Jaime Sorber complaining of pay rate reduced from $0.42/hr. to $0.50/day for 15 days Medical Lay-in after being paid injured in Food Services, supervisors failed to file injury report and reference medical department examination.

*- Deliberate Indifference, Failure to Accommodate, Due Process,*
*Neglect of Care-Dependent Person, Intentional Infliction of Emotional Distress -*

190. On April 25 2022, Plaintiff received Final Appeal Decision Grievance #964348 from Darina Varner, signed by Keri Moore stating responses thoroughly and accurately addressed concerns.

191. On April 26 2022, Plaintiff was paid $16.56 for the month of work program.

192. On April 28 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Mandy Biser-Sipple with response: "Restrictions were updated 2/15/22," signed by Britney Huner.

193. On or about April 28 2022, Plaintiff received Notification of Teleconference Call from J. Sokolski notifying Plaintiff of May 11 2022 conference call at 11:00AM with P. Gutierrez from the Pennsylvania Prison Society.

194. On May 1 2022, Plaintiff filed Final Appeal Grievance #968960 to Central Office Chief Grievance Coordinator Darina Varner complaining of kitchen supervisors treating with reckless disregard/intentional indifference, conscious disregard to medical restricions and disability, seen by medical 7 times in 4 weeks, deleted medical restrictions on IBT approval date, not seen within 14 days of transfer for medical intake screening as per PADOC Policy DC-ADM006(A)(1) and listed at least 13 facility personnel who were notified of his disability and inability to perform heavy-duty work assignment prior to being injured at work. [No final decision to this grievance has been issued at the time of this writing and deemed denied since beyond policy timeframe for decision.]

195. On May 1 2022, Plaintiff filed First-Level Appeal Grievance #973843 to Facility Manager Jaime Sorber complaining of being charged erroneously for medical attention due to work place injury, not

Case: 25-2166     Document: 35     Page: 67     Date Filed: 03/11/2026

notified of fees, seen by medical for a medical license that was not issued and prescribed medication that was not issued.

196. On May 1 2022, Plaintiff wrote Melissa Delliponti on Form DC-135A Inmate Request to Staff Member requesting explaination of $5.00 pay for the month of work program of March and how much longer this reduced rate was scheduled to last.

197. On May 1 2022, Plaintiff filed Form DC-801 Part 1 Official Inmate Grievance #979106 complaining of pay rate of $0.72/day not $0.38/hr. per IBT policy, over 6 pay periods only 1 is near-accurate pay, requesting pay differential and stating Title 28 and 42 U.S.C. discrimination.

198. On May 6 2022, Plaintiff recieved Reject Form Grievance #979106 from Facility Grievance Coordinator Ms. Orlando stating: "The issue(s) presented on the attached grievance has been reviewed or is currently being reviewed and addressed. Prior 966041."

199. On May 7 2022, Plaintiff wrote and explanation of the difference for Grievance #979106 and resubmitted to Facility Grievance Coordinator Ms. Orlando.

200. On May 11 2022, Plaintiff received notification from Facility Grievance Coordinator Ms. Orlando approving Grievance #979106 for submission and assigned the grievance to John Muick.

201. On May 11 2022, Plaintiff had a teleconference with P. Gutierrez from the Pennsylvania Prison Society and outlined the issue of deleted medical restrictions, forced to report to heavy-duty job assignment in the work program, constitutional violations, lack of care from medical, psychological and support personnel within the facility and lack of accommodations for disability. Mr. Gutierrez stated he took detailed notes of the issues and would talk with the administration at SCI-PHX to see if they could get the issues resolved for him.

202. On May 12 2022, Plaintiff wrote Melissa Delliponti on Form DC-135A Inmate Request to Staff Member requesting explaination of $16.00 pay for the month of work program in April.

Case: 25-2166    Document: 35    Page: 69    Date Filed: 03/11/2026

203. On or about May 13 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Mellissa Delliponti with response: "You received 16.56 for 3/21-4/20/22 pay period," referencing April's pay and not March as questioned, signed by Shannon Bean.

204. On May 13 2022, Plaintiff received Facility Manager's Response Grievance #973840 from Jaime Sorber stating previous response appropriately addressed concerns, no incident report and medical department did not complete Medical Lay-in Report, not listed as injured job related in CAPTOR.

205. On May 13 2022, Plaintiff received Initial Reponse Grievance #979106 from John Muick stating on 2/23/2022 Employment Office was notified of medical restrictions preventing Plaintiff from working and was removed from job and placed on Medical GLP at reduced rate. The "NO WORK" medical restriction was lifted on 3/15/2022 and pending availability of work will return to $0.38/hr.

206. On May 16 2022, Plaintiff received Final Appeal Decision Grievance #967268 from Darina Varner, signed by Keri Moore, stating responses provided addressed concerns no restrictions 2/4/2022.

207. On May 20 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Mellissa Delliponti with response: "Refer to previous request responses," signed by Shannon Bean.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

208. On May 20 2022, Plaintiff wrote Melissa Delliponti on Form DC-135A Inmate Request to Staff Member requesting explaination on pay rate change of IBT-GLP $0.38/hr. to GLP at $0.72/day stating there must be a mistake.

209. On May 22 2022, Plaintiff filed Final Appeal Grievance #973840 to Central Office Chief Grievance Coordinator Darina Varner complaining of pay reduced from $0.42/hr. to $0.50/day for 15 days Medical Lay-in after being injured, supervisors failed to submit incident report, medical failed to create Attachment 1-F to examination at visit and SCI-PHX facility failed to accommodate disability.

**JA 66**

205. On May 13 2022, Plaintiff received Initial Response Grievance #979106 from John Muick stating on 2/23/2022 Employment Office was notified of medical restrictions preventing Plaintiff of working and was removed from job and placed on Medical GLP at reduced rate. The "NO WORK" medical restriction was lifted on 3/15/2022 and pending availability of work will return to rate of $0.38/hr.

206. On May 16 2022, Plaintiff received Final Appeal Decision Grievance #967268 from Darina Varner, signed by Keri Moore stating responses provided addressed concerns and no medical restrictions on 2/4/22.

207. On May 20 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Melissa Delliponti with reponse: "Refer to previous request reponses," signed by Shannon Bean.

208. On May 13 2022, Plaintiff wrote Melissa Delliponti on Form DC-135A Inmate Request to Staff Member requesting explaination of pay rate change from IBT-GLP $0.38/hr. to $0.72/day.

*- Unreasonable Seizure, Deliberate Indifference, Due Process, Equal Protection,*
*Failure to Accommodate, Retaliation, Cruel & Unusual Punishment -*

209. On May 22 2022, Plaintiff filed Final Appeal Grievance #973840 to Central Office Chief Grievance Coordinator Darina Varner complaining of pay reduced from $0.42/hr. to $0.50/day for 15 days Medical Lay-in after being injured in Food Services, supervisors failed to subit incident report and cross-reference medical examination, medical failed to create Attachment 1-F for examination during visit and facility failing to accomodate for disability.

210. On May 23 2022, Plaintiff filed First-Level Appeal Grievance #979106 to Facility Manager Jaime Sorber complaining of being paid $0.72/day instead of $0.42/hr., disability was fully documented, "NOT MEDICALLY CLEARED FOR FOOD SERVICES" note in SAPPHIRE, lite-duty status notice sent to Inmate Employment requesting lite-duty work prior to being assigned, and spoke with Jason Stimmel and Leandra Strenkoski seeking assistance prior to reporting to Food Services.

*- Deliberate Indifference, Due Process, Failure to Protect, Equal Protection, Failure to Accommodate, Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

211. On May 25 2022, Plaintiff received Facility Manager's Response Grievance #973843 from Jaime Sorber stating response addressed concerns, signature is irrelevant to medical charges, no incident report, not listed as injured job related in CAPTOR.

212. On May 25 2022, Plaintiff received reply to Form DC-135A Inmate Request to Staff Member Melissa Delliponti with response: "See attached," signed by Sharron Bean. Attached was a typed letter on PADOC SCI-Graterford stationary, stating:

TO: (blank)
From: Shannon Bean, CEVA
Inmate Employment Office
SCI-Phoenix
Date: (blank)
RE: Request to Response

As an incentive based transfer the following will apply:

*(circled in red and highlighted)* Upon placement *(/circled in red and highlighted)* *(highlighted)* into a work assignment *(/highlighted)* at SCI-Phoenix *(highlighted)* you will receive the pay rate you were receiving at your previous institution *(/highlighted)* as long as you do not receive any misconduct for an institutional infraction.

Please refer to the following policy:
DC-ADM 816
U. Compensation when the inmate is Transferred or Released
    4. *(without the words "upon placement")* "An inmate who is granted an incentive based or CL2 reduction transfer shall keep his/her pay rate when transferred to another Department facility..."

**JA 68**

213. On May 27 2022, Plaintiff was paid $15.84 for the month of pay from the work program.

214. On June 2 2022, Plaintiff filed Final Appeal Grievance #973843 to Central Office Chief Grievance Coordinator Darina Varner complaining of being charged erroneously for medical attention follow-up after being injured in Food Services, medication order and not supplied, Facility Manager states signature is irrelevant for medical services provided and charges to account, violation of Due Process and 8th Amendment timely and appropriate access to medical care.

215. On June 21 2022, Plaintiff Facility Manager's Response Grievance #979106 from Jaime Sorber mistakingly stating grievance is the same as 966040 & 966041, response by M. Delliponti is appropriate, *(even though there was no response from M. Delliponti on this grievance.)*

216. On June 24 2022, Plaintiff was paid $13.68 for the month of pay from the work program.

217. On June 27 2022, Plaintiff filed Final Appeal Grievance #979106 to Central Office Chief Grievance Coordinator Darina Varner complaining of paid rate of $0.72/day not $0.42/hr. per IBT policy, Facility Manager has response to another grievace copied, over 6 pay periods only 1 was near-accurate pay, requesting pay differential, Title 28 and 42 U.S.C. discrimination.

218. On June 27 2022, Plaintiff received external mail from Amirah Syders, volunteer at the Pennsylvania Prison Society stating they spoke with SCI-PHX administration and electronic medical records are transferred with the inmate and if a restriction expired, he would need to sign for sick call.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

219. On June 30 2022, Plaintiff received Final Appeal Decision Grievance #966040 from Darina Varner, signed by Keri Moore stating responses provided appropriately addressed concerns, no evidence of promotion of 12/2/2021.

**JA 69**

____. On or about August 5 2022, Plaintiff was called into the Sergeant's office to meet in private with Dr. Anthony Matteo and Kelly Sheeran. Dr. Matteo questioned Plaintiff about motives for request to review psychological records. Dr. Matteo stated he would approve the request and schedule a time for the Plaintiff to meet with a records specialist to review psychology records.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Retaliation, Embezzlement, Intentional Infliction of Emotional Distress -*

____. On August 11 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #993622 complaining of $7.50 pay missing from school pay for the month of July without notice of adverse actions, violation of Due Process, theft, discrimination, and Title 42 right to be free from physical, emotional and psychological distress.

____. On August 15 2022, Plaintiff received notice from Facility Grievance Coordinator Ms. Orlando approving Grievance #993622 for submission and assigned the grievance to Melissa Delliponti, the staff directly involved, violating PADOC policy.

____. On August 17 2022, Plaintiff wrote Facility Grievance Coordinator Ms. Orlando on Form DC-135A Inmate Request to Staff Member requesting reassignment of Grievance #993622 quoting PADOC Policy DC-ADM801(1)(C)(3) that states the person directly involved won't be assigned.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

____. On August 15 2022, Plaintiff received Final Appeal Decision Grievance #979106 from Darina Varner, signed by Keri Moore stating responses provided appropriately addressed concerns, issue has been previously addressed and compensation is appropriate.

Case: 25-2166    Document: 35    Page: 73    Date Filed: 03/11/2026

**JA 70**

Date Filed: 03/11/2026    Page: 74    Document: 35    Case: 25-2166

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person,*
*Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection,*
*Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

220. On June 30 2022, Plaintiff received Final Appeal Decision Grievance #966041 from Darina Varner, signed by Keri Moore stating responses provided appropriately addressed concerns, no evidence of promotion on 12/2/2021, paid $0.38/hr. while working in Food Services.

*- Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate,*
*Cruel & Unusual Punishment, Intentional Infliction of Emotional Distress -*

221. On June 30 2022, Plaintiff received Final Appeal Decision Grievance #968790 from Darina Varner, signed by Keri Moore stating responses provided appropriately addressed concerns, restrictions expired Oct. 2021, two months prior to transfer, seen by medical 2/15/22 and employment restrictions were provided, if not correct, place a sick call.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person,*
*Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection,*
*Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

222. On July 8 2022, Plaintiff received Final Appeal Decision Grievance #973840 from Darina Varner, signed by Keri Moore stating responses provided appropriately addressed concerns, no evidence of Medical Lay-in, compensation is appropriate.

223. On July 11 2022, Plaintiff received Final Appeal Decision Grievance #973843 from Darina Varner, signed by Keri Moore stating grievance was referred to Health Care.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person,*
*Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection,*
*Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

Case: 25-2166    Document: 35    Page: 75    Date Filed: 03/11/2026

224. On July 26 2022, Plaintiff was paid $15.12 for the month of pay from the work program.

225. On July 29 2022, Plaintiff wrote Medical Records on Form DC-135A Inmate Request to Staff Member requesting a timeslot to review medical records.

226. On August 3 2022, Plaintiff was sent to medical to meet with Roy George, Records Specialist, to review medical records. Plaintiff requested Mr. Roy to show him the medical work restriction history tab and without 30 seconds Mr. Roy was able to parse the records to show a long table of medical work restriction history with start dates, end dates, auto-expiration dates, comments about the restriction, staff members names who entered the restriction and system notes. Plaintiff asked Mr. Roy if PADOC employees using CAPTOR could also see the history of these work restrictions with the same ease and he confirmed they could. Plaintiff requested Mr. Roy to focus on the "No Food Service-handle/janitor" work restriction entered 5/24/19 with expiration date 11/9/22 which had a system note of "Delete Signoff Approval by Lisa Baird dated 10/20/22." Plaintiff requested Mr. Roy to parse the psychology records for his review and Mr. Roy denied stating psychology record review would need to be done with a member of the psychology department and he is not authorized to share that information.

227. On August 3 2022, Plaintiff wrote Dr. Anthony Matteo on Form DC-135A Inmate Request to Staff Member requesting a timeslot to review psychology records.

228. On August 4 2022, Plaintiff was sent to medical to be seen by Ayse Nermin Safak-Tezcan for his yearly chronic care exam and to renew hyperlipidemia medication and schedule a blood test.

229. On August 5 2022, Plaintiff was sent to medical to get blood drawn for yearly evaluation.

230. On August 11 2022, Plaintiff filed Form DC-804 Part 1 Official Inmate Grievance #993622 complaining of missing pay for school program attendance with Mr. Glice, ABE teacher.

*- Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate,*
*Neglegence, Malpractice, Intentional Infliction of Emotional Distress -*

Date Filed: 03/11/2026     Page: 76     Document: 35     Case: 25-2166

231. On August 18 2022, Plaintiff filed a Medical Sick Call Request to review blood results.

232. On August 19 2022, Plaintiff was sent to medical to be seen by Kurt Mitchell who stated the Plaintiff's blood results indicate *hyper*thyroidism and an expanded panel of blood labs is needed.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

233. On August 26 2022, Plaintiff was paid $10.80 for the month of pay from the work program.

234. On August 26 2022, Plaintiff was sent to medical to get blood drawn for expanded thyroid panel.

235. On August 28 2022, Plaintiff wrote Jason Stimmel on Form DC-135A Inmate Request to Staff Member requesting confirmation of CAPTOR listing him as approved for limited-duty work assignments. Mr. Stimmel called Plaintiff into his office to discuss and listed the follow restrictions from CAPTOR with expiration dates:

  No Food Service 8-26-22

  Lower Bunk 7-11-23

  No heights 10-19-22

  No risk of injury 2-14-23

  No intense labor 2-15-23

  No more than 15lbs 4-14-23

  Antiembolic nylons 1-31-23

Plaintiff asked how he could get the ones near expiration renewed and Mr. Stimmel stated he would need to file a sick call and pay $5.00 near the expiration date of the restriction and would need to do so for each restriction individually.

236. On August 29 2022, Plaintiff wrote Dr. Anthony Matteo on Form DC-135A Inmate Request to Staff Member, for the 3rd time, requesting timeslot to review psychology records.

**JA 73**

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person,*

*Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection,*

*Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

237. On September 1 2022, Plaintiff received Initial Response Grievance #993622 from Melissa Delliponti stating it's the inmate's responsibility to raise missing pay issues with Mr. Glica, who submits in-class seat hours to Inmate Employment. [PADOC Policy DC-ADM816(3)(B)(2) states: "No inmate may perform timekeeper or payroll computation duties."][PADOC Policy DC-ADM816(3)(A) (4) states: "On the last day of each pay period, each supervisor/teacher will complete the Time Validation Sheet (for all but an inmate working for CI). The supervisor/teacher will review the hours to be paid and inform the inmate of those total hours and pay rate. He/she shall review the Time Validation Sheet. Any discrepancies should be resolved prior to submission to the Inmate Employment Office."][PADOC Policy DC-ADM816(1)(E)(6) states: "Daily attendance will be recorded and reported by the school principal/designee at the close of each compensation or semester period."] [PADOC Policy DC-ADM816(1)(M)(1) states: "A change in pay (promotion or demotion) must be reported to the CEVC within one working day."][PADOC Policy 7.6.1(1)(H)(G) states: "Attendance hours are defined as actual 'seat time.' Excused absences will not be counted as attendance. Inmate pay for students will be reflected per actual 'seat time,' fulltime students shall follow Department Policy DC-ADM816."]

238. On September 6 2022, Plaintiff wrote Central Office Chief Grievance Coordinator Darina Varner requesting determination on two overdue grievances #973843 and 968960.

239. On September 7 2022, Plaintiff filed a Medical Sick Call Request to review blood results.

240. On September 8 2022, Plaintiff was sent to medical to be seen by Ayse Nermin Safak-Tezcan who stated blood results show Plaintiff is experiencing *hypo*thyroidism and more blood work is needed.

241. On September 11 2022, Plaintiff filed First-Level Appeal Grievance #993622 to Facility Manager Jaime Sorber complaining of assignment of grievance to person directly involved, inmate is not responsible for the supervision of Mr. Glica, inmates are not allowed by policy to be involved in

computation of timekeeping, violation of unreasonable seizure, no due process, violation of the 8th Amendment and Title 42 rights to be free from physical, emotional and psychological distress, financial exploitation of a care-dependent person, theft by deception, theft by unlawful taking or disposition and misapplication of entrusted property.

*- Unreasonable Seizure, Financial Exploitation of a Care-Dependent Person, Misapplication of Entrusted Property, Deliberate Indifference, Due Process, Equal Protection, Failure to Accommodate, Retaliation, Cruel & Unusual Punishment, Embezzlement -*

242. On September 19 2022, Plaintiff received Final Appeal Decision Grievance #973843 from Darina Varner, signed by Keri Moore stating Bureau of Health Care Services reviewed medical record and found that sick call visits in question were found for non-urgent care and non-chronic conditions.

243. On September 19 2022, Plaintiff filed a Medical Sick Call Request to follow-up on blood results and complaining of pain in throat and experiencing excessive physical issues.

244. On September 20 2022, Plaintiff was sent to medical to be seen by Kurt Mitchell who stated the blood results show Plaintiff is experiencing *hypo*thyroidism and untreated anxiety is out of control causing physical injury that needs to be addressed by the psychology department. Mr. Mitchell stated Plaintiff is experiencing symptoms of gastroesophageal reflux disease and prescribed him bismuth subsalicylate. Plaintiff requested further tests and a referral to the psychology department stating he has not had success getting attention from the psychology program and Mr. Mitchell denied stating it would be quicker for the Plaintiff to submit a request to staff.

*- Deliberate Indifference, Equal Protection, Failure to Accommodate, Neglegence, Malpractice, Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

245. On September 20 2022, Plaintiff wrote Courtney Cione and Kelly Sheeran on Form DC-135A Inmate Request to Staff Member stating medical said untreated anxiety is out of control and needs to be properly treated and is causing physical injury.

*- Deliberate Indifference, Equal Protection, Failure to Accommodate, Neglegence,*
*Malpractice, Neglect of a Care-Dependent Person, Intentional Infliction of Emotional Distress -*

246. On September 20 2022, Plaintiff wrote Dr. Anthony Matteo on Form DC-135A Inmate Request to Staff Member, for the 4th time, requesting timeslot to review psychology records, to schedule a date and reply within 5 days as per PADOC Policy 7.2.1 states is required of staff and noting the lack of treatment by his department is causing Plaintiff physical injury and needs to be addressed.

**JA 76**

Date Filed: 03/11/2026    Page: 80    Document: 35    Case: 25-2166

## VI. CLAIMS FOR RELIEF

### COUNT I:  DELIBERATE INDIFFERENCE, FAILURE TO PROTECT, CRUEL & UNUSUAL PUNISHMENT

1. Defendants *Litizio, Annino, Biser-Sipple, Wood, Huner, Savage, Waidelich, Strenkoski, Stimmel, Deshield, Grennon, Jackson, Choate, Poli* failed to respond appropriately, did not respond at all, delayed medical care for 5 days, denied medical transfer reception screening, unnecessarily prolonged pain and suffering, intentionally refused to provide medical care, and blocked access to medical attention to Plaintiff's serious medical needs constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

2. Defendants *J.Terra, Matteo, Nardella, Sheeran, Cione* delay of 4 months and denial of transfer reception screening to the psychology program for treatment to his serious mental and emotional illnesses constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

3. Defendants *Varner, Moore, Sorber, Biser-Sipple, J.Terra, Huner, Litizio, Wood, Annino, Savage, Waidelich, Nardella, Sheeran, Cione, Strenkoski, Stimmel, Kline, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant* interference with treatment, knowledge of mis-treatment or non-treatment constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

4. Defendants *Biser-Sipple, J.Terra, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Strenkoski, Stimmel, Kline, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant* inadequate treatment, prescription of inadequate medicine and acts or omissions were sufficiently harmful to Plaintiff's serious medical needs causing unnecessary and wanton infliction of pain and constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

Case: 25-2166   Document: 35   Page: 81   Date Filed: 03/11/2026

5. Defendants *Sorber, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant* failure to protect Plaintiff from excessive risk to his safety, failure to investigate information suggesting risk of injury, failure to attempt to verify medical inability to perform work tasks, violating the prison's own policies on safety and subjecting Plaintiff to conditions that were objectively cruel with deliberate indifference toward taking reasonable action to abate risk to Plaintiff's future health constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

6. Defendants *PADOC, WELLPATH, Little, Sorber, Clark, Wingard, Ferguson, Ennis, Varner, Moore, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Strenkoski, Kline, Cotton, Choate, Poli, Delliponti, Hensley, Muick, Silva, Adams, Noel, Fitzgerald-Young, Hallman* knowingly aquiescence in unconstitutional behavior, presistently violated statutory duty to inquire and be responsible for preventing excessive risk to safety, failed to train, supervise and direct subordinate employees, failed to respond and review medical complaints despite knowledge of breakdown of services, institutional policies and inadequate facilities showing repeated examples of negligent acts that disclose a pattern of conduct constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

7. Defendants *PADOC, WELLPATH, Varner, Moore, Sorber, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Delliponti, Jackson, Durant, Hensley, Muick, Silva, Adams, Noel, Fitzgerald-Young, Hallman* flagrant disregard for PADOC Central Office policies, Plaintiff's constitutional protections, and state and federal tort laws constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

8. Defendants *PADOC, WELLPATH, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Hallman* have a policy of restricting, if not outright denying, follow-up care, revealing the institution's historical indifference of systematic gross

deficiencies in staffing and a pattern of conduct constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

9. Defendants *PADOC, Little, Clark, Wingard, Ferguson, Ennis* failure to transfer Plaintiff to a facility capable and willing to accommodate for his physical and mental disabilities in violation of PADOC Central Office Policy DC-ADM006(3) constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

10. As a result of Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curb, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant, Hensley, Muick, Silva, Adams, Noel, Baird, Hallman, Fitzgerald-Young* personal duty failures, Plaintiff was injured and received serious physical, emotional, psychological and Constitutional injuries, constituting deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

11. Defendants *PADOC, WELLPATH, Varner, Moore, Sorber, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Delliponti, Jackson, Durant, Muick, Silva, Adams, Noel, Fitzgerald-Young, Baird, Hallman* support of medically inappropriate work program beyond Plaintiff's physical abilities constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

12. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Ninan, Curb, Reid, Reiger, Delliponti, Jackson, Muick, Silva, Adams, Noel, Baird* personal duty to correct failure of the deficiencies of the medical transfer and tracking system which resulted in the deletion of medical restrictions prior to transfer resulting in having them to be re-entered and re-approved after transfer and correct the failures of medical holds and coordination of patient work-up between prisons constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

**JA 79**

Case: 25-2166    Document: 35    Page: 82    Date Filed: 03/11/2026

Date Filed: 03/11/2026      Page: 83      Document: 35      Case: 25-2166

13. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Delliponti, Jackson, Durant, Hensley, Muick, Silva, Adams, Noel, Hallman, Baird* knowledge of a continuing pattern of culpable failures and made no attempt to remedy deficiencies in system constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

14. Defendants *WELLPATH, Biser-Sipple, Litizio, Wood, Huner, Annino, Savage, Waidelich, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Grennon, Jackson, Durant,* denial of access to medical personnel qualified to exercise judgement about a particular medical problem constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

15. Defendants *PADOC, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant, Muick, Silva, Adams, Noel, Baird* failure to inquire into essential facts that are necessary to make a professional judgement, and failure to inform competent authorities constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

16. Defendants *WELLPATH, Varner, Moore, Sorber, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Jackson* repeated delays to resolve the issue and did not assess Plaintiff constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

17. Defendants *PADOC, Little, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Ninan, Delliponti, Muick, Silva, Adams, Noel* failure to create a policy requiring prisoners' file to be reviewed prior to transfer in order to avoid risk constituted deliberate indifference, cruel and unusual punishment, and failure to protect in violation of the 8th Amendment of the United States Constitution.

Case: 25-2166    Document: 35    Page: 84    Date Filed: 03/11/2026

## COUNT II: DUE PROCESS & EQUAL PROTECTION

1. Defendants *PADOC, WELLPATH, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Delliponti, Jackson, Durant, Muick, Silva, Adams, Noel, Hallman, Baird* failure to provide the minimum requirements of due process prior to deprivation of liberty interet to be free from negligence without written notice, without impartial hearing, without specific fact-finding, without detailed evidence supporting verdict, and without reason for declassification arbituarily abrogating Plaintiff constituted infringment of due process and equal protection in violation of the 14th Amendment of the United States Constitution.

2. Defendants *PADOC, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Biser-Sipple, J.Terra, R.Terra, Strenkoski, Stimmel, Delliponti, Muick* failure to provide the minimum requirements of due process prior to deprivation of property interest without statement of decision, without reason for declassification, without opportunity to be heard, without opportunity to present views and without detailed evidence supporting verdict for arbitrarily imposed sanctions constituted infringment of due process and equal protection in violation of the 14th Amendment of the United States Constitution.

3. Defendants *PADOC, WELLPATH, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, J.Terra, R.Terra, Biser-Sipple, Litizio, Wood, Huner, Wills, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Delliponti, Jackson, Durant, Muick, Silva, Adams, Noel, Baird* arbitrarily denied Plaintiff adversarial proceedings, cross-examination, a timely hearing or appeal of adverse rulings prior to revoking his statutory right to disability accommodations and denial of work restrictions which imposed significant and atypical hardship on him constituting infringment of due process and equal protection in violation of the 14th Amendment of the United States Constitution.

4. Defendants *PADOC, WELLPATH, Varner, Moore, Sorber, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Savage, Waidelich, Hallman* imposed excessive medical expenses for being injured at work without notification or signature in violation of PADOC policies constituted infringment of due process and equal protection in violation of the 14th Amendment of the United States Constitution.

Date Filed: 03/11/2026    Page: 85    Document: 35    Case: 25-2166

5. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, J.Terra, R.Terra, Biser-Sipple, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Delliponti, Jackson, Durant, Muick, Silva, Adams, Noel, Baird, Hallman* intentionally imposed oppressive conditions on Plaintiff not imposed upon others similarly situated and difference in treatment was not rationally related to any legitimate government interest constituting infringment of due process and equal protection in violation of the 14th Amendment of the United States Constitution.

## COUNT III: UNREASONABLE SEIZURE

1. Defendants *PADOC, Varner, Moore, Sorber, Ferguson, J.Terra, R.Terra, Biser-Sipple, Delliponti, Muick*  unreasonable seizure of 11% of Plaintiff's monthly salary upon arrival to SCI-PHX on "promotional" IBT was not justified by a penological need, violated PADOC policy and constituted unreasonable seizure in violation of the 4th Amendment of the United States Constitution.

2. Defendants *PADOC, WELLPATH, Varner, Moore, Sorber, Ferguson, J.Terra, R.Terra, Biser-Sipple, Litizio, Wood, Huner, Savage, Waidelich, Delliponti, Muick, Hallman* unreasonable seizure of 87% of Plaintiff's monthly salary for 15 days upon workplace injury was not justified by a penological need, violated PADOC policy and constituted unreasonable seizure in violation of the 4th Amendment of the United States Constitution.

3. Defendants *PADOC, Varner, Moore, Sorber, Ferguson, J.Terra, R.Terra, Biser-Sipple, Delliponti, Muick,* unreasonable seizure of 72% of Plaintiff's monthly salary upon workplace injury was not justified by a penological need, violated PADOC policy and constituted unreasonable seizure in violation of the 4th Amendment of the United States Constitution.

4. Defendants *PADOC, WELLPATH, Varner, Moore, Sorber, Biser-Sipple, Wood, Delliponti, Muick, Hallman* unreasonable seizure of 67% of Plaintiff's monthly salary upon initial denial of medical care, 5 day delay to inadequate medical care, denial again to reasonable medical care, 19 day delay to inadequate prescribed medicine was not justified by a penological need, violated PADOC policy and constituted unreasonable seizure in violation of the 4th Amendment of the United States Constitution.

Date Filed: 03/11/2026    Page: 86    Document: 35    Case: 25-2166

## COUNT IV: RETALIATION

1. Defendants *Varner, Moore, Sorber, Biser-Sipple, Delliponti, Muick* demoted job class, denied job placement, and deprived of higher class job as recommended by SCI-PHX GED teacher for Plaintiff was punishment for exercising his constitutional right to file grievances and constituted retaliation in violation of the 1st Amendment of the United States Constitution.

2. Defendants *PADOC, Varner, Moore, Sorber, Biser-Sipple, Delliponti, Muick* inconsistent reasons for denial of work program placement was adverse action due to Plaintiff getting hurt at work and filing grievances constituted retaliation in violation of the 1st Amendment of the United States Constitution.

3. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Strenkoski, Kline, Cotton, Choate, Poli  Delliponti, Hensley, Muick, Silva, Adams, Noel, Fitzgerald-Young, Hallman, Baird* were personally responsible for violation of rights and supervisors liable for failure to supervise, lack of training and perpetuating a pattern of abuses resulting in continual violation of constitutional torts in violation of the 1st Amendment of the United States Constitution.

## COUNT V: ADA/RA/PHRA FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS FOR WORK PROGRAM, PSYCHOLOGY PROGRAM, MEDICAL PROGRAM

1. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli  Deshield, Delliponti, Jackson, Durant, Hensley, Muick, Silva, Adams, Noel, Hallman, Baird* failure to accommodate work program of a public entity and provide medically appropriate work within Plaintiff's physical abilities in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

**JA 83**

2. Defendants *PADOC, Varner, Moore, Sorber, Biser-Sipple, R.Terra, Kline, Delliponti, Muick* purposeful exclusion of Plaintiff from the programs of a public entity, despite being qualified and recommended back to the higher class of employment by a SCI-PHX GED teacher was employment discrimination in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

3. Defendants *PADOC, Little, Varner, Moore, Sorber, Ferguson, Biser-Sipple, J.Terra, R.Terra, Matteo, Nardella, Sheeran, Cione, Kline, Muick* purposeful exclusion from the programs of a public entity by refusing to place him in any medically appropriate and disability accommodating work or psychology program within his physiological and psychological abilities in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

4. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Sorber, Ferguson, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Muick* failure to provide Plaintiff with any mental health program accommodations in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

5. Defendants *PADOC, Little, Clark, Sorber, Wingard, Ferguson, Ennis, Matteo, Nardella, Sheeran, Cione, Muick, Noel* failure to use administrative authority to transfer Plaintiff to a facility capable and willing to accommodate for his disabilities in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

6. Defendants *PADOC, WELLPATH, Sorber, Ferguson, Biser-Sipple, Litizio, Wood, Huner, Annino, Savage, Waidelich* failure to provide medical intake screening examination within 14 days of transfer and failure to follow-up with an inmate known to be disabled in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

Case: 25-2166    Document: 35    Page: 87    Date Filed: 03/11/2026

Date Filed: 03/11/2026    Page: 88    Document: 35    Case: 25-2166

7. Defendants *PADOC, WELLPATH, Sorber, Ferguson, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Muick* failure to provide psychology intake screening examination within 14 days of transfer and failure to follow-up with an inmate known to be disabled in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

8. Defendants *PADOC, WELLPATH, Little, Sorber, Ferguson, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Muick, Noel* failure to provide qualified mental health staff appropriate licensed and trained in sufficient number to meet the needs of the prison population in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

9. Defendants *PADOC, WELLPATH, Little, Sorber, Ferguson, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Hensley, Muick, Noel, Fitzgerlad-Young* failure to train correctional staff to deal with predictable problems of mentally ill and disabled prisoners in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

10. Defendants *PADOC, WELLPATH, Little, Sorber, Ferguson, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Jackson, Durant, Hensley, Muick* denial of request to resolve missing work restrictions, treating him with hostility, claiming he was harassing and wasting time, claiming "I don't know how to do that," "that's not my job," being dismissive and telling him to "stop coming here," "don't take notes on what I say," made access to programs unusually difficult in violation of PADOC Policy DC-ADM006, the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act and the Protection and Advocacy of Mentally Ill Individuals Act.

COUNT VI: NEGLIGENCE, NEGLECT OF A CARE-DEPENDENT PERSON,
ASSAULT & BATTERY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. Defendants *PADOC, WELLPATH, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Jackson, Noel* failure to prescribe medication, prescribing inappropriate medication, denial of medication, failure to fill prescriptions, failure to perform diagnostic tests, neglect by administrative personnel, and failure to provide any follow-up treatment violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, and intentional infliction of emotional distress under Pennyslvania Tort Law.

2. Defendants *PADOC, WELLPATH, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Deshield, Grennon, Jackson, Noel* failure to exam or treat, delay in examination and treatment, and failure to render proper emergency care violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, technical assault and battery, and intentional infliction of emotional distress under Pennyslvania Tort Law.

3. Defendants *PADOC, WELLPATH, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Noel* failure to provide medical and psychological intake screening examination with 14 days of transfer, failure to make adequate reports of observations and failure to provide treatment violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, technical assault and battery, and intentional infliction of emotional distress under Pennyslvania Tort Law.

4. Defendants *PADOC, WELLPATH, Biser-Sipple, J.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curby, Reid, Reiger, Jackson, Silva, Adams, Noel, Baird* failure to have an use the knowledge, skill and care expected of their profession, acts or omissions interferred with proper medical treatment and the deviation from the standard of ordinary care violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, and intentional infliction of emotional distress under Pennyslvania Tort Law.

Case: 25-2166    Document: 35    Page: 89    Date Filed: 03/11/2026

5. Defendants *PADOC, WELLPATH, Little, Varner, Moore, Clark, Sorber, Wingard, Ferguson, Ennis, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Matteo, Nardella, Sheeran, Cione, Ninan, Curby, Reid, Reiger, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant, Muick, Silva, Adams, Noel, Baird* failure to protect from unreasonable risks duty created by state statue, failure to care for a care-dependent person, failure to obtain medical care, failure to provide medication and willful and wanton conduct in addressing emergency medical needs of Plaintiff violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, technical assault and battery, and intentional infliction of emotional distress under Pennyslvania Tort Law.

6. Defendants *PADOC, WELLPATH, Ferguson, Biser-Sipple, J.Terra, R.Terra, Litizio, Wood, Huner, Wills, Annino, Savage, Waidelich, Strenkoski, Stimmel, Kline, Cotton, Choate, Poli, Deshield, Grennon, Delliponti, Jackson, Durant, Muick* failure to review medical records and attempt to review documented medical inability to perform work task violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, technical assualt and battery, and intentional infliction of emotional distress under Pennyslvania Tort Law.

7. Defendants *PADOC, Little, Clark, Sorber, Wingard, Ferguson, Ennis, Adams, Noel* failure of administration to transfer Plaintiff to a facility capable of accommodating for his disability violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, technical assualt and battery, and intentional infliction of emotional distress under Pennyslvania Tort Law.

8. Defendants *PADOC, WELLPATH, Ennis, Wills, Curby, Reid, Reiger, Silva, Noel, Baird* false certification of the quality, accuracy and completeness of Plaintiff's medical file with missing work program restrictions violated PADOC policy and constituted negligence, malpractice, neglect of a care-dependent person, technical assault and battery, and intentional infliction of emotional distress under Pennyslvania Tort Law.

COUNT VII: EMBEZZLEMENT, EMBEZZLEMENT IN CONNECTION WITH HEALTH CARE,
MISAPPLICATION OF ENTRUSTED PROPERTY,
FINANCIAL EXPLOITATION OF A CARE-DEPENDENT PERSON

1. Defendants *PADOC, Little, Varner, Moore, Sorber, Delliponti, Muick* fradulently took 11% of Plaintiff's monthly salary upon arrival to SCI-PHX on "promotional" IBT was not justified by a penological need except for their own profit in violation of PADOC policy and constituted embezzlement, misapplication of entrusted property and financial exploitation of a care-depended person in violation Title 18 of the United States Code Service.

2. Defendants *PADOC, Little, Varner, Moore, Sorber, Delliponti, Muick* embezzled 87% of Plaintiff's monthly salary for 15 days upon workplace injury was not justified by a penological need except for their own profit in violation of PADOC policy and constituted embezzlement, misapplication of entrusted property and financial exploitation of a care-depended person in violation Title 18 of the United States Code Service.

3. Defendants *PADOC, Little, Varner, Moore, Sorber, Delliponti, Muick* embezzled 72% of Plaintiff's monthly salary upon workplace injury was not justified by a penological need except for their own profit in violation of PADOC policy and constituted embezzlement, misapplication of entrusted property and financial exploitation of a care-depended person in violation Title 18 of the United States Code Service.

4. Defendants *PADOC, WELLPATH, Varner, Moore, Sorber, Ferguson, J. Terra, R.Terra, Biser-Sipple, Litizio, Wood, Huner, Savage, Delliponti, Muick, Noel, Hallman* embezzled 67% of Plaintiff's monthly salary upon initial denial of health care, 5 day delay in to inadequate medical care, denial again to reasonable medical care, 19 day delay to inadequate prescribed medicine, and erroneous charges against Plaintiff to resolve PADOC induced issues was not justified by a penological need except for their own profit in violation of PADOC policy and constituted embezzlement in connection with health care, misapplication of entrusted property and financial exploitation of a care-depended person in violation Title 18 of the United States Code Service.

Date Filed: 03/11/2026    Page: 91    Document: 35    Case: 25-2166

Date Filed: 03/11/2026    Page: 92    Document: 35    Case: 25-2166

## VII. CONCLUSION

Plaintiff has not plain, adequate, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the Defendants and their agents unless this Honorable Court grants declaratory and injunctive relief which Plaintiff seeks.

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff requests that this Honorable Court grant the following relief:

1. Declare that Defendants violated Plaintiff's 1st Amendment right not to be retaliated against for being injured and filing complaints;

2. Declare that Defendants violated Plaintiff's 8th Amendment rights when they failed to protect him from a known risk and he was severely injured;

3. Declare that Defendants violated Plaintiff's 8th Amendment right to be free from cruel and unusual physical, emotional and psychological punishment;

4. Declare that Defendants violated Plaintiff's 8th Amendment right to proper and timely medical care;

5. Declare that Defendants violated Plaintiff's 14th Amendment right to not be discriminated against;

6. Declare that Defendants violated Plaintiff's 14th Amendment right due process protections;

7. Declare that Defendants violated Plaintiff's Pennsylvania Tort Law rights to be free from negligence, malpractice, intentional infliction of emotional distress and unreasonable risk;

8. Declare that Defendants violated Plaintiff's right to be free from discrimination under the Pennsylvania Human Relations Act, the Americans with Disabilities Act, the Rehabilitation Act, and the Protection and Advocacy for Individuals with Mental Illness Act;

**JA 89**

9. A preliminary and permanent injunction order for Defendants to stop discriminating by intentional exclusion;

10. A preliminary and permanent injunction order for Defendants to reinstate monthly pay to pay at previous facility;

11. A preliminary and permanent injunction order for Defendants to provide proper, timely and adequate medical and psychological treatment;

12. A preliminary and permanent injunction order for Defendants to transfer Plaintiff to PADOC Region 1 facility willing and capable to accommodate for his physical and mental disabilities;

13. Compensatory damages in the amount of $1,000,000.00 against each Defendant, jointly and severally;

14. Punitive damages in the amount of $1,000,000.00 against each Defendant, jointly and severally;

15. Nominal damages against each Defendant, jointly and severally;

16. Plaintiff costs in this suit;

17. Any additional relief this Honorable Court deems just, proper, and equitable.

Respectfully submitted,

11/11/2022
Date

Troy Vincent Lewald
NS1262
1200 Mokychic Dr.
Collegeville, PA 19426

**JA 90**

VERIFICATION

I have read the forgoing complaint and hereby verify that the matters alleged therein are true, except to the matter alleged on information and belief, and to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at: Collegeville, PA on ___11|11|2022___

Troy Vincent Lewald
NS1262
1200 Mokychic Dr.
Collegeville, PA 19426

Case: 25-2166    Document: 35    Page: 94    Date Filed: 03/11/2026

Date Filed: 03/11/2026    Page: 95    Document: 35    Case: 25-2166

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TROY VINCENT LEWALD,                )
PLAINTIFF                           )
V.                                  )        Civil Action No._____
PENNSYLVANIA DEPARTMENT             )
OF CORRECTIONS ("PADOC");           )
et al.                              )        42 U.S.C. SECTION 1983
DEFENDANTS                          )

## DECLARATION UNDER PENALTY OF PERJURY

I, ___JErrY BrowN___, being competent to make this declaration and having personal knowledge of the matters stated herein, declare pursuant to 28 U.S.C. §1746:

1. I was told not to sit so close, stop looking at, and to stop harassing Ms. Tara Jackson when I sat in the chair in the corner of the room that was already placed and facing her when I sat down;

2. I was charged excessively for delayed and inappropriate medical care, was treated rudely and rushed out without being fully seen, heard or examined by Ms. Tara Jackson;

3. I was treated dismissively and denied treatment by Ms. Tara Jackson;

4. I was denied follow-up care and denied access to medical personnel qualified to exercise judgement about my particular medical problems;

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

9-7-22
_____
Date

Jerry B____    DV-5711
SCI-Phoenix,
1200 Mokychic Dr.
Collegeville, PA 19426

**JA 92**

Date Filed: 03/11/2026    Page: 96    Document: 35    Case: 25-2166

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TROY VINCENT LEWALD,                )
PLAINTIFF                           )
V.                                  )          Civil Action No._____
PENNSYLVANIA DEPARTMENT             )
OF CORRECTIONS ("PADOC");           )
et al.                              )          42 U.S.C. SECTION 1983
DEFENDANTS                          )

## DECLARATION UNDER PENALTY OF PERJURY

I, D. Anthony Quinn_____, being competent to make this declaration and having personal knowledge of the matters stated herein, declare pursuant to 28 U.S.C. §1746:

1. I was threatened by Joe Walsh, PA who stated the Chief Medical Director, Dr. Anthony Letizio told him to relay a message to me to stop filing sick calls;

2. I was charged excessively for delayed and inappropriate medical care, was treated rudely and rushed out without being fully seen, heard or examined by Ms. Tara Jackson;

3. I was charged excessively for delayed and inappropriate medical care, was treated rudely and rushed out without being fully seen, heard or examined by Dr. Carol Annino;

4. I was charged excessively for medication I told Dr. Carol Annino I already had, was not working and the re-prescribed me the same medication and charged erroneously for medication I already paid.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

_Sept. 7th, 2022_
Date

_D. Anthony Quinn KY9739_

SCI-Phoenix,
1200 Mokychic Dr.
Collegeville, PA 19426

**JA 93**

Date Filed: 03/11/2026     Page: 97     Document: 35     Case: 25-2166

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TROY VINCENT LEWALD,                )
PLAINTIFF                           )
V.                                  )          Civil Action No._____
PENNSYLVANIA DEPARTMENT             )
OF CORRECTIONS ("PADOC")            )
et al.                              )          42 U.S.C. SECTION 1983
DEFENDANTS                          )

## DECLARATION UNDER PENALTY OF PERJURY

I, _Steve Wooden_____, being competent to make this declaration and having personal knowledge of the matters stated herein, declare pursuant to 28 U.S.C. §1746:

1. I was approved for an MRI for my spine and later denied without reason by Dr. Anthony Litizio.

2. I was charged excessively for delayed and inappropriate medical care, was treated rudely and rushed out without being fully seen, heard or exaimed by Ms. Corina Campos, CRNP.

3. I was charged excessively for chronic care medication and chronic care evaluation of blood results.

4. I am diabetic and medical refuses to provide service to clip toe nails that I cannot cut myself due to the thickness and no tools are provided that will cut them without causing injury.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

_9/24/22_____                          _Steve Wooden_____
Date                                     SCI-Phoenix, _HT-8214_
                                         1200 Mokychic Dr.
                                         Collegeville, PA 19426

Date Filed: 03/11/2026    Page: 98    Document: 35    Case: 25-2166

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY VINCENT LEWALD, | ) | |
| PLAINTIFF | ) | |
| V. | ) | Civil Action No._____ |
| PENNSYLVANIA DEPARTMENT | ) | |
| OF CORRECTIONS ("PADOC") | ) | |
| et al. | ) | 42 U.S.C. SECTION 1983 |
| DEFENDANTS | ) | |

## DECLARATION UNDER PENALTY OF PERJURY

I, _Robert Micale_, being competent to make this declaration and having personal knowledge of the matters stated herein, declare pursuant to 28 U.S.C. §1746:

1. I was told "I feel that everything will work out fine" by Jason Stimmel when discussing my detainer.

2. I was asked "My car is making funny noises, what do you think the problem is" by Jason Stimmel when discussing my detainer.

3. I was told "Next year I'll have 20 years in, I don't care" by Jason Stimmel when asking for advice.

4. I was told "They keep giving me extra work to do" by Jason Stimmel when discussing my detainer.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

_9·24·22_
Date

_Robert Micale_
SCI-Phoenix,  DR506
1200 Mokychic Dr.
Collegeville, PA 19426

**JA 95**

Troy Lewald
NS 1262
SCI-PHX
1200 Mokychic Dr.
Collegeville, PA 19426

PA DEPARTMENT OF
CORRECTIONS
INMATE MAIL

neopost
11/15/2022
US POSTAGE $008.70

PRIORITY MAIL

ZIP 19426
041M12252211

U.S.M.S.
X-RAY





9114 9022 0085 2136 5229 14

United States District Court
Eastern District PA
US Courthouse
Independence Mall West
601 Market St.
Philadelphia, PA 19106-1797

**JA 96**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TROY LEWALD, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 2:22-CV-4625 |
| | : | |
| PENNSYLVANIA DEPARTMENT OF, | : | |
| CORRECTIONS, *et al.*, | : | |
| Defendants | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2025, upon consideration of the Defendant Pennsylvania Department of Corrections' Motion for Summary Judgment, Plaintiff's response thereto, and any argument thereon, it is hereby ORDERED that Defendant's Motion is GRANTED.

IT IS FURTHER ORDERED that judgment is hereby ENTERED in favor of Defendant Pennsylvania Department of Corrections.

**BY THE COURT:**

_____
**CHAD F. KENNEY, JUDGE**

**JA 97**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TROY LEWALD, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 2:22-CV-4625 |
| | : | |
| PENNSYLVANIA DEPARTMENT OF, | : | |
| CORRECTIONS, *et al.*, | : | |
| Defendants | : | |

## DEFENDANT PADOC'S MOTION FOR SUMMARY JUDGMENT

Defendant Pennsylvania Department of Corrections ("PADOC"), by its undersigned counsel, hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56 on Plaintiff's Rehabilitation Act claim, which is the only claim that remains against the movant. As explained in the accompanying brief, the material facts are undisputed and, even when viewed in the light most favorable to Plaintiff, fail to establish a viable Rehabilitation Act claim.

WHEREFORE, judgment should be entered in favor of the PADOC and against Plaintiff.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:  */s/ Brendan Mullen*
BRENDAN MULLEN
Deputy Attorney General
Attorney ID 334199

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 559-1016
bmullen@attorneygeneral.gov

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

February 6, 2025

*Counsel for Pennsylvania Department of Corrections*

# JA 98

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TROY LEWALD, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 2:22-CV-4625 |
| | : | |
| PENNSYLVANIA DEPARTMENT OF, | : | |
| CORRECTIONS, *et al.*, | : | |
| Defendants | : | |

## BRIEF IN SUPPORT OF DEFENDANT PADOC'S MOTION FOR SUMMARY JUDGMENT

*Pro se* Plaintiff Troy Lewald's ("Lewald"), who is in Pennsylvania Department of Corrections (PADOC) custody, brought various claims against numerous individuals and the PADOC itself based on medical concerns, his employment with the PADOC, and his pay rate with the PADOC. Following disposition of threshold motions, a single claim against a single defendant remained: a Rehabilitation Act claim against the PADOC. ECF Nos. 100, 101. PADOC now moves for summary judgment with respect to that final claim and respectfully submits this Brief in support thereof.

## I.     MATERIAL FACTS

1.     Lewald's sole remaining claim against the PADOC is for a violation of Section 504 of the Rehabilitation Act ("RA"). ECF Nos. 100, 101.

2.      According to Lewald, he had spine surgery in 2015 and cannot lift more than 10 pounds. ECF No. 130-2, Ex. 1, DOC 000014, lines 3-4.

3.      After being transferred to SCI Phoenix, Lewald requested a light-duty work assignment due to his medical condition. ECF No. 1, ¶¶ 89, 92. However, at SCI Phoenix he was assigned to Food Services. Compl., ¶ 93; ECF No. 130-3, Ex. 2, DOC 000036.

1

**JA 99**

4. Lewald attempted to alert various prison staff members that he could not perform his assigned job. Compl., ¶¶ 94-104.

5. Lewald spoke with Ms. Tara Jackson, a non-PADOC employee, who explained that his work restrictions were never transferred and that it was Lewald's responsibility to have the records transferred. ECF No. 130-2, Ex. 1, DOC 000013-14.

6. Instead of following Ms. Jackson's instructions, Lewald continued to file grievances and sick calls for this issue. Compl., ¶¶ 120-32.

7. On February 18, 2022, while carrying food trays Lewald "felt a pop in his back and dropped the stack of trays he was carrying as the pain radiated through his arms, shoulders, and shooting down his sciatic nerve." *Id.* ¶ 133.

8. Lewald requested medical attention, but was ordered back to his cell. *Id.* In his cell, Lewald informed Corrections Officer Grennon that "he was injured at work and needed immediate medical attention and requested to go to the medical department." *Id.*

9. Corrections Officer Grennon told Lewald that there was nothing she could do as his injury did not look like an emergency and that Lewald needed to file a sick call. *Id.*

10. Lewald repeated his requests to Ms. Strenkoski. *Id.*

11. Five days after his injury, Lewald was examined by a medical staff member who prescribed Lewald 600mg of Motrin three times a day, bottom bunk status for six months, and three weeks of no work. *Id.* ¶ 144; ECF No. 130-4, Ex. 3, DOC 000038-39.

12. Despite Lewald's assertions that he spoke with supervisors in the kitchen and inmate employment prior to his injury, Lewald admits that he did not submit a disability request form until April of 2022, which was for supplemental bedding, and not for a work restriction. ECF No. 130-2, Ex. 1, DOC 000017-18.

**JA 100**

13.     PADOC policy makes clear that an inmate seeking an accommodation for a disability "shall submit to the Corrections Health Care Administrator (CHCA) … a request using the **Inmate Disability Accommodation Request Form (Attachment 2-A)**." ECF No. 130-5, Ex. 4, DOC 000050.

14.     Moreover, Lewald's explanation for why he was assigned to Food Services at SCI Phoenix appears to have been a random assignment, or at least made without regard to his purported disability. Specifically, Lewald provides that his work supervisor stated "I can put you where I want to put you." ECF No. 130-2, Ex. 1, DOC 000019, lines 16-17.

15.     This explanation tracks the explanation of Work Assignments (DC-ADM 816) that medically cleared inmates must accept any task assigned to them regardless of compensation. ECF No. 130-6, Ex. 5, DOC 000062.

16.     Despite Lewald's preference to keep his job as a block tutor he had at SCI Albion, inmates do not have a right to be assigned, or continue to work in any particular work assignment. *Id.*

17.      Lewald's Medical Restrictions show that he had an employment restriction of "No food service handle/janitor" on two occasions during his tenure in PADOC custody. ECF No. 130-7, Ex. 6, DOC 000068.

*18.*      The first restriction of "No food service handle/janitor" began on January 25, 2019 and ended January 28, 2019. *Id.*

19.     The second lasted from May 24, 2019 until October 20, 2020. *Id.*

20.     At the time of his transfer to SCI Phoenix and the date of his injury, any work restriction had long expired. *Id.*

# JA 101

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24.  The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

A plaintiff opposing summary judgment "must present *affirmative* evidence . . . to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (emphasis in original).  The Court must view the evidence presented in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Still, the plaintiff "must point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Finally, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   ARGUMENT

Lewald's RA claim fails as a matter of law as he has not established any discriminatory animus.

Similar to the Americans with Disabilities Act ("ADA"), a party raising a claim under the RA must establish that: "(1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley*, 82 F. 4th 217, 225 (3d Cir. 2023). When seeking compensatory damages, as Lewald does here, the "plaintiff must also show intentional discrimination under a deliberate indifference standard." *Id.*

"With limited exceptions, the same legal principles govern ADA and RA claims." *CG v. Pa. Dep't of Edu.*, 734 F.3d 229, 235 (3d Cir. 2013). The RA provides, "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). To prove a claim under the RA, a plaintiff must establish the same elements as the ADA, but there is a difference in the causation element. The RA requires a plaintiff to show that their disability is the "sole cause" of the discrimination. *Durham*, 82 F.4th at 226. "Refusing to make a reasonable accommodation is tantamount to denying access." *Id.* To make out a claim for money damages, plaintiff must allege intentional discrimination, which requires a showing of deliberate indifference. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019).

5

**JA 103**

A "program or activity" is broadly defined under the RA to include "all of the operations of a state instrumentality." *Id.* at 289 (citing 29 U.S.C. § 794(b)). As this Court has previously noted, Lewald's work assignment falls within the broad meaning of "program or activity" under the RA. ECF No. 100, at 14.

Summary judgment is appropriate where a plaintiff inmate alleges merely that the prison "ignored" his alleged disabilities – "not that they [acted or failed to act] *because of* discriminatory animus based on his alleged mental [or physical] disabilities*." Brown v. Pa. Dep't of Corr.*, 290 F.App'x 463, 467 (3d Cir. 2008) (non-precedential) (emphasis added).

For the purposes of this motion only, it is not disputed that Lewald was a qualified individual with a disability. However, Lewald cannot establish the remainder of the elements based on the evidence of record. Lewald has not alleged, or remotely inferred, that he was denied his requested work accommodation because of his disability. ECF No. 130-2, Ex. 1, DOC 000019, lines 5-9, 13-17. Under the more strict causation requirement of the RA, Lewald has not alleged any facts which infer that his disability was the "sole cause" of the denial to accommodate his employment restriction. At most, Lewald has alleged that there was an oversight within the PADOC for not notifying Lewald that his work restriction expired in 2020 or for not automatically implementing his improperly requested employment restriction.

It appears that Lewald had a misguided assumption that he would automatically keep his prison job at SCI Albion when transferred to SCI Phoenix. *Id.*, DOC 000015, lines 7-13. However, Lewald's employment restrictions of "No food service-handle/janitor" had long since expired by the time of his incident in February 2022. ECF No. 130-7, Ex. 6, DOC 000068. Despite filing grievances, sick calls, and speaking with "at least 20 people", Lewald never submitted a disability request for a work restriction. ECF No. 130-2, Ex. 1, DOC 000015, lines 14-15, DOC 000018,

6

**JA 104**

lines 13-17. Lewald possesses a copy of the inmate handbook & administrative directives. ECF No. 130-8, Ex. 7, DOC 000070. DC-ADM 006, which governs accommodations for inmates with disabilities, requires that an inmate seeking an accommodation for a disability shall submit an inmate disability request form. ECF No. 130-5, Ex. 4, DOC 000050. Lewald admits that he never submitted a disability accommodation request form for a work restriction. ECF No. 130-2, Ex. 1, DOC 000018, lines 12-15. According to Lewald, his work supervisor's rationale for placing him in Food Services was either random or out of convenience, but not because of his back disability. *Id.*, DOC 000019, lines 15-17. In sum, there is simply no record or evidence that any of the alleged non-responsiveness was solely because of Lewald's disability, as required by the RA.

Therefore, Defendant PADOC is entitled to summary judgment on Lewald's RA claim for failure to meet his burden of proof as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendant Pennsylvania Department of Corrections respectfully requests that its Motion for Summary Judgment be granted and that judgment be entered in its favor.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    */s/ Brendan Mullen*

        BRENDAN MULLEN
        Deputy Attorney General
        Attorney ID 334199

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 559-1016
bmullen@attorneygeneral.gov

        NICOLE R. DITOMO
        Chief Deputy Attorney General
        Civil Litigation Section

February 6, 2025
        *Counsel for Pennsylvania Department of Corrections*

## CERTIFICATE OF SERVICE

I, Brendan Mullen, hereby certify that the foregoing *Pennsylvania Department of Corrections' Motion for Summary Judgment* has been filed electronically on this date and is available for viewing and downloading from the Court's Electronic Case Filing system. Further, I hereby certify that I caused to be served a copy of the foregoing document via United States Postal Service upon the following:

<u>VIA U.S. MAIL</u>
Smart Communications/PADOC
Troy Lewald, NS-1262
SCI Phoenix
PO Box 33028
St. Petersburg, FL 33733
*Pro Se Plaintiff*

Date: February 6, 2025          <u>/s/ Brendan Mullen</u>
                                BRENDAN MULLEN
                                Deputy Attorney General

**JA 106**

# EXHIBIT 1

DOC000001

Page 1

```
1           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
2
    TROY LEWALD,              : NO.: 2:22-CV-04625
3                             :
         Plaintiff,           :
4                             :
    vs.                       :
5                             :
    PENNSYLVANIA DEPARTMENT    :
6   OF CORRECTIONS,           :
                              :
7        Defendant.           :
                              :
8                             :

9                    ------

10              Monday, October 7, 2024

11                   ------

12              Videotape deposition of TROY

13   LEWALD held remotely via Zoom at 9:29 a.m., on

14   the above date, before Sheirita Patterson,

15   Digital Reporter and Notary Public.

16                   ------

17   Job No.:  46401

18

19

20

21

22

23

24
```

DOC000002

Page 2

```
 1                      APPEARANCES

 2

     OFFICE OF ATTORNEY GENERAL
 3   BY:  BRADEN MULLEN, ESQ.
     1600 Arch Street
 4   Suite 300
     Philadelphia, PA 19103
 5   ph: 267.559.1016
     bmullen@attorneygeneral.gov
 6   Counsel for Defendant, Pennsylvania
     Department of Corrections
 7   (Via Zoom)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

DOC000003

Troy Lewald
10/07/2024

Page 3

1                            INDEX

2    WITNESS:  TROY LEWALD

3                         EXAMINATION

4                                                 PAGE

5    By MR. MULLEN                                  7

6

7
                            ------
8
                          EXHIBITS
9
     NO.                 DESCRIPTION              PAGE
10
     1    Receipt of inmate handbook and
11        administrative directives               10

12

13   (Reporter's Note: Exhibit retained by counsel
     for Defendant.)
14

15

16

17

18

19

20

21

22

23

24

DOC000004

Page 4

```
1                    -  -  -

2                PROCEEDINGS

3                    -  -  -

4          THE REPORTER:  We are now on the

5     record.  The time is 9:29 a.m. Eastern

6     Standard Time, and the day is October the

7     7th, 2024.

8          Good morning everyone.  My name is

9     Sherita Patterson.  I'm a reporter assigned

10    by Lexitas.

11          I request all parties stipulate

12    and agree by video conference technology

13    this will be the remote deposition of Mr.

14    Troy Lewald.

15          Mr. Troy, can you please raise

16    your right hand so I can see it in the

17    camera, sir?

18          Do you solemnly swear or affirm

19    the testimony you are about to give will be

20    the truth, the whole truth, and nothing but

21    the truth?

22          THE WITNESS:  I do.

23       TROY LEWALD, having been first duly

24    sworn, was examined and testified as
```

DOC000005

Page 5

1    follows:

2              THE REPORTER:  Perfect.

3              Counselor, you may begin.

4              MR. MULLEN:  Thank you, Sheirita.

5              And good morning, Mr. Lewald,

6    again.

7              THE WITNESS:  Good morning.

8              MR. MULLEN:  So we're here today

9    to take your deposition in the lawsuit

10   Lewald v. PA Department of Corrections.  I'm

11   going to read some preliminary instructions

12   for a deposition.  Obviously, this is over

13   by Zoom, so there could be some cutting off

14   of sentences and answering before questions

15   are fully asked.  So I'll just go through

16   some preliminary background stuff.

17             THE WITNESS:  Okay.

18             MR. MULLEN:  First, have you ever

19   had a deposition taken before?

20             THE WITNESS:  I have not.

21             MR. MULLEN:  So as I just

22   indicated, deposition is relatively

23   straightforward.  I'm going to ask you a

24   question, and then you're going to answer to

Page 6

1   that question, given again that this is on

2   Zoom, it can be kind of awkward if I'm in

3   the middle of asking a question, you start

4   to answer.  So I just ask that you give me

5   just, like, a second pause between when I

6   finish my answer and you start -- when I

7   finish my question, you start your answers.

8          Also everything is being taken

9   down by the court reporter this morning so

10   she can't record head nods, uh-huhs, um-

11   hums.  So I just ask if you answer any

12   question, clear yes or no answers.

13          THE WITNESS:  Sure.

14          MR. MULLEN:  Also please, if you

15   don't understand any question I ask, I can

16   rephrase, or I can ask another way.  Just

17   let me know.

18          THE WITNESS:  Okay.

19          MR. MULLEN:  Fortunately, I think

20   this deposition is going to be very brief.

21   But in the event that you need to take a

22   break, please just let me know.  I just ask

23   that you answer any pending questions I may

24   have asked.

DOC000007

Page 7

1           THE WITNESS:  Sure.

2           MR. MULLEN:  And also, even though

3      we're not in court today, your testimony is

4      under oath as if you were.

5           Do you understand that?

6           THE WITNESS:  I do.

7                -  -  -

8           DIRECT EXAMINATION

9                -  -  -

10   BY MR. MULLEN:

11      Q.   So Mr. Lewald, did you receive today's

12   deposition notice?

13      A.   I did.  Thank you.

14      Q.   Are you taking any medications that

15   would affect your ability to understand and

16   answer my questions today?

17      A.   No.

18      Q.   Mr. Lewald, could you please spell your

19   name out?

20      A.   My full name is Troy, T-R-O-Y, Lewald,

21   L-E-W-A-L-D.

22      Q.   And what is your date of birth?

23      A.   ██████████

24      Q.   What is your highest level of

DOC000008

**JA 114**

Page 8

1   education?

2       A.   Many years of college.

3       Q.   Did you ever finish college or receive

4   a college degree?

5       A.   I did, yes.

6       Q.   You did.  Is that a bachelor's or an

7   associate's degree?

8       A.   An associates.

9       Q.   Associate degree?

10      A.   Yes.

11      Q.   What have you been convicted of, Mr.

12  Lewald?

13              THE WITNESS:  Relevance.

14      Objection.  What is the relevance of that?

15              MR. MULLEN:  Just background

16      information.

17              THE WITNESS:  Yeah.  I'm going to

18      object to the relevance on that.  That's not

19      really relevant to what we're talking about

20      here today.  This is a civil case.

21  BY MR. MULLEN:

22      Q.   How long have you been in state

23  custody?

24      A.   Six years now.

DOC000009

Troy Lewald
10/07/2024

Page 9

1    Q.   How long is your sentence?

2    A.   10 year minimum.

3    Q.   And what is your current housing

4   status?

5    A.   I don't understand the question

6   exactly.

7    Q.   So you're at State Correctional

8   Institution Phoenix, correct?

9    A.   Correct.

10    Q.   So are you in, like, general population

11   there?

12    A.   Yes, general population.  I apologize.

13   I didn't understand that.

14         MR. MULLEN:  No, no worries.  If

15      you don't understand any question, please, I

16      can rephrase or try to explain better.

17         THE WITNESS:  Okay.

18   BY MR. MULLEN:

19    Q.   So outside of your criminal conviction,

20   do you have any other prior experience within the

21   legal system?

22    A.   I do not.

23    Q.   Mr. Lewald, did you ever receive an

24   inmate handbook?

DOC000010

Page 10

```
1          A.   At SCI Phoenix, no, until about one

2    month ago, two months ago, they handed them out.

3          Q.   Did you receive an inmate handbook in

4    February of 2019?

5          A.   2019?  No, I did not.

6               MR. MULLEN:  Sheirita, I'm going

7          try to share my screen here and introduce an

8          exhibit.  One moment.

9               Mr. Lewald, can you see my screen?

10              THE WITNESS:  Yeah, I do see your

11         screen.

12              MR. MULLEN:  Is that better?

13              THE WITNESS:  Okay.  I apologize,

14         I must have.  (Indiscernible) that.

15              MR. MULLEN:  I'm introducing as

16         Exhibit 1, it's the receipt of inmate

17         handbook and administrative directives.

18         It's DOC 000991 to DOC 000992.

19          (Thereupon, marked for identification

20         as Plaintiff's Exhibit 1.)

21              MR. MULLEN:  I'll also send this

22         to you after today's deposition so you can

23         have a copy of it.

24              But it shows receipt of facility
```

DOC000011

Troy Lewald
10/07/2024

Page 11

1          inmate handbook supplement and receipt of

2          facility inmate handbook and administrative

3          directive, signed by Mr. Troy Lewald on

4          February 11th, 2019.

5                    THE WITNESS:  Okay.

6    BY MR. MULLEN:

7          Q.   Does that jog your memory?

8          A.   Not really.  I don't know a Ms. Nace

9    (phonetic).  So I apologize.  I don't recall this

10   at all.  Wait.  2019 was not SCI Phoenix.  I

11   wasn't here in SCI Phoenix; that's why.

12                   MR. MULLEN:  Yeah, so that's

13        not -- I think it's upon your first -- when

14        you first are incarcerated.

15                   THE WITNESS:  Okay.  But each

16        facility has its own handbook, correct?  Or

17        supplemental handbook?

18                   MR. MULLEN:  Not that I'm aware

19        of.  As I'm aware, it's statewide.

20                   THE WITNESS:  Yeah.  Each one has

21        its own facility handbook.  It's called the

22        supplemental handbook that goes with it that

23        gives you the information for the people

24        within the facility.  So I have specific

DOC000012

Troy Lewald
10/07/2024

Page 12

1          ones for SCI Albion.  I don't believe I was

2          given one at Camp Hill, but I was given one

3          at SCI Albion.  And then recently they just

4          revamped the handbook and gave us one within

5          the past six months, I would say.

6    BY MR. MULLEN:

7          Q.   So before your transfer to Phoenix,

8    where were you incarcerated?

9          A.   I was at SCI Albion.

10         Q.   How long were you at Albion?

11         A.   Approximately two and a half years.

12         Q.   At SCI Albion, what was your inmate

13   job?

14         A.   Inmate job, I was a block tutor on a

15   privileged housing unit.

16         Q.   Can you just describe some of the tasks

17   that a block tutor performs?

18         A.   I would help the other inmates with

19   math, science.  I worked for Mr. Smay (phonetic),

20   who was a AD teacher, and I would go around

21   helping inmates with whatever questions they had,

22   and help them write paragraphs as well as answer

23   math and science, earth science mostly.

24         Q.   Mr. Lewald, you're bringing a claim

DOC000013

Troy Lewald
10/07/2024

Page 13

 1   under the Rehabilitation Act?

 2        What is your disability?

 3        A.   I had spine surgery in 2015.  I can't

 4   rotate.  I can't lift more than 10 pounds.  I

 5   can't jump.  I can't be on heights.  I can't be

 6   in wet areas.  There's a whole list of

 7   restrictions that SCI Albion had me listed under,

 8   which was the push towards being a block tutor as

 9   opposed to one of the, the other jobs available.

10        Q.   How long have you had that condition?

11        A.   Approximately since 2015 or 2016, I

12   believe.

13        Q.   Did you ever have a work restriction

14   previously?

15        A.   I've had work restrictions since being

16   incarcerated with the DOC, yes.

17        Q.   Did you have any active work

18   restrictions on February 18th of 2022?

19        A.   I don't know what the DOC had in their

20   system.  I was supposed to be seen within two

21   weeks of transfer from SCI Albion, and I was

22   never seen by anybody.

23        Q.   When were you transferred from Albion

24   to Phoenix?

DOC000014

Troy Lewald
10/07/2024

Page 14

```
 1      A.   I believe it was December 28th, 2021?

 2      Q.   Thank you.

 3      A.   Sure.

 4      Q.   So you're not aware if you've had any

 5   active work restrictions while at Phoenix on

 6   February 18th, 2022?

 7      A.   No, I was supposed to because I was

 8   transferred on promotion from SCI Albion.  So I

 9   was under the assumption that everything would

10   transfer with me.  But after being assigned a job

11   and going to medical here at SCI Phoenix, I was

12   told that those records were never transferred by

13   Ms. Tara Jackson (phonetic).

14      I went and seen her multiple times.  I wrote

15   grievances about her because she said I had to

16   call SCI Albion to have my work restrictions

17   transferred, which is unheard of.  Obviously, I

18   don't have a direct line to call SCI Albion.

19      Q.   So did Ms. Tara Jackson explain to you

20   why you didn't have any work restrictions on your

21   file?

22      A.   She did not.  She said it was the

23   inmate's responsibility to call SCI Albion and

24   have those records transferred.
```

DOC000015

Troy Lewald
10/07/2024

Page 15

```
 1      Q.   Thank you.

 2      A.   No problem.

 3      Q.   So you claim in January and February of

 4  2022, you placed various inmate requests,

 5  grievances, and sick calls regarding your light-

 6  duty work restriction.

 7      Who did you talk to about this issue other

 8  than Ms. Tara Jackson that you just mentioned?

 9      A.   I talked to Ms. Tara Jackson.  I talked

10  to -- we had a counselor on the block.  We had

11  had a unit manager.  I spoke with my supervisors

12  at the kitchen.  And I spoke with Melissa Delpani

13  (phonetic), who's the inmate employment and her

14  supervisors as well.  I must have spoke with at

15  least 20 people, I believe.

16      Q.   And do you recall when you spoke with

17  these various people?

18      A.   The day I arrived at SCI Phoenix, I

19  sent requests to Melissa Delpani, who's the

20  inmate employment, letting her know I was light

21  duty and that I wasn't able to perform certain

22  tasks.  I spoke with the unit counselor the next

23  day after I had sent her a request.

24      And then when I received the reply from
```

DOC000016

Troy Lewald
10/07/2024

Page 16

1   Melissa Delpani saying she can put me wherever

2   she wants to put me, I sent her another request,

3   letting her know that I can't provide that kind

4   of service because of my condition.  And that's

5   when I started filing the sick calls and the

6   grievances.

7        Q.   Did you ever submit a disability

8   request form?

9        A.   I did.

10       Q.   Who did you submit that to?

11       A.   I believe that goes to the nursing

12  supervisor.  They had me see a doctor.  She

13  shoved my leg in my face and said, you look fine

14  to me.  And she denied my disability request.

15       Q.   When was that disability request form

16  submitted?

17       A.   I believe it was probably April of that

18  year?

19       Q.   Which year?

20       A.   The year of the incident on the

21  complaint, 2022.

22       Q.   2022?

23       A.   Yeah.  I believe so, yes.

24       Q.   So you submitted the disability request

DOC000017

Page 17

```
 1    form after the incident in February of 2022.

 2                   THE WITNESS:  So you're chopping

 3        up a little bit here.

 4                   MR. MULLEN:  My apologies.

 5                   THE WITNESS:  No, that's okay.  So

 6        I think you're losing internet there.

 7                   MR. MULLEN:  Yeah.  It's

 8        (indiscernible) for you.

 9    BY MR. MULLEN:

10        Q.   So you submitted the disability request

11    form in April of 2022.

12        A.   For supplemental bedding?  Correct.

13    Yeah, I've never had to submit a disability

14    request form for any kind of work restrictions.

15    Those have been automatically entered by medical

16    for the past six years that I've been here.

17    Excuse me -- five years.

18        And even after the incident, I had a issue

19    with some of the medical personnel at Wellpath

20    not entering those restrictions.  In one case,

21    one lady recently deleted all my work

22    restrictions and said I was unqualified for them.

23    And then I had to go back to another sick call to

24    see another doctor who reentered all that.
```

DOC000018

Page 18

```
 1        Q.    So you did not submit yourself -- you
 2   did not personally submit a disability request
 3   form related to this restriction before February
 4   of 2022?
 5        A.    There's never been a requirement for
 6   that, for work restrictions.  I've always been
 7   regarded as disabled, and I've always been
 8   provided for in my past five years of
 9   incarceration until I got to SCI Phoenix.
10        Q.    So was there an explanation given to
11   you why you were assigned to the kitchen slash
12   janitor position at Phoenix?
13        A.    Just the requests that I have back from
14   the work supervisor -- the employment provider.
15   I can provide that to you in the mail today.  She
16   just basically said, I can put you wherever I
17   want to put you.
18              MR. MULLEN:  Thank you.
19              THE WITNESS:  No problem.
20   BY MR. MULLEN:
21        Q.    So after the February 2022 incident,
22   what was your medical treatment?  Were you
23   prescribed anything?  Or can you just, I guess,
24   walk me through that?
```

DOC000019

Page 19

```
 1        A.    Yeah.  At one point, I was prescribed
 2   medication.  The medication wasn't provided with
 3   me -- to me.  Excuse me.  And I went back to
 4   medical and asked for the medication.  The
 5   provider told me to buy ibuprofen on commissary.
 6   So I continued to go back to medical almost on a
 7   weekly basis, and I was provided 600 mg
 8   ibuprofens and diclofenac muscle relaxers.
 9        Q.    You mentioned your prescribed
10   medication.
11        Do you recall what that medication was, or
12   was it just the ibuprofen?
13        A.    The two I just said.  Ibuprofen 600 mg
14   and diclofenac, I believe is the other one she
15   provided me as a muscle relaxer.
16        Q.    Do you know how to spell that?
17        A.    I do not.  I apologize.
18        Q.    Me, either.  So as a result of your
19   injury, did you have to pay for any out-of-pocket
20   medical expenses?
21        A.    I did.  I had to pay for a lot of sick
22   calls that they said were not work related.
23   Apparently, the provider that had done the report
24   did it improperly, so it was never submitted to
```

DOC000020

Page 20

1   the employment office, and there was no cross-

2   referencing between the kitchen and the

3   employment office.

4        Q.   Do you have, like, a rough estimate of

5   how much you had spent in medical expenses

6   related to this incident?

7        A.   I do not.  I would have to add it up.

8   I don't have that off the top of my head.

9        Q.   No worries.

10            MR. MULLEN:  Sheirita, can we go

11       off the record just for one minute?

12            THE REPORTER:  Sure.  We are now

13       going off the record.  The time is 9:45 a.m.

14       Eastern Standard Time.

15          (Off the record)

16            THE REPORTER:  We are now back on

17       the record.  The time is 9:46 a.m. Eastern

18       Standard Time.

19   BY MR. MULLEN:

20       Q.   Mr. Lewald, going back to the

21   disability request form for your back condition.

22       A.   Yes.

23       Q.   Have you ever had to submit a

24   disability request form for your back for

DOC000021

```
 1   employment?

 2        A.   No, I never have submitted anything.

 3   It's always been handled by medical.  And

 4   honestly, the medical here has been phenomenal

 5   except -- till when I arrived at SCI Phoenix.

 6   It's, you know, above what you'd expect for an

 7   inmate.  It was just the transition between the

 8   SCI Albion and Phoenix.

 9        When I was in Phoenix the first time, when

10   it first opened, the lady had entered them, I

11   believe it was January of 2019.  And then when I

12   went to Camp Hill, all my restrictions followed

13   me.  I had good medical care there.  When I went

14   to SCI Albion, all my restrictions followed me.

15   They were updated there, and everybody took

16   really good care of me.  It was when I came to

17   SCI Phoenix that everything kind of fell apart.

18               MR. MULLEN:  Thank you.  I have no

19        further questions.

20               Sheirita, we can go off the record

21        now.

22               THE REPORTER:  Well, before we go

23        off the record, would you like to order the

24        transcript, Counselor?
```

DOC000022

Troy Lewald
10/07/2024

Page 22

```
 1                    MR. MULLEN:  Yes.  Can you please

 2      send me the standard PDF and the mini PDF?

 3      Just, like, (indiscernible) is fine.

 4                    THE REPORTER:  So you want the

 5      standard and the mini?

 6                    MR. MULLEN:  Yes, please.

 7                    THE REPORTER:  Okay.

 8                    THE WITNESS:  Is it possible I

 9      could get a copy to review that also?

10                    THE REPORTER:  Let me see.  I'm

11      going need to get --

12                    How do you want me to send it to

13      you, Mr. Lewald?

14                    THE WITNESS:  Just a paper copy

15      through -- it would have to go through our

16      mailing system, Smart Communications, I

17      believe.  Is that correct?  I'm not familiar

18      with the procedure on how this works.  I was

19      just looking to mark things up, if possible,

20      and have a copy of it.

21                    THE REPORTER:  Let me see.

22                    You don't have, like, a email or

23      anything?

24                    THE WITNESS:  No, I don't believe
```

DOC000023

Page 23

```
 1   we do.

 2            Is that something you could tell

 3   me, Counsel?  I'm sorry.  I didn't catch

 4   your name.

 5            MR. MULLEN:  Yeah.  Give me one

 6   second.  I have to ask somebody about that.

 7   I'm actually not sure how we send it to the

 8   institution, either.

 9            THE REPORTER:  Okay.

10            MR. MULLEN:  Give me one minute.

11   I'll ask a coworker.

12            THE WITNESS:  No problem.

13            MR. MULLEN:  Send you a copy of

14   the transcript because you'd have to order

15   it directly from the court reporter.

16   However, as a practical matter, I'll be

17   attaching as an exhibit on my motion for

18   summary judgment the entire deposition

19   transcript, so you'll get it that way.

20            THE WITNESS:  But I don't have any

21   chance to correct the record in the short-

22   term.

23            MR. MULLEN:  Sheirita, do you know

24   anything about that?  Like a read and sign?
```

DOC000024

Troy Lewald
10/07/2024

Page 24

```
 1              THE REPORTER:  Yeah.  It's just
 2    the matter of getting it to him.
 3              MR. MULLEN:  Yeah.  So yeah.
 4              THE WITNESS:  Smart
 5    Communications?  Would it have to go through
 6    Florida?
 7              MR. MULLEN:  I think it has to go
 8    through Smart Communications.  Let me pull
 9    up the -- yeah.  So I attach my mailings to
10    Mr. Lewald, Smart Communications/PA DOC,
11    Troy Lewald, NS-1262, SCI Phoenix, P.O. Box
12    33028, St. Petersburg, FL.  ZIP Code, 33733.
13              THE REPORTER:  Cool.
14              MR. MULLEN:  All right.
15              THE REPORTER:  We are now going
16    off the record.  The time is 9:52 a.m.
17    Eastern Standard Time.
18       (Deposition concluded at 9:52 a.m.)
19
20
21
22
23
24
```

DOC000025

Page 25

1              CERTIFICATE OF TRANSCRIBER

2

3        I, Jill Boogaard, a digital

4    transcriber, do hereby certify that I was

5    authorized to and did transcribe the

6    foregoing proceedings and that the

7    transcript is a true and correct record of

8    said proceedings.

9        DATED this 16th day of October, 2024.

10

11

12    _____

                Jill Boogaard,
13              Digital Transcriber

14

15

16

17

18

19

20

21

22

23

24

DOC000026

Troy Lewald
10/07/2024

Page 26

1          CERTIFICATE OF DIGITAL REPORTER

2

3          I, SHEIRITA PATTERSON, a Digital

4     Reporter and Notary Public within and for

5     the State of Texas, do hereby certify:

6

7          That the foregoing proceeding

8     hereinbefore set forth was accurately

9     captured with annotations by me during the

10    proceeding.

11

12         I further certify that I am not related

13    to any of the parties to this action by

14    blood or marriage, and that I am in no way

15    interested in the outcome of this matter.

16

17         IN WITNESS THEREOF, I have hereunto set

18    my hand this 16th day of October, 2024.

19

20

21

_____

22    Sheirita Patterson
      Notary Commission No.: TX/RON 131644443
23    Commission Expires: July 16, 2026

24

DOC000027

Troy Lewald
10/07/2024

1

**0**

**000991**
10:18

**000992**
10:18

**1**

**1**
10:16,
20

**10**
9:2
13:4

**11th**
11:4

**18th**
13:18
14:6

**2**

**20**
15:15

**2015**
13:3,11

**2016**
13:11

**2019**
10:4,5
11:4,10
21:11

**2021**
14:1

**2022**
13:18
14:6
15:4
16:21,

22
17:1,11
18:4,21

**2024**
4:7

**28th**
14:1

**3**

**33028**
24:12

**33733**
24:12

**4**

**4/17/79**
7:23

**6**

**600**
19:7,13

**7**

**7th**
4:7

**9**

**9:29**
4:5

**9:45**
20:13

**9:46**
20:17

**9:52**
24:16,
18

**A**

**a.m.**
4:5
20:13,
17
24:16,
18

**ability**
7:15

**Act**
13:1

**active**
13:17
14:5

**AD**
12:20

**add**
20:7

**administrative**
10:17
11:2

**affect**
7:15

**affirm**
4:18

**agree**
4:12

**Albion**
12:1,3,
9,10,12
13:7,
21,23
14:8,
16,18,
23
21:8,14

**answering**
5:14

**answers**
6:7,12

**apologies**
17:4

**apologize**
9:12
10:13
11:9
19:17

**Apparently**
19:23

**Approximately**
12:11
13:11

**April**
16:17
17:11

**areas**
13:6

**arrived**
15:18
21:5

**assigned**
4:9
14:10
18:11

**Associate**
8:9

**associate's**

8:7

**associates**
8:8

**assumption**
14:9

**attach**
24:9

**attaching**
23:17

**automatically**
17:15

**aware**
11:18,
19 14:4

**awkward**
6:2

**B**

**bachelor's**
8:6

**back**
17:23
18:13
19:3,6
20:16,
20,21,
24

**background**
5:16
8:15

**basically**

18:16

**basis**
19:7

**bedding**
17:12

**begin**
5:3

**birth**
7:22

**bit**
17:3

**block**
12:14,
17 13:8
15:10

**Box**
24:11

**break**
6:22

**bringing**
12:24

**buy**
19:5

**C**

**call**
14:16,
18,23
17:23

**called**
11:21

**calls**
15:5
16:5
19:22

**camera**
4:17

DOC000028

Camp
  12:2
  21:12
care
  21:13,
  16
case
  8:20
  17:20
catch
  23:3
chance
  23:21
chopping
  17:2
civil
  8:20
claim
  12:24
  15:3
clear
  6:12
Code
  24:12
college
  8:2,3,4
commissary
  19:5
Communications
  22:16
  24:5,8
Communications/pa
  24:10

complaint
  16:21
concluded
  24:18
condition
  13:10
  16:4
  20:21
conference
  4:12
continued
  19:6
convicted
  8:11
conviction
  9:19
Cool
  24:13
copy
  10:23
  22:9,
  14,20
  23:13
correct
  9:8,9
  11:16
  17:12
  22:17
  23:21
Correctional
  9:7

Corrections
  5:10
Counsel
  23:3
counselor
  5:3
  15:10,
  22
  21:24
court
  6:9 7:3
  23:15
coworker
  23:11
criminal
  9:19
cross-
  20:1
current
  9:3
custody
  8:23
cutting
  5:13

_____

D
date
  7:22
day
  4:6
  15:18,
  23
December
  14:1
degree
  8:4,7,9

deleted
  17:21
Delpani
  15:12,
  19 16:1
denied
  16:14
Department
  5:10
deposition
  4:13
  5:9,12,
  19,22
  6:20
  7:12
  10:22
  23:18
  24:18
describe
  12:16
diclofenac
  19:8,14
direct
  7:8
  14:18
directive
  11:3
directives
  10:17
directly
  23:15
disability
  

13:2
  16:7,
  14,15,
  24
  17:10,
  13 18:2
  20:21,
  24
disabled
  18:7
DOC
  10:18
  13:16,
  19
  24:10
doctor
  16:12
  17:24
duly
  4:23
duty
  15:6,21

_____

E
earth
  12:23
Eastern
  4:5
  20:14,
  17
  24:17
education
  8:1
email
  22:22
employment
  15:13,

20
  18:14
  20:1,3
  21:1
entered
  17:15
  21:10
entering
  17:20
entire
  23:18
estimate
  20:4
event
  6:21
EXAMINATION
  7:8
examined
  4:24
Excuse
  17:17
  19:3
exhibit
  10:8,
  16,20
  23:17
expect
  21:6
expenses
  19:20
  20:5
experience
  9:20
explain
  9:16
  14:19

DOC000029

explanation
  18:10

---

**F**

face
  16:13
facility
  10:24
  11:2,
  16,21,
  24
familiar
  22:17
February
  10:4
  11:4
  13:18
  14:6
  15:3
  17:1
  18:3,21
fell
  21:17
file
  14:21
filing
  16:5
fine
  16:13
  22:3
finish
  6:6,7
  8:3
FL
  24:12
Florida
  24:6

form
  16:8,15
  17:1,
  11,14
  18:3
  20:21,
  24
Fortunately
  6:19
full
  7:20
fully
  5:15

---

**G**

gave
  12:4
general
  9:10,12
give
  4:19
  6:4
  23:5,10
good
  4:8
  5:5,7
  21:13,
  16
grievances
  14:15
  15:5
  16:6
guess
  18:23

---

**H**

half
  12:11
hand
  4:16
handbook
  9:24
  10:3,17
  11:1,2,
  16,17,
  21,22
  12:4
handed
  10:2
handled
  21:3
head
  6:10
  20:8
heights
  13:5
helping
  12:21
highest
  7:24
Hill
  12:2
  21:12
honestly
  21:4
housing
  9:3
  12:15
hums
  6:11

---

**I**

ibuprofen
  19:5,
  12,13
ibuprofens
  19:8
identification
  10:19
improperly
  19:24
incarcerated
  11:14
  12:8
  13:16
incarceration
  18:9
incident
  16:20
  17:1,18
  18:21
  20:6
indiscernible
  10:14
  17:8
  22:3
information
  8:16
  11:23
injury

  19:19
inmate
  9:24
  10:3,16
  11:1,2
  12:12,
  14
  15:4,
  13,20
  21:7
inmate's
  14:23
inmates
  12:18,
  21
institution
  9:8
  23:8
instructions
  5:11
internet
  17:6
introduce
  10:7
introducing
  10:15
issue
  15:7
  17:18

---

**J**

Jackson
  14:13,
  19

15:8,9
janitor
  18:12
January
  15:3
  21:11
job
  12:13,
  14
  14:10
jobs
  13:9
jog
  11:7
judgment
  23:18
jump
  13:5

---

**K**

kind
  6:2
  16:3
  17:14
  21:17
kitchen
  15:12
  18:11
  20:2

---

**L**

L-E-W-A-
L-D
  7:21
lady
  17:21
  21:10

DOC000030

lawsuit
  5:9
leg
  16:13
legal
  9:21
letting
  15:20
  16:3
level
  7:24
Lewald
  4:14,23
  5:5,10
  7:11,
  18,20
  8:12
  9:23
  10:9
  11:3
  12:24
  20:20
  22:13
  24:10,
  11
Lexitas
  4:10
lift
  13:4
light
  15:20
light-
  15:5
list
  13:6
listed
  13:7
long
  8:22

9:1
12:10
13:10
losing
  17:6
lot
  19:21

———————

M
mail
  18:15
mailing
  22:16
mailings
  24:9
manager
  15:11
mark
  22:19
marked
  10:19
math
  12:19,
  23
matter
  23:16
  24:2
medical
  14:11
  17:15,
  19
  18:22
  19:4,6,
  20 20:5
  21:3,4,
  13
medicati
on

19:2,4,
  10,11
medicati
ons
  7:14
Melissa
  15:12,
  19 16:1
memory
  11:7
mentione
d
  15:8
  19:9
mg
  19:7,13
middle
  6:3
mini
  22:2,5
minimum
  9:2
minute
  20:11
  23:10
moment
  10:8
month
  10:2
months
  10:2
  12:5
morning
  4:8
  5:5,7
  6:9
motion
  23:17

MULLEN
  5:4,8,
  18,21
  6:14,19
  7:2,10
  8:15,21
  9:14,18
  10:6,
  12,15,
  21
  11:6,
  12,18
  12:6
  17:4,7,
  9
  18:18,
  20
  20:10,
  19
  21:18
  22:1,6
  23:5,
  10,13,
  23
  24:3,7,
  14
multiple
  14:14
muscle
  19:8,15

———————

N
Nace
  11:8
nods
  6:10
notice
  7:12
NS-1262
  24:11

nursing
  16:11

———————

O
oath
  7:4
object
  8:18
Objectio
n
  8:14
October
  4:6
office
  20:1,3
opened
  21:10
opposed
  13:9
order
  21:23
  23:14
out-of-
pocket
  19:19

———————

P
P.O.
  24:11
PA
  5:10
paper
  22:14
paragrap
hs
  12:22
parties

4:11
past
  12:5
  17:16
  18:8
Patterso
n
  4:9
pause
  6:5
pay
  19:19,
  21
PDF
  22:2
pending
  6:23
people
  11:23
  15:15,
  17
Perfect
  5:2
perform
  15:21
performs
  12:17
personal
ly
  18:2
personne
l
  17:19
Petersbu
rg
  24:12

phenomenal
21:4
Phoenix
9:8
10:1
11:10,
11 12:7
13:24
14:5,11
15:18
18:9,12
21:5,8,
9,17
24:11
phonetic
11:9
12:19
14:13
15:13
Plaintiff's
10:20
point
19:1
population
9:10,12
position
18:12
pounds
13:4
practical
23:16
preliminary
5:11,16

prescribed
18:23
19:1,9
previously
13:14
prior
9:20
privileged
12:15
problem
15:2
18:19
23:12
procedure
22:18
PROCEEDINGS
4:2
promotion
14:8
provide
16:3
18:15
provided
18:8
19:2,7,
15
provider
18:14
19:5,23
pull
24:8
push

13:8
put
16:1,2
18:16,
17

_____

Q
question
5:24
6:1,3,
7,12,15
9:5,15
questions
5:14
6:23
7:16
12:21
21:19

_____

R
raise
4:15
read
5:11
23:24
recall
11:9
15:16
19:11
receipt
10:16,
24 11:1
receive
7:11
8:3
9:23
10:3

received
15:24
recently
12:3
17:21
record
4:5
6:10
20:11,
13,15,
17
21:20,
23
23:21
24:16
records
14:12,
24
reentered
17:24
referencing
20:2
regarded
18:7
Rehabilitation
13:1
related
18:3
19:22
20:6
relaxer
19:15
relaxers
19:8

relevance
8:13,
14,18
relevant
8:19
remote
4:13
rephrase
6:16
9:16
reply
15:24
report
19:23
reporter
4:4,9
5:2 6:9
20:12,
16
21:22
22:4,7,
10,21
23:9,15
24:1,
13,15
request
4:11
15:23
16:2,8,
14,15,
24
17:10,
14 18:2
20:21,
24
requests
15:4,19
18:13

requirement
18:5
responsibility
14:23
restriction
13:13
15:6
18:3
restrictions
13:7,
15,18
14:5,
16,20
17:14,
20,22
18:6
21:12,
14
result
19:18
revamped
12:4
review
22:9
rotate
13:4
rough
20:4

_____

S
SCI
10:1
11:10,
11
12:1,3,

DOC000032

Troy Lewald
10/07/2024

6

9,12
13:7,21
14:8,
11,16,
18,23
15:18
18:9
21:5,8,
14,17
24:11
**science**
12:19,
23
**screen**
10:7,9,
11
**send**
10:21
22:2,12
23:7,13
**sentence**
9:1
**sentences**
5:14
**service**
16:4
**share**
10:7
**Sheirita**
5:4
10:6
20:10
21:20
23:23
**Sherita**
4:9
**short-**
23:21

**shoved**
16:13
**shows**
10:24
**sick**
15:5
16:5
17:23
19:21
**sign**
23:24
**signed**
11:3
**sir**
4:17
**slash**
18:11
**Smart**
22:16
24:4,8,
10
**Smay**
12:19
**solemnly**
4:18
**specific**
11:24
**spell**
7:18
19:16
**spent**
20:5
**spine**
13:3
**spoke**
15:11,
12,14,
16,22

**St**
24:12
**standard**
4:6
20:14,
18
22:2,5
24:17
**start**
6:3,6,7
**started**
16:5
**state**
8:22
9:7
**statewide**
11:19
**status**
9:4
**stipulate**
4:11
**straight
forward**
5:23
**stuff**
5:16
**submit**
16:7,10
17:13
18:1,2
20:23
**submitted**
16:16,
24
17:10
19:24

21:2
**summary**
23:18
**supervisor**
16:12
18:14
**supervisors**
15:11,
14
**supplement**
11:1
**supplemental**
11:17,
22
17:12
**supposed**
13:20
14:7
**surgery**
13:3
**swear**
4:18
**sworn**
4:24
**system**
9:21
13:20
22:16

———————

**T**
T-R-O-Y
7:20
**taking**
7:14

**talk**
15:7
**talked**
15:9
**talking**
8:19
**Tara**
14:13,
19
15:8,9
**tasks**
12:16
15:22
**teacher**
12:20
**technology**
4:12
**term**
23:22
**testified**
4:24
**testimony**
4:19
7:3
**things**
22:19
**till**
21:5
**time**
4:5,6
20:13,
14,17,
18 21:9
24:16,
17

**times**
14:14
**today**
5:8
7:3,16
8:20
18:15
**today's**
7:11
10:22
**told**
14:12
19:5
**top**
20:8
**transcript**
21:24
23:14,
19
**transfer**
12:7
13:21
14:10
**transferred**
13:23
14:8,
12,17,
24
**transition**
21:7
**treatment**
18:22
**Troy**
4:14,
15,23

DOC000033

7:20
11:3
24:11
**truth**
4:20,21
**tutor**
12:14,
17 13:8

---

**U**
**uh-huhs**
6:10
**um-**
6:10
**understa
nd**
6:15
7:5,15
9:5,13,
15
**unheard**
14:17
**unit**
12:15
15:11,
22
**unqualif
ied**
17:22
**updated**
21:15

---

**V**
**video**
4:12

---

**W**
**Wait**
11:10
**walk**
18:24
**weekly**
19:7
**weeks**
13:21
**Wellpath**
17:19
**wet**
13:6
**work**
13:13,
15,17
14:5,
16,20
15:6
17:14,
21
18:6,14
19:22
**worked**
12:19
**works**
22:18
**worries**
9:14
20:9
**write**
12:22
**wrote**
14:14

---

**Y**
**year**
9:2
16:18,
19,20
**years**
8:2,24
12:11
17:16,
17 18:8

---

**Z**
**ZIP**
24:12
**Zoom**
5:13
6:2

DOC000034

# EXHIBIT 2

**JA 141**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Pennsylvania Department of Corrections** | | | | | | | | **05/31/2024** |
| **State Correctional Institute at ALL Facilities** | | | | | | | | |
| **Work Assignments** | | | | | | | | |

**mdellipont**

| Job | Location | Cust. Code | Start Date | End Date | Type | Pay Grp | Pay Step |
|---|---|---|---|---|---|---|---|
| **Facility: PHX** | | | | | | | |
| **NS1262:  Name: LEWALD, TROY VINCENT** | J-A-1002-01 | 3 | | | | | |
| EDUCATION SERVICES \ Pay Grp 4 - Voc - Business \ Crew   1 ( Croll , ███ ) | | | 04/05/2024 | | Secondary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Pay Grp 4 - Health \ Crew   6 ( Irvin , ███ ) | | | 02/21/2023 | 03/03/2023 | Secondary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Pay Grp 4 - Science \ Crew   6 ( Irvin , ███ ) | | | 10/14/2022 | 02/20/2023 | Secondary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Education - Pay Grp 4 \ Crew   6 ( Irvin , ███ ) | | | 09/19/2022 | 10/13/2022 | Secondary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Education - Pay Grp 4 \ Crew   7 ( Markley , ███ ) | | | 03/14/2022 | 09/09/2022 | Secondary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Education - Pay Grp 3 \ Crew   7 ( Markley , ███ ) | | | 01/24/2022 | 03/13/2022 | Secondary | 3 | 2B-0.30 |
| EDUCATION SERVICES \ HSD \ Crew   1 ( Wallis , ███ ) | | | 04/05/2024 | | Tertiary | 3 | NP-0.00 |
| EDUCATION SERVICES \ Pay Grp 4 - Voc - Carpentry \ Crew   1 ( Markley , ███ ) | | | 10/21/2022 | 06/09/2023 | Tertiary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Education - Pay Grp 4 \ Crew   7 ( Markley , ███ ) | | | 10/03/2022 | 10/20/2022 | Tertiary | 4 | 2B-0.30 |
| EDUCATION SERVICES \ Education - Pay Grp 4 \ Crew   6 ( Irvin , ███ ) | | | 05/02/2022 | 09/09/2022 | Tertiary | 4 | 2B-0.30 |
| MISCELLANEOUS \ Misconduct Loss of Job - GLP \ Crew   1 ( Hensley ███ ) | | | 05/24/2023 | | Primary | 4 | GL-0.86 |
| MISCELLANEOUS \ GLP \ Crew   1 ( Hensley ███ ) | | | 08/11/2022 | 05/23/2023 | Primary | 4 | GL-0.86 |
| MISCELLANEOUS \ GLP \ Crew   1 ( Hensley ███ ) | | | 03/16/2022 | 08/10/2022 | Primary | 4 | GL-0.86 |
| MISCELLANEOUS \ NO WORK - Medical GLP \ Crew   1 ( Hensley ███ ) | | | 02/23/2022 | 03/15/2022 | Primary | 4 | M2-0.60 |
| FOOD SERVICES \ WEST - QUAD 1 - Kitchen 0500 (off Tues/Wed) \ Crew   1 ( Choate , ███ ) | | | 01/17/2022 | 02/22/2022 | Primary | 3 | 3C-0.46 |
| MISCELLANEOUS \ IBT - GLP \ Crew   1 ( Hensley ███ ) | | | 12/29/2021 | 01/16/2022 | Primary | 4 | GL-0.72 |
| **Facility: ALB** | | | | | | | |
| **NS1262:  Name: LEWALD, TROY VINCENT** | J-A-1002-01 | 3 | | | | | |
| EDUCATION SERVICES \ Block Tutor \ Crew   4 ( McHenry , ███ ) | | | 11/10/2020 | 12/28/2021 | Primary | 1 | 3C-0.38 |
| INMATE EMPLOYMENT \ Light Duty \ Crew   1 ( Roscinski , ███ ) | | | 05/24/2019 | 11/09/2020 | Primary | 3 | GL-0.72 |
| INMATE EMPLOYMENT \ GLP \ Crew   1 ( Roscinski , ███ ) | | | 05/23/2019 | 05/23/2019 | Primary | 3 | GL-0.72 |
| EDUCATION SERVICES \ School Group 3 \ Crew   7 ( Lanyon , ███ ) | | | 01/07/2020 | 02/14/2020 | Secondary | 3 | 2B-0.25 |
| EDUCATION SERVICES \ School Group 3 \ Crew   9 ( Smay ███ ) | | | 07/15/2019 | 12/27/2019 | Secondary | 3 | 2B-0.25 |
| EDUCATION SERVICES \ School Group 3 \ Crew   9 ( Smay ███ ) | | | 07/08/2019 | 07/14/2019 | Secondary | 3 | 2B-0.25 |
| EDUCATION SERVICES \ School Group 3 \ Crew   4 ( Clark , ███ ) | | | 06/03/2019 | 07/07/2019 | Secondary | 3 | 2B-0.25 |
| **Facility: CAM** | | | | | | | |
| **NS1262:  Name: LEWALD, TROY VINCENT** | J-A-1002-01 | 3 | | | | | |
| INMATE EMPLOYMENT \ GLP \ Crew   1 ( Blough , ███ ) | | | 03/26/2019 | 05/21/2019 | Primary | 1 | GL-0.72 |
| INMATE EMPLOYMENT \ Unassigned \ Crew   1 ( Blough , ███ ) | | | 02/01/2019 | 03/25/2019 | Primary | 1 | NP-0.00 |

**Number of Inmate(s): 1**

**JA 142**

# EXHIBIT 4

DOC000040



| POLICY STATEMENT<br>Commonwealth of Pennsylvania • Department of Corrections | | |
| --- | --- | --- |

| Policy Subject: | | Policy Number: |
| --- | --- | --- |
| **Reasonable Accommodations for Inmates with Disabilities** | | **DC-ADM 006** |

| Date of Issue: | Authority: | Effective Date: |
| --- | --- | --- |
| **January 2, 2009** | **Signature on File**<br><br>**Jeffrey A. Beard, Ph.D.** | **January 23, 2009** |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections.

## III. POLICY

It is the policy of the Department to establish procedures for an inmate to request an accommodation for a qualified disability that affects a major life activity and to ensure that:

A. every inmate, including an inmate with a qualified disability, is housed in a manner that provides for his/her safety and security;

B. reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation or cause an undue hardship on the Department;

C.  reasonable accommodations are made to the physical structure of housing used by an inmate with a qualified disability to accommodate the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;[1]

D.  a Unit Manager may authorize housing unit furnishings within the cell/dorm to be rearranged to best accommodate an inmate with a qualified disability. A visually impaired inmate shall be given bottom bunk status;

E.  reasonable accommodations are made to facility programs and activities to permit participation by a qualified inmate with a disability; and

F.  no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department.[2]

## IV.  PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

## V.  SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy for a specific period.

## VI.  RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual.  This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## VII.  RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A.  Release of Information

1.  Policy

    This policy document is public information and may be released upon request.

2.  Confidential Procedures (if applicable)

    Confidential procedures for this document, if any, are <u>not public information</u> and may not be released in its entirety or in part, without the approval of the Secretary of

---

[1] 4-4142
[2] 4-4277, 4-4429

Corrections/designee. Confidential procedures may be released to any Department of Corrections employee on an as needed basis.

**B. Distribution of Policy**

1. General Distribution

   The Department of Corrections' policy and procedures shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution of confidential procedures to other individuals and/or agencies is subject to the approval of the Secretary of Corrections/designee.

2. Distribution to Staff

   It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures either in hard copy or via email, whichever is most appropriate.

## VIII. SUPERSEDED POLICY AND CROSS REFERENCE

**A. Superseded Policy**

1. Department Policy

   DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities, issued March 26, 2004, by Secretary Jeffrey A. Beard, Ph.D.

2. Facility Policy and Procedures

   This document supersedes all facility policy and procedures on this subject.

**B. Cross Reference(s)**

1. Administrative Manuals

   a. DC-ADM 804, Inmate Grievance System

   b. DC-ADM 816, Inmate Compensation System

   c. 5.1.1, Staff Development and Training

2. ACA Standards

   a. Administration of Correctional Agencies: 2-CO-4E-01

b. Adult Correctional Institutions: 4-4142, 4-4277, 4-4285, 4-4286, 4-4348, 4-4362, 4-4363, 4-4365, 4-4366, 4-4375, 4-4429, 4-4450

c. Adult Community Residential Services: 4-ACRS-1A-09, 4-ACRS-4C-06, 4-ACRS-4C-23, 4-ACRS-6A-04, 4-ACRS-6A-11, 4-ACRS-6B-01, 4-ACRS-7A-05

d. Correctional Training Academies: None

DOC000044



| PROCEDURES MANUAL |
| Commonwealth of Pennsylvania • Department of Corrections |

| Policy Subject: | Policy Number: |
| Reasonable Accommodations for Inmates with Disabilities | DC-ADM 006 |

| Date of Issue: | Authority: | Effective Date: |
| January 2, 2009 | Signature on File<br>Jeffrey A. Beard, Ph.D. | January 23, 2009 |

Release of Information:

**Policy Document:** This policy document is public information and may be released upon request.

**Procedures Manual:** The procedures manual for this policy may be released in its entirety or in part, with the prior approval of the Secretary/designee. Unless prior approval of the Secretary/designee has been obtained, this manual or parts thereof may be released to any Department employee on an as needed basis only.

***DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual***
***Table of Contents***

### Section 1 – General Procedures

A. Classification/Diagnosis ................................................................. 1-1
B. Facility Placement ........................................................................ 1-1
C. Inmate Work Programs ................................................................. 1-2
D. Staff Training................................................................................. 1-2

### Section 2 – Accommodations

A. Request for Accommodation .......................................................... 2-1
B. Review of the Inmate Disability Accommodation Request Form ....... 2-1
C. General Accommodations............................................................... 2-2
D. Program/Services Accommodations ............................................... 2-3

### Section 3 – Specific Disabilities

A. Local Procedures .......................................................................... 3-1
B. Accommodations for the Deaf and Hard of Hearing........................ 3-1
C. Accommodations for the Visually Impaired .................................... 3-1
D. Accommodations for the Mentally and/or Physically Impaired ......... 3-1

## Section 1 – General Procedures

### A. Classification/Diagnosis

1. Qualified health-care personnel shall perform a medical, dental, and mental health screening/appraisal of each inmate, including intra-system transfers, within 14 days of the inmate's initial commitment. Only qualified health care professionals shall determine whether an inmate should retain any prosthetic device or equipment upon initial reception.

2. The facility's health care department, through qualified personnel or specialists, and in conjunction with the affected inmate, shall make the diagnosis of a qualified disability, unless previously diagnosed, and shall determine the level of accommodation needed and provide the appropriate medical treatment, as required by the condition. Medical staff shall notify facility staff of any impairment.

3. In determining the type of auxiliary aid and/or service necessary, consideration should be given to the requests of the inmate with the disability, ***but the inmate's request is not determinative***. This information shall be recorded in the inmate's medical file. The inmate's **DC-17X, Adjustment Record** should reflect this same information.

4. Upon the request of the inmate. A notation shall be placed on the inmate's I.D. card that he/she has a qualified disability to alert staff that accommodations may be needed to properly communicate.

### B. Facility Placement[1]

1. In addition to all other factors considered by the Department in making facility assignments of an inmate, consideration may be given to facilities and programming available at various facilities to accommodate an inmate's particular qualified disability(s)[2] in accordance with **Facilities Designated to House Qualified Disabled Inmates (Attachment 1-A)**. An inmate diagnosed with a qualified disability may be assigned to a facility where accommodations exist to provide for this population. An inmate diagnosed as mentally and/or physically impaired may be assigned to a Special Needs Unit, depending on the severity of the disability, and may be assigned to a facility with a Mental Health Unit or a facility where accommodations exist to provide for this population.

2. Community Corrections Center (CCC) Placement

   In addition to all other factors considered by the Department in making assignments of an inmate for CCC placement, an inmate with a qualified disability who is accepted for CCC placement shall be placed in a CCC or Community Contract Facility (CCF) that provides accommodations according to the individual needs of the inmate.

---

[1] 4-4348
[2] 4-ACRS-6A-04, 4-ACRS-6A-11

DOC000047

3. Transfers

   Material submitted requesting the transfer of a qualified disabled inmate to another facility must clearly indicate that the inmate has a qualified disability and include the level of accommodation and resulting services that are required.

## C. Inmate Work Programs

1. No inmate shall be discriminated against from participating in work programs due to a qualified disability. The Department is required to make reasonable accommodations to the known disability of qualified inmate applicants with disabilities. Compensation and job titles shall be in accordance with Department policy **DC-ADM 816, "Inmate Compensation System."**[3]

2. Accommodations that pose undue hardships for the Department or pose a threat to security need not be provided. An inmate will not be placed in a work program, which clearly jeopardizes his/her safety or security.

## D. Staff Training

Housing Unit Staff who have primary supervisory responsibility for an affected inmate may obtain out-service training to learn methods of communicating with the inmate and/or managing his/her specific disability in accordance with Department policy **5.1.1, "Staff Development and Training."**

---

[3] 4-4450

DOC000048

**Facilities Designated to Housed Qualified Disabled Inmates**

1. Every qualified deaf and hard of hearing male affected by this policy shall be housed at one of the following facilities:

   a. SCI-Albion;

   b. SCI-Camp Hill;

   c. SCI-Graterford.

2. Every qualified deaf and hard of hearing female affected by this policy shall be housed at SCI-Muncy.

3. Every qualified mentally and/or physically disabled male inmate affected by this policy shall be housed at one of the following facilities:

   a. SCI-Albion;

   b. SCI-Coal Township;

   c. SCI-Somerset;

   d. SCI-Mahanoy;

   e. SCI-Houtzdale;

   f. SCI-Laurel Highlands; or

   g. any facility with a Mental Health Unit (MHU), Special Needs Unit (SNU), or any other appropriately equipped facility.

4. Every qualified mentally and/or physically disabled female inmate affected by this policy shall be housed at SCI-Muncy or SCI-Cambridge Springs.

5. Every qualified vision impaired male and female inmate affected by this policy shall be housed at a facility designated as the most appropriate to handle the vision impairment based on the severity of the disability.

6. Each disabled Young Adult Offender (YAO) shall be housed at SCI Pine Grove.

7. Wheelchair bound inmates shall be housed at a prototypical facility or any other appropriately equipped facility.

## Section 2 – Accommodations

### A. Request for Accommodation

1.  An inmate seeking an accommodation for a disability shall submit to the Corrections Health Care Administrator (CHCA) or to the person performing the functions of the CHCA if the facility does not have a CHCA, a request using the **Inmate Disability Accommodation Request Form (Attachment 2-A)**.

2.  The **Inmate Disability Accommodation Request Form** must describe the inmate's specific disability(ies), the specific activity(ies), and the specific action the inmate wishes the Department to take to allow him/her to perform the activities.

3.  Any observing staff member can make a request for accommodation on behalf of an inmate.

### B. Review of the Inmate Disability Accommodation Request Form

1.  The CHCA/designee review shall include the following:

    a.  review the **Inmate Disability Accommodation Request Form** to determine if it is legible and complete. Illegible or incomplete forms shall be returned to the inmate;

    b.  evaluate whether the inmate is disabled as described in the **Inmate Disability Accommodation Request Form**;

    c.  evaluate the inmate's ability to perform the activities described in the **Inmate Disability Accommodation Request Form** and whether the requested accommodation will enable the inmate to perform the activities;

    d.  *arrange for a current clinical evaluation of the inmate's alleged disability and/or impairment by a medical practitioner in order to validate the accommodation request;*

    e.  in evaluating the inmate's request, the CHCA/designee shall take all appropriate action(s) as the CHCA deems reasonably necessary, including reviewing medical records pertaining to the inmate, arranging to have the inmate examined and/or tested by an appropriate person or persons, and/or interviewing staff and the inmate. The requests of the evaluation shall be summarized in a memorandum; and

    f.  the CHCA shall refer the specific **Inmate Disability Accommodation Request Form** along with the memorandum summarizing the results of the evaluation to the Facility Manager/designee.

2.  The Facility Manager review shall include the following:

2-1

Case 2:25-cv-04625-CFK    Document 35    Page 157    Date Filed: 03/14/2026    Page 6 of 21

**DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Procedures Manual**
**Section 2 – Accommodations**

a.  review the **Inmate Disability Accommodation Request Form**, the CHCA's memorandum summarizing the results of the investigation, and all other relevant records and make a recommendation whether the requested accommodation should be granted;

b.  in making his/her recommendation, the Facility Manager may consult with the Deputy Superintendent of Centralized Services (DSCS)/designee, the CHCA or other representative of the Medical Department, the Security Captain or other representative of the Security Office, and/or other staff person with relevant knowledge and expertise; and

c.  submit his/her recommendation to the Central Office Inmate Disability Accommodation Committee (COIDAC) along with the **Inmate Disability Accommodation Request Form** and the CHCA's memorandum, an alternative accommodation, if any, and any other information the Facility Manager deems appropriate.

3.  The COIDAC shall be determined by the Secretary and shall, at a minimum, consist of two Deputy Secretaries, the Director of the Bureau of Health Care Services (BHCS), the Director of the Bureau of Treatment Services (BTS), and the ***Director of the Office of Population Management (OPM)*** or their designees. COIDAC review shall include the following:

a.  within ***30*** days of receiving a complete submission from the Facility Manager or longer period as may be approved by the Secretary, the COIDAC shall review the **Inmate Disability Accommodation Request Form**, the CHCA's memorandum summarizing the results of the evaluation, and the Facility Manager's recommendation; and

b.  determine whether the inmate suffers from a disability and if so, the manner in which the inmate's disability is to be accommodated. The COIDAC shall submit a memorandum to the Facility Manager outlining its determination.

4.  The Facility Manager shall notify the inmate in writing of the final determination within ten working days of receiving the COIDAC's determination. An inmate who is dissatisfied with the COIDAC's determination may submit a grievance under Department policy **DC-ADM 804, "Inmate Grievance System."**

5.  ***The Facility Manager may impose sanctions, at his/her discretion, on the inmate, if it is determined that the inmate's accommodation request is frivolous or malicious or not brought in good faith. Possible sanctions may include the assessment of a co-payment from the inmate's account for any evaluation and/or examination of the inmate by a medical professional in assessing the accommodation request.***

6.  ***Any and all records relevant to and submitted in connection with the accommodation request shall be retained in the inmate's medical file under the Legal/Correspondence Section.***

Issued: 11/24/2014
Effective: 12/29/2014
DOC000051

Case 2:25-cv-01625-CFK Document 35 Page 158 Filed Date Filed: 03/14/2026 of 21

**DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Procedures Manual**
**Section 2 – Accommodations**

## C. General Accommodations

In the event an inmate is diagnosed with a qualified disability, the Facility Disabilities Accommodation Coordinator shall be responsible for the following:

1. provide and update the Control Center with a roster of qualified disabled inmates to be used in the event of an emergency;

2. set up procedures, if necessary, for the transfer of a qualified disabled inmate as soon as possible once his/her condition is realized;

3. notify the Corrections Classification and Program Manager (CCPM) of the needs of a disabled inmate for placement into programs which may require special equipment and/or staff members to carry out these needs;

4. notify the Records Office so special needs can be met when transferring an inmate in accordance with policy;

5. notify the Unit Managers of these special needs when staffing inmate programs;

6. notify the Corrections Education and Vocational Coordinator (CEVC) responsible for inmate placement in job assignments (the CEVC is responsible for notifying the work supervisors of any special needs); and

7. notify the appropriate Deputy Secretary regarding any accommodations that may have an adverse impact on security.

## D. Programs/Services Accommodations

1. Educational Programs

   This applies to an inmate who attends school. Accommodations shall be provided to access the program(s), if needed. Information will be communicated to the inmate in a manner which will maximize the inmate's ability to comprehend and understand the information.

2. Library Services

   An inmate who has a qualified disability shall have access to the facility's library.

3. Treatment Programs

   Treatment programs include programs or services in preparation for parole or to deal with problems identified by staff. These generally include sex offender treatment, alcohol and other drugs (AOD) treatment, or other therapy classes or groups. Accommodations shall be provided to access the program(s), if needed.

Issued: 11/24/2014
Effective: 12/29/2014
DOC000052

**JA 155**

4. Medical/Psychiatric Treatment

   Accommodations shall be provided to access treatment, if needed. The level and type of accommodations shall be based upon the individual needs of the inmate, as determined by the health care staff. Information will be communicated to the inmate in a manner, by the health care staff. Information will be communicated to the inmate in a manner, which will maximize the inmate's ability to comprehend and understand the information.

5. Misconduct Hearing

   Accommodations shall be provided in the hearing process, if needed. Information will be communicated to the inmate in a manner, which will maximize the inmate's ability to comprehend and understand the information.

6. Activities/Recreational/Commissary/etc.

   Special accommodations for an inmate accessing these services need not be generally provided. However, in specific cases, auxiliary aids and services may have to be provided if the affected inmate cannot otherwise communicate in order to access the service(s).

Issued: 11/24/2014
Effective: 12/29/2014
DOC000053

## Inmate Disability Accommodation Request Form

Complete blocks 1 through 6 below as completely as possible and submit to the Corrections Healthcare Administrator. Please write legibly or print. Forms that cannot be read will be returned.

| 1. Inmate Name: | 2. DOC Number: | 3. Date: |
|---|---|---|

| 4. Describe your physical or mental disability: |
|---|
| |

| 5. Describe the activities you wish to do that you cannot do because of your physical or mental disability: |
|---|
| |

| 6. Describe in detail the action you wish the Department to take to enable you to perform the activities described in number 5 and explain how that action will enable you to perform the activities described in number 5: |
|---|
| |

| Inmate Signature: | |
|---|---|
| CHCA Signature: | Date Received: |
| Director, Bureau of Healthcare Services: | Date Received: |

*DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual*
*Section 2 – Accommodations*            *Attachment 2-A*
Issued: 11/24/2014
Effective: 12/29/2014
DOC000054



*DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual*
*Section 2 – Accommodations*                                    *Attachment 2-A*
Issued: 11/24/2014
Effective: 12/29/2014
  DOC000055

**JA 158**

## Section 3 – Specific Disabilities

An inmate who is diagnosed as having a qualified disability will receive accommodations so that he/she can properly communicate/participate in the Department's facilities. An inmate will not be denied services solely for reason of his/her disability(ies).

### A. Local Procedures

Each Facility Manager/designee is to ensure that local procedures are developed, if needed, and maintained to ensure compliance with this policy. Each facility shall also be in compliance with **Management Directive 205.32, Hiring Sign Language Interpreters and Transliterators.**

### B. Accommodations for the Deaf and Hard of Hearing

The following is a mandatory list of services that must be provided for an inmate who is qualified as deaf or hard of hearing during emergency evacuation procedures.

1. Fire Alarm/Emergency Notification Systems

   Areas housing a deaf or hard of hearing inmate must have a flashing alarm and/or vibrating system and written procedures that direct staff to physically notify the inmate in case of an emergency. Areas such as bathrooms, Security Level 5 Housing Units, and medical isolation cells must be included in the procedures. All facilities shall comply with the National Fire Protection Association Life Safety Code, No. 101.

2. Announcements

   Any procedures or directions to an inmate that rely on a loudspeaker system must be modified to alert a deaf or hard of hearing inmate; written procedures must include these provisions.

### C. Accommodations for the Visually Impaired

A facility shall have proper evacuation procedures to include an audible emergency alarm system and provide a qualified visually impaired inmate with the proper evacuation procedures upon assignment to a facility. A copy of an inmate roster shall be maintained in the control room and used by staff to alert a qualified visually impaired inmate of an emergency. A facility housing qualified visually impaired inmates shall have Braille signage that identifies rooms, spaces, instructions, etc.

### D. Accommodations for the Mentally and/or Physically Impaired[1]

The Department shall provide an inmate diagnosed with a qualified mental and/or physical impairment assignment to a facility or Special Needs Unit that provides reasonable accommodations for this impairment. However, the Department may refuse access to

---

[1] 4-ACRS-6A-04

DOC000056

recreation if participation by the  qualified disabled inmate would alter the nature of the program or activity or if it presents a valid safety concern, an undue financial burden or if the inmate is unable to perform the basic function of the activity.

**Auxiliary Aids and Services (as defined in 42 USCS §12102 (1))** – The term "auxiliary aids and services" includes certified interpreters or other effective methods of making aurally delivered materials available to individuals who are hard of hearing, qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments, acquisition or modification of equipment or devices, and other similar services and actions.

**Braille** – A system of writing and printing for the visually impaired, in which varied arrangements of raised dots representing letters and numerals can be identified by touch.

**Deaf** – A condition in which perceivable sound (including speech) have no meaning for ordinary life purposes. Visual communication, such as sign language, writing, text reading, and speech reading, is necessary.

**Department** – The Pennsylvania Department of Corrections.

**Direct Threat** – A significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.

**Disability (as defined in 42 USCS §12102(2); 28 CFR §35.104)** – A person with a qualified disability is defined as an individual who:

1. has a physical or mental impairment that substantially limits one or more major life activities;

2. has a record of such an impairment; and/or

3. is perceived or regarded as having such an impairment.

The following conditions do not constitute disabilities: transvestitism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, other sexual behavior disorders, compulsive gambling, kleptomania, pyromania, and psychoactive substance abuse disorders resulting from current illegal use of drugs, homosexuality or bisexuality.

**Essential Job Functions (as defined in 29 CFR §1630.2(n))** – The fundamental job duties of the position the inmate with a disability holds or seeks. Essential job functions are those that bear more than a marginal relationship to the job at issue.

**Facility Disabilities Accommodation Coordinator** – The Corrections Health Care Administrator will serve as the Facility Disabilities Accommodation Coordinator.

**Hard of Hearing** – A condition in which there is some degree of hearing loss varying from mild, to moderate, to profound. The sense of hearing is partially, but not completely functional for ordinary life purposes.

**Major Life Activities (as defined in 28 CFR §35.104)** – Includes such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

**Permanent Vision Impairment** – Individuals who are permanently blind or have a vision impairment not correctable to central vision acuity of less than 20/200, even with corrective lenses.

**Physical or Mental Impairments (which affect a major life activity) (as defined in 28 CFR §35.104)** – Physical or mental impairments include any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.

Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

The phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism. The phrase physical or mental impairment does not include homosexuality or bisexuality.

**Qualified Individual with Disability (as defined in 28 CFR §35.104)** – An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

**Qualified Interpreter (as defined in 28 CFR §35.104)** – Refers to an interpreter for the deaf or hard of hearing who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary. A list of such interpreters may be obtained from the Pennsylvania Office for the Deaf and Heard of Hearing. Use of a certified interpreter shall be in accordance with **Management Directive 205.32, Hiring Sign Language Interpreters and Transliterators.**

**Reasonable Accommodation (condensed from 29 CFR §1630.2)** – A modification or adjustment to a job or work environment that will enable a qualified inmate with a disability to perform all the essential job functions and which does not create an undue hardship for the Department.

**Record of a Mental/Physical Impairment (as defined in 28 CFR §35.104)** – These procedures protect not only those individuals with disabilities who actually have a mental/physical impairment that substantially limits a major life activity, but also those with a record of such an impairment. This protected group includes a person who has a history of an impairment that substantially limits a major life activity but who has recovered from the

impairment. Examples of individuals who have a history of impairment are persons who have prior histories of mental or emotional illness, drug addiction, alcoholism, heart disease, or cancer. Persons who have been wrongly classified as having a mental impairment include persons who have been erroneously diagnosed as mentally retarded or mentally ill.

**Regarded as Having a Mental/Physical Impairment (as defined in 28 CFR §35.104)** – These procedures also protect certain persons who are regarded by a public entity as having a mental/physical impairment that substantially limits a major life activity, whether or not that person actually has an impairment. Some examples of situations covered by this category are:

1. An individual who has a physical or mental impairment that does not substantially limit major life activities, but who is treated as if the impairment does substantially limit a major life activity.

2. An individual who has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards the impairment.

3. An individual who has no impairments but who is treated by a public entity as having an impairment that substantially limits a major life activity.

**Undue Hardship (condensed from 29 CFR §1630.2(p))** – An action requiring significant difficulty or expense in the implementation of an accommodation or which would result in a threat to facility security.

# EXHIBIT 5

DOC000061

program bridges this gap. You may be eligible for the program if you have not received an in person visit for at least 12 months. Participation in this program is determined by established guidelines in the **DC-ADM 812**.

b. Virtual Visitation is offered at SCI-Albion, SCI-Coal Township, SCI-Dallas, SCI-Greene, SCI-Mahanoy, and SCI-Pine Grove. If you are interested in the virtual visitation program, and are incarcerated at one of the participating facilities, you will need to write a request slip to your counselor.

c. The visiting rules for Virtual Visitation are generally the same as those for visiting in the facility. Visitors who have been restricted from visiting at a facility may not participate in this program.

## XI. Work Assignments (DC-ADM 816)

### A. General

1. All medically cleared inmates must accept any task assigned to them regardless of the amount of compensation offered in return. You do not have a right to be assigned, or continue to work in any particular work assignment.

2. If you are able to work, you will be assigned to a job depending upon job availability. Your job will be assigned through the Corrections Employment Vocational Coordinator. Your interests are a factor in making assignments. Your abilities, qualifications, and the availability of space on the job are also considered. However, as stated in this handbook, if you test below the 8th grade competency level in reading, as measured by the TABE, you must enroll in the education program.

3. Failure to report to or refusal to work is regarded as a misconduct. Absence from your job location without prior knowledge and permission from a staff member is not allowed.

4. The job you desire may have a waiting list, or require special qualifications and your work assignment may be to an area that was not your first choice. This assignment, however, may be a steppingstone to other jobs in the future.

5. If you work irregular hours, you may be permitted recreational activity in designated areas at designated times.

6. You are expected to carry your share of the work, and to do any task assigned. You may be required by the crew supervisor to do any job relating to the general duties of the work crew. You may, at times, depending upon facility needs, be assigned tasks unrelated to your present job. You may not refuse to perform those tasks as assigned.

7. You may not leave your place of work without approval from the work supervisor and you must have a pass, properly signed, indicating where you are going and the time you left work.

8. Your job performance and conduct will be evaluated periodically and the evaluation will become part of your record.

### B. Pay System

If you work, you will be paid for the hours you work according to the **DC-ADM 816.** Most jobs are paid on the hourly basis. The pay system has three classes of hourly pay based on the skill level required. Each class has four pay steps. You begin at the bottom step of the class and can be considered for increases based on your skill, interest, and on-the-job performance. Pay is

calculated monthly and credited to your account. Some Correctional Industries jobs include a bonus based on quotas or profits.

**C. Length of Work Day or Work Week**

1. The standard workday consists of six hours, and the standard workweek consists of five days. You will only be paid for actual hours worked, as verified by the work supervisor. Hours of work will be figured from the time of arrival at, and departure from, the classroom or work site.

2. You will not be permitted to work more than five days a week or six hours per day under normal circumstances. In a department that functions seven days per week, where job changes are more frequent, you will be permitted to work more than five days per week without being eligible for overtime pay.

3. You may be granted a one-half hour break to visit the barber or beauty shop monthly and the Commissary weekly, if these opportunities are not available during your non-work hours.

**D. Pay Rates**

1. The pay rates for skilled classifications are listed in the **DC-ADM 816**.

2. You will be assigned the starting step of the pay class that matches your work skill. If you are starting at the unskilled pay level of Class 1, Step A, you will be evaluated by the work supervisor in 60 days for advancement to the next skill level. The work supervisor will base your advancement on your performance. Advancement to the next higher class can only occur if there is an opening in that class.

3. If you participate in, or have completed vocational training, you will not receive a reduction in pay rate if you are reassigned to an assignment that uses those skills.

**E. Pay Changes**

1. Pay raises and demotions will be at the discretion of the work supervisor based upon your performance as documented on the **DC-48B, Inmate Progress Report**. You are not entitled to pay raises and they are not automatic. Raises may be awarded only in one-step increments and are based on your work performance. The first pay raise and later increases will not be granted until you complete two months of satisfactory performance. Pay raises are effective in the first full pay period of the month following the approval of the raise. Demotions may be effective immediately.

2. You may be removed from a work assignment by a Unit Management Team action or misconduct proceeding. If you are found guilty of a **Class 1, Category A** misconduct, as defined in the **DC-ADM 801**, you will be removed from your work assignment.

3. The work supervisor may temporarily suspend you pending Unit Management team review or misconduct proceedings.

**F. Illness or Injury**

1. If you suffer a job-related injury, as verified by the medical department, you are eligible to continue to be paid at the rate earned on the day prior to the injury. The work supervisor must complete an incident report documenting the injury and referencing the medical department's examination and determination of the injury. You will not be eligible for pay increases or

bonuses during this time. The medical pay period shall not exceed 90 calendar days and each case will be reviewed every 30 days to determine if the medical pay should continue. After 90 days, you will be paid the Medical Allowance.

2.  If you are unable to work as a result of self-inflicted injuries or injuries sustained as a result of a provoked assault or your carelessness, you will not be eligible to receive pay.

3.  You will not be paid during times of illness or injury unless you get an excuse from work from the medical department. If a work assignment that you are able to perform becomes available, you may be assigned to that position and receive pay appropriate for that assignment. You must follow the advice of the medical staff and take all reasonable steps to improve your health during this time. Failure to do so may result in the stopping of your pay.

4.  If you are unable to work for medical or mental health reasons, or you are confined to a Mental Health Unit (MHU), you are eligible for the General Labor Pool Allowance for a maximum of five days per week. If you are admitted to a MHU due to attempted suicide or self-inflicted injuries, you will not be eligible for the General Labor Pool Allowance. Following release by the medical or mental health department, and an evaluation by the Corrections Employment Vocational Coordinator, you may return to a previous job assignment.

**G. General Labor Pool**

1.  If you do not have a work assignment, including education, through no fault of your own, or if you remain in the assessment unit or Diagnostic Classification Center more than 60 calendar days, you will be placed in the General Labor Pool. While you are in the General Labor Pool, you will be eligible to receive the General Labor Pool Allowance as listed in the **DC-ADM 816**, for a maximum of five days a week. You will be eligible to receive the General Labor Pool Allowance for six months, with the possibility of a three month extension granted by the Facility Manager, until you are given a work or school assignment. You must maintain a proper level of personal hygiene, the cleanliness and orderliness of your living area, accept work assignments for the housing unit, accept any employment offered, and participate in recommended programs.

2.  If you receive the General Labor Pool Allowance and do not maintain an acceptable level of personal hygiene, cleanliness of your living quarters or other areas assigned to you, or fail to participate in programming, the Unit Manager will assess whether you are to continue receiving the General Labor Pool Allowance. This assessment will include an interview with you and an evaluation by the medical and/or mental health department. The Unit Manager will tell you of the outcome of the assessment and instruct you on ways to improve your performance.

3.  If because of a verified medical or mental health condition, you cannot maintain an acceptable level of personal hygiene, clean your living quarters, or some other area assigned to you, or participate in programming, you may collect the Medical Allowance.

**H. Assignment to Restricted Housing Unit (RHU)**

If you are sent to the RHU, you will not be paid unless you are assigned a job in that unit. Exceptions to this may be approved by the PRC as outlined in the **DC-ADM 816.**

*Notes*

**JA 168**

# EXHIBIT 6

DOC000066

# INMATE MEDICAL STATUS
## RESTRICTIONS AND OTHER NEEDS Report

gorlando                                                          **05/18/2023 11:55 AM**

**DOC#** NS1262  **PBPP#** 379KN  **NAME:** LEWALD, TROY VINCENT          **LOCATION:** PHX-E-B-1018-01

| | | |
|---|---|---|
| **Medical Assistance ID#:** | **MA Consent on File:** | **MA Consent Date:** |
| **Mental Health Roster:** C | **Preventive Health Date:** 5/4/2023 | |
| **Medication Assisted Treatment:** | | |

**Medical Clearance(s):**

Not Medically Cleared for Food Service            Date: 08/26/2022

## Current

No Current Functional Limitations Information exists

No Current Transfer Mode Restrictions Information exists

| Medical Housing Recommendations | Start Date | End Date |
|---|---|---|
| Lower Bunk | 3/2/2023 | 3/2/2024 |

No Current Activity Restrictions Information exists

| Employment Restrictions | Start Date | End Date |
|---|---|---|
| No lifting more than 15 pounds | 3/2/2023 | 3/2/2024 |
| No work at heights/elevations | 3/2/2023 | 3/2/2024 |

No Current Assistive Devices Information exists

## History

No History Functional Limitations Information exists

**JA 170**

# INMATE MEDICAL STATUS
## RESTRICTIONS AND OTHER NEEDS Report

gorlando                                                          **05/18/2023 11:55 AM**

**DOC#** NS1262   **PBPP#** 379KN   **NAME:** LEWALD, TROY VINCENT          **LOCATION:** PHX-E-B-1018-01

No History Transfer Mode Restrictions Information exists

| Medical Housing Recommendations | Start Date | End Date |
|---|---|---|
| Lower Bunk | 7/11/2022 | 3/2/2023 |
| Lower Bunk | 2/23/2022 | 7/11/2022 |
| Lower Bunk | 5/24/2019 | 10/6/2021 |
| Lower Bunk | 1/28/2019 | 5/22/2019 |

| Activity Restrictions | Start Date | End Date |
|---|---|---|
| No weightlifting | 5/24/2019 | 10/6/2021 |
| Non-contact sports only | 5/24/2019 | 10/6/2021 |
| Passive sports only | 2/15/2019 | 5/22/2019 |

| Employment Restrictions | Start Date | End Date |
|---|---|---|
| No food service-handle/janitor | 5/24/2019 | 10/20/2020 |
| No food service-handle/janitor | 1/25/2019 | 1/28/2019 |
| No high risk of injury | 2/15/2022 | 2/14/2023 |
| No high risk of injury | 5/24/2019 | 10/6/2021 |
| No intensive labor | 2/15/2022 | 2/15/2023 |
| No intensive labor | 5/24/2019 | 10/6/2021 |
| No lifting | 5/24/2019 | 10/6/2021 |
| No lifting | 1/28/2019 | 5/22/2019 |
| No lifting more than 15 pounds | 2/15/2022 | 3/2/2023 |
| No work at heights/elevations | 11/3/2022 | 3/2/2023 |
| No work at heights/elevations | 2/15/2022 | 10/19/2022 |
| No work/medically unemployed | 2/23/2022 | 3/16/2022 |

| Assistive Devices | Start Date | End Date |
|---|---|---|
| Anti-embolic nylons | 12/1/2020 | 1/31/2023 |
| Sling | 5/26/2019 | 5/26/2019 |

**JA 171**

Case 2:25-cv-00625-DOC Document 35 Page-8 75 Date/File 03/11/2026 of 3

# EXHIBIT 7

DOC000069

## RECEIPT OF INMATE HANDBOOK &

### ADMINISTRATIVE DIRECTIVES

I received a copy of the Inmate Handbook and Administrative Directives. I understand that they are to be retained by me and kept in good condition until I am released.

I understand that I must turn in the Handbook and the Directives upon my release or be charged accordingly for them.

INSTITUTION #:    NS1262

NAME:    Troy Lewald

SIGNATURE:    _____

DATE:    02/11/2019

STAFF ISSUING:    Mrs Nace

File in Institution Section

TWH/dm/forms/Receipt of Inmate Handbook & Administrative Directives

# Receipt of Facility

# Inmate Handbook Supplement

I received a copy of the Facility Inmate Handbook Supplement and I understand that I am to keep this copy until I am transferred or released. I also understand that it is my responsibility to keep this Handbook in good condition. If a replacement copy is needed, for any reason other than it becoming unusable because of normal use, I will be charged for the replacement copy. I also understand that I must return the handbook at the time of my transfer or release or I will be charged for it.

Department of Corrections Number: ___NS1262_____

Name:___Troy Lewald_____

Inmate Signature:_____ Date:_02/11/2019_

Name of Staff Member Issuing the Supplement:

___Mrs. Nace_____

file: Inmate DC15-Institution Section

**JA 174**



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

TROY VINCENT LEWALD,                    :
    *Plaintiff*,

                            :

     v.                                     Civil Action No.: <u>22-CV-04625</u>

                            :

PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, *et al.*,              :        *JURY TRIAL DEMANDED*

   *Defendants*.                       :

**<u>PLAINTIFF'S MOTION IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>**

*AND NOW*, comes Plaintiff, <u>Troy Vincent Lewald</u>, *Pro Se'*, who respectfully moves this Honorable Court for an Order denying *Defendant's Motion for Summary Judgement*, for the reasons set forth more fully in the accompanying *Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgement,* and supporting *Plaintiff's Concise Statement of Disputed Facts* filed contemporaneously with this motion.

                                    Respectfully submitted,

Dated: <u>February 26, 2025</u>

                                    Troy Vincent Lewald/NS1262
                                    1200 Mokychic Dr.
                                    Collegeville, PA 19426

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

TROY VINCENT LEWALD,  :
    *Plaintiff,*  :
      :
    v.  :    Civil Action No.: <u>22-CV-04625</u>
      :
PENNSYLVANIA DEPARTMENT  :
OF CORRECTIONS, *et al.,*  :    *JURY TRIAL DEMANDED*
      :
    *Defendants.*  :

## <u>CERTIFICATE OF SERVICE</u>

I, <u>Troy Vincent Lewald</u>, Plaintiff *Pro Se'*, do hereby certify that I am on this day, serving the foregoing document(s) upon the person and in the manner as indicated below, which service satisfies the requirements of Fed.R.Civ.P. 5(b)(2)(c).

<u>Service by first-class mail</u>:
Office of Attorney General
Brendan Mullen
1600 Arch St., Suite 300
Philadelphia, PA 19103

Dated: <u>February 26, 2025</u>

                                      Troy Vincent Lewald/NS1262
                                      SCI-PHX
                                        PO Box 33028
                                        St. Petersburg, FL 33733

**JA 176**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

TROY VINCENT LEWALD,             :
    *Plaintiff,*

                        :

    v.                               :          Civil Action No.: 22-CV-04625

                        :

PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, *et al.*,            :          *JURY TRIAL DEMANDED*

    *Defendants*.                       :

## **PLAINTIFF'S CONSICSE STATEMENT OF DISPUTED FACTS**

      I, <u>Troy Vincent Lewald</u>, being competent and that based on my own personal knowledge and/or reports made to me by others, declares pursuant to 42 U.S.C. §1746, the following averments are true and correct to the best of my knowledge, information and belief, show disputed facts necessitating a trial:

1. Plaintiff was seen by a medical professional who documented Plaintiff's disabilities, and implemented proper safety precautions within the PADOC SAPPHIRE system to protect Plaintiff;

2. On May 22, 2019, Daniel Stroup, PA, entered note in SAPPHIRE to schedule follow-up with Plaintiff to asses restrictions and deleted Plaintiff's existing medical restrictions;

3. On May 24, 2019, Plaintiff was seen by a medical provider at SCI-Albion (SCI-

ALB) for transfer reception screening per PADOC Policy DC-ADM006(VI)(A)(1).

4. Said provider stated Plaintiff's restrictions were incorrectly entered and needed to be fixed.

5. Said Provider added further restrictions noting: **"NOT MEDICALLY CLEARED FOR FOOD SERVICES."**

6. Plaintiff was assigned lite-duty work assignment at SCI-ALB.

7. Plaintiff was transferred to SCI-PHX with lite-duty employment active.

8. Plaintiff was not medically cleared by SCI-PHX upon arrival and was therefore not eligible for employment.

9. Plaintiff's medical file was lost in transport.

10. Plaintiff's medical file was not properly processed upon arrival.

11. Plaintiff's work file (DC-48B) lost in transport.

12. Plaintiff's work file (DC-48B) was not properly processed upon arrival.

13. Ms. Jackson - acting as a health care professional - was at all times relevant hereto, acting in the capacity as an authorized agent, servant, workmen, contractor, subcontractor, and/or employee of defendant Wellpath and/or defendant PADOC and/or defendant PADOC held Ms. Jackson out to Plaintiff to be their authorized agent, servant, workmen, contractor, subcontractor, and/or employee.

14. Ms. Jackson gave Plaintiff erroneous instructions were contrary to PADOC's

policy.

15. Plaintiff has no way to "contact SCI-ALB," nor are inmates required to do so pursuant to and in accordance with PADOC Policy.

16. Plaintiff required accommodations that cost the PADOC zero financial burden and/or structural modifications to the facility.

17. Defendants are still failing to accommodate for Plaintiff's disability even after being properly entered into SAPPHIRE at the SCI-PHX facility.

18. Defendants currently have Plaintiff assigned to "Unit Janitor," which requires Plaintiff to work in wet areas, specifically restricted in SAPPHIRE.

19. Defendants have AGAIN deleted Plaintiff's restrictions without warning. Ms. Jackson's erroneous instructions were contrary to PADOC's policy.

20. Defendant PADOC knew of Plaintiff's requirement for disability restrictions was an essential function of Plaintiff's job.

21. PADOC may have been able to reasonably accommodate Plaintiff's requests by entering employment restrictions in SAPPHIRE (an accommodation with zero cost) in a timely fashion

22. Defendant PADOC's continued placement of Plaintiff on permanent medical leave and unemployment following his injury and his requests to return to work was a reasonable accommodation under the ADA.

23. By continuing to involuntarily place Plaintiff on permenant medical leave, Plaintiff would inevitably be permanently unemployed, intentionally

discriminated against because of his disability, and not accommodated for.

24. By rejecting Plaintiff's requests to return to work, a reasonable jury could conclude that defendant inevitably forced Plaintiff to be terminated through removal of assignment for more than two years, forced Plaintiff to work *__again__* in a medically-inappropriate environment for a second time, demoted his pay scale, and deprived him of various benefits of his employment along the way.

25. The Plaintiff has offered evidence that defendant PADOC has failed to engage in a good faith and timely interactive process with Plaintiff to determine what reasonable accommodations may be offered.

26. Defendant PADOC did not inquire into the status of Plaintiff's condition in violation of their own policies, and defendant PADOC knew that Plaintiff was attempting to return to work.

27. Plaintiff's evidence provides a sufficient basis for a reasonable jury to conclude that defendant PADOC could have permitted Plaintiff's post-transfer and post-leave status quo to remain by allowing for Plaintiff's fellow inmates to assist with lifting the few items that Plaintiff would have had trouble lifting on his own and/or work in wet surface areas where Planitiff was unable to stabilize himself.

28. Despite Plaintiff making multiple requests to return to work with few and no-cost accommodations, defendant PADOC continued to require Plaintiff to remain on medical leave and/or unemployed for more than two years, while demoting him, charging him for sustaining an injury sustained at work in

4

violation of their own policy, and reducing his monthly stipen.

29. Plaintiff was not provided equal access to the programs, services, and activities of a public entity due to his disability.

30. Plaintiff's request for disability accommodations was a type that is reasonable in the run of cases and defendant PADOC cannot meet its burden of showing that granting the no-cost accommodation would impose an undue hardship under the particular circumstances of the case.

31. Defendant PADOC had knowledge that a federally protected right is substantially likely to be violated, (i.e. knowledge that the failure to provide Plaintiff with employment restrictions likely violated his right to reasonable accommodations of his disability)

32. prison failed to act despite that knowledge.

33. There is an abundance of evidence that defendant PADOC knew about Plaintiff's need for disability accommodations in order to operate safely in the prison facility.

34. At the time that Plaintiff was held in the general prison population, he requested and was granted disability accommodations.

35. After Plaintiff was transferred from SCI-PHX to SCI-CAM, he requested and was granted disability accommodations. Third, the medical staff, as well as the Unit Counselor, the Unit Manager, Inmate Employment, Food Services Supervisors, Deputies, and the Superintendent knew that Plaintiff had not been able to work safely in the Food Services department because he was not

being accommodated for and could not stabilize himself in wet areas and/or carry any significant weight.

36. It is clear from the above that defendant PADOC knew that Plaintiff required lite-duty disability accommodations and that by failing to provide him with any, Plaintiff's right to reasonable and timely accommodation for his disability was likely to be violated.

37. **For a month,** defendant PADOC did not provide him with any **disability accommodation** that would allow him to participate in the work program, while forcing him to report daily to the work assignment under the threat of lost pay, loss of transfer incentive, and possible loss of parole eligibility; when they did provide employment to Plaintiff more than two years, it was not lite-duty and not disability accommodating. Plaintiff has alleged specific facts to constitute deliberate indifference.

38. A reasonable factfinder could conclude that once Plaintiff received doctor's approval allowing for him to return to work with restrictions that arguably did not impact his essential job duties, the involuntary placement of Plaintiff on permenant medical leave, and involuntary permenant unemployment for more than two years became an unreasonable accommodation.

39. Even with the restrictions entered and active in SAPPHIRE, defendant PADOC returned employment to Plaintiff over two years later, defendant PADOC *_again_* placed Plaintiff in a medically-inappropriate work environment of wet/uneven surfaces even though his medical restrictions forbade that placement.

6

*again* placed Plaintiff in a medically-inappropriate work environment of wet/uneven surfaces even though his medical restrictions forbade that placement.

For all the foregoing reasons, this Honorable Court should **DENY** defendant PADOC's motion for summary judgement.

Respectfully submitted,

Dated: <u>February 26, 2025</u>

Troy Vincent Lewald/NS1262
(Mail By Defendants)
SCI-PHX
P.O. Box 33028
St. Petersburg, FL. 33733

7

JA 183

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

TROY VINCENT LEWALD,  :
　　Plaintiff,  :
　　　　　　　　　　 :
　　v.  :  Civil Action No.: 22-CV-04625
　　　　　　　　　　 :
PENNSYLVANIA DEPARTMENT  :
OF CORRECTIONS, et al.,  :  JURY TRIAL DEMANDED
　　　　　　　　　　 :
　　Defendants.  :

## CERTIFICATE OF SERVICE

　　I, Troy Vincent Lewald, Plaintiff *Pro Se'*, do hereby certify that I am on this day, serving the foregoing document(s) upon the person and in the manner as indicated below, which service satisfies the requirements of Fed.R.Civ.P. 5(b)(2)(c).

Service by first-class mail:
Office of Attorney General
Brendan Mullen
1600 Arch St., Suite 300
Philadelphia, PA 19103

Dated: February 26, 2025

Troy Vincent Lewald/NS1262
SCI-PHX
PO Box 33028
St. Petersburg, FL 33733

**JA 184**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

TROY VINCENT LEWALD,　　　　　:
　　　Plaintiff,

　　　　　　　　　　　　　　　　:

　　v.　　　　　　　　　　　　　Civil Action No.: 22-CV-04625

　　　　　　　　　　　　　　　　:

PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, *et al.*,　　　:　　*JURY TRIAL DEMANDED*

　　　Defendants.　　　　　　　:

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

### I. INCLUSION STATEMENT

Plaintiff hereby incorporates all exhibits, appendices, affidavits, depositions, pleadings, answers to interrogatories, admissions, objections, and statement of disputed facts herein as if stated at length below to show that there are genuine material facts to be tried.

### II. MATERIAL FACTS

1. On January 24, 2019, Plaintiff was placed under the care, custody, control and security of the PADOC. *ECF No. 1 ¶ 9*

2. On January 25, 2019, Plaintiff was given an initial intake reception screening at SCI-Phoenix (SCI-PHX) per PADOC Policy DC-ADM006(VI)(A)(1). Plaintiff was seen by a medical professional who documented Plaintiff's

1

**JA 185**

disabilities, and implemented proper safety precautions within the PADOC SAPPHIRE system to protect Plaintiff. Plaintiff was prescribed 600mg Motrin to manage his chronic daily and severe pain. *Id. ¶ 9 (See Exhibit P-1, attached herein).*

3. On February 14, 2019, Plaintiff was seen by a medical provider at SCI-CampHill (SCI-CAM) for transfer reception screening per PADOC Policy DC-ADM006(VI)(A)(1) where notes were documented in the PADOC SAPPHIRE medical documentation system. *Id. ¶ 62 (See Exhibit P-2, P-3 & P-4, attached herein).*

4. On May 22, 2019, Daniel Stroup, PA, entered note in SAPPHIRE to schedule follow-up with Plaintiff to asses restrictions and deleted Plaintiff's existing medical restrictions. *Id. ¶ 67 (See Exhibit P-5, attached herein).*

5. On May 24, 2019, Plaintiff was seen by a medical provider at SCI-Albion (SCI-ALB) for transfer reception screening per PADOC Policy DC-ADM006(VI)(A)(1). Provider stated Plaintiff's restrictions were incorrectly entered and needed to be fixed. Provider added further restrictions noting: **"NOT MEDICALLY CLEARED FOR FOOD SERVICES."** *Id. ¶ 69 (emphasis original) (See Exhibit P-6 & P-41, attached herein).*

6. On or about October 14, 2020, Plaintiff was moved to Custody Level II Honor Block housing unit D/B due to his model inmate behavior. *Id. ¶ 70*

7. On or about October 21, 2020, Plaintiff interview with Inmate Employment Ms. Giles and Adult Basic Education (ABE) teacher Mr. Smay. At the

2

**JA 186**

conclusion of the interview, Ms. Giles stated: "this really would be the perfect job for you, given your severee medical restrictions." Mr. Smay said he agreed and Plaintiff thanked them for their time and the opportunity. *Id. ¶ 71(See Exhibit P-42, attached herein).*

8. On or about November 3, 2020, Plaintiff was given job assignment notification for Block Tutor job, start at Class III, Step "A" pay rate of $0.33/hr. by Sergeant Provident to sign and return. [PADOC Policy DC-ADM816(1)(F)(1)(a) states: "class III - skilled, work requires a degree of skill." *Id. ¶ 72 (See Appendix A-2, attached herein).*

9. On or about September 6, 2021, Plaintiff spoke with Unit Counselor Ms. Herr about applying for "promotional" Incentive-Based Transfer (IBT) to Region 1 SCI near Philadelphia. Plaintiff agreed to apply if he would be paid the same monthly payment at his new facility and Ms. Herr confirmed Plaintiff would continue to be paid the same amount monthly, according to policy. [PADOC Policy 11.01.1(2)(A) states: A CL-2 inmate may be considered for an IBT. An IBT should be used to facilitate program participation, reentry, and continuity of care.] ." Ms. Herr was acting in her official capacity as Correctional Counselor of defendant PADOC and, as such, the aforementioned representations and actions of Ms. Herr were the official acts of defendant PADOC itself. Plaintiff, acting in good faith, and assuming all of Ms. Herr's and defendants PADOC's representations were made in good faith, applied for IBT and agreed to be transferred. *Id. ¶ 77 (See Appendix A-2, attached herein).*

10. On or about October 6, 2021, Plaintiff spoke with Unit Counselor Ms.

3

**JA 187**

Herr called Plaintiff into her office and advised him he had been approved for IBT and be prepared to be moved within the next one year.

11. On October 6, 2021 **- unbeknownst to Plaintiff and prior to their expiration -** defendant Baird deleted the medical record of Plaintiff's medical restrictions in preparation for transferring Plaintiff back to SCI-PHX. Said medical restrictions that were acting as a safety barrier to protect care-dependent and disabled Plaintiff. Plaintiff was still within the confines of SCI-ALB and still actively working on assignment in the work program. *(See Exhibit P-41, attached herein).*

12. On December 28, 2021, Plaintiff was transported from SCI-ALB to SCI-PHX. *(See Exhibit P-9 & P-42, attached herein).*

13. Plaintiff's medical file was purportedly received by SCI-PHX and certified as complete with missing medical restrictions. The medical file was received and certified as complete three times - once by defendant Rieger, once by defendant Curby, and once by defendant Reid. *(See Exhibit P-4, attached herein).*

14. On December 29, 2021 - **the day after Plaintiff was transferred** back to SCI-PHX, Plaintiff wrote Inmate Employment defendant Delliponti - the person responsible for employment - ***requesting suitable lite-duty*** assignment in the work program. *(emphasis added) (See Exhibit P-8, attached herein).*

15. Between the dates of December 28, 2021 through February 18, 2022, failed to provide intake assessment within 14 days, as required by PADOC policy DC-ADM006(VI)(A)(1). *(See Appendix A-1; Exhibit P-12, attached herein).*

16. Between the dates of December 28, 2021 through January 6, 2022,

4

**JA 188**

defendants PADOC, Wellpath, Hallman, Letizio, Annino, Wood, and Jackson failed to recognize and correct Plaintiff's missing medical restrictions for the work program due to his extensively documented disability. *(See Exhibit P-11, P-12, P-13, P-14, & P-15, attached herein).*

16. Between the dates of December 28, 2021 through February 18, 2022, defendants PADOC Wellpath, Hallman, Letizio, Annino, Wood, and Ms. Tara Jackson failed to provide clearances for the work program per their duty requirement and failed to provide any accommodations for Plaintiff's extensively documented disability. *(See Exhibit P-11, P-12, P-13, P-14, & P-15, attached herein).*

17. Between the dates of December 28, 2021 through February 18, 2022, defendants J.Terra, Muick, Delliponti, R.Terra, Cotton, Kline, Choate, Poli, Deshield, Hensley, Durand, Strenkoski, and Stimmel failed to investigate or refer Plaintiff to medical for work program clearances and failed to provide any accommodations for Plaintiff's extensively documented disability.

18. On or about January 6, 2022, Melissa Delliponti assigned Plaintiff to Food Services work program assignment - a heavy-duty assignment. Plaintiff's work assignment was medically-inappropriate given his physical ability and extensively documented disability and defendant Delliponti's direct knowledge of Plaintiff's lite-duty status, history of lite-duty employment prior to transfer, missing employment file (DC-48B) and not medically cleared by SCI-PHX since transfer. *(See Appendix A-1, A-3(XI)(A)(1); Exhibit P-8, P-10, P-41, P-42, P-44, attached herein).*

5

**JA 189**

19. On or about January 6, 2022, Plaintiff verbally plead for help from defendant Stimmel and was denied.

20. On January 13, 2022, Plaintiff again notified defendant Delliponti of his lite-duty medical work program restrictions and his inability to perform kitchen job duties. *(See Exhibit P-10, attached herein).*

21. On January 17, 2022, Plaintiff was required to report to Food Services where he verbally informed defendant Choate and defendant Deshield of his lite-duty work program restrictions and both agreed to look into it.

22. On January 18, 2022, Plaintiff verbally plead for help from defendant Durand and was denied. Defendant Durand told Plaintiff to continue to reporting daily to the work program assignment or lose all pay, be issued a misconduct, possible loss of promotional transfer, and parole consequences. Plaintiff was forced to report daily to the work assignment under the threat of lost pay, loss of transfer incentive, and possible loss of parole eligibility.

23. On January 25, 2022, Plaintiff was informed by Ms. Jackson, PADOC's medical agent, that there was no documentation of any disability in their system. Plaintiff was told he needs to contact SCI-ALB to have medical file transferred. *(See Exhibit P-7, P-9, P-41, attached herein).*

24. On January 27, 2022, Plaintiff wrote defendant Sheeran stating he was feeling overwhelmed and asked to speak with someone.

25. On February 4, 2022, defendant Deshield ordered Plaintiff to perform work beyond his capabilities. Plaintiff explained he is unable to stabilize himself in

6

**JA 190**

high-risk work environments and again asked defendant Deshield, who was with defendant Poli, to both investigate his lite-duty work program restrictions in the computer. Defendants Poli and Deshield told Plaintiff they didn't have time for that right now. Defendant Deshield reprimanded Plaintiff by sending him back to the housing unit.

26. On February 4, 2022, Plaintiff grieved the heavy-duty work demanded by defendant Deshield and being reprimanded by defendant Deshield for not performing said task, which was assigned to defendant Kline for investigation.

27. On February 7, 2022, Plaintiff filed a grievance appeal highlighting his loss of work program restrictions and Plaintiff's health and safety being in jeopardy to defendant Sorber and defendant Clark. *(See Exhibit P-14, attached herein).*

28. On February 7, 2022, Plaintiff wrote defendant Sipple requesting help with medical restrictions transferred from SCI-ALB, had submitted multiple sick calls and was told she was the only person who could help. Plaintiff made three copies of the request and provided one to defendant Deshield and one to defendant Poli by placing them in the Food Service Manager's office mailbox. *(See Exhibit P-15 attached herein).*

29. Plaintiff filed more than 10 sick calls to rectify the situation and more than 20 request slips to be reassigned in the work program. *(See Exhibit P-8 P-10, P-12, P-15 attached herein).*

30. On February 15, 2022, Plaintiff was sent to Ms. Jackson who asked

7

**JA 191**

Plaintiff why he keeps harassing her, she's not a records specialist, she can't help Plaintiff, she doesn't know how to get lite-duty and bottom-bunk status in the system.

31. On February 18, 2022, Plaintiff injured his spine while on medically-inappropriate work assignment. Plaintiff felt a pop in his back which caused pain to radiate through his arms, shoulders and shooting down his sciatic nerve, which caused Plaintiff to scream in pain. Plaintiff experienced severe pain in his spine and requested emergency medical services. Plaintiff was denied access to emergency medical services. Plaintiff was told to place a sick call. Plaintiff informed defendant Deshield that he was injured, in severe pain, and in need of immediate emergency medical attention. Defendant Deshield told Plaintiff she wasn't going to send him to medical and ordered him back to the housing unit. Plaintiff again requested to be sent to medical for emergency attention to his injured spine. Defendant Deshield gave Plaintiff his identification card with an order to report back to his housing unit. Plaintiff returned to the housing unit as ordered and informed defendant Grenon he was injured at work and needed immediate medical attention. Defendant Grenon told Plaintiff to lock-in to his cell. Plaintiff locked-in as ordered, defendant Grenon told Plaintiff over the intercom that he needs to file a sick call to be seen by medical. Plaintiff told defendant Grenon it was an emergency and he needed immediate medical attention that couldn't wait 5 days to be addressed. Defendant Grenon stated there's nothing she can do, it doesn't look like an emergency to her and Plaintiff needs to file a sick call.

**JA 192**

32. Plaintiff waited till he was allowed back out of his cell again and spoke with defendant Strenkoski. Plaintiff informed defendant Strenkoski he was injured at work, refused medical attention by defendant Deshield. Plaintiff informed defendant Strenkoski that defendant Grenon told Plaintiff to file a sick call for his work injury and severe pain. Defendant Strenkoski stated she would see what she could do to help and Plaintiff left her office. Plaintiff waited approximately 45 minutes and after not hearing back from defendant Strenkoski, Plaintiff went back to her office. Plaintiff again requested emergency medical attention. Defendant Strenkoski stated there's nothing she can do and Plaintiff was to file a sick call.

33. On February 18, 2022, Plaintiff wrote defendant Huner, Corrections Health Care Administrator ("CHCA"). Plaintiff requested assistance and highlighting injury at work and refusals by PADOC personnel to provide emergency medical treatment.

34. On February 18, 2022, Plaintiff again wrote defendant Sheeran stating his inability to get anything done and feeling overwhelmed. On February 18, 2022, Plaintiff filed a sick call citing work injury, severe pain, and refusals for emergency medical services.

35. On February 18, 2022, Plaintiff filed a grievance citing defendant Deshield's refusal to send him to medical and her treating Plaintiff with reckless disregard, which was assigned to defendant Kline.

36. **5 days after being injured at work**, Plaintiff was sent to a medical agent who took notes. Plaintiff was prescribed more 600mg Motrin that he was already prescribed prior to being injured and informed her weren't working. Plaintiff's

9

**JA 193**

prescription for Motrin was never dispensed by defendants. Plaintiff was granted 3 weeks leave from the work program.

37. On February 23, 2022, Plaintiff wrote defendant Matteo highlighting the need to be seen by psychology. Plaintiff noted the lack of response from the unit psychologist defendant Sheeran. Plaintiff has requested diagnostics from defendants more than 10 times and was denied.

38. **13 days after being injured at work**, Plaintiff was seen by defendant Annino who refused to treat, diagnose or medicate Plaintiff. Plaintiff informing defendant Annino the pain was getting worse. Plaintiff informing defendant Annino he was previously prescirbed Motrin prior to being injured. Plaintiff informed defendant Annino he had been through two bottles of Motrin already and they weren't helping. Defendant Annino told Plaintiff to order Motrin on commissary and stop wasting her time.

39. On March 6, 2022, Plaintiff informed defendants Varner and Moore his medical file was not forwarded to SCI-PHX. Plaintiff informed defendants Varner and Moore he was injured at work.

40. **19 days after being injured at work**, Plaintiff was seen by Ms. Jackson. Defendant Jackson stated she's not prescribing nothing for Plaintiff's worsening pain. Defendant Jackson stated she's not running any tests on Plaintiff.

41. **21 days after being injured at work**, Plaintiff was seen by medical provider who wouldn't run any tests, but prescribed Motrin and a muscle relaxer.

10

**JA 194**

42. On March 29, 2022, Plaintiff was charged for being injured at work.

43. On August 3, 2022, Plaintiff met with PADOC Records Specialist Roy George who showed Plaintiff very detailed medical restrictions with start/stop dates, expiration dates, comments, and signoff approvals. Plaintiff requested Mr. George focus on "No Food Service - handle/janitor" work restriction entered 5/24/19, with an expriation 11/9/22 and a system note "delete signoff approval Lisa Biard dated 10/20/22." Plaintiff asked Mr. George if all staff could see this within 30 seconds as he just demonstrated and Mr. George confirmed they could. *(See Exhibit P-41, attached herein).*

44. On August 19, 2022, Plaintiff was sent to medical and told he was experiencing hyperthyroidism for the first time.

45. On September 8, 2022, Plaintiff was sent to medical and told he was experiencing hypothyroidism for the first time.

46. On September 19, 2022, Plaintiff filed a sick call complaining of pain in throat and excessive physical issues. *(See Exhibit P-51, attached herein).*

47. On September 20, 2022, Plaintiff was seen by a medical provider who stated Plaintiff was experiencing hypothyroidism. Medical provider who stated Plaintiff was experiencing hypothyroidism. Plaintiff requested said medical provider make a referral to the psychology program. Plaintiff stated he wasn't receiving responses from psychology. Medical provider denied said referral stating it would be easier for Plaintiff to file a request. *(See Exhibit P-51, attached herein).*

11

**JA 195**

48. On September 20, 2022, Plaintiff wrote defendant Sheeran and defendant Cione stating medical said untreated anxiety is out of control and needs to be properly treated and is causing physical injury. Plaintiff noted the lack of treatment by his department is causing Plaintiff physical injury that needs to be addressed. *(See Exhibit P-50, attached herein).*

49. Between the dates of January 25, 2022 through September 20, 2022, Plaintiff was seen by medical agents who did nothing more than document his deteriorating condition and treat him as a nuisance. Defendants took his money against PADOC policy and state law. Medical agents refuse him reasonable diagnostics. Medical agents refuse him reasonable accommodations. Plaintiff believes and therefore avers refuse him effective medication for his severe and constant pain. Medical agents denied him access to a qualified specialist to treat his worsening condition. *(See Exhibit P-20, P-22, P-23, P-25, P-26, 29, P-30, P-31,P-33, P-34, P-35, P-36, P-37, P-39, P-40, P-46, P-48, attached herein).*

50. Defendants Wellpath, Hallman, Letizio, Annino, Wood, and Jackson defendants prescribed Plaintiff various ineffective nonsteroidal anti-inflammatory drugs ("NSAIDs") and persisted on that course of treatment for more than 18 months, even after Plaintiff complained they weren't helping.

51. Defendants Wellpath, Hallman, Letizio, Annino, Wood, and Jackson defendants prescribed Plaintif an NSAID ("Motrin") that Plaintiff was already prescribed when he wasn't injured. Defendants Wellpath, Hallman, Letizio, Annino, Wood, and Jackson defendants prescribed Plaintif an NSAID ("Motrin") that Plaintiff was already taking and stated weren't helping his severe and

12

**JA 196**

constant sciatic pain. Defendants Wellpath, Hallman, Letizio, Annino, Wood, and Jackson defendants refuse to provide any care to Plaintiff.

52. **Plaintiff was never been physically or visually examined.** Plaintiff continues to request diagnostics and effective medication to manage his severe and constant pain and is denied. Defendants Wellpath, Hallman, Letizio, Annino, Wood, and Jackson defendants have removed all pain medication prescriptions and refuse to provide and pain mangement for Plaintiff's severe and constant pain. *(See Exhibit P-16, P-17, P-18, P-20, P-21, P-22, P-23, P-25, P-26, P-29, P-30, P-31, P-33, P-34, P-35, P-36, P-37, P-39, P-40, P-46, P-48, attached herein).*

53. Between the dates of February 18, 2022 through March 3, 2022, defendants Wellpath, Hallman, Letizio, Annino, Wood, and Jackson defendants, unbeknownst to Plaintiff, permanently revoked Plaintiff's right to work in retaliation for filing sick calls, contacting administrators, filing grievances, causing an internal investigation, and an external investigation. *(See Exhibit P-19, attached herein).*

### III. PROCEDURAL HISTORY

Plaintiff, Troy Vincent Lewald, *Pro Se'*, (hereinafter Plaintiff) was at all times relevant, in the care, custody, control, and security of defendant PADOC, brought this action to redress, *inter alia*, deliberate indifference, failure to protect, failure to accommodation. Following disposition of threshold motions, this Honorable Court ruled Plaintiff's claim for *Failure to Accommodate* under the *Rehabilitation*

13

*Act* against defendant PADOC. (ECF. 100, 101).

## IV. STANDARDS OF REVIEW

**A. Summary Judgement**

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223, 50 V.I. 1150 (3d Cir. 2008). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

A non-moving party creates a genuine issue of material fact when it provides evidence "such that a reasonable jury could return a verdict for the nonmoving party". *Lawrence v. National Westminister Bank of New Jersey*, 98 F.3d 61, 65 (3rd Cir. 1996)(quoting *Anderson*, 477 U.S. at 248). The evidence of the nonmovant is to be believed and all justifiable inference are to be drawn in his favor. *Id.* at 255. The substantive law will determine which facts are material. *Anderson*, 477 U.S. at 248. Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." *Fed. R. Civ. P. 56(a)*.

14

**JA 198**

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. _Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)_. Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. _Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)_.

Summary judgment should be denied if the moving party fails to demonstrate its entitlement beyind a reasonable doubt. _Snowden v. Connaught Labs, 793 F.Supp. 1040 (D. Kan. 1992)(quoting Norton v. Liddel, 620 F.2d 1375, 1831 10th Cir, 1980)_. It is of course, fundamental that summary judgment, which denies litigant his right to a trial, is to be only in a clear case. _Season-All Industries, Inc. V. Turkiye Sise ve Cam Fabi kaka Ri A.S., 425 F.2d 34, 38 (3rd Cir 1970)_.

In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." _Fed. R. Civ. P. 56(c)(3)_. "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." _Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993)_.

Additionally, the court may consider evidence that would not be admissible at trial only if the courts finds that the evidence can be reduced to a form that would be admissible. _Lawyers alliance v. department of Energy, 766 F.Supp. 318 323 (E.D. Pa. 1991); See J.F. Feeser, Inc. v. Serv-A-Portions, Inc., 909 F.2d 458 466_

15

**JA 199**

*(n12)(3rd Cir. 1989)*. A party responding to a summary judgment motion need not come forward with evidence unless the motion itself is so supported. *See Rule 56 (e); Adickes v. Kress, 398 U.S. 144, 156 (1969).*

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson, 477 U.S. at 255.* Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

Furthermore, a could should not grant summary judgement based on perceived disparity between Plaintiff's statement and medical records - doing so is an impermissible credibility determination and weighing of contradictory evidence. *See Brooks v. Kyler, 204 F.3d 102, 107-08 & n.4 (3d Cir. 2000)* (noting that pro se prisoners generally cannot get independent medical evidence and their own sworn statements are the best evidence available to them.

Lastly, in conformance with Fed.R.Civ.P. 56(e), medical records unaccompanied by certifying affidavits or other means of authentication should not be considered on summary judgement motion. *See Wells v. Franzen, 777 F.2d 1258, 1262 (7th Cir. 1985); Berk v. Ascott Inv. Corp., 759 F. Supp. 245, 249 (E.D. Pa. 1991).*

16

**JA 200**

## B. Damages

It is well-settled that compensatory damages under *42 U.S.C. § 1983* are governed by general tort-law conpensation theory. *See Carey v. Piphus,* 435 U.S. 247, 255, 55 L. Ed. 2d 252, 98 S.Ct. 1042 (1978). In other words, " damages are available under [§ 1983] for actions 'found... to have been violative of... constitutional rights and it have caused compenable injury...' "*Id. (emphasis omitted)(quoting* Wood v. Strickland, 420 U.S. 308, 319, 43 L. Ed. 2d 214, 95 S.Ct. 992 (1975).

In elaborating on this principle, the Supreme Court has explained that compensatory damages for claims brought under *42 U.S.C. § 1983* for violations of constitutional rights "may include out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation...personal humiliation, and mental anquish and suffering.' *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 307, 91 L. Ed. 2d 249, 106 S. Ct. 2537 (1986) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 350, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974).

## C. Plaintiff's Unanswered Discovery Requests

A court should not grant summary judgement against a party who has not had an opportunity to pursue discovery or whose discovery requests have not been answered, as in the instant matter. *Ingle v. Yelton,* 439 F.3d 191, 196 (4th Cir. 2006) (denial of Rule 56(f) motion "is particularly inappropriate when ... 'the

# JA 201

materials sought are the object of outstanding discovery'" *(citations omitted));* *Leigh v. Warner Bros., Inc.,* *212 F.3d 1210, 1219 (11th Cir. 2000)* (summary judgement is generally inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests); *Nauman v. Bugado, 374 F. Supp. 2d 893, 900-01 (D. Haw. 2005); (See Exhibit P-55, attached herein);* (showing defendant's purposeful withholding of relevant information sought by Plaintiff beyond the discovery deadline)

"... [W]here the facts are in the possession of the moving party, a continuance of a motion for summary judgement should be granted as a matter of course." *Costlow v. U.S., 522 F.3d 560, 564(3d Cir. 19770); accord, Ingle; Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1043 (D.N.J. 1990).*

### *VI. COUNTER ARGUMENT*

Plaintiff files this Brief in Opposition to defendant PADOC's motion for summary judgement setting forth the following in support of the denial of the defendant's motion.

**A. Argument**

Plaintiff was assigned lite-duty work assignment at SCI-ALB. Plaintiff was transferred to SCI-PHX with lite-duty employment active. Plaintiff was not medically cleared by SCI-PHX upon arrival and was therefore not eligible for

employment.

Ms. Jackson - acting as a health care professional - was at all times relevant hereto, acting in the capacity as an authorized agent, servant, workmen, contractor, subcontractor, and/or employee of defendant Wellpath and/or defendant PADOC and gave Plaintiff erroneous instructions were contrary to PADOC's policy. If, alternatively, Ms. Jackson was not an agent and/or employee of defendant Wellpath and/or defendant PADOC, then these defendants held Ms. Jackson out to Plaintiff to be their authorized agent, servant, workmen, contractor, subcontractor, and/or employee, and as such are liable for this individual's actions under the theory of ostensible agency.

Plaintiff has no way to "contact SCI-ALB," nor are inmates required to do so pursuant to and in accordance with PADOC Policy. Plaintiff required accommodations that cost the PADOC zero financial burden and/or structural modifications to the facility. Defendants are still failing to accommodate for Plaintiff's disability even after being properly entered into SAPPHIRE at the SCI-PHX facility. Defendants currently have Plaintiff assigned to "Unit Janitor," which requires Plaintiff to work in wet areas, specifically restricted in SAPPHIRE. Defendants have AGAIN deleted Plaintiff's restrictions without warning. Ms. Jackson's erroneous instructions were contrary to PADOC's policy.

In its Motion for Summary Judgment (ECF. 130), defendant PADOC now seeks summary judgement on Plaintiff's failure to accommodate claim under the Rehabilitation Act that allege defendants failed to provide accommodations for Plaintiff.

19

**JA 203**

## A. Americans with Disabilities Act (ADA) / Rehabilitation Act (RA)

The relevant provision of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." *42 U.S.C. § 12132*. To establish a claim under the ADA, "plaintiffs must demonstrate that: (1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley, 82 F.4th 217, 225 (3d Cir. 2023)*. When the plaintiff is seeking compensatory damages, the "plaintiff must also show intentional discrimination under a deliberate indifference standard." *Id*.

"With limited exceptions, the same legal principles govern ADA and RA claims." *CG v. Pa. Dep't of Edu., 734 F.3d 229, 235 (3d Cir. 2013)*. The RA provides "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." *29 U.S.C. § 794(a)*. To make out a claim under the RA, the Plaintiff has to show the same elements as under the ADA but must also prove that the program in question received federal funding. *CG, 734 F.3d at 235 n.10*.

Additionally, there is variation in the causation requirement. Under the ADA, a "but-for causation" is needed, while the RA requires the plaintiff to show

20

**JA 204**

that disability is the "sole cause" of the discrimination. _Durham, 82 F.4th at 226._ "Refusing to make reasonable accommodations is tantamount to denying access." _Id_.

To make out a money damages claim, plaintiff must allege intentional discrimination, which requires a showing of deliberate indifference. _Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 289 (3d Cir. 2019)._ That showing is made by alleging that (1) Defendant "had knowledge that a federally protected right is substantially likely to be violated," and (2) Defendant "failed to act despite that knowledge." _Id. at 292_.

Defendant PADOC does not dispute that Lewald has a disability. _ECF No. 86 at 15._ However, PADOC asserts that Lewald was not a victim of intentional disability discrimination and that his work assignment falls outside the scope of the RA. _Id_.

In this Honorable Court's _Memorandum_ dated November 29, 2023, Honorable Chad F. Kenney held:

Program or activity takes on a broad meaning under the RA and includes "'all of the operations of' a state instrumentality." _Furgess, 933 F.3d at 289 (citing 29 U.S.C. § 794(b))._ The meaning of "program or activity" under the RA is "'extremely broad in scope and includes anything a public entity does.'" _Id. (quoting Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs., 796 F.3d 293, 301 (3d Cir. 2015))._ Therefore, these terms are "all-encompassing." _Furgess, 933 F.3d at 289 (citing Yeskey, 118 F.3d 168, 170 (3d Cir. 1997), aff'd sub nom. 524_

21

**JA 205**

*U.S. 206, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998)).*

Moreover, "a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitutes a denial of the benefits of a prison's services, programs, or activities under Title II." *Furgess, 933 F.3d at 290 (internal quotation marks and citation omitted).*

Here, Plaintiff was assigned to work in Food Services, a heavy-duty assignment. *ECF No. 1 ¶ 93.*

**The same day he received this assignment**, Plaintiff began informing numerous officials that he had a disability and could not perform these duties, beginning with defendant Delliponti, the individal responsible for employment decisions. *Id. ¶¶ 89, 94.*

Plaintiff raised the issue **_again_** with Melissa Delliponti **prior to reporting to said work placement**, spoke with Unit Sergeant Mr. Garmin and Unit Corrections Officer Ms. Stubbs, and filed a grievance. *Id. ¶¶ 95-96.*

Upon reporting to work, Plaintiff explained his disability to Food Services Supervisor Robert Choate, Food Services Instructor Shanda Deshield, and Unit Manager Lisa Durant. *Id. ¶¶ 97-98.*

Plaintiff then filed numerous Medical Sick Call Requests, two resulting in an appointment with Ms. Tara Jackson, whom did not examine him. *Id. ¶¶ 99, 103-04.* Over the course of the next few weeks, Plaintiff continued to file grievances, make Medical Sick Call Requests, write request slips, and attempt to

22

**JA 206**

explain his disability to his supervisors in Food Services. *Id. ¶¶ 104-32.*

No prison official took any action to address his concerns with performing heavy-duty work. Plaintiff continued to report to his job in Food Services [under the threat of of lost pay, loss of transfer incentive, and possible loss of parole eligibility] until he suffered an injury that caused him to "scream[] in pain." *Id. ¶ 133.*

"Refusing to make reasonable accommodations is tantamount to denying access." *Durham, 82 F.4th at 226.* Here, reasonable accommodations were not made for Plaintiff and Plaintiff was effectively forced to work in dangerous conditions given his disability.

In *Durham*, the Third Circuit found the causation elements in the RA were met where requests for accommodation were repeatedly refused and complaints of pain ignored which prevented plaintiff from utilizing a service, program, or activity. *Id*. The court determined that plaintiff pleaded sufficient facts to demonstrate **intentional discrimination** under the deliberate indifference standard **when the defendants had "knowledge that a federally protected right** - his right under the ADA to be free from disability discrimination - was **substantially likely to be violated."** *Id (emphasis added).*

The court noted that plaintiff made prison officials aware that he needed a cane and was in pain without it, and he was continuously denied his cane and accommodations. *Id*. **"This alone was sufficient to allege a deliberate indifference claim."** *Id (emphasis added).*

**JA 207**

Similarly, here, Plaintiff repeatedly told various prison officials, medical providers, and filed grievances regarding his disability and the lack of accommodation.

In addition, prior to his transfer from PADOC SCI-ALB back to SCI-PHX, there were restrictions noted in SAPPHIRE including: "no lifting more than 10 pounds, no standing/sitting more than 4 hours, no impact jobs/sports, no jumping/climbing, no excessive bending, bottom-bunk, lite-duty work assignment, no food service-handle/janitor, **NOT MEDICALLY CLEARED FOR FOOD SERVICES.**" _Id_. at ¶ 69 (emphasis original).

Officials claim they could not access or view this information. However, when Plaintiff met with a records specialist he was quickly able to view Plaintiff's medical record which included a record of his disability and accommodations that Plaintiff received as the previous facility. _Id_. at ¶ 226

Plaintiff's efforts were sufficient to have provided defendants with knowledge of his disability and need for accommodation; however, despite this knowledge, there was no action to accommodate Plaintiff's disability. Thus, Plaintiff has sufficiently pleaded an RA claim seeking compensatory damages.

_Memorandum_, Honorable Chad F. Kenny, 11/29/2023, (ECF. 100 pp 14-16); (cleaned up and emphasis added).

## 2. Inbred Custom of Deliberate Indifference For Their Own Policies

Plaintiff's requested and was granted disability accommodations from multiple agents, servants, workmens, contractors, subcontractors, and/or

## JA 208

employees of defendant PADOC beginning on January 25, 2019 and continuing through December 28, 2022. Pursuant to and in accordance with Policy DC-ADM006, Section 2 - Accommodations, (A) Request for Accommodations

**3. Any observing staff member can make a request for accommodation on behalf of an inmate**

*PADOC Policy DC-ADM006 Section 2(A)(3); DOC-00852. (emphasis added)*
*(See Appendix A-1, attached herein)*

There was not necessity for Plaintiff to file a paper request for accommodations because they were already providing accommodations for Plaintiff since his arrival in the custody defendant PADOC in January 2019. Pursuant to and in accordance with Policy DC-ADM006, Section 1 - General Procedures, (A) Classification/Diagnosis

**1**. **Qualified health-care personnel shall perform** a medical, dental, and mental health **screening/appraisal of each inmate, including intra-system transfers, within 14 days** of the inmate's initial commitment.

**2. The facility's health care department, through qualified personnel or specialists, and in conjunction with the affected inmate, shall make the diagnosis of a qualified disability, unless previously diagnosed, and shall determine the level of accomodation needed and provide the appropriate medical treatment, as required by the condition. Medical staff shall notify facility staff of any impairment.**

*PADOC Policy DC-ADM006 Section 1(A)(1)&(2); DOC-00849. (emphasis added)*
*(See Appendix A-1, attached herein)*

Pursuant to and in accordance with Policy DC-ADM006, Section 1 - General Procedures, (B) Transfers

**JA 209**

Material submitted requesting the transfer of a qualified disabled inmate to another facility **must clearly indicate that the inmate has a qualified disability and include the level of accommodation and resulting services that are required**.

*PADOC Policy DC-ADM006 Section 1(B)(3); DOC-00850. (emphasis added)*
*(See Appendix A-1, attached herein)*

Pursuant to and in accordance with Policy 13.1.1, (B) Intra-Facility Transfers

(1) Sending Facility

(a) The medical records department will review the records of the transferring inmate through use of the DC-485, Intra-facility Medical Record Transfer Checklist to **ensure all applicable items are obtained and contained within the records prior to transfer**... For Permanent Intra-Facility Transfer, all volumes of an inmate's medical record will be sent.

(c) If any of the numbered questions are answered with a "YES," the checklist and chart must be reviewed with the physician. The nurse clearing charts/designee is to personally review the chart and checklist with the physician.

*PADOC Policy 13.1.1, Section 1(B)(1)(a)&(c); DOC-00072.*
*(See Appendix A-4, attached herein)*

Pursuant to and in accordance with Policy 13.1.1, (B) Intra-Facility Transfers

(2) Receiving Facility

(a) The nurse assigned to the reception area shall review the Nursing Transfer Checklist from the sending facility and complete the **DC-479, Intra-Facility Transfer Reception Screening Form** by **conducting a personal interview with the inmate.**

*PADOC Policy 13.1.1, Section 1(B)(2)(a); DOC-00073. (emphasis added)*
*(See Appendix A-4, attached herein)*

26

**JA 210**

Had Plaintiff been provided with the personal interview with in compliance with this policy, Plaintiff would have been medically cleared for lite-duty employment and his restrictions would have been implemented properly.

Pursuant to and in accordance with Policy 13.1.1, (B) Intra-Facility Transfers

    (2) Receiving Facility

        (b) The will write a progress note including significant information.

        (d) The nurse shall provide an oral and written explanation to the inmate upon arrival regarding sick call (including inmate co-pay), emergency services, dental care, and psychiatric/psychological service.

PADOC Policy 13.1.1, Section 1(B)(2)(b)&(d); DOC-00073.
(See Appendix A-4, attached herein)

Pursuant to and in accordance with Policy 13.1.1, (B) Intra-Facility Transfers

    (2) Receiving Facility

        (f) The appropriate individuals will be notified of any inmate restrictions or special recommendations. These include, but are not limited to: the Infection Control Nurse, Psychology Department, **Food Services Department**.

        (i) Any inmate requiring follow-up care **shall be referred and scheduled for the next physician/physician assistant line.**

        (j) The **DC-480, Medical Clearance Form** will be completed at the time of all physical examinations by the physician or physician assistant.

PADOC Policy 13.1.1, Section 1(B)(2)(f)&(i)&(j); DOC-00074. (emphasis added)
(See Appendix A-4, attached herein)

There was no interview, Plaintiff was not referred to the next physician

**JA 211**

assistant line, and there was no medical clearance without Plaintiff's interview.

Despite that lengthy history of Plaintiff being accommodated for, defendants - with the knowledge that Plaintiff's federally protected right to timely and adequate disability accommodations were being violated - failed to act despite that knowledge. **Plaintiff was never required to file medical sick call requests, requests to staff, grievances, and/or any other amount of voluminous paperwork in order to be accomodated for between January 25, 2019 and December 28, 2022**. *(See Exhibit P-1, P-2, P-3, P-4, P-5, P-6, P-7, P-12, P-41, P-43, P-45, P-54, attached herein).*

**Moreover, the record is completely devoid of any complaints for the lack of accommodations from Plaintiff between January 25, 2019 and December 28, 2022.** No reasonably prudent person would have expected this violation of rights and no other inmate being transferred from SCI-ALB to SCI-PHX was forced to submit to this superfluous cycle of civil rights violations. Had Plaintiff received timely, proper, and adequate disability accommodations as described in defendant PADOC's own policy, Plaintiff's would not have been injured on medically-inappropriate work assignment.

Defendant PADOC's policy requires their medical agents, servants, workmens, contractors, subcontractors, and/or employees of defendant PADOC, to complete a "Medical Incident/Injury Report DC-457." Pursuant to and in accordance with Policy 13.1.1, Section 2 - Forms and Instructions, <u>Medical Incident/Injury Report DC-457</u>

> (1) The **DC-457, Medical Incident/Injury Report *shall*** be completed by the licensed health care professional for all medical injuries/incidents

28

**JA 212**

occurring within the facility or on the grouns for staff, inmate, visitors, Contracted Health Care Provider personnel, or any others.

*PADOC Policy 13.1.1, Section 2(1); DOC-00141.*
*(Appendix A-5, attached herein).*

Defendants - with the knowledge that Plaintiff's federally protected right to timely and adequate medical care was being violated - failed to act despite that knowledge. Although Plaintiff was seen by multiple agents, servants, workmens, contractors, subcontractors, and/or employees of defendant PADOC, there was never once a "Medical Incident/Injury Report DC-457" filed on Plaintiff's behalf. Had Plaintiff received timely, proper, and adequate emergency medical services by qualified medical professionals, Plaintiff's condition may have been properly treated and Plaintiff would not have endured prolonged pain and suffering from February 18, 2021 through **today** and into the future.

Defendant PADOC's policy requires their medical agents, servants, workmens, contractors, subcontractors, and/or employees of defendant PADOC, to file a "Medical Incident/Injury Report DC-457" and assign Plaintiff "to the next sick call line and either taken to an emergency room, admitted to the infirmary, or returned to the block after assessment/treatment." Pursuant to and in accordance with Policy 13.1.1, Section 2 - Forms and Instructions, **Medical Incident/Injury Report DC-457**

(2) The health care professional completing the DC-457 shall legibly document the following:

(d) document all treatment administered with recommendations for follow-up care to include the following:

(4) all inmates shall be referred to the next sick call line and

29

# JA 213

either taken to an emergency room, admitted to the infirmary, or returned to the block after assessment/treatment.

*PADOC Policy 13.1.1, Section 2(2)(d)(4); DOC-00141.*
*(Appendix A-5, attached herein).*

Defendants - with the knowledge that Plaintiff's federally protected right to timely and adequate medical care was being violated - failed to act despite that knowledge. Although Plaintiff was seen by multiple agents, servants, workmens, contractors, subcontractors, and/or employees of defendant PADOC, there was never once a "Medical Incident/Injury Report DC-457" file and/or "to the next sick call line and either taken to an emergency room, admitted to the infirmary, or returned to the block after assessment/treatment." Had Plaintiff received timely, proper, and adequate emergency medical services by qualified medical professionals, Plaintiff's condition may have been properly treated and Plaintiff would not have endured prolonged pain and suffering from February 18, 2021 through ***today*** and into the future.

Pursuant to and in accordance with Policy 13.1.1, Section 2 - Forms and Instructions, **Intra-Facility Transfer Reception Screening DC-479**

(3) The nurse will obtain a medical history to include the following:

(a) **current acute conditions/problems;**

(b) **chronic conditions/problems;**

...

(f) **physical disabilities/limitations;**

*PADOC Policy 13.1.1, Section 2(3)(a), (b), (f); DOC-00137. (emphasis added)*

30

**JA 214**

*(Appendix A-5, attached herein).*

Defendant PADOC refused to properly review and process Plaintiff's medical file and there was no **"continuum of care"** provided by defendant PADOC's agents, servants, workmens, contractors, subcontractors, and/or employees of defendant PADOC. Pursuant to and in accordance with Policy 13.1.1, Section 10 - Maintenance of Inmate Medical Records (I) Record Implementation and Review

   (2) Record Review

     (b) Upon intra-facility transfer, the inmate's medical records shall be reviewed at the receiving facility by the reception-screening nurse. The purpose of this review is **to provide a continuum of care** and reevaluate the plan of care. The **DC-479** shall be completed. **The reception-screening nurse shall initiate an immediate referral to a physician/PA or psychiatrist if needed.** Problematic transfers shall be referred to the CHCA for action.

*PADOC Policy 13.1.1, Section 10(I)(2)(b); DOC-00426. (emphasis added)*
*(Appendix A-9, attached herein).*

Defendants - with the knowledge that Plaintiff's federally protected right to timely and adequate disability accommodations were being violated - failed to act despite that knowledge. Had Plaintiff received timely, proper, and adequate disability accommodations, **"referral to a physician/PA,"** and the **"continuum of care"** described in defendant PADOC's own policy, Plaintiff's would not have been injured on medically-inappropriate work assignment.

31

**JA 215**

Plaintiff requested and was refused emergency medical services by multiple agents, servants, workmens, contractors, subcontractors, and/or employees of defendant PADOC. Pursuant to and in accordance with Policy 13.2.1, Section 1 - Inmate Health Care Plan:

(2) Emergency Services

(a) Every inmate shall have access to regular and specialized medical, mental health, dental services, and **emergency health care service on a seven day a week, 24-hour basis**.

(b) Corrections officers and other contact staff shall be trained in accordance with Department policy 5.1.1, "Staff Development and Training" in the following areas:

(1) response to health-related situations, **within four minutes upon notification/realization of the emergency**;

*PADOC Policy 13.2.1, Section 1(2)(a); (2)(b)(1); DOC-00509. (emphasis added) (Appendix A-11, attached herein).*

Defendants - with the knowledge that Plaintiff's federally protected right to timely and adequate medical care was being violated - failed to act despite that knowledge. Plaintiff was made to wait ***more than 5 days just to see a medical provider*** who did nothing more than takes notes and prescribe medication that was never dispensed. Had Plaintiff received timely, proper, and adequate emergency medical services by qualified medical professionals, Plaintiff's condition may have been properly treated and Plaintiff would not have endured prolonged pain and suffering from February 18, 2021 through ***today*** and into the future.

32

**JA 216**

### 3. Failure to Accommodate

Defendant PADOC moves for summary judgment on Plaintiff's failure to accommodate claim. *(ECF. 130 p. 6)* "A disabled employee may establish a prima facie case under the ADA if he shows that she can perform the essential function of the job with reasonable accommodation and that the employer refused to make such an accommodation." *Turner v. Hershey Chocolate USA, 440 F.3d 604, 610; 17 Am Disabilities Cas (BNA) 124917 Am. Disabilities Cas. (BNA) 1249; 2 Accom Disabilities Dec (CCH) 12-1132 Accom. Disabilities Dec. (CCH) 12-113 (3d Cir. 2006) (citing Skerski v. Time Warner Cable Company, 257 F.3d 273, 284; 11 Am Disabilities Cas (BNA) 166511 Am. Disabilities Cas. (BNA) 1665 (3d Cir. 2001)*. "[T]he failure to reasonably accommodate a disabled and qualified employee constitutes an adverse employment action for purposes of the ADA." *Turner, 440 F.3d at 611, n. 4; see also Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 771 (3d Cir. 2004)* ("[A] failure to make a reasonable accommodation for a disabled and qualified employee constitutes discrimination under the ADA.").

"Generally, the question of whether a proposed accommodation is reasonable is a question of fact." *Buskirk v. Apollo Metals, 307 F.3d 160, 170 (3d Cir. 2002)*. "A claim that an employer failed to accommodate an employee's disability is best viewed not as an independent claim under the ADA, but as a theory that may support a discrimination claim." *Kessler v. AT&T, 2015 U.S. Dist. LEXIS 126888, 2015 WL 5598866, at *9 (M.D. Pa. Sept. 22, 2015) (quoting Solomon v. Sch. Dist. of Phila., 882 F.Supp.2d 766, 776 (E.D. Pa. 2012)); See also Taylor v. Dalton, 852 F. Supp. 343, 1 Accom. Disabilities Dec. (CCH) ¶ 1-115, 3 Am.*

33

Disabilities Cas. (BNA) 497, 5 Am. Disabilities Dec. 629, 1994 U.S. Dist. LEXIS 6155 (E.D. Pa. 1994), aff'd, 61 F.3d 896, 1995 U.S. App. LEXIS 17906 (3d Cir. 1995) (holding where challenged practice has disparate impact upon individuals with disabilities, proof of discriminatory animus is not required to establish violation of *29 USCS § 794*.)

"A plaintiff bringing an ADA failure-to-accommodate claim must establish: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Merril Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)).

The ADA does not define the term "reasonable accommodation" with much precision. *See 42 U.S.C. § 12111(9)*. The Equal Employment Opportunity Commission, however, has promulgated regulations that define "reasonable accommodation" to include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." *29 C.F.R. § 1630.2(o)(1)(ii)*.

Reasonable accommodation "includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith under what has been termed a duty to engage in the 'interactive process.'" *Williams*, 380 F.3d at 761. "Once an accommodation is requested, the employer is required to

34

**JA 218**

engage in the interactive process during which the employer and employee identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome them." *Bielich v. Johnson & Johnson, Inc.,* 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014); *Armstrong,* 438 F.3d at 246 ("if an employer has adequate notice of an employee's disability, and the employee requests accommodations for the disability, it becomes the responsibility of the employer to engage the employee in the interactive process of finding accommodations"); *see also 29 C.F.R. § 1630.2(o)(3)* ("To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations."). More specifically:

> The interactive process is aimed at determining what reasonable accommodations, if any, can address the employee's disability. The interactive process requires a great deal of communication between the employee and the employer, as both parties bear responsibility for determining what accommodation is necessary. Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome A failure to communicate, either by way of initiation or response, may be an act of bad faith.

*Sharbaugh v. W. Haven Manor, LP,* No. CV 14-1723, 2016 U.S. Dist. LEXIS 161264, 2016 WL 6834613, at *9 (W.D. Pa. Nov. 21, 2016) (internal quotations and citations omitted); *see also 28 C.F.R. § 35.152(b)(1)* ("Public entities shall ensure

35

**JA 219**

that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.").

Here, there is a genuine dispute of material fact as to whether defendant PADOC offered Plaintiff timely and reasonable disability accommodations once Plaintiff gave notice he required disability accommodations. There is also sufficient evidence to create a genuine dispute of material fact as to whether defendant PADOC made any good faith effort to assist Plaintiff with his request for reasonable disability accommodations.

Because there is a genuine dispute of fact as to whether defendant PADOC knew of Plaintiff's requirement for disability restrictions was an essential function of Plaintiff's job, there is also a genuine dispute of fact as to whether defendant PADOC may have been able to reasonably accommodate Plaintiff's requests by entering employment restrictions in SAPPHIRE (an accommodation with zero cost) in a timely fashion. Although "an employer is not obligated to provide an employee the accommodation he requests or prefers," _Yovtcheva v. City of Philadelphia Water Dep't, 518 Fed. App'x 116, 122 (3d Cir. 2013)_, there is a dispute as to whether defendant PADOC's continued placement of Plaintiff on permanent medical leave and unemployment following his injury and his requests to return to work was a reasonable accommodation under the ADA.

By continuing to involuntarily place Plaintiff on permenant medical leave, Plaintiff would inevitably be permanently unemployed, intentionally discriminated against because of his disability, and not accommodated for. By

36

**JA 220**

rejecting Plaintiff's requests to return to work, a reasonable jury could conclude that defendant inevitably forced Plaintiff to be terminated through removal of assignment for more than two years, forced Plaintiff to work *again* in a medically-inappropriate environment for a second time, demoted his pay scale, and deprived him of various benefits of his employment along the way.

The Plaintiff has offered evidence that defendant PADOC has failed to engage in a good faith and timely interactive process with Plaintiff to determine what reasonable accommodations may be offered. Defendant PADOC did not inquire into the status of Plaintiff's condition in violation of their own policies, and defendant PADOC knew that Plaintiff was attempting to return to work. This presents a material dispute of fact as to whether defendant PADOC engaged in a good faith interactive process with Plaintiff to determine what reasonable accommodations might be possible and implemented at low- to no- cost on behalf of defendant.

Defendant's argument that summary judgment is warranted is without merit. Our Third Circuit has noted that whether an accommodation was reasonable is typically a question of fact to be decided by a jury. *See Buskirk, 307 F.3d at 170*. Plaintiff's evidence provides a sufficient basis for a reasonable jury to conclude that defendant PADOC could have permitted Plaintiff's post-transfer and post-leave status quo to remain by allowing for Plaintiff's fellow inmates to assist with lifting the few items that Plaintiff would have had trouble lifting on his own and/or work in wet surface areas where Planitiff was unable to stabilize himself. Despite Plaintiff making multiple requests to return to work with few and no-cost

37

**JA 221**

accommodations, defendant PADOC continued to require Plaintiff to remain on medical leave and/or unemployed for more than two years, while demoting him, charging him for sustaining an injury sustained at work in violation of their own policy, and reducing his monthly stipen.

Plaintiff was not provided equal access to the programs, services, and activities of a public entity due to his disability. _Rennie v. United States_, 139 F. Supp. 2d 159 (D. Mass. 2001), for the proposition that whether a defendant acted reasonably in its accommodation of a plaintiff is a question of fact precluding summary judgment. _See also Hurley-Bardige v. Brown_, 900 F. Supp. 567 (D. Mass. 1995) (the court denied summary judgment in part because a genuine issue of material fact existed as to whether "the accommodations provided by the agency were made in a timely manner.") _Hurley-Bardige_, 900 F. Supp. at 572. Plaintiff's request for disability accommodations was a type that is reasonable in the run of cases and defendant PADOC cannot meet its burden of showing that granting the no-cost accommodation would impose an undue hardship under the particular circumstances of the case.

Plaintiff has also alleged intentional discrimination, which, in this Circuit, may be satisfied by a showing of deliberate indifference. _S.H. ex rel. Durrell v. Lower Merion School District_, 729 F.3d 248, 263 (3d Cir. 2013) ("We now follow in the footsteps of a majority of our sister courts and hold that a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA.").

Under this test, Plaintiff must allege that (1) the defendant PADOC had

38

**JA 222**

"knowledge that a federally protected right is substantially likely to be violated," (i.e. knowledge that the failure to provide Plaintiff with employment restrictions likely violated his right to reasonable accommodations of his disability), and (2) the prison failed "to act despite that knowledge." *Id*. *at 265*.

As to the first prong, there is an abundance of evidence that defendant PADOC knew about Plaintiff's need for disability accommodations in order to operate safely in the prison facility. First, at the time that Plaintiff was held in the general prison population, he requested and was granted disability accommodations. Second, after Plaintiff was transferred from SCI-PHX to SCI-CAM, he requested and was granted disability accommodations. Third, the medical staff, as well as the Unit Counselor, the Unit Manager, Inmate Employment, Food Services Supervisors, Deputies, and the Superintendent knew that Plaintiff had not been able to work safely in the Food Services department because he was not being accommodated for and could not stabilize himself in wet areas and/or carry any significant weight. It is clear from the above that defendant PADOC knew that Plaintiff required lite-duty disability accommodations and that by failing to provide him with any, Plaintiff's right to reasonable and timely accommodation for his disability was likely to be violated.

The second prong, failure to act, is also adequately pled and evinced. **For a month**, defendant PADOC did not provide him with any **disability accommodation** that would allow him to participate in the work program, while forcing him to report daily to the work assignment under the threat of lost pay, loss of transfer incentive, and possible loss of parole eligibility; when they did

**JA 223**

provide employment to Plaintiff more than two years, it was not lite-duty and not disability accommodating. Plaintiff has alleged specific facts to constitute deliberate indifference.

A reasonable factfinder could conclude that once Plaintiff received doctor's approval allowing for him to return to work with restrictions that arguably did not impact his essential job duties, the involuntary placement of Plaintiff on permenant medical leave, and involuntary permenant unemployment for more than two years became an unreasonable accommodation.

Furthermore, even with the restrictions entered and active in SAPPHIRE, defendant PADOC returned employment to Plaintiff over two years later, defendant PADOC *__again__* placed Plaintiff in a medically-inappropriate work environment of wet/uneven surfaces even though his medical restrictions forbade that placement.

Because Plaintiff has offered evidence for a reasonable jury to conclude that defendant PADOC did not engage in a timely good faith, interactive process with Plaintiff and that Plaintiff could have been reasonably accommodated, summary judgment should be denied on Plaintiff's failure to accommodate theory of liability.

Therefore, this Honorable Court should conclude that there is a genuine dispute of material fact as to where defendant provided Plaintiff any "reasonable accommodation" by requiring him to stay on permenant medical leave, keep him on permanent unemployment for more than two years, and *__again__* force him to work in a medically-inappropriate environment, where the progress note by

40

**JA 224**

doctors permitted him to work with certain basic restrictions that Plaintiff previously had been granted. *See Williams, 380 F.3d at 761; Bielich, 6 F. Supp. 3d at 617.*

## VI. CONCLUSION

For all the foregoing reasons, this Honorable Court should **DENY** defendant PADOC's motion for summary judgement.

Respectfully submitted,

Dated: February 26, 2024

_____

Troy Vincent Lewald/NS1262
(Mail By Defendants)
SCI-PHX
P.O. Box 33028
St. Petersburg, FL. 33733

41

**JA 225**

doctors permitted him to work with certain basic restrictions that Plaintiff previously had been granted. *See Williams*, 380 F.3d at 761; *Bielich*, 6 F. Supp. 3d at 617.

## VI. CONCLUSION

For all the foregoing reasons, this Honorable Court should **DENY** defendant PADOC's motion for summary judgement.

Respectfully submitted,

Dated: February 26, 2025

Troy Vincent Lewald/NS1262
(Mail By Defendants)
SCI-PHX
P.O. Box 33028
St. Petersburg, FL. 33733

41

**JA 226**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT PENNSYLVANIA

TROY VINCENT LEWALD,    :
    *Plaintiff,*    :
               :
    v.    :    Civil Action No.: <u>22-CV-04625</u>
               :
PENNSYLVANIA DEPARTMENT    :
OF CORRECTIONS, *et al.*,    :    *JURY TRIAL DEMANDED*
               :
    *Defendants.*    :

## <u>CERTIFICATE OF SERVICE</u>

I, <u>Troy Vincent Lewald</u>, Plaintiff *Pro Se'*, do hereby certify that I am on this day, serving the foregoing document(s) upon the person and in the manner as indicated below, which service satisfies the requirements of Fed.R.Civ.P. 5(b)(2)(c).

<u>Service by first-class mail</u>:
Office of Attorney General
Brendan Mullen
1600 Arch St., Suite 300
Philadelphia, PA 19103

Dated: <u>February 26, 2025</u>

Troy Vincent Lewald/NS1262
SCI-PHX
PO Box 33028
St. Petersburg, FL 33733

**JA 227**

# APPENDIX A-1



| | |
|---|---|
| **POLICY STATEMENT** | |
| **Commonwealth of Pennsylvania • Department of Corrections** | |

| Policy Subject: | Policy Number: |
|---|---|
| **Reasonable Accommodations for Inmates with Disabilities** | **DC-ADM 006** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **January 2, 2009** | **Signature on File** <br> **Jeffrey A. Beard, Ph.D.** | **January 23, 2009** |

## I.   AUTHORITY

The Authority of the Secretary of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, 71 P.S. §§61, 66, 186, and 310-1, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II.   APPLICABILITY

This policy is applicable to all facilities operated under the jurisdiction of, or conducting business with the Department of Corrections.

## III.   POLICY

It is the policy of the Department to establish procedures for an inmate to request an accommodation for a qualified disability that affects a major life activity and to ensure that:

A. every inmate, including an inmate with a qualified disability, is housed in a manner that provides for his/her safety and security;

B. reasonable accommodations are made only if the accommodations pose no direct threat to the individual requesting the accommodation or cause an undue hardship on the Department;

DOC-00843

Ref: 5291565 pg 59 of 99 for TROY LEWALD

C. reasonable accommodations are made to the physical structure of housing used by an inmate with a qualified disability to accommodate the physical limitations of the disabled inmate and facilitate the inmate's inclusion in facility life;[1]

D. a Unit Manager may authorize housing unit furnishings within the cell/dorm to be rearranged to best accommodate an inmate with a qualified disability. A visually impaired inmate shall be given bottom bunk status;

E. reasonable accommodations are made to facility programs and activities to permit participation by a qualified inmate with a disability; and

F. no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of the Department.[2]

## IV. PROCEDURES

All applicable procedures are contained in the procedures manual that accompanies this policy document.

## V. SUSPENSION DURING AN EMERGENCY

In an emergency or extended disruption of normal facility operation, the Secretary/designee may suspend any provision or section of this policy for a specific period.

## VI. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of the Department of Corrections.

## VII. RELEASE OF INFORMATION AND DISSEMINATION OF POLICY

### A. Release of Information

1. Policy

   This policy document is public information and may be released upon request.

2. Confidential Procedures (if applicable)

   Confidential procedures for this document, if any, are <u>not public information</u> and may not be released in its entirety or in part, without the approval of the Secretary of

---

[1] 4-4142
[2] 4-4277, 4-4429

DOC-00844

**JA 230**

Corrections/designee. Confidential procedures may be released to any Department of Corrections employee on an as needed basis.

**B. Distribution of Policy**

1. General Distribution

   The Department of Corrections' policy and procedures shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis.  Distribution of confidential procedures to other individuals and/or agencies is subject to the approval of the Secretary of Corrections/designee.

2. Distribution to Staff

   It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures either in hard copy or via email, whichever is most appropriate.

## VIII. SUPERSEDED POLICY AND CROSS REFERENCE

**A. Superseded Policy**

1. Department Policy

   DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities, issued March 26, 2004, by Secretary Jeffrey A. Beard, Ph.D.

2. Facility Policy and Procedures

   This document supersedes all facility policy and procedures on this subject.

**B. Cross Reference(s)**

1. Administrative Manuals

   a. DC-ADM 804, Inmate Grievance System

   b. DC-ADM 816, Inmate Compensation System

   c. 5.1.1, Staff Development and Training

2. ACA Standards

   a. Administration of Correctional Agencies: 2-CO-4E-01

DOC-00845

ef: 5291565 pg 61 of 99 for TROY LEWALD

    b.  Adult Correctional Institutions: 4-4142, 4-4277, 4-4285, 4-4286, 4-4348, 4-4362, 4-4363, 4-4365, 4-4366, 4-4375, 4-4429, 4-4450

    c.  Adult Community Residential Services: 4-ACRS-1A-09, 4-ACRS-4C-06, 4-ACRS-4C-23, 4-ACRS-6A-04, 4-ACRS-6A-11, 4-ACRS-6B-01, 4-ACRS-7A-05

    d.  Correctional Training Academies: None

DOC-00846

ef: 5291565 pg 67 of 99 for TROY LEWALD



**PROCEDURES MANUAL**
**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject: | Policy Number: |
|---|---|
| **Reasonable Accommodations for Inmates with Disabilities** | **DC-ADM 006** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| **January 2, 2009** | **Signature on File** <br> **Jeffrey A. Beard, Ph.D.** | **January 23, 2009** |

Release of Information:

**Policy Document:** This policy document is public information and may be released upon request.

**Procedures Manual:** The procedures manual for this policy may be released in its entirety or in part, with the prior approval of the Secretary/designee. Unless prior approval of the Secretary/designee has been obtained, this manual or parts thereof may be released to any Department employee on an as needed basis only.

DOC-00847

of: 5291565 pg 62 of 99 for TROY LEWALD

## DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual
### Table of Contents

### Section 1 – General Procedures

A. Classification/Diagnosis ................................................................... 1-1
B. Facility Placement ........................................................................... 1-1
C. Inmate Work Programs .................................................................... 1-2
D. Staff Training................................................................................... 1-2

### Section 2 – Accommodations

A. Request for Accommodation ............................................................ 2-1
B. Review of the Inmate Disability Accommodation Request Form ....... 2-1
C. General Accommodations................................................................. 2-2
D. Program/Services Accommodations ................................................ 2-3

### Section 3 – Specific Disabilities

A. Local Procedures ........................................................................... 3-1
B. Accommodations for the Deaf and Hard of Hearing ......................... 3-1
C. Accommodations for the Visually Impaired ...................................... 3-1
D. Accommodations for the Mentally and/or Physically Impaired .......... 3-1

DOC-00848

ef: 5291565 pg 63 of 99 for TROY LEWALD

## Section 1 – General Procedures

### A. Classification/Diagnosis

1. Qualified health-care personnel shall perform a medical, dental, and mental health screening/appraisal of each inmate, including intra-system transfers, within 14 days of the inmate's initial commitment. Only qualified health care professionals shall determine whether an inmate should retain any prosthetic device or equipment upon initial reception.

2. The facility's health care department, through qualified personnel or specialists, and in conjunction with the affected inmate, shall make the diagnosis of a qualified disability, unless previously diagnosed, and shall determine the level of accommodation needed and provide the appropriate medical treatment, as required by the condition. Medical staff shall notify facility staff of any impairment.

3. In determining the type of auxiliary aid and/or service necessary, consideration should be given to the requests of the inmate with the disability, **but the inmate's request is not determinative**. This information shall be recorded in the inmate's medical file. The inmate's **DC-17X, Adjustment Record** should reflect this same information.

4. Upon the request of the inmate. A notation shall be placed on the inmate's I.D. card that he/she has a qualified disability to alert staff that accommodations may be needed to properly communicate.

### B. Facility Placement[1]

1. In addition to all other factors considered by the Department in making facility assignments of an inmate, consideration may be given to facilities and programming available at various facilities to accommodate an inmate's particular qualified disability(s)[2] in accordance with **Facilities Designated to House Qualified Disabled Inmates (Attachment 1-A)**. An inmate diagnosed with a qualified disability may be assigned to a facility where accommodations exist to provide for this population. An inmate diagnosed as mentally and/or physically impaired may be assigned to a Special Needs Unit, depending on the severity of the disability, and may be assigned to a facility with a Mental Health Unit or a facility where accommodations exist to provide for this population.

2. Community Corrections Center (CCC) Placement

   In addition to all other factors considered by the Department in making assignments of an inmate for CCC placement, an inmate with a qualified disability who is accepted for CCC placement shall be placed in a CCC or Community Contract Facility (CCF) that provides accommodations according to the individual needs of the inmate.

---

[1] 4-4348
[2] 4-ACRS-6A-04, 4-ACRS-6A-11

1-1

DOC-00849

ef: 5291565 pg 64 of 99 for TROY LEWALD

3. Transfers

Material submitted requesting the transfer of a qualified disabled inmate to another facility must clearly indicate that the inmate has a qualified disability and include the level of accommodation and resulting services that are required.

## C. Inmate Work Programs

1. No inmate shall be discriminated against from participating in work programs due to a qualified disability. The Department is required to make reasonable accommodations to the known disability of qualified inmate applicants with disabilities. Compensation and job titles shall be in accordance with Department policy **DC-ADM 816, "Inmate Compensation System."**[3]

2. Accommodations that pose undue hardships for the Department or pose a threat to security need not be provided. An inmate will not be placed in a work program, which clearly jeopardizes his/her safety or security.

## D. Staff Training

Housing Unit Staff who have primary supervisory responsibility for an affected inmate may obtain out-service training to learn methods of communicating with the inmate and/or managing his/her specific disability in accordance with Department policy **5.1.1, "Staff Development and Training."**

---

[3] 4-4450

DOC-00850

**JA 236**

**Facilities Designated to Housed Qualified Disabled Inmates**

1. Every qualified deaf and hard of hearing male affected by this policy shall be housed at one of the following facilities:

   a. SCI-Albion;

   b. SCI-Camp Hill;

   c. SCI-Graterford.

2. Every qualified deaf and hard of hearing female affected by this policy shall be housed at SCI-Muncy.

3. Every qualified mentally and/or physically disabled male inmate affected by this policy shall be housed at one of the following facilities:

   a. SCI-Albion;

   b. SCI-Coal Township;

   c. SCI-Somerset;

   d. SCI-Mahanoy;

   e. SCI-Houtzdale;

   f. SCI-Laurel Highlands; or

   g. any facility with a Mental Health Unit (MHU), Special Needs Unit (SNU), or any other appropriately equipped facility.

4. Every qualified mentally and/or physically disabled female inmate affected by this policy shall be housed at SCI-Muncy or SCI-Cambridge Springs.

5. Every qualified vision impaired male and female inmate affected by this policy shall be housed at a facility designated as the most appropriate to handle the vision impairment based on the severity of the disability.

6. Each disabled Young Adult Offender (YAO) shall be housed at SCI Pine Grove.

7. Wheelchair bound inmates shall be housed at a prototypical facility or any other appropriately equipped facility.

*DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual*
*Section 1 – General Procedures*                                    *Attachment 1-A*
DOC-00851

**JA 237**

## Section 2 – Accommodations

### A. Request for Accommodation

1. An inmate seeking an accommodation for a disability shall submit to the Corrections Health Care Administrator (CHCA) or to the person performing the functions of the CHCA if the facility does not have a CHCA, a request using the **Inmate Disability Accommodation Request Form (Attachment 2-A)**.

2. The **Inmate Disability Accommodation Request Form** must describe the inmate's specific disability(ies), the specific activity(ies), and the specific action the inmate wishes the Department to take to allow him/her to perform the activities.

3. Any observing staff member can make a request for accommodation on behalf of an inmate.

### B. Review of the Inmate Disability Accommodation Request Form

1. The CHCA/designee review shall include the following:

   a. review the **Inmate Disability Accommodation Request Form** to determine if it is legible and complete. Illegible or incomplete forms shall be returned to the inmate;

   b. evaluate whether the inmate is disabled as described in the **Inmate Disability Accommodation Request Form**;

   c. evaluate the inmate's ability to perform the activities described in the **Inmate Disability Accommodation Request Form** and whether the requested accommodation will enable the inmate to perform the activities;

   d. *arrange for a current clinical evaluation of the inmate's alleged disability and/or impairment by a medical practitioner in order to validate the accommodation request;*

   e. in evaluating the inmate's request, the CHCA/designee shall take all appropriate action(s) as the CHCA deems reasonably necessary, including reviewing medical records pertaining to the inmate, arranging to have the inmate examined and/or tested by an appropriate person or persons, and/or interviewing staff and the inmate. The requests of the evaluation shall be summarized in a memorandum; and

   f. the CHCA shall refer the specific **Inmate Disability Accommodation Request Form** along with the memorandum summarizing the results of the evaluation to the Facility Manager/designee.

2. The Facility Manager review shall include the following:

Issued: 11/24/2014
Effective: 12/29/2014

DOC-00852

**JA 238**

    a. review the **Inmate Disability Accommodation Request Form,** the CHCA's memorandum summarizing the results of the investigation, and all other relevant records and make a recommendation whether the requested accommodation should be granted;

    b. in making his/her recommendation, the Facility Manager may consult with the Deputy Superintendent of Centralized Services (DSCS)/designee, the CHCA or other representative of the Medical Department, the Security Captain or other representative of the Security Office, and/or other staff person with relevant knowledge and expertise; and

    c. submit his/her recommendation to the Central Office Inmate Disability Accommodation Committee (COIDAC) along with the **Inmate Disability Accommodation Request Form** and the CHCA's memorandum, an alternative accommodation, if any, and any other information the Facility Manager deems appropriate.

3. The COIDAC shall be determined by the Secretary and shall, at a minimum, consist of two Deputy Secretaries, the Director of the Bureau of Health Care Services (BHCS), the Director of the Bureau of Treatment Services (BTS), and the **Director of the Office of Population Management (OPM)** or their designees. COIDAC review shall include the following:

    a. within **30** days of receiving a complete submission from the Facility Manager or longer period as may be approved by the Secretary, the COIDAC shall review the **Inmate Disability Accommodation Request Form,** the CHCA's memorandum summarizing the results of the evaluation, and the Facility Manager's recommendation; and

    b. determine whether the inmate suffers from a disability and if so, the manner in which the inmate's disability is to be accommodated. The COIDAC shall submit a memorandum to the Facility Manager outlining its determination.

4. The Facility Manager shall notify the inmate in writing of the final determination within ten working days of receiving the COIDAC's determination. An inmate who is dissatisfied with the COIDAC's determination may submit a grievance under Department policy **DC-ADM 804, "Inmate Grievance System."**

5. *The Facility Manager may impose sanctions, at his/her discretion, on the inmate, if it is determined that the inmate's accommodation request is frivolous or malicious or not brought in good faith. Possible sanctions may include the assessment of a co-payment from the inmate's account for any evaluation and/or examination of the inmate by a medical professional in assessing the accommodation request.*

6. *Any and all records relevant to and submitted in connection with the accommodation request shall be retained in the inmate's medical file under the Legal/Correspondence Section.*

2-2

ef: 5291565 pg 69 of 99 for TROY LEWALD

## C. General Accommodations

In the event an inmate is diagnosed with a qualified disability, the Facility Disabilities Accommodation Coordinator shall be responsible for the following:

1. provide and update the Control Center with a roster of qualified disabled inmates to be used in the event of an emergency;

2. set up procedures, if necessary, for the transfer of a qualified disabled inmate as soon as possible once his/her condition is realized;

3. notify the Corrections Classification and Program Manager (CCPM) of the needs of a disabled inmate for placement into programs which may require special equipment and/or staff members to carry out these needs;

4. notify the Records Office so special needs can be met when transferring an inmate in accordance with policy;

5. notify the Unit Managers of these special needs when staffing inmate programs;

6. notify the Corrections Education and Vocational Coordinator (CEVC) responsible for inmate placement in job assignments (the CEVC is responsible for notifying the work supervisors of any special needs); and

7. notify the appropriate Deputy Secretary regarding any accommodations that may have an adverse impact on security.

## D. Programs/Services Accommodations

1. Educational Programs

   This applies to an inmate who attends school. Accommodations shall be provided to access the program(s), if needed. Information will be communicated to the inmate in a manner which will maximize the inmate's ability to comprehend and understand the information.

2. Library Services

   An inmate who has a qualified disability shall have access to the facility's library.

3. Treatment Programs

   Treatment programs include programs or services in preparation for parole or to deal with problems identified by staff. These generally include sex offender treatment, alcohol and other drugs (AOD) treatment, or other therapy classes or groups. Accommodations shall be provided to access the program(s), if needed.

2-3

DOC-00854

**JA 240**

f: 5291565 pg 70 of 99 for TROY LEWALD

4. Medical/Psychiatric Treatment

   Accommodations shall be provided to access treatment, if needed. The level and type of accommodations shall be based upon the individual needs of the inmate, as determined by the health care staff. Information will be communicated to the inmate in a manner, by the health care staff. Information will be communicated to the inmate in a manner, which will maximize the inmate's ability to comprehend and understand the information.

5. Misconduct Hearing

   Accommodations shall be provided in the hearing process, if needed. Information will be communicated to the inmate in a manner, which will maximize the inmate's ability to comprehend and understand the information.

6. Activities/Recreational/Commissary/etc.

   Special accommodations for an inmate accessing these services need not be generally provided. However, in specific cases, auxiliary aids and services may have to be provided if the affected inmate cannot otherwise communicate in order to access the service(s).

Issued: 11/24/2014
Effective: 12/29/2014

DOC-00855

ef: 5291565 pg 71 of 99 for TROY LEWALD

**JA 241**

## Inmate Disability Accommodation Request Form

Complete blocks 1 through 6 below as completely as possible and submit to the Corrections Healthcare Administrator. Please write legibly or print. Forms that cannot be read will be returned.

| 1. Inmate Name: | 2. DOC Number: | 3. Date: |
|---|---|---|

4. Describe your physical or mental disability:

5. Describe the activities you wish to do that you cannot do because of your physical or mental disability:

6. Describe in detail the action you wish the Department to take to enable you to perform the activities described in number 5 and explain how that action will enable you to perform the activities described in number 5:

| Inmate Signature: | |
|---|---|
| CHCA Signature: | Date Received: |
| Director, Bureau of Healthcare Services: | Date Received: |

***DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual***
***Section 2 – Accommodations***                     ***Attachment 2-A***
Issued: 11/24/2014
Effective: 12/29/2014

DOC-00856

## JA 242

*DC-ADM 006, Reasonable Accommodations for Inmates with Disabilities Manual*
*Section 2 – Accommodations*                                    *Attachment 2-A*
Issued: 11/24/2014
Effective: 12/29/2014

DOC-00857

**JA 243**

ef: 5291565 pg 73 of 99 for TROY LEWALD

## Section 3 – Specific Disabilities

An inmate who is diagnosed as having a qualified disability will receive accommodations so that he/she can properly communicate/participate in the Department's facilities. An inmate will not be denied services solely for reason of his/her disability(ies).

### A. Local Procedures

Each Facility Manager/designee is to ensure that local procedures are developed, if needed, and maintained to ensure compliance with this policy. Each facility shall also be in compliance with **Management Directive 205.32, Hiring Sign Language Interpreters and Transliterators.**

### B. Accommodations for the Deaf and Hard of Hearing

The following is a mandatory list of services that must be provided for an inmate who is qualified as deaf or hard of hearing during emergency evacuation procedures.

1. Fire Alarm/Emergency Notification Systems

   Areas housing a deaf or hard of hearing inmate must have a flashing alarm and/or vibrating system and written procedures that direct staff to physically notify the inmate in case of an emergency. Areas such as bathrooms, Security Level 5 Housing Units, and medical isolation cells must be included in the procedures. All facilities shall comply with the National Fire Protection Association Life Safety Code, No. 101.

2. Announcements

   Any procedures or directions to an inmate that rely on a loudspeaker system must be modified to alert a deaf or hard of hearing inmate; written procedures must include these provisions.

### C. Accommodations for the Visually Impaired

A facility shall have proper evacuation procedures to include an audible emergency alarm system and provide a qualified visually impaired inmate with the proper evacuation procedures upon assignment to a facility. A copy of an inmate roster shall be maintained in the control room and used by staff to alert a qualified visually impaired inmate of an emergency. A facility housing qualified visually impaired inmates shall have Braille signage that identifies rooms, spaces, instructions, etc.

### D. Accommodations for the Mentally and/or Physically Impaired[1]

The Department shall provide an inmate diagnosed with a qualified mental and/or physical impairment assignment to a facility or Special Needs Unit that provides reasonable accommodations for this impairment. However, the Department may refuse access to

---

[1] 4-ACRS-6A-04

3-1

DOC-00858

recreation if participation by the  qualified disabled inmate would alter the nature of the program or activity or if it presents a valid safety concern, an undue financial burden or if the inmate is unable to perform the basic function of the activity.

3-2

DOC-00859

ef: 5291565 pg 75 of 99 for TROY LEWALD

**Auxiliary Aids and Services (as defined in 42 USCS §12102 (1))** – The term "auxiliary aids and services" includes certified interpreters or other effective methods of making aurally delivered materials available to individuals who are hard of hearing, qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments, acquisition or modification of equipment or devices, and other similar services and actions.

**Braille** – A system of writing and printing for the visually impaired, in which varied arrangements of raised dots representing letters and numerals can be identified by touch.

**Deaf** – A condition in which perceivable sound (including speech) have no meaning for ordinary life purposes. Visual communication, such as sign language, writing, text reading, and speech reading, is necessary.

**Department** – The Pennsylvania Department of Corrections.

**Direct Threat** – A significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation.

**Disability (as defined in 42 USCS §12102(2); 28 CFR §35.104)** – A person with a qualified disability is defined as an individual who:

1. has a physical or mental impairment that substantially limits one or more major life activities;

2. has a record of such an impairment; and/or

3. is perceived or regarded as having such an impairment.

The following conditions do not constitute disabilities: transvestitism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, other sexual behavior disorders, compulsive gambling, kleptomania, pyromania, and psychoactive substance abuse disorders resulting from current illegal use of drugs, homosexuality or bisexuality.

**Essential Job Functions (as defined in 29 CFR §1630.2(n))** – The fundamental job duties of the position the inmate with a disability holds or seeks. Essential job functions are those that bear more than a marginal relationship to the job at issue.

**Facility Disabilities Accommodation Coordinator** – The Corrections Health Care Administrator will serve as the Facility Disabilities Accommodation Coordinator.

**Hard of Hearing** – A condition in which there is some degree of hearing loss varying from mild, to moderate, to profound. The sense of hearing is partially, but not completely functional for ordinary life purposes.

DOC-00860

ef: 5291565 pg 76 of 99 for TROY LEWALD

**Major Life Activities (as defined in 28 CFR §35.104)** – Includes such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

**Permanent Vision Impairment** – Individuals who are permanently blind or have a vision impairment not correctable to central vision acuity of less than 20/200, even with corrective lenses.

**Physical or Mental Impairments (which affect a major life activity) (as defined in 28 CFR §35.104)** – Physical or mental impairments include any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine.

Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

The phrase physical or mental impairment includes, but is not limited to, such contagious and noncontagious diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism. The phrase physical or mental impairment does not include homosexuality or bisexuality.

**Qualified Individual with Disability (as defined in 28 CFR §35.104)** – An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

**Qualified Interpreter (as defined in 28 CFR §35.104)** – Refers to an interpreter for the deaf or hard of hearing who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary. A list of such interpreters may be obtained from the Pennsylvania Office for the Deaf and Heard of Hearing. Use of a certified interpreter shall be in accordance with **Management Directive 205.32, Hiring Sign Language Interpreters and Transliterators.**

**Reasonable Accommodation (condensed from 29 CFR §1630.2)** – A modification or adjustment to a job or work environment that will enable a qualified inmate with a disability to perform all the essential job functions and which does not create an undue hardship for the Department.

**Record of a Mental/Physical Impairment (as defined in 28 CFR §35.104)** – These procedures protect not only those individuals with disabilities who actually have a mental/physical impairment that substantially limits a major life activity, but also those with a record of such an impairment. This protected group includes a person who has a history of an impairment that substantially limits a major life activity but who has recovered from the

DOC-00861

ef: 5291565 pg 77 of 99 for TROY LEWALD

impairment. Examples of individuals who have a history of impairment are persons who have prior histories of mental or emotional illness, drug addiction, alcoholism, heart disease, or cancer. Persons who have been wrongly classified as having a mental impairment include persons who have been erroneously diagnosed as mentally retarded or mentally ill.

**Regarded as Having a Mental/Physical Impairment (as defined in 28 CFR §35.104)** – These procedures also protect certain persons who are regarded by a public entity as having a mental/physical impairment that substantially limits a major life activity, whether or not that person actually has an impairment. Some examples of situations covered by this category are:

1. An individual who has a physical or mental impairment that does not substantially limit major life activities, but who is treated as if the impairment does substantially limit a major life activity.

2. An individual who has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others towards the impairment.

3. An individual who has no impairments but who is treated by a public entity as having an impairment that substantially limits a major life activity.

**Undue Hardship (condensed from 29 CFR §1630.2(p))** – An action requiring significant difficulty or expense in the implementation of an accommodation or which would result in a threat to facility security.

DOC-00862

**JA 248**

# APPENDIX A-2



PROCEDURES MANUAL

Commonwealth of Pennsylvania • Department of Corrections

| Policy Subject: | Policy Number: |
|---|---|
| Inmate Compensation | DC-ADM 816 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| April 4, 2008 | Signature on File<br>Jeffrey A. Beard, Ph.D. | May 5, 2008 |

Release of Information:

**Policy Document:** This policy document is public information and may be released upon request.

**Procedures Manual:** The procedures manual for this policy may be released in its entirety or in part, with the prior approval of the Secretary/designee. Unless prior approval of the Secretary/designee has been obtained, this manual or parts thereof may be released to any Department employee on an as needed basis only.

DOC-00818

**JA 250**

## Section 1 – General Procedures

### A. Job Orientation

The Work Supervisor shall orient each inmate to employment conditions, including proper safety and operating instructions for equipment, hours of work, the compensation plan, special rules, and policies affecting him/her prior to assuming his/her job. Each inmate will acknowledge this orientation by signing the **Inmate Job Orientation Form (Attachment 1-A)** specific to his/her job. The Work Supervisor will maintain the original signed **Inmate Job Orientation Form** with a copy sent to the Inmate Employment Office for placement in the inmate's employment file.[1] A new **Inmate Job Orientation Form** will be completed each time the inmate has a significant change in job assignment.

### B. Eligibility and Compensation

1. To receive compensation, an inmate must perform assigned work, be a student, or have a physical or mental condition that prevents him/her from being able to work or attend school.[2]

2. An inmate who refuses to go to work/school is not eligible for indigent status, in accordance with Department policy **DC-ADM 803, "Inmate Mail and Incoming Publications."**

3. An inmate who is removed from a work/school assignment due to failure to perform, poor attitude, not being available for work/school, or no longer housed in general population, etc., is not eligible for compensation until he/she is reinstated to a work/school assignment by the Unit Management Team.

4. An inmate in Disciplinary Custody (DC) is generally not eligible for compensation unless the inmate is employed as a janitor on the Security Level 5 Housing Unit in accordance with Department policy **6.5.1, "Administration of Security Level 5 Housing Units."** An inmate being released from DC must wait 60 days to be eligible for General Labor Pool (GLP) and/or a work/school assignment.

5. A Parole Violator (PV) is not eligible for GLP compensation and/or a work/school assignment until 60 calendar days from the date he/she was returned to the Department. If no waiting list exists, a PV may be given a work/school assignment prior to the expiration of 60 days.

6. A medically cleared inmate must accept any work/school assignment regardless of the amount of compensation offered in return. No inmate has a right to be assigned or continue in any specific work/school assignment.

---

[1] 2-CI-1A-2, 2-CI-3A-1
[2] 4-4449

Issued: 9/6/2012
Effective: 9/13/2012

DOC-00822

7. There will be no pay for time absent from an assignment for any of the activities listed below, nor for any other activity as determined by the Facility Manager/designee:

   a. athletic event;

   b. Authorized Temporary Absence (ATA);

   c. band;

   d. cell restriction;

   e. choir;

   f. court;

   g. furlough;

   h. hearings;

   i. holiday;

   j. legal consultation;

   k. leisure time arts and crafts;

   l. lock-in;

   m. mealtime;

   n. refusal to work;

   o. religious meetings/services;

   p. security escorted leave (SEL);

   q. self-inflicted injury;

   r. self lock-up;

   s. sick line;

   t. social event;

   u. supervised leave;

   v. temporary hold-in (DC cases);

   w. temporary hold-in (AC cases); and/or

1-2

x. visit.

8. Compensation for inmate work/school assignments is obtained from the facility's General Fund allotment, or Pennsylvania Correctional Industries (PCI) Manufacturing Fund.

## C. Length of Workday and Workweek

1. The standard workday consists of six hours, and the standard workweek consists of five days. The total number of school and work hours combined may not exceed eight hours multiplied by the number of workdays available in the pay period.[3]

2. An inmate is compensated for only the actual hours worked. Hours of work are computed from the time of arrival and departure from the classroom or the work site. An inmate reporting late to the work site will be permitted to work only at the discretion of the supervisor.

3. No overtime may be paid to an inmate working inside the facility, except under emergency situations and with the approval of the Facility Manager/designee.

4. An inmate who is required to work during a Commonwealth designated legal holiday or on a day normally considered a day off is paid at his/her regular hourly rate.

5. An outside detail may be assigned overtime work with the approval of the Facility Manager/designee.

6. An inmate may be granted a one-half hour paid break to visit the barber or cosmetology area monthly and commissary weekly, if these services are not available during non-work hours.

## D. General Labor Pool (GLP)

1. An inmate who is unassigned through no fault of his/her own, because of the lack of assignments, shall be placed into the GLP for a maximum of five days each week, until an assignment is made.

2. An inmate receiving GLP compensation must maintain an acceptable level of personal hygiene and the cleanliness of his/her living area (including made bed), be available for work/school, accept responsibility for work in or around the housing unit, engage in any employment or school assignment offered, and comply with his/her Correctional Plan. An inmate who does not meet these requirements will forfeit GLP compensation until he/she is compliant, as determined by the Unit Management Team.

3. GLP compensation will be discontinued after six months, at which time the inmate should be offered a work/school assignment. If the inmate is not assigned after six months,

---

[3] 4-4454

Issued: 9/6/2012
Effective: 9/13/2012

DOC-00824

**JA 253**

through no fault of his/her own, he/she may receive GLP compensation for an additional three months. This extension requires approval from the Facility Manager/designee and notification to the Regional Deputy Secretary.

4. Failure to accept an offered work/school assignment will result in loss of all compensation until the inmate accepts the position offered.

5. An inmate who is suspended from work/school is ineligible for any compensation until the Unit Management team reinstates a work/school assignment.

6. An inmate in an Assessment Unit or Diagnostic Classification Center (DCC), where a work/school assignment is not available, is eligible for GLP status 60 calendar days after initial reception.

7. An inmate transferred from the DCC to a permanent facility is eligible for GLP compensation as outlined in **Section R.** below.

## E. Class Attendance

1. An inmate who is attending academic or vocational classes four or more hours per day is considered a full time student; therefore he/she is not eligible for GLP.

2. An inmate enrolled in a full-time vocational program that leads to a license or certification, such as apprenticeship students, barber students, etc., begins at Class 2, Step B, and may receive pay raises based on his/her progress.

3. An inmate who is on the waiting list for school placement may be given a work assignment until space becomes available.

4. An inmate committed to the Department on or after July 1, 2004, who does not possess a verified High School Diploma (HSD) or General Education Diploma (GED) shall be mandated to attend at least 300 hours of academic programming toward the goal of earning a GED or a Commonwealth Secondary Diploma (CSD).

5. The inmate may opt-out after 300 hours of educational programming; however, he/she should be encouraged to continue until he/she obtains the GED. If the inmate is placed on a waiting list for educational programming, he/she may be given a work assignment or GLP compensation while awaiting placement. However, he/she may not be paid at a rate higher than Class 2, Step A. Once enrolled in school and if the inmate retains his/her work assignment, he/she should be allowed to progress through the pay steps.

6. Daily attendance will be recorded and reported by the school principal/designee at the close of each compensation or semester period.

1-4

7. Opting-Out

   a. A mandated student may opt-out of the education program only if it is supported by the Teacher, School Principal, and Education Counselor and after meeting the minimum requirements.

   b. The inmate may initiate this process by sending a request slip with the opt-out request to the Education Counselor or School Principal.

   c. The minimum attendance required for each group before an inmate may be considered for opt-out is as follows:

      (1) a Mandated GED (MGED) student will be enrolled in a minimum of one class per day and attend a minimum of 300 hours before being given the option of opting-out of the mandate;

      (2) a Mandated GED – Youthful Student (MGED-YS) will be enrolled in a half-day of classes, attend a minimum of 600 hours and reach the age of 21 before being given the option of opting-out; and

      (3) a Special Education student shall be enrolled per current State and Federal Regulations.

   Note: There are no pay increases for academic achievement.

F. **Classification of Inmates and Work Assignments**

1. For payroll purposes, there are three pay classes or categories as follows:

   a. class I – unskilled, work requires little or no skill;

   b. class II – semi-skilled, work requires a fair amount of skill; and

   c. class III – skilled, work requires a great deal of skill.

2. The work supervisor and the Corrections Employment and Vocational Coordinator (CEVC) will determine the inmate's skill level placement.

3. The Inmate Pay System is designated to maintain a balance of the percentage of the inmate population at a given pay rate. The approximate percentages for the facility payroll is as follows:

   a. class I – 35%;

   b. class II – 40%; and

   c. class III – 25%.

1-5

4. The percentages listed in **Section F.3.** above in each class should be approximate. Significant variation I the overall class percentages requires an exception.

5. The Pay Grade distribution for PCI at each location will be approved by the PCI Director in accordance with Department policy **9.1.1, "Correctional Industries."**

6. *Special pay rates for work such as the Elizabethtown Culinary Academy, Quehanna Boot Camp, Community Work Programs (CWP), and Licensed Inmate Barbers/Cosmetologists, who work in the facility barber or cosmetology shops are permitted and inmates assigned to their details are to be compensated as Class 4, Step D per the Inmate Pay Class Rate Schedule (Attachment 1-B).*

## G. Pennsylvania Correctional Industries (PCI)

1. In order to maximize PCI's contribution to successful inmate reentry, preference should be given to assigning inmates to the PCI work force who meet the following criteria:

   a. have two to six years remaining on their sentence;

   b. completed initial treatment program (Drug and Alcohol Treatment, Anger Management Program, etc.);

   c. completion of GED or remedial reading program; and

   d. must have performed satisfactorily in other work assignments.

2. Because the PCI work experience is designed to help inmates achieve a successful reentry to society upon release, the number of inmates serving life sentences assigned to PCI at a facility should be minimized.

3. The number of inmates assigned to PCI who are serving life sentences cannot exceed 10% of the PCI workforce or 10% of the facility's lifer population (whichever is greater). In achieving this goal, the following rules will apply:

   a. an inmate serving a life sentence shall not be assigned to the PCI workforce if the percentage of inmates serving life sentences already assigned exceeds the facility's percentage; and

   b. an inmate serving a life sentence who is removed from the PCI workforce shall not be reassigned to PCI if the percentage of inmates serving life sentences already assigned exceeds the facility's percentage.

4. Target Date for Completion

   a. The target date for achieving the facility percentage ceiling on PCI lifer employment is January 1, 2009.

1-6

Asbestos Abatement trained inmates. Upon starting the Therapeutic Community, the inmate will be paid in accordance with Subsection H. above. Once the inmate has completed the Therapeutic Community, the inmate shall be added to the active list of inmates trained in Asbestos Abatement.

14. Operational concerns regarding the use of inmates certified in asbestos abatement shall be handled in accordance with Department policy **15.1.1**.

## L. Pay Rates

1. An inmate who refuses a mandatory education program or work assignment shall not be compensated in any manner, and he/she may be issued a misconduct.[5]

2. The pay rates for skill classifications are found in the **Inmate Pay Class Rate Schedule**. In addition to the skill level of the work assignment, the inmate's attitude and spirit of cooperation are important factors in placement in a pay class.

3. The first pay rate assigned to an inmate shall be the starting step of that class that matches his/her skill to that of the position. The supervisor will evaluate the inmate in 60 days to determine if he/she is eligible for promotion to the next skill level. Advancement is based on increased skill level and a rating of at least "Average" on his/her **Inmate Progress Report**.

4. The inmate's compensation will not be decreased due to assignment of program code (M), (R), (X), or (C) and subsequent assignment to an outside work detail.

5. Special pay rates for work such as Operation Outward Reach (OOR), the Elizabethtown Culinary Academy, Quehanna Boot Camp, and Community Work Programs (CWP) are permitted only upon approval of the Secretary/designee.

6. An inmate participating in, or who has completed vocational training, will not receive a reduction in pay if reassigned to a job that uses the skills for which he/she received training.

7. A Legal Reference Aide will be paid initially at Class 2, Step A.

8. An inmate who receives his/her GED or the CSD will be given a one-time $10.00 monetary award from the Inmate General Welfare Fund (IGWF) to be credited to his/her account, in accordance with Department policy **3.1.1, "Fiscal Administration."**

## M. Use of the Inmate Progress Report

1. A change in pay (promotion or demotion) must be reported to the CEVC within one working day.

---

[5] 4-4441

Issued: 9/6/2012
Effective: 9/13/2012

DOC-00833

2. Pay raises or demotions are done at the discretion of the work supervisor based upon the inmate's performance as documented on the **Inmate Progress Report**.

3. The first pay raise may not be granted prior to the inmate's completion of 60 days of at least "Average" performance.

4. Subsequent increases in pay are approved only after 60 days in the current rate and the inmate's rating of at least "Average" on his/her last **Inmate Progress Report**. Pay raises are not automatic, but are based upon job performance. Pay raises are effective in the first full pay period of the month following the approval of the raise.

5. A supervisor may suspend an inmate worker without pay, pending action of the Unit Management Team and/or Hearing Examiner. The supervisor must provide documentation to the CEVC and the Unit Management Team when an inmate is suspended.

6. The supervisor determines an inmate's demotion within the class/step based on his/her work performance. It is effective immediately, pending Unit Team action. Demotions should not be more than four steps at any one time.

7. Removal of an inmate from a work assignment for reasons other than misconduct or medical necessity must be handled by a Unit Management Team action. The supervisor must submit written information regarding the reason(s) to the Unit Management Team, who will discuss the situation with the inmate and attempt to resolve the problem. The Unit Management team may remove the inmate from the job assignment and his/her pay may be suspended.

8. A Barber/Cosmetology student enters the program at Class 2, Step B and remains at that level until the student's Barber/Cosmetology Permit is issued. Progression through the remaining steps in Class 2 and Class 3, Step C occur at the discretion of the instructor, based on productivity and course progress. Advancement may occur at 60 day intervals. Class 3, Step D is reserved for the individual who has passed the state examination and has received his/her license as a Barber/Cosmetologist.

**N. Pay for Job Change**

1. An inmate with inside status (Custody Level 2, 3, or 4) who is changing work/school assignments will be compensated at the skill level for the new assignment as determined by the work supervisor and CEVC. An inmate with less than an "Average" work performance rating may take a pay demotion, not to exceed four steps.

2. An inmate progressing from inside the facility to an outside work detail (Custody Level 2M or 2R) shall be moved laterally.

3. When transferred from one PCI plant to another at the same facility, the inmate may be reduced to the unskilled pay level in the new assignment at the discretion of the PCI Manager.

1-13

## O. Illness or Injury

1. An inmate who suffers a work-related injury, as verified by the Medical Department, is eligible to receive compensation at the rate he/she earned on the last workday prior to the injury. The supervisor must complete an incident report documenting the injury for use by the Medical Department. The medical pay period shall not exceed 90 calendar days and each case will be reviewed every 30 days to determine if the medical pay should continue. After 90 days, the inmate shall be paid the Medical Allowance compensation rate.

2. The Medical Department must complete a **Medical Lay-In Report (Attachment 1-F)** for an inmate who is unable to work for medical/mental health reasons, indicating the date the lay-in begins and the date it ends.

3. The inmate must follow the advice of the medical staff and take all reasonable steps to improve his/her health during this time. Failure to do so may result in termination of the Medical Allowance.

4. An inmate who is unable to work as a result of self-inflicted injuries or injuries sustained as a result of a provoked assault or his/her carelessness is not eligible to receive any compensation until medically cleared and approved for a work/school assignment by the Unit Management Team.

5. An inmate who is unable to hold permanent work/school assignment for medical/mental health reasons, or who is confined to a medical/mental health unit, is eligible for a Medical Allowance five days per week. The Medical Department shall evaluate the inmate's condition annually to verify that he/she remains unable to work or attend school.

## P. Absence of Staff Member

An inmate on a work, academic, or vocational education assignment who is unable to work or attend class because of the absence of a work supervisor or other staff member, and who cannot be assigned to work for a different supervisor, will receive compensation equal to that earned the last day worked or spent in class, for a maximum of five days. No bonus or incentive pay will be included. After five days the inmate may be reassigned or receive GLP Compensation.

## Q. Allowance to Detainee

When a detainee is in custody more than 60 calendar days, GLP compensation may be provided at the discretion of the Program Review Committee based upon the inmate's behavior and compliance with the GLP requirements. If a detainee submits a written request to work and is placed on an assignment, he/she shall be compensated at the appropriate rate.

1-14

**R. Production Bonuses**

An inmate assigned to a PCI production position may be paid a bonus in accordance with Department policy **9.1.1**.

**S. More than One Assignment**

An inmate may be given a second work assignment in extraordinary circumstances and only with the approval of the Facility Manager/designee. The second work assignment may not be in the same department. In these cases, the inmate may be paid at the appropriate rate for the second assignment for the hours worked on that assignment.

**T. Assignments to Security Level 5 Housing Unit**

1. An inmate assigned to a Special Management Unit (SMU) is eligible for a work/school assignment in accordance with Department policy **6.5.1**.

2. An inmate assigned to a Capital Case Unit is eligible for a work/school assignment in accordance with Department policy **6.5.8, "Administration of Capital Case Inmates."**

3. An inmate in Administrative Custody (AC) shall be compensated in accordance with Department policy **DC-ADM 802, "Administrative Custody Procedures."**

**U. Compensation with the Inmate is Transferred or Released**

1. An inmate is not compensated for the day or days in transit between facilities.

2. When an inmate is permanently transferred to another facility, he/she shall be processed for a work/school assignment at the receiving facility and compensated in accordance with the assignment.

3. There is no guarantee that an inmate will keep his/her pay rate when he/she is administratively transferred to another Department facility.

4. An inmate who is granted an incentive based or CL2 reduction transfer shall keep his/her pay rate when transferred to another Department facility. The inmate does not have to be placed in the exact job assignment to keep his/her same pay rate, unless he/she was previously on a Community Work Project (CWP), and there are no openings on a CWP at that time on his/her job assignment. In this case, he/she will have the pay rate Class 2, Step D.

5. To facilitate the release process, an inmate's work/school assignment may be terminated one or two working days prior to his/her release date.

6. Temporary transfers will not be compensated, except for those temporary transfers participating in long term specialized treatment programs such as the SCI-Waymart

1-15

Forensic Treatment Center or the Intermediate Care Unit. An inmate in temporary transfer status may be considered for a work assignment, if at a facility for more than 60 days.

## V. Records Retention

Facility and PCI compensation records shall be retained until the audits have been completed, but for no less than three years.

Issued: 9/6/2012
Effective: 9/13/2012

DOC-00837

# INMATE PAY CLASS RATE[1]

The hourly pay rates for skills classifications are:

| | Step A | Step B | Step C | Step D |
|---|---|---|---|---|
| Class 1 | .19 | .20 | .21 | .23 |
| Class 2 | .24 | .25 | .27 | .29 |
| Class 3 | .33 | .35 | .38 | .42 |
| Class 4 (CWP, Elizabethtown Culinary Academy Completion and Return to Food Service assignment, *and Barber/Cosmetology details*) | | | | .51 |

The first assignment shall be at the starting pay rate (class, step) that matches the inmate's skill to that of the job. Advancement to the next higher class will be based on the skill level of the inmate and a rating of at least "Average" on his/her last **Inmate Progress Report.**

Assignment to a block worker position may not exceed class 2. An inmate block worker who is receiving a higher level pay as of the implementation date of this revision may maintain that pay class unless he/she is removed from the assignment.

**General Labor Pool (GLP)** – seventy-two cents ($.72) per day, five days per week.

**Medical Allowance** – fifty cents ($.50) per day, five days per week.

## Alcohol and Other Drug Therapeutic Community Pay Rates

Phase 1 – Class 1, Step B

Phase 2 – Class 2, Step B

Phase 3 – Class 3, Step B

---

[1] 4-4461

*DC-ADM 816, Inmate Compensation Manual*
*Section 1 – General Procedures*
Issued: 9/6/2012
Effective: 9/13/2012

*Attachment 1-B*

DOC-00838

**JA 262**

## Section 2 – Responsibilities

### A. Facility Manager

The Facility Manager/designee shall establish an Inmate Employment Office, staffed with a Corrections Employment and Vocational Coordinator (CEVC).

### B. Corrections Employment and Vocational Coordinator (CEVC) Responsibilities

1. The CEVC, under the supervision of the Corrections Classification and Program Manager (CCPM) or Deputy Superintendent for Centralized Services (DSCS), manages inmate jobs, academic and/or vocational program assignments for which inmates are compensated.

2. The CEVC is a member of the Initial Reception Committee (IRC). He/she coordinates and makes work assignments or changes as recommended by the IRC, Unit Management Team, and as approved by the Facility Manager/designee.

3. After an inmate has completed initial processing, the CEVC may assign him/her temporary employment pending facility classification and medical approval.

4. The CEVC ensures that a record of each work assignment and a current file of the following is maintained:

   a. alphabetical and numerical cross file of inmates;[1]

   b. Special Skills file; and

   c. **Inmate Progress Report**.

5. The CEVC shall use the Inmate Employment System (IES) to access the waiting list, and in conjunction with the Unit Management Team, assigns an inmate to a job in accordance with his/her **DC-43, Correctional Plan** and the needs of the facility.

6. The most qualified inmate should fill a vacant position. An inmate who has been in a job-related training program or has prior experience in a specific job and whose work has been satisfactory should be given preference for assignments.

7. Assignment of an inmate to CI is done at the request of the CI Manager, the CEVC will work closely with the CI Manager in addressing CI staffing needs.[2] The Security Office will provide clearance for all inmates assigned to CI. In case of a disagreement, the DSCS shall have override capabilities.

---

[1] 4-4457
[2] 4-4103

DOC-00839

8.  The CEVC will review all work assignment capacities at least monthly. Work crews will be increased as necessary to complete assignments without using overtime.[3]

---

[3] 4-4458

DOC-00840

**Commonwealth Designated Legal Holiday** – Day on which most state employees are not required to work, other than Saturdays and Sundays.

**Correctional Industries (CI)** – A Bureau operating within the Department that establishes an industries program and provides opportunities for inmate employment.

**Corrections Employment and Vocational Coordinator (CEVC)** – Para-professional work in providing employment and skills development opportunities to inmates in a state correctional facility.

**Daily Move Sheet (Call Sheet)** – A facility listing of inmates schedule for various activities, programs, status changes, receptions, releases, assignment, or appointments. The daily move sheet contains the name and number of the inmate, the inmate's cell assignment, and the time and place of the scheduled event. The daily move sheet may be referred to in different terms at various facilities (call-out sheets, transfer sheet, etc.).

**Disciplinary Custody Status (DC Status)** – The maximum restrictive status of confinement to which an inmate guilty of a Class I misconduct may be committed. An inmate shall be placed in DC Status for periods no longer than 90 days per misconduct charge.

**General Labor Pool (GLP)** – An inmate who is not compensated for work or school may be placed in a GLP. He/she is required to maintain an acceptable level of personal hygiene, cleanliness of his/her living quarters, and accept work assignments within the housing unit. The inmate must follow all rules, participate in recommended programs, and be willing to accept any employment or school assignment offered.

**Inmate Pay Class Rate** – A list of most inmate work assignments and the appropriate pay class.

**Job Hours** – Work time begins with the inmate makes contact with the work supervisor for the purpose of work or reports to the work site, whichever comes first. Work time terminates when the work supervisor releases the inmate.

**Job Site** – The specific area where an inmate is assigned to work.

**Unit Management Team** – The individuals assigned to operate a housing unit with the responsibility for security, risk management, and program delivery. The Unit Management Team may act as the Hearing Examiner and decide Class 2 misconducts in those facilities where the Secretary/designee has specifically approved their use in this manner.

DOC-00842

# APPENDIX A-3

14. Strip searches will be conducted in a professional manner. When you are strip searched, you must:

    a.  remove all items from your pockets and place them on suitable surface;
    b.  remove all your clothing;
    c.  stand still with your feet apart and arms extended outward, palms up; and
    d.  follow the direction given by the searching staff member.

15. A body cavity search may be conducted when there is reasonable belief that you are concealing contraband inside your body. A body cavity search may be authorized by the Facility Manager/designee when it has been determined that there is imminent danger to your health or to facility security or safety.

## E. Facility Management

1. The Facility Manager is in charge of the security, programs, and activities of the facility.

2. There are at least two Deputy Superintendents at each DOC facility. The Deputy Superintendent for Facilities Management (DSFM) is in charge of Unit Management and facility security and safety. The Deputy Superintendent for Centralized Services (DSCS) is responsible for medical and mental health care, Correctional Industries, education, activities, and food services.

3. There is at least one Major at each facility. The Major supervises all facility Corrections Officers and the Unit Management Teams assigned to each housing unit. At facilities with two Majors, these responsibilities are shared between the Majors.

4. The Corrections Classification Program Manager (CCPM) is responsible for inmate records, activities, volunteers, religious programs, inmate employment, and treatment programs.

## F. Resolution of Problems

1. Problems on your housing unit should first be directed to a Corrections Officer on the Unit. If the officer cannot resolve the issue, you should bring the problem to the attention of your counselor or Unit Manager. If the issue is not resolved at that level, it should be brought to the attention of the Zone/Area Lieutenant, Shift Commander, then the Major, or the proper chain of command at your facility.

2. Your counselor is the first person to discuss treatment matters with. Your counselor can also help you with program changes, pre-parole matters, and personal problems.

3. Problems with your work assignment should be directed to your work supervisor.

4. Problems with academic/vocational education should be directed to the School Principal.

## G. Abuse Allegations (DC-ADM 001)

1. The Department does not permit any inmate to be subjected to abuse. All allegations of abuse are thoroughly investigated. Abuse includes:

    a.  the use of excessive force upon you;
    b.  an occurrence of an unwarranted life-threatening act against you; and/or
    c.  a verbal or written threat to inflict physical injury directed toward you.

DOC-00938

f: 5291517 pg 57 of 93 for TROY LEWALD

    b. Third party reports can be made to the Sexual Abuse Reporting Address, BCI/PREA Coordinator, 1800 Elmerton Ave., Harrisburg, PA 17110. **(28 C.F.R. §115.51, §115.54)**

7. Victims of Sexual Abuse Have Access to Free Support Services **(28 C.F.R. §115.53)** Write to request more information: PCAR, Pennsylvania Coalition Against Rape, P.O. Box 400, Enola, PA 17025. You may also contact your facility's PREA Compliance Manager for access to this service.

## I. Inmate Grievance System (DC-ADM 804)

1. You are encouraged to attempt resolution of a concern informally by use of a **DC-135A, Inmate's Request to Staff Member** or direct conversation with the Unit Manager or Officer-in-Charge prior to submitting a **DC-804, Part 1, Official Inmate Grievance Form**. This is not required in cases of allegations of physical or sexual abuse.

2. For an emergency you should speak to the nearest staff person as soon as possible.

3. A grievance regarding an allegation of a sexual nature (abuse/harassment) against a staff member or inmate-on-inmate sexual abuse will not be addressed through the Inmate Grievance System and must be addressed through **DC-ADM 008, "PREA."**

4. The grievance procedure does not apply to issues covered under **DC-ADM 801** and **DC-ADM 802, "Administrative Custody Procedures."**

5. You must submit a grievance to the Facility Grievance Coordinator/designee, within 15 working days after the event upon which the claim is based.

6. A grievance must be filed with the Facility Grievance Coordinator/designee at the facility where the grievance event occurred.

7. You must sign and date the grievance with your commitment name and number only, without reference to the UCC, aliases, etc.

8. The text of the grievance must be legible, understandable, and presented in a courteous manner. You must include a statement of the facts relevant to the claim.

9. The statement of facts must not exceed two pages and must be handwritten or typed on writing paper (one **DC-804, Part 1** and one one-sided 8 ½" x 11" page).

10. If you have been personally affected by a Department and/or facility action or policy, you may submit a grievance.

11. Any grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim.

12. Any grievance issue that has been or is currently being addressed will not be re-addressed in a subsequent grievance. Further, any concern disputing a previous grievance, initial review response, appeal decision, or actions of staff members who rendered those decisions must be addressed through the appeal process.

13. Each grievance must be presented individually. A grievance submitted by one inmate for another inmate or a group of inmates is prohibited and will not be processed.

DOC-00941

**JA 268**

14. If filing a grievance related to a claim of missing property, you must provide documentation such as a **DC-153, Personal Property Inventory Sheet; DC-154A, Confiscated Items Receipt;** or a **Commissary/Outside Purchase Form** for evidence or proof that the property items were once in your possession.

15. A grievance related to a publication/photograph denial must include a copy of the Notice of Incoming Publication Form in accordance with **DC-ADM 803.**

16. If you file a grievance contesting the accuracy of the Notification of Deductions Memo and/or the Notification of Amended Deductions Memo in accordance with **DC-ADM 005, "Collection of Inmate Debts,"** you must provide valid, official court documentation to dispute such. See **DC-ADM 005** for further instruction.

17. You must notify the Superintendent or Facility Grievance Coordinator to retain personal property related to a grievance.

18. You shall not be punished, retaliated against, or otherwise harmed for use of the grievance system.

19. If you file five grievances within a 30-day period which have been determined to be frivolous, you may be placed on grievance restriction.

20. At any point in the grievance process, you may withdraw the grievance. To withdraw a grievance, you must use and sign the **Grievance Withdrawal Form.**

21. Any document(s) attached in support of a grievance becomes part of the official record and will not be returned to you.

22. A time extension for filing a grievance will be considered on a case-by-case basis.

23. Upon receiving a response to your grievance, you have 15 working days from the date of the initial response to file an appeal to the Superintendent.

24. An appeal to the Superintendent must be clearly labeled as an appeal or you may use the **Inmate Appeal to Facility Manager Form.** You must include a reason(s) for appealing to the Superintendent.

25. You must receive a response from the Superintendent before appealing to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). You have 15 working days from the date of the Superintendent's decision to appeal to SOIGA. Appeals must be addressed to:

> Chief, Secretary's Office of Inmate Grievances and Appeals
> Department of Corrections
> 1920 Technology Parkway
> Mechanicsburg, PA 17050

26. You must include legible photocopies of the initial grievance, all responses, and a brief appeal to SOIGA containing a reason for appealing the Superintendent's decision. SOIGA has 30 working days from the receipt of your appeal to respond.

ef: 5291517 pg 61 of 93 for TROY LEWALD

**III.   Inmate Services/Privileges**

   **A.  Cable Television (DC-ADM 002)**

     1.  The use of the cable television system is a privilege. Misuse of the system or violation of the rules may lead to denial of this privilege as well as legal action against you.

     2.  You must agree to pay for the cable service, and it is your responsibility to make sure that you have enough money in your account to pay your cable bill when it is due.

     3.  During an emergency, the cable company or the facility may turn off the cable system.

     4.  For more information about cable television you should refer to the **DC-ADM 002, "Inmate Cable Television Service"** policy and to your Facility Handbook Supplement.

   **B.  Cell Assignments**

Upon initial reception into the DOC and after transfer to other facilities, you will be evaluated for your cell assignment. Cell assignments will be based on the staff's evaluation of your previous behavior in a facility. Cell assignments will not be made based solely on race. It is your responsibility to inform the staff of any preferences you have about your cell assignment. A preference filed by you will be assessed by staff, but not necessarily granted.

   **C.  Commutation**

The Pennsylvania Board of Pardons processes all Applications for Clemency regarding the filing of applications requesting clemency of your sentence. You may write to the Pardons Case Specialist, Department of Corrections, 1920 Technology Parkway, Mechanicsburg, PA 17050 for information concerning Incarcerated Applications and also to the Pennsylvania Board of Pardons, 333 Market Street, 15th Floor, Harrisburg, PA 17126. Reference information regarding the Clemency/Commutation process is located in your Institutional Library. Your Unit Team and Unit Manager/counselor can also provide information about the Application for Clemency process.

   **D.  Correctional Plan**

Correctional planning begins when you enter the DOC. Since most inmates will eventually return to the community, correctional plans will focus on reentry into the community. Various counseling, psychological, and other types of treatment services are available. You must participate in your Correctional Plan, which outlines various areas you should address, in order to have your best chance at being released on parole prior to the expiration of your maximum sentence and to improve your chance of not returning to prison in the future. Your counselor will meet with you at least once a year to review your Correctional Plan and advise you on recommended programs and services. Your Correctional Plan is used when considering you for custody level advances, special programs, and parole.

   **E.  Education (Academic and Vocational)**

     1.  If you are admitted to the Department on or after July 1, 2004, and do not have a verified General Education Development (GED), High School Diploma (HSD), Commonwealth Secondary Education Diploma (CSD), Adult Commonwealth Secondary Diploma (ACSD), or Post-Secondary Attendance proof you are considered a mandated GED student. Every inmate within five years of his/her minimum release date, who does not have a

DOC-00943

af: 5291517 pg 62 of 93 for TROY LEWALD

11. If the use of the facility owned telephone is approved for a call, you must sign a **DC-138A, Cash Slip** for the charges for the call.

12. In accordance with **18 Pa. C.S. §5701**, all telephone calls are subject to interception, recording, monitoring, and disclosure except those placed to or from an attorney representing you and the Sexual Assault Reporting Line. Attorney telephone numbers must be verifiable and will not be subject to recording or monitoring.

13. Calls placed to cell phones, cordless phones, or phones of inferior quality may be automatically terminated due to static, adverse weather conditions, or weak signals. If this occurs, there will be no reimbursement for the call set-up fee that is incurred when the number is re-dialed. Likewise, if someone at the called number picks up an extension phone, the call may be automatically terminated, and you will not be reimbursed for the call set-up fee that will be incurred when the number is re-dialed.

14. A call on the AITS will be initially announced to the called party as originating from a correctional facility and subject to monitoring and/or recording. Announcements will be made periodically during telephone conversations identifying the call as coming from a state correctional facility and is subject to monitoring and recording. There will be no reimbursement for the time consumed by these recorded announcements.

**O. Transfers**

1. Incentive Based Transfers

   a. The following criteria, at a minimum, will be used for processing an inmate for incentive based Custody Level-2 transfer:

      (1) the transfer should be closer to your home region if sufficient rationale exists; placement outside of home region may be considered;

      (2) if you are currently in a program that you need to complete, you will not be transferred until you complete the program;

      (3) you must be following your Correctional Plan;

      (4) you must not be scheduled for Parole review in the next nine months;

      (5) you must be free of Class I misconducts for two years and no more than one Class II misconduct in the past year;

      (6) you must have complied with **Section V.C.** (DNA Collection) and **V.D.** (Megan's Law Registration) if applicable;

      (7) you must have served two years in the facility. To facilitate reentry needs, if you have served less than two years, but are within 18 months of your minimum sentence date, an incentive based transfer may be considered.

   b. If you were transferred for documented disciplinary reasons, you will not be eligible for transfer to your home region for a minimum of five years.

   c. If you are classified as Custody Level-2, but have been overridden to Custody Level-3 due to administrative reasons (medical, psychological, or protection) you may be considered for an incentive based transfer.

   d. In addition to the above criteria, the following applies to inmates with a life sentence:

      (1) a lifer who has served at least seven years in the Department may be eligible for transfer to his/her home region;

DOC-00953

**JA 271**

(2) no Class I misconducts for five years and no more than one Class II misconduct in the past year with overall positive adjustment during seven years of state confinement; and

(3) may be a Custody Level-3.

2. Rescinding of Incentive Based Transfers

   If you receive an incentive based transfer but fail to maintain the incentive based criteria, you may be transferred away from your home region.

**P. Volunteers and Interns Interacting with Inmates**

The DOC utilizes community citizens as volunteers, public visitors, and interns to complement and strengthen DOC programs and to provide inmates with the opportunity to benefit from contact with members of the community.

1. The use of volunteers and interns in the DOC is strictly based on the Department's operational needs as determined solely by the Facility Manager/designee.

2. Inmates are expected to treat volunteers, public visitors, and interns with the utmost respect at all times. Inmates who show disrespect to volunteers, public visitors, and interns or cause distractions during volunteer, public visitor, and intern-led programming will be disciplined and suspended from program participation.

3. Inmates who disrupt any group religious activities or who disrespect those who lead or attend them (e.g., staff, contractors, volunteers, public visitors, interns, guests, inmates, etc.), will be removed from the religious activity. Disruptive inmates will be disciplined in accordance with **DC-ADM 801.**

4. Several rules should guide your interaction with volunteers. These include:

   a. Volunteers, public visitors, and interns are prohibited from corresponding with, visiting inmates, receiving phone calls from, or placing money in accounts of inmates confined in State Correctional Institutions and the Boot Camp.

   b. Volunteers, public visitors, and interns are prohibited from serving as Religious Advisors in the institution(s) in which they serve as a volunteer, public visitor, or intern.

   c. Volunteers, public visitors, and interns are obligated to inform facility staff if inmates confined in a State Correctional Institution or the Boot Camp attempt to contact them outside the facility.

   d. Volunteers, public visitors, and interns are prohibited from contacting the family members, significant others, or close associates of inmates confined in a State Correctional Institution or the Boot Camp for any reason.

   e. Volunteers, public visitors, and interns are prohibited from assisting inmates with legal matters.

   f. Department volunteers and public visitors may assist inmates (any person incarcerated in a State Correctional Institution or Boot Camp) and reentrants (any person under the supervision of probation/parole, who resides in Community Corrections Centers/Facilities, or at an approved home plan) with community reintegration needs, as long as they are not confined in a State Correctional Institution or the Boot Camp, provided the Department volunteer or public visitor:

      (1) discloses the name of the inmate(s) and/or reentrant(s) that he/she is assisting with community reintegration needs before he/she begins to relate to this inmate;

DOC-00954

**JA 272**

3.  During a hostage situation there will be no change in policies of the Department. The standing orders and the duties of all employees not held hostage will remain unchanged. Taking hostages and making threats will not result in your demands being met or your release from custody.

4.  There will be no amnesty given. Persons holding hostages will not be excused from prosecution.

## H.  Sentence Calculation Questions

If you have questions regarding your sentence calculation, you should send a **DC-135A, Inmate's Request to Staff Member** to the Records Office at the facility. If the response does not answer your question or resolve the issue, you may use the grievance system as outlined in the **DC-ADM 804.**

## VI.  Medical Services

### A.  Accommodations for Inmates with Disabilities (DC-ADM 006)

1.  Qualified health care personnel will give you a medical, dental, and mental health screening/appraisal, including if you are an intra-system transfer, within 14 days of your commitment.

2.  The facility health care department, through qualified personnel or specialists, and in conjunction with you, shall make the diagnosis of a qualified disability, unless previously diagnosed, and shall determine the level of accommodation(s) you may need, and provide the appropriate medical treatment, as required by the condition.

3.  In determining the type of auxiliary aid and/or service necessary, consideration will be given to your requests, but your request is not determinative. This information will be recorded in your medical file.

4.  In addition to all other factors considered in making facility assignments, consideration may be given to facilities and programming available at various facilities to accommodate your particular qualified disability(s).

5.  If you are diagnosed as mentally and/or physically impaired you may be assigned to a Special Needs Unit, depending on the severity of the disability, and may be assigned to a facility with a Mental Health Unit or a facility where accommodations exist to provide for your mental and/or physical disability.

### B.  Medical Services (DC-ADM 820)

1.  Explanation of the Medical Services Program

    a.  You will be advised of the medical services fees and payment procedures during your intake medical screening.
    b.  You will receive written notice of any changes in medical service fees and payment procedures within 60 days after the effective date of a regulation that modifies the fee for medical services and payment procedures.
    c.  At the time of service, medical staff will inform you whether a fee will be charged for the medical service. A fee will be assessed each time a medical service is provided to you,

DOC-00959

f: 5291517 pg 78 of 93 for TROY LEWALD

except when multiple services are performed at one visit, at the discretion of the health care professional.

d. If a fee is to be charged for the medical service, you will be required to sign an authorization form which describes the medical service provided, the amount that will be taken from your inmate account, and authorizes the Department to take the funds. The **DC-138A, Cash Slip**, will be used for this purpose.

e. You will not be refused a medical service for financial reasons. If you lack sufficient funds to pay a medical service fee, funds will be taken from your account as soon as sufficient funds are deposited in your account. This will continue until the debt is paid.

f. The Department may seek to recover any amount owed for medical services fees by you if you are released.

g. You may be charged for the necessary medical services for your actions against another inmate.

h. For more information on paying for medical services, and a list of services for which you will or will not be charged a fee, refer to **DC-ADM 820, "Co-Payment for Medical Services."**

2. Access to Medical Services

   The Facility Handbook Supplement contains Sick Call procedures that ensure you have regular access to the Medical Department. Each facility has procedures ensuring that emergency medical treatment is available at all times.

3. Private Medical Services

   a. If you have private medical insurance or VA health care benefits, you must pay for your own medical needs through the insurance. The Medical Department will document this information in the medical record during the reception process.

   b. The insurance payment will be paid to the Department of Corrections for deposit in the General Fund.

4. Dental Care Program

   a. Upon admission you will receive a dental screening. After you are screened or examined, a treatment plan will be written by the dentist and services will be scheduled according to the severity of the observed dental conditions.

   b. If you experience dental problems, you may access dental care by submitting a sick call request slip to the Dental Department. If you elect to use the dental sick call system, you will be charged a co-pay fee in accordance with **DC-ADM 820**.

## VII.   Property (DC-ADM 815)

### A.   Basic Issue

1. At the time of reception, specific personal items listed in the **DC-ADM 815, "Personal Property, State Issued Items, and Commissary/Outside Purchases"** may be retained after being examined and screened thoroughly for contraband. Items that you may not retain will be destroyed or sent to a person you designate. Any forms of personal identification will be confiscated and maintained in the facility Business Office until your date of release. You will receive a copy of your property inventory list on a **DC-153, Personal Property Inventory** form for your records.

DOC-00960

5. You will be allowed to respond to the reasons for AC placement. You may tell your version verbally or submit it in writing. A committee member will write down a summary of any relevant verbal statement you make.

6. You may appeal the decision concerning your initial confinement in AC status in accordance with **DC-ADM 802.** Your right to appeal terminates when you are released from AC status.

7. If you are placed in AC status as pre-hearing confinement on a misconduct charge, no hearing will be held on the reasons(s) for confinement if a hearing on the misconduct charge is held within seven working days, excluding weekends and state holidays, and the misconduct charge is disposed of at the hearing. A request to continue the disciplinary hearing is an automatic waiver of the hearing on the reason(s) for pre-hearing confinement.

8. Absent the Facility Manager's written extension, confinement in AC status for investigative purposes will not exceed 15 calendar days, in accordance with **DC-ADM 802.**

9. The Facility Manager/designee or the PRC may release you from AC status to general population at any time during your AC confinement, unless you have been identified as restricted for release. If you have been identified as restricted for release from AC status, the Facility Manager/designee must request the approval of the Secretary/designee in order for you to be released.

**B. General Rules**

In addition to the rules mentioned below, there are specific rules of the facility. Those rules are in the **Facility Handbook Supplement**.

1. Staff members will give you directions and/or instructions when needed. All directions and/or instructions are considered orders and must be followed promptly. If you fail to do so, you may be issued a misconduct.

2. If you have received conflicting orders from different staff members, you must follow the last order given.

3. Things may happen that are not covered by specific rules. If this happens you should ask a staff member for help or direction.

4. Tampering with or destroying state property is not permitted.

5. You and other inmates may not congregate, hold any group meetings, or form any organizations without proper approval of the Facility Manager. The facility will make time and space available for approved meetings. No inmates or group of inmates are given authority over another inmate and/or group of inmates.

6. You may not possess or circulate any petitions or place any signs or posters anywhere in the facility.

7. Practicing martial arts such as judo, karate, or other arts of self-defense, and drilling or marching is not permitted.

8. You are expected to approach staff with respect and courtesy. Staff should be addressed by their title (Captain, Doctor, etc.) or by "Mister" and if their last name is known ("Mister Smith," etc.). For women, the appropriate Mrs., Ms., Miss., Ma'am, etc. should be used.

Ref: 5291517 pg 85 of 93 for TROY LEWALD

program bridges this gap. You may be eligible for the program if you have not received an in person visit for at least 12 months. Participation in this program is determined by established guidelines in the **DC-ADM 812**.

b. Virtual Visitation is offered at SCI-Albion, SCI-Coal Township, SCI-Dallas, SCI-Greene, SCI-Mahanoy, and SCI-Pine Grove. If you are interested in the virtual visitation program, and are incarcerated at one of the participating facilities, you will need to write a request slip to your counselor.

c. The visiting rules for Virtual Visitation are generally the same as those for visiting in the facility. Visitors who have been restricted from visiting at a facility may not participate in this program.

## XI. Work Assignments (DC-ADM 816)

### A. General

1. All medically cleared inmates must accept any task assigned to them regardless of the amount of compensation offered in return. You do not have a right to be assigned, or continue to work in any particular work assignment.

2. If you are able to work, you will be assigned to a job depending upon job availability. Your job will be assigned through the Corrections Employment Vocational Coordinator. Your interests are a factor in making assignments. Your abilities, qualifications, and the availability of space on the job are also considered. However, as stated in this handbook, if you test below the 8th grade competency level in reading, as measured by the TABE, you must enroll in the education program.

3. Failure to report to or refusal to work is regarded as a misconduct. Absence from your job location without prior knowledge and permission from a staff member is not allowed.

4. The job you desire may have a waiting list, or require special qualifications and your work assignment may be to an area that was not your first choice. This assignment, however, may be a steppingstone to other jobs in the future.

5. If you work irregular hours, you may be permitted recreational activity in designated areas at designated times.

6. You are expected to carry your share of the work, and to do any task assigned. You may be required by the crew supervisor to do any job relating to the general duties of the work crew. You may, at times, depending upon facility needs, be assigned tasks unrelated to your present job. You may not refuse to perform those tasks as assigned.

7. You may not leave your place of work without approval from the work supervisor and you must have a pass, properly signed, indicating where you are going and the time you left work.

8. Your job performance and conduct will be evaluated periodically and the evaluation will become part of your record.

### B. Pay System

If you work, you will be paid for the hours you work according to the **DC-ADM 816.** Most jobs are paid on the hourly basis. The pay system has three classes of hourly pay based on the skill level required. Each class has four pay steps. You begin at the bottom step of the class and can be considered for increases based on your skill, interest, and on-the-job performance. Pay is

DOC-00979

calculated monthly and credited to your account. Some Correctional Industries jobs include a bonus based on quotas or profits.

C.  **Length of Work Day or Work Week**

1.  The standard workday consists of six hours, and the standard workweek consists of five days. You will only be paid for actual hours worked, as verified by the work supervisor. Hours of work will be figured from the time of arrival at, and departure from, the classroom or work site.

2.  You will not be permitted to work more than five days a week or six hours per day under normal circumstances. In a department that functions seven days per week, where job changes are more frequent, you will be permitted to work more than five days per week without being eligible for overtime pay.

3.  You may be granted a one-half hour break to visit the barber or beauty shop monthly and the Commissary weekly, if these opportunities are not available during your non-work hours.

D.  **Pay Rates**

1.  The pay rates for skilled classifications are listed in the **DC-ADM 816**.

2.  You will be assigned the starting step of the pay class that matches your work skill. If you are starting at the unskilled pay level of Class 1, Step A, you will be evaluated by the work supervisor in 60 days for advancement to the next skill level. The work supervisor will base your advancement on your performance. Advancement to the next higher class can only occur if there is an opening in that class.

3.  If you participate in, or have completed vocational training, you will not receive a reduction in pay rate if you are reassigned to an assignment that uses those skills.

E.  **Pay Changes**

1.  Pay raises and demotions will be at the discretion of the work supervisor based upon your performance as documented on the **DC-48B, Inmate Progress Report**. You are not entitled to pay raises and they are not automatic. Raises may be awarded only in one-step increments and are based on your work performance. The first pay raise and later increases will not be granted until you complete two months of satisfactory performance. Pay raises are effective in the first full pay period of the month following the approval of the raise. Demotions may be effective immediately.

2.  You may be removed from a work assignment by a Unit Management Team action or misconduct proceeding. If you are found guilty of a **Class 1, Category A** misconduct, as defined in the **DC-ADM 801**, you will be removed from your work assignment.

3.  The work supervisor may temporarily suspend you pending Unit Management team review or misconduct proceedings.

F.  **Illness or Injury**

1.  If you suffer a job-related injury, as verified by the medical department, you are eligible to continue to be paid at the rate earned on the day prior to the injury. The work supervisor must complete an incident report documenting the injury and referencing the medical department's examination and determination of the injury. You will not be eligible for pay increases or

DOC-00980

bonuses during this time. The medical pay period shall not exceed 90 calendar days and each case will be reviewed every 30 days to determine if the medical pay should continue. After 90 days, you will be paid the Medical Allowance.

2.  If you are unable to work as a result of self-inflicted injuries or injuries sustained as a result of a provoked assault or your carelessness, you will not be eligible to receive pay.

3.  You will not be paid during times of illness or injury unless you get an excuse from work from the medical department. If a work assignment that you are able to perform becomes available, you may be assigned to that position and receive pay appropriate for that assignment. You must follow the advice of the medical staff and take all reasonable steps to improve your health during this time. Failure to do so may result in the stopping of your pay.

4.  If you are unable to work for medical or mental health reasons, or you are confined to a Mental Health Unit (MHU), you are eligible for the General Labor Pool Allowance for a maximum of five days per week. If you are admitted to a MHU due to attempted suicide or self-inflicted injuries, you will not be eligible for the General Labor Pool Allowance. Following release by the medical or mental health department, and an evaluation by the Corrections Employment Vocational Coordinator, you may return to a previous job assignment.

## G.  General Labor Pool

1.  If you do not have a work assignment, including education, through no fault of your own, or if you remain in the assessment unit or Diagnostic Classification Center more than 60 calendar days, you will be placed in the General Labor Pool. While you are in the General Labor Pool, you will be eligible to receive the General Labor Pool Allowance as listed in the **DC-ADM 816**, for a maximum of five days a week. You will be eligible to receive the General Labor Pool Allowance for six months, with the possibility of a three month extension granted by the Facility Manager, until you are given a work or school assignment. You must maintain a proper level of personal hygiene, the cleanliness and orderliness of your living area, accept work assignments for the housing unit, accept any employment offered, and participate in recommended programs.

2.  If you receive the General Labor Pool Allowance and do not maintain an acceptable level of personal hygiene, cleanliness of your living quarters or other areas assigned to you, or fail to participate in programming, the Unit Manager will assess whether you are to continue receiving the General Labor Pool Allowance. This assessment will include an interview with you and an evaluation by the medical and/or mental health department. The Unit Manager will tell you of the outcome of the assessment and instruct you on ways to improve your performance.

3.  If because of a verified medical or mental health condition, you cannot maintain an acceptable level of personal hygiene, clean your living quarters, or some other area assigned to you, or participate in programming, you may collect the Medical Allowance.

## H.  Assignment to Restricted Housing Unit (RHU)

If you are sent to the RHU, you will not be paid unless you are assigned a job in that unit. Exceptions to this may be approved by the PRC as outlined in the **DC-ADM 816**.

# APPENDIX A-5

## Initial Reception Screening DC-471

1. In accordance with Department policy **13.2.1, "Access to Health Care," Section 2, Initial Intake Screening and Medical Clearance for Transfer**, the **DC-471** will be completed by a nurse for:

   a. initial receptions; and

   b. Hold by Various Authorities (HVAs), CCC returns, PV's, ATAs, and returning inmates all with more than a 90-day absence.

2. The nurse shall conduct a personal, confidential interview at the time of reception and complete the following information upon an inmate's arrival:

   a. inmate identification information to include the following:

      (1)   inmate's name, Department number, date of birth, and facility will be stamped or hand written in the lower right corner of the form;

      (2)   reception date;

      (3)   social security number;

      (4)   name and Department number;

      (5)   race;

      (6)   private insurance information, if applicable;

      (7)   height, weight, BP, TRP;

      (8)   interpreter and language information, if applicable;[1] and

      (9)   notification information, next of kin.

   b. medical history to include the following:

      (1)   family physician name and address;

      (2)   allergies;

      (3)   current diagnosis;

      (4)   current medications (include name, dosage and frequency);

---

[1] 4-4395

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00123

## JA 280

    (5)   special health requirements (including dietary); and

    (6)   past hospitalizations including name and location of hospital(s) and the reason(s) for admission and dates, and patient's name if other than committed name.

c.  family history to include the following:

    (1)   type of disease; and

        (a)   check none or unknown; or

        (b)   document family member with disease.

    (2)   status of immediate family.

d.  past/present problems checklist;

e.  drug usage (past and present) to include the following:

    (1)   drugs and/or alcohol;

    (2)   method of drug use;

    (3)   amount and frequency of drug use;

    (4)   drug history;

    (5)   signs of withdrawal; and

    (6)   problems after discontinuation of drugs.

f.  observations to include the following:

    (1)   observation checklist; and

    (2)   description of any abnormal observations.

g.  physical aids to include the following:

    (1)   type of physical aid;

    (2)   description or explanation of physical aid; and

    (3)   list physical aids brought with inmate.

h.  menstrual and pregnancy history (females) to include the following:

User Manual – Forms Page 38

    (1)   menstrual cycle;

    (2)   last menstrual cycle;

    (3)   last pap smear;

    (4)   Para/Gravida;

    (5)   chance of pregnancy; and

    (6)   gynecological problems.

i.   mental health review to include the following:

    (1)   mental health checklist;

    (2)   suicide attempts, including number of attempts and circumstance's of suicide attempt;

    (3)   past psychiatric hospitalizations/outpatient treatment/partial hospitalizations;

    (4)   previous diagnosis as stated by inmate;

    (5)   psychotropic medications, dosage, and pregnancy; and

    (6)   when current medication was last taken, if applicable.

j.   immediate psychiatric referral should be made for any inmate who was previously receiving mental health care or is taking psychotropic medications;

k.   a routine psychiatric referral should be made for any inmate who was previously receiving mental health care or is taking psychotropic medications;

l.   immediate medical referral will be made on any inmate to the physician or physician assistant for the following:

    (1)   fresh bruises or other evidence of injury; and

    (2)   acute illness.

m.   a licensed nurse must conduct a chart review for all medication continuations;

n.   the reviewing nurse will indicate if the inmate is cleared for general population;

o.   to complete the form the following signatures will be obtained:

    (1)   interviewer signature, date and military time;

    (2)   inmate signature and date;

    (3)   witness signature if inmate refuses to sign and date; and

    (4)   interpreter signature if an interpreter was needed and date.

p.  the **DC-471** will be filed under the "Intake/Reception Assessment" section of the medical record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00126

**JA 283**

## Intra-Facility Medical Record Transfer Checklist DC-485

1. In accordance with Department policy **13.2.1, "Access to Health Care," Section 2, Initial Intake Screening and Medical Clearance for Transfer**, the **DC-485, Intra-Facility Medical Record Transfer Checklist** will be completed by the medical record staff.

2. Inmate Identification Data - name, inmate number, date of birth, facility.

3. A quantitative review of the medical record is completed by the medical record staff and the following items obtained and contained within the record (if applicable) prior to inmate transfer:

| | |
|---|---|
| Therapeutic Diets | Advance Directive |
| Intake & Reception Screening Forms | Problem List |
| TB Summary Record | Hepatitis/Beck Forms |
| Dental Record | Labs |
| History and Physical Exam | Audio/Visual Testing Forms |
| Medical Clearance Form | Consultation Reports |
| Gynecology Exams | X-rays |
| Psychiatric Notes/Reports | EKG |
| AIMS Test | Physician Orders |
| Psychology/Counseling Notes | Progress Notes |
| Mental Health Informed Consents | Flow Sheets |
| Suicide Risk Indicators Checklist | Inpatient Unit Records |
| Treatment Plans | Community/ER Records |
| Inpatient Psychiatric Records | Dialysis Records |
| Refusals | MARs |
| Consents | Addressograph |
| Authorization for Release of Information | Inmate Photograph |

4. Completion of the checklist will comply with the following guidelines:

   a. a check mark is entered in the sending facility column when required documents are on the record;

   b. after reviewing the physicians' orders, if the inmate has had no inpatient unit admissions, consultation reports, diagnostic studies, psychiatric treatments, community hospitalizations, emergency room trips, or medications, the entry, "N/A" will be made in the appropriate section of the column;

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00134

   c. the person responsible for the record verification at the sending facility will sign and date the form at the designated area;

   d. the original will be affixed to the record on top of the problem list divider for transport to the receiving facility; and

   e. the copy will be kept for 90 days before being destroyed by the sending facility. They will be maintained in the Medical Record Department.

5. All loose filing is retrieved from appropriate locations. (Inpatient unit, clinical coordinator, repository, mail boxes, etc.).

6. If any item is not sent, the reason must be documented on the **DC-485** prior to transfer, to assure all attempts were made to locate those items.

7. All record items will be placed into a Transfer Envelope. The inmate's name, number, sending facility's and receiving facility's full name will be recorded on the front of the **DC-442, Medical Records and X-Ray Film Envelope.**

8. After the **DC-485** has been reviewed by the receiving facility, it will be filed under the "Miscellaneous" section of the chart.

9. For an incomplete **DC-485**, the receiving Medical Record Director/Technician/designee will contact his/her counterpart at the sending facility concerning missing items. He/She will obtain an expected date of arrival and document the same on the **DC-485**. The Correctional Health Care Administrator shall also be notified of the incomplete transfer checklist.

10. The **DC-485** shall be used to close out an active record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00135

**JA 285**

## Intra-Facility Transfer Reception Screening DC-479

1. In accordance with Department policy **13.2.1, "Access to Health Care," Section 2, Initial Intake Screening and Medical Clearance for Transfer**, the **DC-479, Intra-Facility Transfer Reception Screening** will be completed for every intra-facility transfer. Health screening of an intra-system transfer is necessary to detect an inmate who poses a health or safety threat to himself/herself or others and who may require immediate health care.

2. This form will be completed by the reception screening nurse who will:

   a. conduct a personal confidential interview at the time of the intra-facility transfer reception;

   b. complete the inmate identification data - the inmate's name, Department number, and date of birth and facility name will be stamped or handwritten on the lower right corner of the form; and

   c. write a progress note including significant information.

3. The nurse will obtain a medical history to include the following:

   a. current acute conditions/problems;

   b. chronic conditions/problems;

   c. medications (name, dosage, frequency, duration);

   d. allergies;

   e. dietary restrictions;

   f. physical disabilities/limitations;

   g. visible signs of dental problems;

   h. bruises, deformities, evidence of trauma;

   i. significant medical history;

   j. history of drug/alcohol abuse;

   k. general appearance and behavior;

   l. inmate complaints;

   m. physical aids checklist; and

   n. menstrual and pregnancy history (females), to include the following:

User Manual – Forms Page 51

    (1)   Gravida/Para;

    (2)   LMP (date of last menstrual period);

    (3)   Chance of pregnancy now; and

    (4)   Any gynecological problems.

4.  The nurse will conduct a Mental Health Status Review and include the following questions:

   a.  do you hear voices;

   b.  do you have thoughts of hurting yourself or others;

   c.  do you have a history of depression;

   d.  is there a history of suicide attempts; and

   e.  note any evidence of self-mutilation.

Note: If an answer to any item "a-e" is "yes" or the inmate is on psychotropic medication, refer him/her to Psychiatrist and Psychology.

5.  The reception screening nurse will determine if follow-up care is needed for:

   a.  medical care to include the following:

     (1)   immediate; and

     (2)   routine.

   b.  psychiatric care to include the following:

     (1)   immediate; and

     (2)   routine.

6.  The reception screening nurse will:

   a.  explain procedures for accessing medical services to the inmates;

   b.  sign, date and time the form;

   c.  obtain the inmate's signature and date; and

   d.  obtain the witness's signature if the inmate refuses to sign.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00138

**JA 287**

*13.1.1, Management and Administration of Health Care Medical Records User Manual*
*Section 2 – Forms and Instructions*

7. The reception screening nurse will review the Medical Record to:

   a. determine if the inmate is medically cleared for general population;

   b. indicate if the inmate needs medical or psychiatric referrals; and

   c. sign, indicate title and date, and time the form.

8. The **DC-479** will be filed under the "Intake/Reception Assessments" section of the medical record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00139

**JA 288**

## Medical Incident/Injury Report DC-457

1. The **DC-457, Medical Incident/Injury Report** *shall* be completed by the licensed health care professional for all medical injuries/incidents occurring within the facility or on the grounds for staff, inmates, visitors, Contracted Health Care Provider personnel, or any others.

2. The health care professional completing the **DC-457** *shall* legibly document the following:

   a. all identification data pertaining to injured person;

      (1) in the case of an employee, the social security number is not to be completed; and

      (2) complete all physician notification information.

   b. the exact nature of the complaint or injury;

      (1) patients' statements *shall* always be placed in quotation marks; and

      (2) complete all physician notification information.

   c. legibly document initial impression and assessment of the illness/injury, using acceptable medical terminology;

   d. document all treatment administered with recommendations for follow-up care to include the following:

      (1) all visitors and Contracted Health Care Provider personnel *shall* be referred to their family physician or emergency room;

      (2) all work related employee injuries *shall* be referred to a list of panel physicians;

      (3) all employee illness (not work related) *shall* be referred to his/her family physician or emergency room; and

      (4) all inmates *shall* be referred to the next sick call line and either taken to an emergency room, admitted to the infirmary, or returned to the block after assessment/treatment.

   e. any physical injuries that are reported by the inmate or otherwise observable by medical personnel pursuant to claim of abuse or suspicion of abuse shall be immediately photographed by medical personnel and attached to the medical incident report. One set of photographs shall be appended to the **DC-457** and maintained on file with the **DC-457**.

3. When completed, this form *shall* be signed and dated by the person preparing the report and reviewed by nurse supervisor or health care administrator for accuracy and trends.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00141

**JA 289**

Ref: 5291523 pg 44 of 101 for TROY LEWALD

4. The licensed health care provider completing the **DC-457** for inmates *shall* document a note/entry within the medical record in SOAP format. The following points are provided to clarify use of the **DC-457** and entries in the medical record:

   a. it is a supplemental report, **NOT** a substitute for a SOAP note;

   b. follow-up care *shall* be included under P (plan);

   c. within the SOAP note, **DO NOT** document that a **DC-457** was completed; and

   d. the **DC-457** is **NOT** part of the medical record and will be filed alphabetically on a monthly basis and maintained for trending and risk management activities.

5. Copies of the **DC-457** *shall* be distributed as indicated on the form.

6. A copy of the **DC-457** may be provided to a Department employee if, in the opinion of the Facility Manager/designee, such employee has a legitimate need to access the information in the performance of his/her duties. For all other requests, if a copy of a **DC-457** form is required, a **DC-108, Authorization for Release of Information** form must be completed. The Department will review the request and respond in accordance with Department policy **DC-ADM 003, "Release of Information."**

7. *DC-457 forms for inmates documented prior to 1/1/2018 shall be maintained in a separate folder from the medical record and maintained in accordance with the Department's records retention schedule. The forms shall be filed by year, month, and in alphabetical order by last name. Forms created on 1/1/2018 and later shall be included as part of the inmate medical record.*

8. *For employees,* the **DC-457** *shall* be filed in the employee medical record.

9. A separate file *shall* be maintained to keep all visitor/other Medical Incident/Injury Reports. *This file for visitor/other Medical Incident/Injury Reports shall remain at the site that initiated the report and be kept in accordance with the Department's records retention schedule.*

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00142

**JA 290**

**Medication Charting Record DC–448 or Contracted Pharmacy Computerized Medication Charting Record**

1. Will be completed by the nurse administering the medication and will contain the following:

   a. inmate identification data;

   b. current month and year;

   c. all significant diagnoses;

   d. all allergies;

      (1) NKA, if no known allergies; and

      (2) NKDA, if no known allergies.

   e. PRN medications;

   f. enter start date (Month, Day, Year);

   g. enter stop date (Month, Day, Year);

   h. enter medication, dose, frequency, and duration of medication order;

   i. a record of initials under date and hour medication was administered;

      (1) if inmate is not present at medication line enter zero; and

      (2) if inmate refuses medication, enter initials with a circle around the initials.

   j. self medications should have the date and amount of medication dispensed to the inmate documented on the MAR;

   k. record shift, initials, signature, and title of nurse administering the medications in signature key. Photocopied signature keys are not acceptable; and

   l. the nurse's signature stamp may be used in place of a written signature on the MAR in those facilities that have approved the use of a nurse's signature stamp. If signature stamps are being used, a signature stamp verification form must be completed for each nurse and kept in the CHCA's office until stamp is no longer in use.

2. Significant comments regarding medications are documented in the **DC-472, Progress Notes** to include the following:

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00147

**JA 291**

    a.  counseling of non-compliant inmates; and

    b.  instruction on side effects of medications.

3.  When an inmate is admitted to the inpatient unit any medications written on the outpatient chart are to be discontinued. Any orders that need to be continued must be written on the inpatient unit chart.

4.  The **DC-448** will be opened as part of the inpatient unit record to record all medications administered during each episode of inpatient unit care.

    a.  When an inmate is admitted to the inpatient unit the outpatient MAR should be closed out by writing "Inmate admitted to inpatient unit on date" directly on the MAR.

    b.  When an inmate is discharged from the inpatient unit all medication orders are to be discontinued. Any orders that need to be continued must be rewritten on the outpatient chart.

5.  The Medication Charting Record will be filed as follows:

    a.  in the "Treatment Record/MARS" section of the medical record when used in the outpatient setting; and

    b.  with the Inpatient Unit Chart when used in the inpatient unit setting.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00148

**JA 292**

*13.1.1, Management and Administration of Health Care Medical Records User Manual*
*Section 2 – Forms and Instructions*

## Mental Health Referral Form DC-97

1. In accordance with Department policy **13.8.1, "Access to Mental Health," Section 2, Mental Health Delivery**, in so far as possible, cases will be referred in writing on the **DC-97, Mental Health Referral Form** to the Psychologist by the counselor or other staff members, such as medical or psychiatry.

2. Ideally such referrals will be discussed with the referring party but it is recognized that this is not always feasible and it may be necessary to proceed based on the written referral only.

3. It may also be necessary for the Psychologist to train other facility staff on the appropriate way to ask referral questions and what kind of cases are appropriate for referral.

4. Once the Psychologist receives the referral, he/she will review the request and determine what procedures are necessary to answer the referral question.

5. The appropriate procedures necessary to reach responsible conclusions will be determined by the nature of the request, the information available in the record, and the Psychologist's own skills.

6. The **DC-97** shall be filed under the psychology divider, in the "Psychiatric/Mental Health" section of the medical record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00151

**JA 293**

## Narrative Summary of Medical Treatment DC-507

1. In accordance with Department policy **13.2.1 "Access to Health Care," Section 9, Medical Management of Inmates with Terminal Conditions,** the **DC-507, Narrative Summary of Medical Treatment** will be completed once an inmate has been determined to meet the criteria for entering a hospice program and has signed the **DC-501, Consent for Participation in Hospice Care Programs** form.

2. The physician will provide a narrative summary of medical treatment by answering the following:

   a. history of present illness;

   b. current treatment;

   c. recommended treatment plan;

   d. prognosis; and

   e. other comment.

3. The physician will print his/her name, sign his/her name, and date the form.

4. The Medical Director/designee will review the form, print or stamp his/her name, sign and date the form.

5. Upon completion of this and other hospice forms:

   a. a copy will be forwarded to the Clinical Coordinator at the BHCS for determination of acceptance; and

   b. the original forms will be filed under the Hospice Divider in the "Legal Section" of the medical record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00153

**JA 294**

## Nursing Transfer Checklist DC-491

1. In accordance with Department policy **13.2.1, "Access to Health Care," Section 2, Initial Intake Screening and Medical Clearance for Transfer Section**, the **DC-491, Nursing Transfer Checklist** will be completed by the nurse reviewing charts for transfer for all intra-facility transfers. A simple progress note should be written stating that the **DC-491** was completed, the type of transfer, and the receiving facility.

2. The transfer nurse is to complete the inmate identification data including the inmate's name, Department number, date of birth, and facility name, stamped or handwritten on the lower right corner of the form.

3. The transfer nurse will review the medical record for answers to all the medical clearance questions.

4. If any of the numbered questions are answered with a YES, the checklist and chart are to be reviewed with the physician. The nurse/designee clearing charts is to personally review the chart and checklist with the physician.

5. If the inmate is not approved for transfer, a medical/psychiatric hold is to be initiated.

6. If the inmate is approved for transfer, the **DC-491** is to be placed on top of the "Problem List" section and sent to the receiving facility.

7. When the receiving facility secures the chart and the **DC-491** has been reviewed and signed, it should be filed in the "Miscellaneous" section of the chart.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00154

Ref: 5281522 pg 57 of 101 for *TROY LEBALD*

## Physician Order Form

1. Orders by a physician, psychiatrist, dentist, certified registered nurse practitioner, or physician assistant (PA) will be written on the **Physician's Order Form (Attachment 2-B)** documented on pre-printed Physician's Order Forms or printed from computer software authorized by the Bureau of Health Care Services (BHCS).

2. The nurse will complete the following:

   a. inmate identification data including inmate name, Department number, date of birth, and facility name to be stamped or handwritten in the upper right hand corner of the form;

   b. allergies; and

   c. indicate if the inmate is continuing on self-medication.

3. If the inmate is started on self-medication, the physician will document this at the top of the form.

4. Each physician, psychiatrist, dentist, certified registered nurse practitioner, and PA will include the following in his/her order(s): date, military time, orders to be implemented, and any discontinuations or changes in previous order(s).

5. Medication orders will include: name of medication, date ordered, specific dosage, specific route of administration, quantity, frequency and duration by either the number of doses or the number of days.

6. All orders will be signed and stamped by the practitioner. A clearly printed signature will be accepted until the block stamp is available.

7. Physicians must co-sign, date, time, and stamp all orders written by the PAs within 72 hours.

8. Federal regulation 1306.11 states that the pharmacy must receive an original order for all Schedule II drugs. Therefore, Schedule II drugs will be written on the **Physician Order Form** as well as on a prescription order pad. The prescription order pad will serve as an original order form. A carbon copy of the order may be faxed to the pharmacy, but the order written on the prescription pad must be forwarded to the pharmacy within 24 hours. The prescription pad order must include the following: drug name, strength, route, frequency, duration, quantity, physician signature, and DEA number.

9. After completing an order, the physician, PA, psychiatrist or dentist do not need to rewrite the order in his/her Progress Note. He/She may write, "See orders dated _____" under the Plan section of the SOAP notes. A corresponding progress note must be written for every physician order.

10. A nurse will transcribe written orders by using a red ballpoint pen to bracket orders, enter name, credentials, date and military time.

User Manual – Forms Page 73

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00159

**JA 296**

11. Both registered nurses and LPN's can accept a verbal/telephone order provided the order is understandable and within their scope of practice. Verbal orders can be accepted from physicians, psychiatrists, dentists, and certified registered nurse practitioners. Verbal orders can be accepted from PAs supervised by a medical doctor. Verbal orders can not be accepted from PAs supervised by an osteopathic doctor.

12. The nurse transcribing the physician orders will remove and send the proper carbon copy to the drug room. The original order must always remain in the chart, only the carbon copies are to be removed.

13. The nurse will note on the copy the date, military time, and initials acknowledging the medication order was forwarded to the pharmacy via fax or courier. The nurse will be responsible to assure all information on the **Physician Order Form** is legible. A nurse will write the orders on the MAR.

14. It is the responsibility of the nursing staff to put a blank **Physician Order Form**/Preprinted Physician Order into the medical record when a new form is needed. The inmate's name, Department number, date of birth, and facility name must be stamped or written on the upper right hand side of the form. Drug allergies or NKDA shall be recorded on the "Drug Allergies" line. Carbon copies of completed Physician Order Form shall be removed at this time.

15. The carbon copy will be kept in the drug room to check against the order when it is received from the pharmacy.

16. Once the order has been properly checked, the carbon copy may be destroyed.

17. The **Physician Order Form** will be filed under the "Physicians Orders" section of the medical record.

18. **Preprinted Physician Order Forms**

    a. Preprinted Physician Orders are written for the following protocols:

        (1) Annual Health Appraisals – females (age 50 & over);

        (2) Annual Health Appraisals – males (age 50 & over);

        (3) Asthma;

        (4) Biennial Health Screenings females under age 50;

        (5) Biennial Health Screenings males under age 50;

        (6) Carbamazepine (Tegretol) Protocol;

        (7) Diabetes Mellitus (IDDM & NIDDM);

Issued: 1/5/2018
Effective: 1/12/2018

**JA 297**

(8)  HCV Initial Evaluation Orders;

(9)  HIV Infection – females;

(10)  HIV Infection – males;

(11)  Hypertension;

(12)  Immunizations (if inmate not seen in chronic clinics);

(13)  Lithium-protocol;

(14)  New commitments, HVA's CCC Returns, Returned Escapees, PV's ATA (>90 days absence); and

(15)  Tuberculsos.

**NOTE:** Preprinted Physician Orders are not available from Pennsylvania Correctional Industries (PCI) and must be copied at each facility.

b.  Medication Orders are not to be written on the Preprinted Physician Order Forms.

c.  The physician/ physician assistant (PA) can choose to bundle lab tests. It is his/her responsibility to document the appropriate Health Profile number on the Preprinted Physician Order Form.

d.  Inmate Identification, drug allergies, and self medication boxes must be completed.

e.  The Physician/PA will complete the date, time, and problem number, place a checkmark next to the order that is to be completed.

f.  Original signature and block stamp are required. Any order requiring physician to co-sign must include the date, time, signature and block stamp.

g.  Photocopied date, time, problem number, signature and block stamp are not acceptable.

h.  The nurse will transcribe the order as per step # 8.

i.  Preprinted Physician Orders will be filed in sequential order under the Physician Orders section of the medical record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00161

**JA 298**

*13.1.1, Management and Administration of Health Care Medical Records User Manual*
*Section 2 – Forms and Instructions*

## Problem List DC-467

1. The **DC- 467, Problem List (Attachment 2-C)** will be maintained by the physician, dentist, psychiatrist, certified registered nurse practitioner (CRNP), physician assistant (PA), or nurse, and utilized as an index of the inmate's medical and psychiatric problems.

2. Inmate identification data should be completed including inmate name, Department number, date of birth, and facility.

3. All allergies will be listed.

4. List only one diagnosis per line and the date when the problem was diagnosed.

5. The **DC-467,** is initiated at the time of initial reception and is placed under the "Problem List" section of the medical record.

6. A new **DC-467,** will not be initiated when an inmate is transferred between facilities or returns to the correctional system or when the inmate is admitted to the inpatient unit.

7. Upon completion of the **DC-467,** a new form will be added.

8. If coding is required, the Medical Record Technician/Assistant is responsible for assigning the appropriate ICD-9-CM code for each diagnosis.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00162

**JA 299**

Ref: 5301522 pg 65 of 101 for TROY LEBALD

<u>Progress Notes DC-472</u>

1. The **DC-472, Progress Notes (Attachment 2-D)** will be completed by health care providers who will legibly document observation and significant data to include the following:

   a. inmate identification data – the inmate's name, Department number, date of birth, and facility name will be stamped or handwritten in the lower right hand corner of the form; and

   b. enter date, military time, and discipline.

2. All entries (unless otherwise noted) will be completed in SOAP format.

3. Any chronic problem(s) identified in the **DC-472** will be documented on the **DC-467, Problem List**.

4. Upon completion of the SOAP note by the health care provider, it will be signed and stamped, using a block stamp below the signature. The health care provider will draw a single line on all blank spaces both before and after signatures and to the end of the line, if applicable.

5. The **DC-472**, will be used in both the outpatient area and inpatient unit and must be marked appropriately.

6. The **DC-472**, completed in the outpatient area will be filed under the Progress Notes section of the medical record.

7. The **DC-472**, completed in the inpatient area will be filed in the inpatient unit chart.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00163

**JA 300**

*13.1.1, Management and Administration of Health Care Medical Records User Manual*
*Section 2 – Forms and Instructions*

## Transfer Health Information Form DC-487

1. In accordance with Department policy **13.2.1, "Access to Health Care," Section 2, Initial Intake Screening and Medical Clearance for Transfer,** a **DC-487, Transfer Health Information Form** will be completed by a nurse at the sending facility when an inmate is:

   a. sent ATA and housed with the county;

   b. sent ATA but housed at another State Correctional Facility and the receiving facility has custody of the inmate;

      (1) upon reception, if the receiving facility determines that more information is needed, they will contact the sending facility and request additional information;

      (2) the sending facility shall fax the requested information; and

      (3) if the receiving facility determines that the entire medical record is needed, the medical department is to call the sending facility and request the chart.

   c. sent to a Mental Health Unit  (MHU) or Forensic Treatment Center (FTC) for continuing mental health care;

   d. sent to an outside hospital for continuing medical care; and

   e. sent to another state facility, but awaiting INS transport.

2. Inmate identification data - name, Department number, date of birth, facility.

3. The **DC-487** should be filed in the "Intake/Reception Assessments" section of the medical record.

Issued: 1/5/2018
Effective: 1/12/2018

DOC-00180

**JA 301**

## Section 2 – Orientation for Nursing Staff

### A. Responsibilities

1. Corrections Health Care Administrator (CHCA)

    a. The CHCA/designee shall ensure *that* all nursing staff are oriented to the operations of the Department and *that they* receive orientation on the following subjects:[1]

    (1) Department medical *policies and procedures (13.1.1, 13.2.1, 13.3.1 and 13.8.1), including where medical policies are stored and how to find them, both paper and electronic copies;*

    (2) telephone procedures;

    (3) operation of medical equipment;

    (4) daily reports;

    (5) assignments/schedules;

    (6) ordering and storage of supplies;

    (7) security trash;

    (8) medical records/forms and confidentiality;

    (9) Team Leader/Charge Nurse responsibilities;

    (10) review of inmates returning from outside visits (specialty care, hospitalization, etc.);

    (11) psychiatric protocols and referrals;

    (12) notification of physicians on call;

    (13) tool control;

    (14) contracted health care provider staff and responsibilities including physician assistant's regulations;

    (15) medical services provided to employees *(first aid and emergencies,* TB *testing,* flu and Hepatitis *B vaccines)*;

    (16) nursing treatment protocols;

---

[1] 4-4384

2-1

## JA 302

(17)   RHU policies and procedures;

(18)   QA/QI duties;

(19)   infection control;

(20)   dental services;

(21)   pharmacy guidelines and procedures; and

(22)   preparations for inmate release.

b.  The CHCA shall use the **On-Site Nursing Training Protocols (Attachment 2-A)** to ensure that each *Department and contracted service provider* nurse receives clinical orientation in the following areas:

(1)   medication line;

(2)   sick line;

(3)   treatment line;

(4)   emergency response(s);

(5)   specialty/chronic clinics;

(6)   transaction of orders;

(7)   insulin line;

(8)   nursing responsibilities in medical and psychiatric observation areas;

(9)   medication room;

(10)   reviewing medical records for transfer; and

(11)   initial assessments.

c.  *Contract service provider nursing staff must be oriented to areas and operations for which they are to be assigned.*

d.  The CHCA/designee must sign the orientation forms documenting that these items were discussed and the nurse must sign documenting that he/she observed/understood the items.

2-2

DOC-00225

**JA 303**

2. Intelligence Gathering Captain/Designee

    a. The Intelligence Gathering Captain/designee shall ensure all **contract service provider** nursing staff receives orientation on Department security procedures as outlined in the **Security Orientation Packet for *Contract* Nurses (Attachment 2-B)**.

    b. After receiving the security orientation, the **contract service provider** nurse must sign the **Security Orientation for *Contract* Nurses Review & Acknowledgement Form (Attachment 2-C)**, acknowledging he/she received a copy of the **Security Orientation Packet for *Contract* Nurses**.

    c. After delivering the security orientation to **contract service provider** nursing staff, the Intelligence Gathering Captain/designee shall sign the **Security Orientation for *Contract* Nurses Review and Acknowledgement Form** acknowledging that he/she reviewed and delivered the **Security Orientation for *Contract* Nurses**.

## B. Documentation

1. The **On-Site Nursing Training Protocols** shall be reviewed with Department nurses at the annual Performance Evaluation.

2. *The Security Orientation Packet for Contract Nurses shall be reviewed with contract service provider nurses at the annual Performance Evaluation.*

3. All nursing orientation documentation shall be kept in the Department and contract service provider nursing staff file.

DOC-00226

**JA 304**

# APPENDIX A-6

## Section 3 – Health Care Contract Monitoring

### A. General Contract Performance

1. The contract indicates specific services to be provided by the Contracted Health Care Provider. Instructions for monitoring each medical contract are included in this section and entitled **Medical Contract Compliance Manual (Attachment 3-A).**[1]

2. The Department requires evidence of a Contracted Health Care Provider's compliance with all parameters of the contract and all attachments to the contract.

3. The Department's Corrections Health Care Administrator (CHCA)/designee shall be responsible for ensuring that the Contracted Health Care Provider complies with the contract.[2] ***The Medical Contract Monitoring Form (Attachment 3-B) shall be maintained and submitted electronically to the Bureau of Health Care Services (BHCS) Medical Contract Monitor by the 10th of every month.***

### B. Hours of Service

1. The contract identifies a specific number of hours of on-site service for each Contracted Health Care Provider. The CHCA/designee shall verify that all hours of service are provided.

2. The Contracted Health Care Provider shall provide to the CHCA/designee hours of service for each employee position indicated by the contract.

3. The CHCA/designee shall verify and approve the hours of service submitted as stipulated in the contract by the Program Administrator within three working days.

4. The Contracted Health Care Provider shall submit the approved hours of service to the Division of Fiscal Management.

### C. Inmate Count

1. The CHCA shall ensure that the Contracted Health Care Provider receives the inmate count for each day as stipulated in the contract. The count shall consist of the last daily count and shall include inmates physically present, on furlough, and those in outside hospitals.

2. The CHCA shall approve the daily inmate count for each month.

3. The Contracted Health Care Provider shall submit the approved daily inmate count for each month to the Division of Fiscal Management.

---

[1] 4-4380
[2] 4-4380, 4-ACRS-4C-02

3-1

Issued: 9/11/2013
Effective: 9/18/2013

DOC-00268

## JA 306

## D. Facility Auditing

1. The Facility Manager/designee shall assign staff from the Business Office to complete quarterly reviews to ensure contract compliance, accuracy of hours of service, and inmate count reporting approved by the CHCA.[3]

2. Any discrepancies found in the audit shall be reported to the CHCA/designee, the Facility Manager, and the Medical Contract Monitor for evaluation and any action deemed necessary to remedy the discrepancies.

3. The Medical Contract Monitor shall notify the Division of Fiscal Management of any discrepancies found during the review.

---

[3] 4-4380

Issued: 9/11/2013
Effective: 9/18/2013

DOC-00269

**JA 307**

## CONTRACT COMPLIANCE MANUAL

### A. *Medical* Provider Services

The following list of services shall be provided within the time frames stipulated in the contract and/or Department policies: (refer to the current Request for Proposal [RFP] and contract for specific requirements.)

1. Intake history and physical examinations and other inmate evaluations per Department policies;

2. *Provide on-site physician coverage to make infirmary rounds, supervise, Restricted Housing Unit (RHU) sick call rounds and provide emergency consultation to Certified Registered Nurse Practitioner's (CRNP), Physician Assistants (PAs), and nursing staff. Provide an on-call physician to ensure 24 hour coverage with telephone response being required within 20 minutes of notification call from the facility. A physician shall determine whether his/her on-site presence is required, give verbal orders, and a treatment plan to nursing staff.*

3. *Conduct sick call by a physician, CRNP or PA at times designated by the facility at the minimum five days per week for general population, and seven days per week (at least one day per week completed by a physician) for inmates housed in a restricted housing unit, infirmary, skilled care unit, mental health unit, or special management unit.*

4. On-site treatment for medical problems, injuries requiring sutures, and minor surgical procedures as required on a 24-hour on-call basis.

5. The contracted medical provider must approve or disapprove all specialty referrals including prosthetics, within *seven working* days through his/her utilization review process. An inmate must be seen by the specialty care contracted medical provider within 30 days of approval of the initial referral (or the frequency mentioned in the contracted medical provider's proposal if less than 30 days) for on-site services and 60 days for off-site services with the exception of stat orders for which the contracted medical provider shall provide specialty care immediately. Telemedicine consults shall be completed within 60 days of approved service. The contracted medical provider may request a waiver from the Bureau of Health Care Services (BHCS) for difficult cases or specialties that normally require a longer referral time. The contracted medical provider shall not be responsible for the failure of an inmate to report to scheduled clinics. The contracted medical provider shall notify the Corrections Health Care Administrator (CHCA) of the failure of an inmate to report to scheduled clinics. On-site clinics shall be conducted when six or more cases are referred within 30 days and the necessary medical equipment is available.

   *The contracted medical provider is required to complete the diagnostic process and begin initial treatment within 60 days or less where there is any clinical*

*13.1.1, Management and Administration of Health Care Procedures Manual*
*Section 3 – Health Care Contract Monitoring*      *Attachment 3-A, Page 1*
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00270

**JA 308**

Ref: 5281530 pg 74 of 100 for TROY LEHALD

*suspicion of a potentially serious or life-threatening illness, regardless of the number of diagnostic tests that may be required.*

6. All prescribed medical supplies, including prosthetics and their fitting and repair. The contracted medical provider is required to obtain these items within 60 days of approval.

7. Equipment and interpretations for electrocardiograph services.

8. X-Rays by a registered technician, interpretation by a board certified radiologist, and all supplies to operate the X-Ray department. Provide written reports, hard copy, and films *or electronic image(s)*;

9. *Responsible to provide ambulance and non-ACLS services for transport to an outside hospital, medical facility, specialty service, or other location when the practitioner determines these services are medically necessary.*

10. Vision care provided by optometrists or ophthalmologists within 30 days of utilization review approval.

11. All medical laboratory services including tests, supplies, forms, witness testimony, and phlebotomy services.

12. *For inpatient visits, the following information shall be provided to the Department:*

    a. *discharge instructions immediately upon discharge;*

    b. *discharge summary within 14 days from discharge;*

    c. *complete copy of the hospital medical record within 30 days of discharge; and*

    d. *electronic media, if available, are preferred.*

13. *For emergency room visits, the following information shall be provided to the Department:*

    a. *discharge instructions immediately upon release;*

    b. *copy of emergency room records, or outpatient records, within 30 days;  and*

    c. *electronic media, if available, are preferred.*

14. *The contracted medical provider is required to coordinate all inmate medical trips outside the facility with the affected facility or facilities. The contracted medical provider shall provide the CHCA of the affected facilities within a weekly schedule of every inmate outside medical trip no later than Friday of the preceding week. The schedule shall include the inmate's name and number, date and time of the*

13.1.1, Management and Administration of Health Care Procedures Manual
Section 3 – Health Care Contract Monitoring                    Attachment 3-A, Page 2
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00271

JA 309

medical trip, and the name and location of the specific health care professional to whom the inmate is being transported. The contracted medical provider shall supply the CHCA with monthly schedules of all on-site service (clinics, specialties, and practitioners).

15. *Renal dialysis treatment provided prior to transfer to dialysis units at SCI Laurel Highlands and Muncy.*

16. *Employee pre-employment physicals.*

17. *Disposal of medical and infectious waste generated by the facilities.*

18. *Provide all medical equipment and supplies including upkeep of current medical equipment.*

19. *Provide all medical records forms, index tabs, and red folders and/or electronic medical record.*

20. *The Department may send a technical parole violator and a SIP inmate to the closest correctional facility for sick call, doctor session, and specialty clinic treatment.*

B. *Mental Health Provider Services*

1. *Evaluations within 30 days of referral or otherwise directed including but not limited to parole, commutation, consultation-liaison, hepatitis C treatment, furloughs, CCC placement, medical assistance and related applications, and placement on outside details.*

2. *Weekly individual and group therapies for mentally ill inmates in special needs units. Coordination of psychotropic medication monitoring and compliance groups for select inmate populations.*

3. Comprehensive psychiatric reports for 60-day court ordered evaluations within five days after the 60-day evaluation period.

4. Assist in providing annual suicide prevention in-service training to correctional staff.

5. Written Individual Treatment Plan for every inmate *on the D roster every 120 days and at least annually for inmates on the C roster. The inmate will be present at this meeting and provide input into his/her Treatment Plan goals.*

6. Conduct at least weekly rounds in the *RHU and other specialized treatment and custody units, to interview/observe inmates with mental illness who are housed in those settings. Inmates on the D roster will be offered out-of-cell contact at a*

*13.1.1, Management and Administration of Health Care Procedures Manual*
*Section 3 – Health Care Contract Monitoring*                    *Attachment 3-A, Page 3*
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00272

**JA 310**

Ref: 5291539 pg 26 of 100 for TROY LEWALD

*minimum of every 30 days and C roster inmates will be offered out-of-cell contact at a minimum of every 90 days.*

7. Provide 24-hour on call coverage for psychiatric emergencies. Must respond to call within 20 minutes of receiving notice and be on-site, if needed, within two hours of call. In most cases, the psychiatrist shall determine whether his/her on-site presence is required and giver verbal orders and treatment plan to nursing staff. However, if requested by facility staff, must provide on-site crisis intervention from onset to resolution phases.

8. *Assess inmates who are found to have current evidence or history of a serious mental illness or are currently taking psychotropic medications for a mental disorder within 72 hours of their initial reception nurse screening and referral.*

9. *Initial psychiatric evaluations will occur within 14 days of the inmate's commitment to the Department.*

10. *Evaluation of inmates referred by staff within timeframes developed by Department policy (currently 14 days for routine cases and three days for urgent cases).*

11. *Full participation in the Psychiatric Review Team process.*

12. *Psychiatric follow-up at least every 90 days for inmates on the C roster and at least every 30 days for inmates on the D roster.*

13. *Assessment, admission, treatment and discharge of inmates into and from POC's in accordance with Department policy.*

14. *Participation in scheduled and emergency Mental Health Hearing processes for consideration and petition of inmate inpatient and outpatient commitments.*

15. *Schedule the inmates to be seen by the clinicians.*

16. *Participation as required on facility management teams and admissions review committees.*

17. *Staff and resources to operate the Mental Health Units at the facilities to meet requirements for licensures as established by the Office of Mental health and Department operational requirements.*

C. *Responsibilities for both Medical and Mental Health Provider*

1. Credentials to the CHCA for all professional staff prior to being approved to work at the facility.

2. Provide a copy of written contracts with the subcontracted providers.

*13.1.1, Management and Administration of Health Care Procedures Manual*
*Section 3 – Health Care Contract Monitoring*        *Attachment 3-A, Page 4*
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00273

**JA 311**

3. Comply with all Department policies and procedures.

4. *Administrative overview of the region and each facility.*

5. *Comply with the accreditation process.*

6. *Participate in the Quality Improvement Program.*

7. *Peer review process for their staff (minimum every two years).*

8. *Collaboration between Department and all Health Care Contractors.*

9. *Support continuity of operations during an emergency.*

10. *Consultant to facility management.*

11. *Provide reports as requested and the Department's data management request.*

12. *Assist with the Department's management review process including provide a plan of action to correct any deficiencies.*

13. *Provide staff orientation to policies, procedures, etc. as necessary.*

D. *Facility's Responsibility for Both Medical and Mental Health Provider*

An individual employed or subcontracted by the contracted health care provider who will be performing services in the facility 20 hours or more per week shall undergo an initial orientation to the facility, which shall last not more than one week. Others who enter the facilities less frequently shall be required to complete an initial orientation on the first day of work not to exceed four hours. Annual refresher training up to four hours may also be required.

E. *Pharmacy Services Provider*

1. *Formulary and non-formulary medications and injectables (including IV's), Prescriptions must be prepared and delivered to the facility a minimum of six days per week delivery, Monday through Saturday, is required. Each prescription shall be provided within 36 hours, of a specified cut-off time six days per week, Sunday through Friday and within 60 hours for orders written on Saturdays and the day before an official state holiday.*

2. *The contractor is required to have a back-up pharmacy or network of back-up pharmacies to fill emergency prescriptions or back-ordered medications. Emergency medication must be filled and delivered within two hours or in a manner acceptable by ordering practitioner.*

*13.1.1, Management and Administration of Health Care Procedures Manual*
*Section 3 – Health Care Contract Monitoring*  *Attachment 3-A, Page 5*
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00174

**JA 312**

Ref. 5201520 pg 78 of 100 for TROY IRWAID

3. *Pharmacists should provide quarterly inspections of the drug room and assist in the disposal of specific medications.*

4. *Pharmacist will be a standing member of each facility's Pharmacy and Therapeutic Committee and will assist in developing site specific and Department Statewide CQI monitoring of pharmaceutical outcome measures.*

5. *Provide Post Exposure Prophylaxis (PEP) kits at each facility to include HIV prophylactic medications for significant exposures for inmates and staff.*

6. *Responsible to provide a monthly report for each facility which includes number of scripts written, total amount of medications dispensed, total cost of all medications plus a breakdown of the costs for HIV, Hepatitis C and atypical antipsychotic medication categories.*

7. Monthly report of drug use by the third working day of the following month.

8. Monthly psychotropic use report by the third working day of the following month.

F. **Procedures for Non-Compliance by Contracted Health Care Provider**

The following steps shall be followed when the contracted health care provider is non-compliant with the contract:

1. The CHCA shall investigate and discuss the non-compliance issue with the Site Administrator.

2. If the contract stipulates a specific penalty for non-compliance, the CHCA shall notify the Site Administrator and send documentation to the Medical Contract Monitor for approval. The Medical Contract Monitor shall review the documentation and advise the CHCA of the course of action.

3. If the contract does not stipulate a specific penalty for the non-compliance issue, the CHCA shall discuss the issue with the Site Administrator and both shall decide on the corrective plan of action and a date for completion. The CHCA shall advise the Site Administrator in writing of the corrective action, expected date of completion, and submit a copy of the corrective plan of action to the Medical Contract Monitor.

4. The Medical Contract Monitor shall determine if the non-compliance issue is a facility or regional problem and follow-up to determine if the problem has been resolved within the expected time frame.

5. If the issue is not resolved within the expected time frame, the contracted health care provider shall receive a letter from the Department advising them of the course of action that shall be taken due to non-compliance.

*13.1.1, Management and Administration of Health Care Procedures Manual*
*Section 3 – Health Care Contract Monitoring*          ***Attachment 3-A, Page 6***
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00275

**JA 313**

Ref: 5291530 pg 79 of 100 for TROY LEWALD

6. The Medical Contract Monitor shall provide the Division of Fiscal Management with a copy of the letter for the penalty to be deducted from the next payment.

*13.1.1, Management and Administration of Health Care Procedures Manual*
*Section 3 – Health Care Contract Monitoring*          *Attachment 3-A, Page 7*
Issued: 9/11/2013
Effective: 9/18/2013

DOC-00276

**JA 314**

Ref: 5291530 pg 80 of 100 for TROY LBWALD

| MEDICAL CONTRACT MONITORING FORM | | | | | |
|---|---|---|---|---|---|
| FACILITY: | | | | MONTH: | |
| POSITION | MONTHLY CONTRACTED HOURS | ACTUAL HOURS PROVIDED | HRS PROVIDED VS CONTRACTED | % OF CONTRD HOURS PROVIDED | MEDICAL VENDOR BRIEF RESPONSE/RATIONALE TO DIFFERENCE OF HOURS |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |
| | | | EQUAL | | |

| OPERATIONAL PERFORMANCE | | | |
|---|---|---|---|
| CATEGORY | ISSUES? | NUMBER BACKLOGGED | DESCRIPTION/ACTION PLAN |
| CONSULTATIONS* | | | |
| CHRONIC CARE CLINICS | | | |
| PHYSICAL EXAMS | | | |
| LABORATORY | | | |
| SUPPLIES | | | |
| OFF-SITE APPOINTMENTS | | | |
| MEDICATION COMPLIANCE | | | |
| INFIRMARY | | | |
| EMERGENCY RESPONSE | | | |
| L5 (RHU ROUNDS) | | | |
| TELEMEDICINE | | | |
| OTHER: | | | |

*Provide patient-specific details on Consult Tracking worksheet

cc:  BHCS Medical Contract Monitor

Facility Manager

DSCS

**13.1.1, Management and Administration of Health Care Procedures Manual
Section 3 – Medical Contract Monitoring**       **Attachment 3-B**
Issued:
Effective:

DOC-00277

**JA 315**

# APPENDIX A-13

## Section 17 – Inmate Transfers

This section establishes procedures for the transferring and receiving of inmates throughout the system, with providers of health care/mental health services, and with external corrections settings. Medical holds can be applied as clinically indicated, and procedures for their administration are described.

### A. Medical Department Responsibilities

1. The type of inmate transfer shall be identified. The types of transfers utilized are as listed below:

   a. Intra-System Transfers: temporary and permanent transfers; the procedures in **Subsection B. below** shall be followed;

   b. Medical Transports and Temporary Medical Transfers: inmates are sent to other Department facilities for care or may be seen by a community health care provider. The procedures in **Subsection C. below** shall be followed;

   c. Consolidated Infirmary Transfers: facilities without an infirmary (Frackville, Huntingdon, Laurel Highlands, Pine Grove, Quehanna Boot Camp, and Retreat) may temporarily transfer inmates requiring infirmary care, or 23-hour observation, to their respective consolidated infirmary. The procedures in **Subsection C.2.e. below** shall be followed;[1] and

   d. Authorized Temporary Absences (ATA) Transfers and In-Transit Offenders: inmates may be temporarily transferred to other prison/jail settings, or may be moved within the system to facilitate effective release planning. The procedures in **Subsection D. below** shall be followed.

2. The Medical Department is responsible to ensure the below listed procedures are completed prior to the non-emergent transfer of an inmate.[2]

   a. A determination of suitability for travel, based on a medical evaluation, is completed by a practitioner, with particular attention given to communicable disease clearance.

   b. Written instructions regarding medication and health interventions required en route, are provided to transporting officers. This is separate from the medical record.

   c. Specific precautions are communicated to transportation officers before transfer of the inmate.

---

[1] 4-4348
[2] 4-4414

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00747

**JA 317**

    d.  The original medical record is maintained in a confidential fashion and accompanies the inmate to the transferring Department facility.

## B. Intra-System Transfers of Inmates (temporary transfer [TT] and permanent)

An intra-system transfer inmate shall receive a health screening by a health trained, or qualified, health care personnel, which commences on his/her arrival at the facility.[3] The transferring facility's Medical Department responsibilities (excludes same day transfers) are as follows.

1. Transferring Facility's Medical Records Department Responsibilities

    a.  The Medical Records Department shall obtain information from the Department's Offender Management System concerning an inmate's approval for transfer as outlined in Department policy **11.2.1, "Reception and Classification."** The Office of Population Management (OPM) shall provide this listing on a weekly basis via the Automated Transfer Petition System. As required by local procedure, the Medical Records Department shall ensure the list of inmates being transferred is communicated to all pertinent Department staff.

    b.  The type of transfer is reviewed to determine if the inmate shall be moved as a temporary or permanent transfer.

       (1)  Temporary Transfer Procedure

          (a)  When an inmate is a temporary transfer, the current volume of the medical record shall be prepared for movement to the receiving facility.[4]

          (b)  If the inmate is being transferred to a Mental Health Unit (MHU), or the Forensic Treatment Center (FTC), additional volumes may be sent upon request from the MHU/FTC. Previous MHU record information must be included.

          (c)  Loose documents/forms for the medical record shall be gathered and filed in the medical record.

          (d)  The **DC-485, Intra-System Medical Record Transfer Checklist (Attachment 17-A)** shall be completed. If information is not sent, or is unavailable, it must be documented on the **DC-485**. The transferring facility shall follow-up with the receiving facility's Medical Records Department when the information is available.

---

[3] 4-4363
[4] 4-4414, 4-ACRS-4C-24

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00748

    (e)   The original **DC-485** shall be placed on top of the History and Physical Exams tab of the medical record. A copy of the **DC-485** shall be maintained by the transferring facility's Medical Records Department for six months following the transfer.

    (f)   The medical record shall be provided to nursing staff for transfer processing.

(2)   Permanent Transfer Procedures

    (a)   When an inmate is a permanent transfer, the entire medical record, and x-ray film file, shall be prepared for movement to the receiving facility.[5]

    (b)   Loose documents/forms for the medical record shall be gathered and filed in the medical record.

    (c)   The **DC-485** shall be completed. If information is not sent, or is unavailable, it must be documented on the **DC-485**. The transferring facility shall follow-up with the receiving facility's Medical Records Department when the information is available.

    (d)   The original **DC-485** shall be placed on top of the History and Physical Exams tab of the medical record. A copy of the **DC-485** shall be maintained by the transferring facility's Medical Records Department for six months following the transfer.

    (e)   The medical record shall be provided to nursing staff for transfer processing.

    (f)   Upon return of the inmate's medical record(s) from nursing staff, the Medical Records Department shall ensure the following:

       i.   medical records for each inmate scheduled/approved for transfer are placed into individual transfer envelopes or boxes;

       ii.   each transfer envelope or box shall have the receiving facility's full name, transferring facility's name, inmate's name, and identification number legibly documented;[6] and

       iii.   the Medical Records Department/designee shall deliver the transfer envelopes or boxes to the facility's designated intake/discharge area for transfer with the inmate.[7]

---

[5] 4-4414, 4-ACRS-4C-24
[6] 4-4414
[7] 4-4414

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00749

2. Receiving Facility's Medical Records Department Responsibilities for Temporary and Permanent Transfers (excludes same day transfers)

   a. The Medical Records Department shall obtain information from the Department's Offender Management System regarding inmate transfers to the facility.

   b. Medical Records and x-ray films shall be removed from transfer envelopes or boxes and reviewed.

   c. The **DC-485** form shall be reviewed and completed.

   d. After the **DC-485** has been reviewed and completed by the receiving facility, it shall be filed under the Miscellaneous tab of the medical record.

   e. Any identified, missing record information shall be reviewed with the transferring facility's medical records staff by the receiving facility's medical records staff.

   f. Medical records shall either be made available for the reception nurse or filed.

   g. X-ray films shall be moved to the designated filing area.

3. Transferring Facility's Nursing Responsibilities for Temporary and Permanent Transfers (excludes same day transfers)

   a. A nurse shall complete a **DC-491, Intra-System Nursing Transfer Checklist (Attachment 17-B)** for each inmate scheduled for transfer.[8]

   b. The **DC-491** shall be completed in the following manner:

      (1) the nurse shall review the medical records for answers to all of the transfer checklist questions;[9]

      (2) if any of the numbered questions are answered with a "YES," the nurse shall review the checklist and medical record with the practitioner;

      (3) if the inmate is not approved for transfer, the practitioner shall initiate a medical hold, and the procedures contained in **Subsection E. below** shall be followed;

      (4) if an inmate is being transferred and has unresolved medical problems, the procedures contained in **Subsection B.7. below** shall be followed;

---

[8] 4-4364, 1-ABC-4E-05
[9] 4-4414

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00750

**JA 320**

  (5) when the inmate is approved for transfer, the nurse completing the **DC-491** shall write a progress note in the inmate's medical record documenting the type of transfer, location receiving the inmate, and completion of the **DC-491**;[10] and

  (6) the **DC-491** shall be filed in the first section of the medical record on top of the Therapeutic Diets tab.

 c. The nurse completing the **DC-491** shall ensure the inmate's medical record(s) are returned to the Medical Records Department for further processing.

4. Receiving Facility's Nursing Responsibilities for Temporary and Permanent Transfers (excludes same day transfers)

 a. The **DC-491** from the transferring facility shall be completed.

 b. The **DC-479, Intra-System Transfer Reception Screening (Attachment 17-C)** form shall be completed with the inmate.[11]

 c. The nurse shall document the results of his/her interview, and other pertinent information concerning the intake interview, as a progress note contained in the inmate's medical record.[12]

 d. Both the inmate and the nurse shall sign and date the **DC-479**. If the inmate refuses to sign, a witness shall sign in the space provided.

 e. After completing the **DC-479**, the nurse shall provide an oral and written explanation to the inmate regarding the facility's:

  (1) access to health care services in accordance with this procedures manual;[13]

  (2) sick call, including inmate co-pay, in accordance with Department policy **DC-ADM 820, "Co-Payment for Medical Services;"**[14]

  (3) emergency services, in accordance with **Section 6, Access to Emergency Care/Nursing Protocols – Nursing Evaluation Tools (NETS)** of this procedures manual;

  (4) dental care, in accordance with **Section 4** of this procedures manual;

  (5) psychiatric/psychological services in accordance with Department policy **13.8.1, "Access to Mental Health;"** and

---

[10] 4-4414
[11] 4-4363, 4-4364, 4-4370
[12] 4-4363
[13] 4-4344
[14] 4-4345

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00751

   (6)   access to the inmate grievance system.[15]

f.  After explaining the facility's health care services to the inmate, the nurse/designee shall document his/her encounter with the inmate in the progress notes.

g.  Inmates on the Stability C or D Roster who transfer from one Department facility to another Department facility shall be seen by the intake nurse. Psychology will assess stability, and refer to psychiatry as appropriate (urgent or emergent based on presentation/stability during assessment) by completing the **DC-97, Mental Health Referral** and including reason for referral. All Stability C and D Roster inmates shall be scheduled for follow-up with Psychiatry.

*When an inmate that is on psychotropic medication(s) arrives at the receiving facility, the Registered Nurse (RN) or Licensed Practical Nurse (LPN) shall review the electronic health record (EHR) for medication(s) that are going to expire in the next 14 days. If they are expiring within 14 days, the RN/LPN shall consult with the psychiatrist/Psychiatric Certified Registered Nurse Practitioner (PCRNP) as follows*:

   (1)   if during working hours, *review shall occur with the on-site psychiatrist/PCRNP. The inmate* shall be scheduled for follow-up with Psychiatry *within 14 days*; and

   (2)   if the psychiatrist/PCRNP is not on grounds, or during off hours/weekends, the RN/*LPN* shall alert the on-call Psychiatrist/PCRNP of the transfer *with expiring medications*, review the *medications with the on-call psychiatrist/PCRNP*, and document verbal orders for medications as deemed clinically appropriate. The inmate shall be scheduled for follow up with Psychiatry *within 14 days*.

h.  Nursing staff shall complete the **Prison Rape Elimination Act (PREA) Risk Assessment Tool (PRAT)**, and update the **WebTAS**, within 72 hours, in accordance with Department policy **DC-ADM 008, "PREA." (28 C.F.R. §115.41)**

i.  The appropriate individuals/departments (this shall include, but not be limited to: Infection Control Nurse, Psychology Department, Food Service Department, etc.) shall be notified of any inmate restrictions or special recommendations.

j.  The inmate's name shall be placed on the appropriate treatment, or chronic disease, tracking system, when indicated.

k.  The inmate's medication shall be delivered to the Medication Room/Pharmacy.

l.  After completing the reception process, nursing staff deliver the inmate's medical record(s) to the Medical Records Department.

---

[15] 4-4344

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00752

**JA 322**

m. The nurse shall discuss concerns regarding any problematic transfer with the Nursing Supervisor/designee and the Corrections Health Care Administrator (CHCA). The CHCA/designee shall:

    (1) completely investigate the matter; and

    (2) notify the Bureau of Health Care Services (BHCS) Regional Quality Improvement (QI) Nurse regarding the problematic transfer, and the results of the investigation.

5. Transferring Facility's Medication Room/Pharmacy Nurse Responsibilities for Temporary and Permanent Transfers[16]

a. In accordance with the Inmate Transfer Logistics Grid, maintained in the electronic medication administration record (eMAR), the inmate shall travel with a minimum of a five-day supply of medication.

b. The Medication Room/Pharmacy Nurse shall prepare the inmate's medications and ensure the following:

    (1) the inmate's eMAR is current;

    (2) the **DC-492, Intra-System Pharmacy Transfer Checklist (Attachment 17-D),** is completed; and

    (3) all inmate medication(s) are sealed in a manila envelope(s)/appropriate container(s) and clearly labeled with the following:

        (a) "To: <u>receiving facility's full name</u>, Medical Department";

        (b) inmate's name; and

        (c) inmate's number.

c. The Medication Room/Pharmacy Nurse shall ensure the medication envelope(s)/appropriate container(s) is prepared and delivered to the facility's designated intake/discharge area for transfer with the inmate.

6. Receiving Facility's Medication Room/Pharmacy Nurse Responsibilities for Temporary and Permanent Transfers

a. Ensure the **DC-492** is reviewed, completed, signed, and dated.

b. Review and update the eMAR as needed.

---

[16] 4-4378

Issued: 7/12/2017
Effective: 7/26/2017

DOC-00753

    c. Administer medications to inmates as ordered/prescribed.

    d. Upon completion of the **DC-492**, forms shall be filed in the medical record.

7. Criteria for Permanent Intra-System Transfer of an Inmate with Unresolved Medical Problems

    a. An inmate shall not be transferred directly from any **infirmary, skilled, or personal care setting** within the system unless there is documentation on the progress note that both the CHCA/designee, and the Medical Director/designee from the receiving facility, have been contacted by his/her counterpart at the transferring facility (contact may be made via email, **if receipt is acknowledged**, and documented on a progress note), and have been made aware of, or acknowledge, the following:

        (1) the inmate's current medical problems;

        (2) the currently prescribed treatment plan(s);

        (3) agreement to accept responsibility for completing the medical management of the identified problem; and

        (4) a practitioner shall discharge an inmate from the **infirmary, skilled care, or personal care setting**, and medically clear him/her for transfer.

    b. The health care professional, including LPN, RN, Physician Assistant (PA), Certified Registered Nurse Practitioner (CRNP), Medical Doctor (MD), Doctor of Osteopathy (DO), Doctor of Dental Surgery (DDS), and Doctor of Dental Medicine (DDM), shall document in the progress notes, that a medical problem shall be addressed at the receiving facility and ensure the following has occurred:

        (1) direct communication, regarding serious inmate medical problems, with his/her counterpart at the receiving facility has been completed. The relay of information (verbally/email) shall be documented in the progress notes of the medical record; and

        (2) all information has been documented/updated on the **DC-491**.

    c. The receiving facility is required to assume medical responsibility for the inmate prior to transfer. In the event of a disagreement on the appropriateness of the transfer between two facilities, or if there are any unresolved medical problems regarding the transfer of the inmate, the Regional QI Nurse at the BHCS, shall be contacted by the CHCA/designee of the transferring facility. The Chief of Clinical Services shall provide final resolution.

    d. In the event the nurse reviewing the medical record notes an x-ray, lab, or other diagnostic test abnormality, the medical record shall be referred to the Medical Director/designee of the transferring facility for review prior to approving the inmate for

# EXHIBIT P-1

LEWALD, TROY VINCENT  #NS1262                    DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## DC-440 - Initial Examination - Male

| Current Facility: | Exam Date: | Exam Time: |
|---|---|---|
| SCI PHOENIX | 01/25/2019 | 11:44:09 |

**Type of Examination:**

☑ Initial

| Age: | Weight: | BP: |
|---|---|---|
| 39 | 205 lbs - 2019-01-24 15:15 | 113/71 mmHg - 2019-01-24 15:15 |
| Sex: | BMI: | Temp: |
| M | 29.41 | 97.9 F - 2019-01-24 15:15 |
| Height: | Pulse: | Resp: |
| 5-10 | 74 BPM - 2019-01-24 15:15 | 16 RPM - 2019-01-24 15:15 |

**Allergies/Drug Sensitivities:**

NO KNOWN DRUG ALLERGY

**Next of Kin:**

*NO ANSWER PROVIDED*

## Physical Examination - Are there any abnormal findings?

**1. Are there Abnormal General Appearance Findings: (Development, Nourishment, Distress):**

☑ None

**2. Are there any Abnormal Skin Findings: (Rashes, Ecchymosis, Jaundice, and Ulcers)**

☑ None

**3. Are there any abnormal Lymph Node Findings: (Cervical, Axillary, Inguinal)**

☑ None

**4. Are there any abnormal Head or Neck Findings: (Thyromegaly, Carotid, Bruits)**

☑ None

**5. Are there any abnormal Ear Nose and Throat Findings: (TM, EAC, Septum, Turbinates, Pharynx)**

☑ None

**6. Are there any abnormal Dental Findings: (Dentition, Dentures)**

☑ None

**7. Are there any abnormal Eye Findings: (EOMI, PERRLA, Conjunctiva, Sclera)**

☑ None

**8. Are there any abnormal Heart Findings: (Rate, Rhythm, S1/S2, Murmurs)**

☑ None

**9. Are there any abnormal Vascular System Findings: (Peripheral Pulses, Varicose Veins, Cyanosis)**

---

**DC-440 - Initial Examination - Male**
DC-440 - Initial patient examination for new intakes

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By WAKEMAN, ███ on 01/25/2019 11:50:05

1 of 3

**JA 326**

DOC-001188

LEWALD, TROY VINCENT  #NS1262                    DOB: 4/17/1979 (45y)   Location: J-A-1002-01

☑None

**10. Are there any abnormal Lung and Chest Findings: (Breath sounds)**
☑None

**11. Are there any abnormal Abdomen Findings:  (Scars, Bowel Sounds, Organomegaly, Tenderness)**
☑None

**12. Are there any abnormal Perianal Findings: (Lesions)**
☑None

**13. Are there any abnormal Genitalia Findings - Male: (External Lesions, Scrotom, Inguinal Hernia)**
☑None

**14. Are there any abnormal Extremity Findings: (Clubbing, Cyanosis, Edema)**
☑None

**15. Are there any abnormal Foot Findings: (Nails, Ulcers)**
☑None

**16. Are there any abnormal Back/Spine Findings: (Curvature, ROM)**
☑Other

> **Specify Other Abnormal Back/Spine Findings:**
> Limited ROM of spine
>
> **Describe Abnormal Back/Spine Findings:**
> Able to walk on toes but not on heels

**17. Are there any abnormal Neurologic Findings:  (Gait, Cranial Nerves, Motor Strength, Sensation, DTRs)**
☑None

**Review of Systems:**

PMH: herniated discs

PSH: 2017 L5, S1 removed fragments of discs

FH: Dad (d) (66) bone cancer

Mom-HTN

+tobacco 2 ppd x 20 years

denies IVDA

## Assessment

**Recommendations or referrals, treatment plan, etc. (Diagnosis)**
chronic back pain

---

**DC-440 - Initial Examination - Male**
DC-440 - Initial patient examination for new intakes

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By WAKEMAN          on 01/25/2019 11:50:05

**JA 327**

DOC-001189

LEWALD, TROY VINCENT  #NS1262                                      DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## Plan

**Planning Notes:**

Motrin PRN

**Follow-up Care/Treatment Plan:**

as above



**Save Log**

| User Name | | AuditDateAndTime |
|---|---|---|
| WAKEMAN, ▮▮▮ CRNP | | 01/25/2019 11:50:05 |

**DC-440 - Initial Examination - Male**
DC-440 - Initial patient examination for new intakes

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By WAKEMAN ▮▮▮ on 01/25/2019 11:50:05

**JA 328**

DOC-001190

LEWALD, TROY VINCENT  #NS1262          DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## DC-472N - Reception Progress Note

**Current Facility:**
SCI PHOENIX

**Type of Transfer:**
☑ Initial Reception

       **Act 84/County Paperwork Reviewed:**
       ☑ Yes

**Intake Screening Completed/Documents Reviewed:**
☑ DC-471/DC-471A

**Current Acute Conditions (bruises, deformities, other evidence of injury, wounds, infection, infestation, or immediate need for medication)**
☑ No

**PRAT Form Completed:**
☑ Yes

       **PRAT Score entered in Webtas:**
       ☑ No

             **Why was it not entered:**
             no access

## Procedures Explained/Education Provided

**Sick Call (including DC-820, Co-payment for Medical Services):**
☑ Yes

**Emergency Procedures:**
☑ Yes

**Access to Dental Services:**
☑ Yes

**Access to Psychiatric or Psychological Services:**
☑ Yes

**Medication Line/KOP Medication/Renewal or Medication Procedures:**
☑ Yes

**Special Diet Procedures:**
☑ Yes

---

**DC-472N - Reception Progress Note**
Progress note for new patient to be filled out on intake

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By LUCKETT,&#9608;&#9608;&#9608; on 01/24/2019 15:18:07

**JA 329**

DOC-001191

**LEWALD, TROY VINCENT** #NS1262      DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**PREA Education (video, pamphlet, brochure):**
☑Yes

**Inmate Handbook provided by Security:**
☑Yes

## Received and Reviewed:

**Medical Record:**
☑No

> **Why was Medical Record not reviewed:**
> not avail

**X-Ray:**
☑No

> **Why were X-Rays not reviewed:**
> not avail

**Select all referrals needed:**
☑Medical Provider   ☑Psychiatrist   ☑Dentist

**Housing Status:**
☑GP

> **Any Special Requirements/Restrictions:**
> ☑Yes

**Inmate move in Sapphire completed:**
☑Yes

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| LUCKETT, ███████ RN | 01/24/2019 15:18:07 |

---

**DC-472N - Reception Progress Note**
Progress note for new patient to be filled out on intake

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By LUCKETT, ████████ on 01/24/2019 15:18:07

DOC-001192

# EXHIBIT P-2

**LEWALD, TROY VINCENT** #NS1262

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Transferring institution:**

PHX

**Transfer Date:**

02/08/2019

**Have you reviewed the DC-491 - Intra-System Nursing Transfer Checklist:**

☑Yes

## Vital Signs

**Vital Signs taken:**

☑Yes

**Blood Pressure (Abnormal if less than 90/80 or greater than 150/100):**

104/72

**Temperature (Abnormal if greater than 100 degrees):**

97.8

**Respiration (Abnormal if greater than 24):**

16

**Pulse (Abnormal if less than 60 or greater than 120):**

72

**Finger Stick (Diabetics Only) (Abnormal if less than 80 or greater than 200):**

*NO ANSWER PROVIDED*

**Time of Last Meal:**

*NO ANSWER PROVIDED*

*\*Vital sign(s) considered abnormal, as defined above, require the completion of a NET/Follow-up*

## Medical Information

**Bruises, Deformities, Evidence of Trauma:**

☑Yes

**Comment on Bruises, Deformities, Evidence of Trauma:**

opened blister on Rt 2nd toe, stated it was from the boot

**General Appearance and Behavior:**

anxious

**Current Acute Condition/Problem:**

☑Yes

**Comment on Acute Condition/Problem:**

opened blister on rt 2nd toe

**Visible Signs of Dental Problems:**

☑No

**Medical Complaints:**

☑Yes

---

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By EFFI_____ on 02/08/2019 16:10:42

**JA 332**

DOC-001179

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Comment on Medical Complaints:**
F41.9 - **[F41.9]** Unspecified anxiety disorder - [GLUSHAKOW, █████ 2019-01-29

**Chronic Conditions/Problems:**
☑Yes

**Comment on Chronic Conditions/Problems:**
M54.5 - Pain, low back - [WAKEMAN, █████ - 2019-01-25

**History of Drug/Alcohol Abuse/Treatment:**
☑No

**Significant Medical History:**
☑Yes

**Comment on Significant Medical History:**
M54.5 - Pain, low back - [WAKEMAN, █████ - 2019-01-25

**Medications:**
CETIRIZINE 10MG TABLET -- [TAKE 1 TABLET(S) ORALLY ONCE DAILY] -- 2019-01-25--2019-04-24
IBUPROFEN 600MG TABLET -- [TAKE 1 TABLET(S) ORALLY TWICE DAILY] -- 2019-01-25--2019-02-08
MIRTAZAPINE 30MG TABLET -- [TAKE 1 TABLET(S) ORALLY AT BEDTIME] – 2019-01-29--2019-05-28

**Allergies (including food allergies):**
NO KNOWN DRUG ALLERGY

**Dietary Restrictions:**
☑No

**Physical Disabilities/Limitations:**
☑Yes

**Comment on Physical Disabilities/Limitations:**
history of spine surgery

**Physical Aids (select all that apply):**
☑Eyeglasses

**Comment on Physical Aid(s):**
not with Inmate

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By EFFI, █████ on 02/08/2019 16:10:42

2 of 5

**JA 333**

DOC-001180

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## PREA

**Are there tendencies of acting out with sexually aggressive behavior\*?**
☑ No

**Is the inmate identified as high risk with a history of sexually assaultive behavior\*?**
☑ No

**Is there a risk for sexual victimization\*?**
☑ No

*\*Inmate identified above shall be counseled, monitored, and housed accordingly.*

**Sexual Abuse Awareness brochure provided and communicated to the inmate orally or in writing?**
☑ Yes



**Is Medical Follow-up care needed?**
☑ Yes

   **Type of Medical Follow-up care:**
   ☑ Routine

**Is Dental Follow-up care needed?**
☑ Yes

   **Type of Dental Follow-up care:**
   ☑ Routine

**Medical Chart Review:**
☑ Yes

**Is inmate medically cleared for general population?**
☑ Yes

---

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By EFFI, ▌▌▌▌ on 02/08/2019 16:10:42

**JA 334**                                    DOC-001181

LEWALD, TROY VINCENT #NS1262                                DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Additional Notes:**
*NO ANSWER PROVIDED*

## Signatures



LEWALD, TROY VINCENT - (PATIENT)
Captured on: 02/08/19 16:10:42

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| EFFI, ▮▮▮▮, RN | 02/08/2019 16:10:42 |

---

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By EFFI, ▮▮▮▮ on 02/08/2019 16:10:42

## DC-485A - Intra-system Medical Record Transfer Checklist - Receiving Facility

**From SCI:**

PHX

**To SCI:**

CAM

**Date of Transfer:**

02/08/2019

### To be completed by Medical Records Staff

**Were paper record volumes to have been sent by the Transferring Facility:**

☑ No

**Were incomplete forms in the electronic medical record completed:**

☑ Yes

**Select format(s) of X-Rays (check both if applicable):**

☑ Digital

**Additonal Comments:**

*NO ANSWER PROVIDED*

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| SUMMERS, ▮▮▮▮▮ | 02/08/2019 10:39:11 |

---

**DC-485A - Intra-system Medical Record Transfer Checklist - Receiving Facility**
DC-485A - Intra-system Medical Record Transfer Checklist - For Receiving Facility Use

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SUMMERS, ▮▮▮ on 02/08/2019 10:39:11

**JA 336**

DOC-001183

LEWALD, TROY VINCENT  #NS1262                           DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Transferring Facility:**
SCI PHOENIX

**Receiving Facility:**
SCI CAMP HILL

**Date of Transfer:**
02/08/2019

**Current MAR(s) Printed from Electronic Medication System:**
☑No

> **Reason why current MAR(s) were not printed:**
> IN SAPPHIRE

**Medications (amount applicable to type of transfer):**
☑No

> **Reason why Medications were not sent:**
> KOP MEDS NOT RETURNED TO THE PHARMACY FOR SHIPMENT; PSYCH MED IS STOCK

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| MARTIN, ⬛ LPN | 02/07/2019 23:38:29 |

**DC-492 - Intra-system Pharmacy Transfer Checklist -
Transferring Facility**
For use by the Transfering Facility to track medication amounts when patients
move from one SCI to another.

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By MARTIN⬛ on 02/07/2019 23:38:29

1 of 1

**JA 337**

DOC-001184

LEWALD, TROY VINCENT  #NS1262

DOB: 4/17/1979 (45y)  Location: J-A-1002-01

DC-485 - Intra-system Medical Record Transfer Checklist - Transferring Facility

**From SCI:**
PHX

**To SCI:**
CAM

**Date of Transfer:**
02/08/2019

## To be completed by Medical Records Staff

**Number of paper record volumes transferred:**
0

**All forms and loose filing secured in the paper medical record:**
☑ No

**Comment on Forms and Loose Filing Not Secured in Paper Medical Record:**
EMR

**Were incomplete forms in the electronic medical record completed:**
☑ Yes

**Select format(s) of X-Rays (check both if applicable):**
☑ Digital

**Additional Comments:**
*NO ANSWER PROVIDED*

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| REID, ████ | 02/07/2019 12:10:14 |

**DC-485 - Intra-system Medical Record Transfer Checklist - Transferring Facility**
DC-485 - Intra-system Medical Record Transfer Checklist - For the Transferring Facility to complete

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By REID, ████ on 02/07/2019 12:10:14

1 of 1

**JA 338**

DOC-001185

**LEWALD, TROY VINCENT** #NS1262

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## DC-491 - Intra-System Nursing Transfer Checklist

Current Facility:
SCI PHOENIX

Does the TB summary need to be completed:
☑No

Is the Inmate in Medical Isolation:
☑No

RPR:
☑Negative

Does the record indicate an unstable, uncontrolled, or acute condition which needs to be resolved or identified:
☑No

Does the inmate have a pending Consultation (look for both the consultation record and a note in the Progress Notes):
☑No

Is the inmate in the process of receiving dental surgery or treatment for a serious dental condition:
☑No

Is the inmate in the process of receiving dentures:
☑No

Is there any indication that the inmate is in need of immediate surgery or is the inmate undergoing post-surgical care:
☑No

Has the practitioner determined that the inmate is not physically able to travel:
☑No

Has the inmate had a serious accident or overdose in the last 24 hours:
☑No

Has the inmate been housed in the Infirmary, Psychiatric Observation Cell or Mental Health Unit within the past 7 days:
☑No

Does the record indicate evidence of clinical signs/symptoms of serious mental illness:
☑No

Are there any missing consults, lab work, or x-rays (ordered but not on chart):
☑No

Is there any lab work, x-rays, consultation reports, or test results without a physician's signature/initials:
☑No

Is inmate a dialysis patient:

---

**DC-491 - Intra-System Nursing Transfer Checklist**
DC-491 Intra-System Nursing Transfer Checklist

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SEJDA ███ on 01/31/2019 22:21:51

DOC-001186

LEWALD, TROY VINCENT  #NS1262      DOB: 4/17/1979 (45y)   Location: J-A-1002-01

---

☑ No

**Is the inmate on any medications that are given bi-weekly, every three weeks, or monthly:**

☑ No

**Active Allergies:**

NO KNOWN DRUG ALLERGY

**Chronic Medical Problems:**

F41.9 - **[F41.9]** Unspecified anxiety disorder - [GLUSHAKOW███ - 2019-01-29
J30.9 - Rhinitis, allergic, cause unspec. - [WAKEMAN███] - 2019-01-25
M54.5 - Pain, low back - [WAKEMAN, ███] - 2019-01-25

**Additional Comments:**

*NO ANSWER PROVIDED*

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| SEJDA, ███, RN | 01/31/2019 22:21:51 |

**DC-491 - Intra-System Nursing Transfer Checklist**
DC-491 Intra-System Nursing Transfer Checklist

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SEJDA ███ on 01/31/2019 22:21:51

**JA 340**

DOC-001187

# EXHIBIT P-4

LEWALD, TROY VINCENT  #NS1262                    DOB: 4/17/1979 (45y)  Location: J-A-1002-01

## DC-479 - Intra-system Transfer Reception Screening

**Transferring institution:**                          **Transfer Date:**
SCI CAM                                                05/21/2019

**Have you reviewed the DC-491 - Intra-System Nursing Transfer Checklist:**
☑Yes

## Vital Signs

**Vital Signs taken:**
☑No

> **Why were vitals not taken:**
> REFUSED

## Medical Information

**Bruises, Deformities, Evidence of Trauma:**
☑No

**General Appearance and Behavior:**
WNL

**Current Acute Condition/Problem:**
☑No

**Visible Signs of Dental Problems:**
☑No

**Medical Complaints:**
☑No

**Chronic Conditions/Problems:**
☑Yes

> **Comment on Chronic Conditions/Problems:**
> MENTAL HEALTH, BACK PAIN - SPINE SURGERY 2 YEARS AGO L4-S1, BOTTOM BUNK

**History of Drug/Alcohol Abuse/Treatment:**
☑No

**Significant Medical History:**
☑No

**Medications:**

---

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

**Patient Name:** LEWALD, TROY VINCENT
**Patient Number:** NS1262
**Location:** J-A-1002-01
**DOB:** 4/17/1979
**Facility:** SCI PHOENIX
**Electronically Signed By** SMERICK, ▮▮▮▮ **on** 05/21/2019 21:36:21

1 of 5

**JA 342**                                            DOC-001144

**LEWALD, TROY VINCENT**  #NS1262

**DOB:** 4/17/1979 (45y)   **Location:** J-A-1002-01

CETIRIZINE 10MG TAB -- [TAKE 1 TABLET(S) ORALLY ONCE DAILY] -- 2019-04-24--2019-07-22
MIRTAZAPINE 30MG TABLET -- [TAKE 1 TABLET(S) ORALLY AT BEDTIME] -- 2019-04-26--2019-08-23

**Allergies (including food allergies):**
NO KNOWN DRUG ALLERGY

**Dietary Restrictions:**
☑No

**Physical Disabilities/Limitations:**
☑Yes

> **Comment on Physical Disabilities/Limitations:**
> BOTTOM BUNK

**Physical Aids (select all that apply):**
☑Eyeglasses   ☑Contact Lens

> **Comment on Physical Aid(s):**
> *NO ANSWER PROVIDED*



**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SMERICK, ▓▓▓▓ on 05/21/2019 21:36:21

LEWALD, TROY VINCENT  #NS1262                                    DOB: 4/17/1979 (45y)  Location: J-A-1002-01

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SMERICK,　　　　on 05/21/2019 21:36:21

DOC-001146

LEWALD, TROY VINCENT   #NS1262

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Is Medical Follow-up care needed?**
☑ Yes

    **Type of Medical Follow-up care:**
    ☑ Routine

**Is Dental Follow-up care needed?**
☑ Yes

    **Type of Dental Follow-up care:**
    ☑ Routine

**Medical Chart Review:**
☑ Yes

**Is inmate medically cleared for general population?**
☑ Yes

**Additional Notes:**
*NO ANSWER PROVIDED*

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SMERICK ▮▮▮▮▮ on 05/21/2019 21:36:21

**JA 345**

DOC-001147

LEWALD, TROY VINCENT  #NS1262                                    DOB: 4/17/1979 (45y)   Location: J-A-1002-01

Signatures





Save Log

| User Name | AuditDateAndTime |
|-----------|------------------|
| SMERICK, ███ RN | 05/21/2019 21:36:21 |

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SMERICK, ███ n 05/21/2019 21:36:21

LEWALD, TROY VINCENT  #NS1262                                    **DOB:** 4/17/1979 (45y)   **Location:** J-A-1002-01

## DC-472N - Reception Progress Note

**Current Facility:**
SCI ALBION

**Type of Transfer:**
☑Intra-System

**Intake Screening Completed/Documents Reviewed:**
☑DC-491  ☑DC-492/eMAR

    **Medications:**
    ☑Yes

        **Type of medications**
        ☑Medical  ☑Psychotropic

        **Comment on Medical Medications:**
        SEE MAR

        **Medical Medications last taken:**
        05/21/2019

        **Comment on Psychotropic Medications:**
        SEE MAR

        **Psychotropic Medications last taken:**
        05/21/2019

**Current Acute Conditions (bruises, deformities, other evidence of injury, wounds, infection, infestation, or immediate need for medication)**
☑No

**PRAT Form Completed:**
☑Yes

    **PRAT Score entered in Webtas:**
    ☑Yes

## Procedures Explained/Education Provided

**Sick Call (including DC-820, Co-payment for Medical Services):**
☑Yes

**Emergency Procedures:**
☑Yes

---

**DC-472N - Reception Progress Note**
Progress note for new patient to be filled out on intake

**Patient Name:** LEWALD, TROY VINCENT
**Patient Number:** NS1262
**Location:** J-A-1002-01
**DOB:** 4/17/1979
**Facility:** SCI PHOENIX
**Electronically Signed By** SMERICK, ▮▮▮▮  on 05/21/2019 21:33:50

**JA 347**

DOC-001151

LEWALD, TROY VINCENT  #NS1262                              DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Access to Dental Services:**
☑Yes

**Access to Psychiatric or Psychological Services:**
☑Yes

**Medication Line/KOP Medication/Renewal or Medication Procedures:**
☑Yes

**Special Diet Procedures:**
☑Yes

**PREA Education (video, pamphlet, brochure):**
☑Yes

**Inmate Handbook provided by Security:**
☑Yes

## Received and Reviewed:

**Medical Record:**
☑Yes

**X-Ray:**
☑Yes

**Select all referrals needed:**
☑Medical Provider  ☑Psychiatrist  ☑Psychologist  ☑Dentist

**Housing Status:**
☑GP

**Any Special Requirements/Restrictions:**
☑No

**Inmate move in Sapphire completed:**
☑Yes

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| SMERICK, ▮▮▮▮ RN | 05/21/2019 21:33:50 |

---

**DC-472N – Reception Progress Note**
Progress note for new patient to be filled out on intake

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SMERICK, ▮▮▮▮ on 05/21/2019 21:33:50

**JA 348**

DOC-001152

# EXHIBIT P-6

LEWALD, TROY VINCENT  #NS1262

DOB: 4/17/1979 (45y)  Location: J-A-1002-01

---

## DC-472 - Progress Note Medical Provider

**Date/Time:**
05/24/2019 07:43

**Facility:**
SCI ALBION

**Type of Progress Note:**
☑ SOAP Note

**Subjective:**
f/u to reconcile restrictions, progress notes mention weight room

### Objective

### Vitals

**Temp:**
*NO ANSWER PROVIDED*

**Respirations:**
*NO ANSWER PROVIDED*

**Blood Pressure:**
*NO ANSWER PROVIDED*

**O2 Sats:**
*NO ANSWER PROVIDED*

**Pulse:**
*NO ANSWER PROVIDED*

**Objective Comments:**
scar midline lumbar spine

### On-site Labs Results

**Select all On-site Labs that are being performed at the visit:**
*NO ANSWER PROVIDED*

**Assessment:**
M54.5 - Pain, low back - [WAKEMAN, ANNA] - 2019-01-25

### Plan

**Information:**
restrictions modified

**Medications:**
☑ None Needed

**Select all that apply:**
☑ Update Restrictions/Special Needs

### On-Site Lab to be Performed After the Visit on One Occasion

**Select Labs:**

---

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By STROUP, ███████ on 05/24/2019 07:45:47

**JA 350**

DOC-001138

LEWALD, TROY VINCENT  #NS1262                                      DOB: 4/17/1979 (45y)  Location: J-A-1002-01

> NO ANSWER PROVIDED

**New Chronic Care Clinic Patient (Select all Chronic Clinics that apply):**
*NO ANSWER PROVIDED*

**Discontinue Chronic Care Clinic Patient:**
*NO ANSWER PROVIDED*

**Refer to (check all that apply):**
*NO ANSWER PROVIDED*

**Request Outside Medical Records:**
*NO ANSWER PROVIDED*

**Provider Line follow-up needed:**
☑ No

**Additional Comments:**
*NO ANSWER PROVIDED*

## Save Log

| User Name | AuditDateAndTime |
|-----------|------------------|
| STROUP, ███ PA | 05/24/2019 07:45:47 |

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By STROUP, ███ on 05/24/2019 07:45:47

2 of 2

**JA 351**

DOC-001139

# EXHIBIT P-8

| Form DC-135A | Commonwealth of Pennsylvania Department of Corrections |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | **INSTRUCTIONS** Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |

| | |
|---|---|
| 1. To: (Name and Title of Officer) ~~Inmate Employment~~ | 2. Date: 12/29/2021 |
| 3. By: (Print Inmate Name and Number) Troy Lewald / NS1262 _____ Inmate Signature | 4. Counselor's Name: |
| | 5. Unit Manager's Name: |
| 6. Work Assignment: Block Tutor | 7. Housing Assignment: EB2001-1 |

8. Subject: State your request completely but briefly. Give details.

I was transferred to SCI-PHX from SCI-ALB on a promotional transfer. AT SCI-ALB, I was a block tutor on an honour block with other outside workers. I was told I would keep my job and pay rate when at SCI-PHX. Could you please confirm I am still a block tutor and will be provided the GED books to help students on the block? If not, I would like to interview for the block tutor job, or an in-class tutor job if the block tutor job is not available to me. I'm also willing to move to a new block if necessary to keep my block tutor job. I am light-duty assigned and in need of work.

Thank you so much for your assistance,
Troy

9. Response: (This Section for Staff Response Only)

All go on GTP until work Assignment placement is made into work Assignment

Write to Education Principal to be considered for Block tutor

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____(illegible)_____ DATE _____
                         Print                    Signature

# EXHIBIT P-9

LEWALD, TROY VINCENT  #NS1262

## DC-479 - Intra-system Transfer Reception Screening

**Transferring Institution:**
ALB

**Transfer Date:**
12/29/2021

**Have you reviewed the DC-491 - Intra-System Nursing Transfer Checklist:**
☑ Yes

## Vital Signs

**Vital Signs taken:**
☑ Yes

**Blood Pressure (Abnormal if less than 90/80 or greater than 150/100):**
124/86

**Temperature (Abnormal if greater than 100 degrees):**
98.6

**Respiration (Abnormal if greater than 24):**
16

**Pulse (Abnormal if less than 60 or greater than 120):**
75

**Finger Stick (Diabetics Only) (Abnormal if less than 80 or greater than 200):**
*NO ANSWER PROVIDED*

**Time of Last Meal:**
*NO ANSWER PROVIDED*

*Vital sign(s) considered abnormal, as defined above, require the completion of a NET/Follow-up

## Medical Information

**Bruises, Deformities, Evidence of Trauma:**
☑ No

**General Appearance and Behavior:**
WNL

**Current Acute Condition/Problem:**
☑ No

**Visible Signs of Dental Problems:**
☑ No

**Medical Complaints:**
☑ No

**Chronic Conditions/Problems:**
☑ No

**History of Drug/Alcohol Abuse/Treatment:**
☑ No

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CURBY, ███████ on 12/29/2021 18:43:56

**JA 355**
DOC-001043

**LEWALD, TROY VINCENT**  #NS1262                                    DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**Significant Medical History:**
☑No

**Medications:**
ATORVASTATIN 10MG TABLET -- [TAKE 1 TABLET(S) ORALLY ONCE DAILY] -- 2021-07-30--2022-02-24

**Allergies (including food allergies):**
NO KNOWN DRUG ALLERGY

**Dietary Restrictions:**
☑No

**Physical Disabilities/Limitations:**
☑No

**Physical Aids (select all that apply):**
☑Eyeglasses

> **Comment on Physical Aid(s):**
> W/ INMATE



---

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CURBY, ███████ on 12/29/2021 18:43:56

2 of 4

DOC-001044

**JA 356**

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

LEWALD, TROY VINCENT  #NS1262

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CURBY            on 12/29/2021 18:43:56

2 of 4

DOC-001045

DOB: 4/17/1979 (45y)  Location: J-A-1002-01

**LEWALD, TROY VINCENT** #NS1262

Is Medical Follow-up care needed?

☑Yes

Type of Medical Follow-up care:

☑Routine

Is Dental Follow-up care needed?

☑No

Medical Chart Review:

☑Yes

Is inmate medically cleared for general population?

☑Yes

Additional Notes:

F/U AS NEEDED

## Signatures



### Save Log

| User Name | AuditDateAndTime |
|---|---|
| | 12/29/2021 18:43:56 |
| CURBY, ███ LPN | |

---

**DC-479 - Intra-system Transfer Reception Screening**
Intra-system Transfer Reception Screening

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CURBY, ███ on 12/29/2021 18:43:56

**JA 358**

DOC-001046

LEWALD, TROY VINCENT  #NS1262

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## DC-485 - Intra-system Medical Record Transfer Checklist - Transferring Facility

**From SCI:**

Albion

**To SCI:**

Phoenix

**Date of Transfer:**

12/29/2021

### To be completed by Medical Records Staff

**Is there a paper record:**

☑ No

**Were incomplete forms in the electronic medical record completed:**

☑ Yes

**Select format(s) of X-Rays (check both if applicable):**

☑ Digital

**Additional Comments:**

EMR only. No red chart made. Hard copy dental x-rays found and sent.

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| RIEGER, ▓ | 12/28/2021 18:25:45 |

DC-485 - Intra-system Medical Record Transfer Checklist - Transferring Facility
DC-485 - Intra-system Medical Record Transfer Checklist - For the Transferring Facility to complete

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By RIEGER ▓ on 12/28/2021 18:25:45

**JA 359**

DOC-001049

**LEWALD, TROY VINCENT   #NS1262**

## DC-485A - Intra-system Medical Record Transfer Checklist - Receiving Facility

**From SCI:**
ALBION

**To SCI:**
PHX

**Date of Transfer:**
12/29/2021

### To be completed by Medical Records Staff

Were paper record volumes to have been sent by the Transferring Facility:

☑ No

Were incomplete forms in the electronic medical record completed:

☑ Yes

Select format(s) of X-Rays (check both if applicable):

☑ Film   ☑ Digital

**Number of Film Volumes:**

1

Are there any missing film volumes that were to have been received:

☑ No

**Additonal Comments:**
DENTAL XRAYS ONLY

### Save Log

| User Name | AuditDateAndTime |
|-----------|------------------|
| REID, ▮ . | 12/30/2021 09:27:04 |

**DC-485A - Intra-system Medical Record Transfer Checklist - Receiving Facility**
DC-485A - Intra-system Medical Record Transfer Checklist - For Receiving Facility Use

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By REID, ▮ on 12/30/2021 09:27:04

**JA 360**   DOC-001040

LEWALD, TROY VINCENT  #NS1262

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## DC-472N - Reception Progress Note

**Date:**
12/29/2021

**Current Facility:**
SCI PHOENIX

**Type of Transfer:**
☑ Intra-System

**Intra-System Intake Screening Completed/Documents Reviewed:**
☑ DC-479

**PRAT Form Completed:**
☑ Yes

> **PRAT Score entered in Webtas:**
> ☑ No
>
> > **Why was it not entered:**
> > N/A

### Procedures Explained/Education Provided

**Sick Call explained (including DC-820, Co-payment for Medical Services and ADA accomodations):**
☑ Yes

**Emergency Procedures explained:**
☑ Yes

**Access to Dental Services:**
☑ Yes

**Access to Psychiatric or Psychological Services:**
☑ Yes

**Medication Line/KOP Medication/Renewal or Medication Procedures:**
☑ Yes

### Received and Reviewed:

**Special Diet Procedures:**
☑ Yes

**Medical Record:**
☑ Electronic Health Record

**Select all Referrals completed for Initial Reception, Parole Violator, Intra-system, Medical, and Consolidated Infirmary:**

**DC-472N - Reception Progress Note**
Progress note for new patient to be filled out on intake

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CURBY, ████ on 12/29/2021 19:09:25

DOC-001041

**LEWALD, TROY VINCENT**  #NS1262

☑ No Referrals Needed

**Housing Status:**
☑ GP

**Any Special Requirements/Restrictions (i.e. Bottom Bunk, Detox if not in Infirmary):**
☑ No

**Inmate move in Sapphire completed:**
☑ Yes

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| CURBY, ▓▓▓▓, LPN | 12/29/2021 19:09:25 |

**DC-472N - Reception Progress Note**
Progress note for new patient to be filled out on intake

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CURBY, ▓▓▓▓ on 12/29/2021 19:09:25

**JA 362**

**LEWALD, TROY VINCENT** #NS1262

## DC-491 - Intra-System Nursing Transfer Checklist

**Current Facility:**
  SCI ALBION

**Does the TB summary need to be completed:**
  ☑No

**Is the Inmate in Medical Isolation:**
  ☑No

**RPR:**
  ☑Negative

**Does the record indicate an unstable, uncontrolled, or acute condition which needs to be resolved or identified:**
  ☑No

**Does the inmate have a pending Consultation (look for both the consultation record and a note in the Progress Notes):**
  ☑No

**Is the inmate in the process of receiving dental surgery or treatment for a serious dental condition:**
  ☑No

**Is the inmate in the process of receiving dentures:**
  ☑No

**Is there any indication that the inmate is in need of immediate surgery or is the inmate undergoing post-surgical care:**
  ☑No

**Has the practitioner determined that the inmate is not physically able to travel:**
  ☑No

**Has the inmate had a serious accident or overdose in the last 24 hours:**
  ☑No

**Has the inmate been housed in the infirmary, Psychiatric Observation Cell or Mental Health Unit within the past 7 days:**
  ☑No

**Does the record indicate evidence of clinical signs/symptoms of serious mental illness:**
  ☑Yes

> **Comment on evidence of clinical signs/symptoms of serious mental illness?**
>
> F41.9 - **[F41.9]** UNSPECIFIED ANXIETY DISORDER - [GLUSHAKOW, ███ ] - 2019-01-29

**Are there any missing consults, lab work, or x-rays (ordered but not on chart):**
  ☑No

---

**DC-491 - Intra-System Nursing Transfer Checklist**
DC-491 Intra-System Nursing Transfer Checklist

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By TALKINGTON, ███ on 12/22/2021 05:18:10

DOC-001052

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

**LEWALD, TROY VINCENT**  #NS1262

**Is there any lab work, x-rays, consultation reports, or test results without a physician's signature/initials:**

☑No

**Is inmate a dialysis patient:**

☑No

**Is the inmate on any medications that are given bi-weekly, every three weeks, or monthly:**

☑No

**Active Allergies:**

NO KNOWN DRUG ALLERGY

**Chronic Medical Problems:**

I83.10 - Varicose veins of unspecified lower extremity with inflammation - [STROUP, ███ ] - 2020-12-01
M71.21 - Synovial cyst of popliteal space [Baker], right knee - [STROUP, ███ ] - 2020-10-22
F41.9 - **[F41.9]** Unspecified anxiety disorder - [GLUSHAKOW, ███ ] - 2019-01-29
E78.5 - Hyperlipidemia, unspec. - [HARTWELL ███ ] - 2020-02-03
J30.9 - Rhinitis, allergic, cause unspec. - [WAKEMAN, ███ ] - 2019-01-25
M54.5 - Pain, low back - [WAKEMAN, ███ ] - 2019-01-25

**Additional Comments:**

*NO ANSWER PROVIDED*

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| | 12/22/2021 05:18:10 |
| TALKINGTON, ███        RN | |

**DC-491 - Intra-System Nursing Transfer Checklist**
DC-491 Intra-System Nursing Transfer Checklist

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By TALKINGTON, ███        on 12/22/2021 05:18:10

**JA 364**

# EXHIBIT P-10

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
M. Delliponti, CFVC

2. Date:
01/13/2022

3. By: (Print Inmate Name and Number)
Troy Lewald / NS1262

Inmate Signature

4. Counselor's Name:
Stimmel

5. Unit Manager's Name:
Durand

6. Work Assignment:
IBT-GLP

7. Housing Assignment:
EB2007-1

8. Subject: State your request completely but briefly. Give details.

I wrote a request to you about getting my block tutor job back and you replied to write education, but you assigned me to the kitchen?, I was transferred here on an Incentive Based Transfer from Albion, where I was a block tutor CLASS III Job, at top pay of $0.42 per hour, I was not demoted to a CLASS I job. I also am lite-duty with medical disabilities and unable to work in a Kitchen job or perform these duties. Could you please fix this and assign me a CLASS III job at top pay that can be performed by someone with lite-duty medical restrictions?

Thanks so much,

Troy

9. Response: (This Section for Staff Response Only)

You can be placed in any job regardless of pay offered. If you refuse you are placed without pay and lose your payrate. IF EDUC hires you you will change jobs

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME ___ Delliponti ___
Print

Signature

DATE ___

# EXHIBIT P-11





**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
847 348
GRIEVANCE NUMBER

art 1

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: PHX | DATE: 01/14/2022 |
|---|---|---|

FROM: (INMATE NAME & NUMBER)
Troy Lewald / NS1262

SIGNATURE OF INMATE:

WORK ASSIGNMENT:
Kitchen

HOUSING ASSIGNMENT:
EB2007-1

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

I was transferred from SCI-ALB to SCI-PHX on an Incentive Based transfer, SCI-ALB staff stated DOC policy allows me to keep my lite-duty Block Tutor, CLASS III top-tier paying job, I've held for the past one-year, upon transfer to SCI-PHX. On December 29th, 2021, the day of my transfer, I immediately wrote inmate employment and explained the exact situation stated above. I received a reply from M. Delliponti, CEVC on January 6th, 2022, stating I needed to write the education principal to be considered for a block tutor. I immediately wrote the education principal and have not received a reply at this time. On January 13th, 2022 I was given a new door tag stating I was assigned to work in the kitchen starting January 17th, 2022. The job I was assigned is not CLASS III and not lite-duty. I was essentially demoted by employment because of my incentive-based transfer to SCI-PHX.

B. List actions taken and staff you have contacted, before submitting this grievance.
Contacted M. Delliponti, CEVC twice, spoke with unit conselor Stimmel, unit SGT. Garmin, unit C.O. Stubbs and wrote Education Principal

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator

Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

Superintendent's Office
SCI Phoenix

JAN 1 9 2022





**Initial Review Response**

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

01/31/2022 01:54

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit/Location: | E/B |
| Grievance #: | 964348 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision:Grievance Denied**

It is the decision of this Grievance Officer to uphold/deny/uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

In your grievance you state you were transferred from SCI ALB to SCI PHX as an Incentive Based Transfer. And at SCI ALB you were a Class 3 Block tutor with top pay level. Upon transfer to SCI PHX you were demoted to CLASS 1 employment that does not account for your medical disabilities that the block tutor class 3 job accounted for.

I have checked the CAPTOR system and you currently do not have any medical restrictions or limitations that you refer to in this grievance.

ALL individuals permanently transferred until a work assignment placement can be made. Once that work assignment placement is made if you meet the criteria per the policy (see below) you will then be given your last pay rate at the previous institution. At that time you may send a request slip asking to be placed on a work assignment you choose to be considered for. Keep in mind SCI PHX is a long-term facility and the waiting lists can be very lengthy and take time as there is not a large amount of turn over.

I cannot comment on what your previous institution did or did not tell you regarding your work assignment as I am not privy to that information. I can however refer you to the policy that outlines this information regarding Incentive Based Transfers. See the section of policy provided below

DC-ADM 816 Inmate Compensation Manual

Section 1 - General

U. Compensation when the Inmate is Transferred or Released

4. An inmate who is granted an incentive based or CL3 reduction transfer shall keep his/her pay rate when transferred to another Department Facility. The inmate does not have to be placed in the exact job assignment to keep his/her pay rate, unless he/she was previously on a Community Work Project (CW), and there are no openings on a CWP at that time on his/her job assignment. In this case he/she will have the pay rate Class 3D (.42)

The work assignment you have been given also has you at your pay rate at your last employment at your previous institution.

This grievance and requested relief are denied based on the above information provided.

☑ **Frivolous:**

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 1 - Grievances & Initial Review, Attachment 1-D

NS1262    Grievance #:964348

Issued: 1/26/2016  Effective: 2/16/2016

Page 1 of 2

**JA 369**

Lewald, Troy Vincent

#NS1262

SCI Phoenix, EB2007

02.07.2022

Superintendent's Office
SCI Phoenix

FEB 8 2022

Received

First-Level Grievance Appeal, 964348

To: Superintendent J. Sorber:

I was issued an incentive-based transfer from SCI-Albion. At said facility I was a Class-3 Unit Tutor and at maximum pay grade. Here at SCI Phoenix I was demoted to Class-1 employment and assigned to Culinary.

As well at the previous Facility I was designated a "light-duty" in light of my physical ailment(s).

Miraculously the CAPTOR system, according to Ms. Delliponti does not capture such. In taking Ms. Delliponti[1] such presents a serious gripe as my health and safety are now placed at grave jeopardy.

Culinary is demanding that I perform tasks for which I am physically unable to perform. The problem with this is that I am forced to disobey a direct order, of which may subject me to disciplinary action.

At the above grievance response Ms. Delliponti quotes DC-ADM 816 Inmate Compensation Manual, Section 1 - General. To the extent such quote is correct I intend to double back in request to be placed on the "Unit Tutor" list.

I make request of you and or your office to contact SCI-Albion to confirm

---

1    at her word

my averment(s) as perhaps that Facility will confirm what has been

(inadvertently) omitted from the CAPTOR system.

Respectfully forwarded,

Lewald, Troy Vincent

CC: Office of the Superintendent, SCI Albion

L.T.V.

Pg. 2



## Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

03/02/2022 08:30

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit/Location: | 1E/2/B |
| Grievance #: | 964348 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above.
In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision:Uphold Response**

It is the decision of this Facility Manager to uphold the initial response.Uphold the inmate, dismiss, or Uphold in part/Deny in part.This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance; and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim that you were transferred from SCI ALB, a class III block tutor to SCI PHX, on an incentive-based transfer, to a class I employment. You claim that this does not consider your medical disabilities. You were class III employment before transfer and DOC policy states that you keep your class III job assignment with Incentive-based transfer.

In my investigation, I find that the response by Ms. Delliponti, Inmate Employment, as SCI Phoenix Inmate Employment is following policy DC-ADM 816 Inmate Compensation Manual. As of 10/7/2021, any/all restrictions that you had, had been expired. As such, you were placed on GLP on 12/29/2021 and In Food Services on 1/17/2021. You were seen by Medical and your employment restrictions: no high risk of injury, no intensive labor, no lifting more than 15 pounds, and no work at heights/elevations, were again listed with a start date of 2/15/2022. Employment restriction — no work/medically unemployed was listed with a start date of 2/23/2022. Currently, as of 2/23/2022, your job detail is Miscellaneous\No Work — medical glp\crew, earning $0.50.

Additional information will not be addressed as it was not included in the initial grievance.

I must therefore, uphold the decision of the grievance officer and deny your appeal and all requested relief.

| Signature: | |
|---|---|
| Name: | R Sorber |
| Title: | Facility Manager |
| Date: | |

cc: DC-15
    File

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B

NS1262   Grievance #:964348

Issued: 1/26/2016  Effective: 2/16/2016

Page1 of 1

**JA 372**

Troy V. Lewald NS1262
SCI-PHX
3 /6 /2022
To: Chief Grievance Officer
PA DOC
, Sec. Off. Griev. & Apps.
Mechanicsburg, PA

FINAL GRIEV. APP. #964348

This appeal is for where 1) my medical records was not forwarded at my Incentive based Transfer to SCI-PHX, 2) I was demoted from Class, Step C (0.38hr.) status, 3) While in this grievance process I was physically injured.

In the Initial Grievance I cite my incentive-based transfer to SCI-PHX and that prior to said transfer I was a Class III Block Tutor and @ Step D (0.42/hr) maximum pay scale. However, shortly after my arrival to SCI-PHX I was assigned to Culinary and not @ maximum pay scale. (demoted back to Step C @ .38/hr.) Also my physical limitations weren't considered by Culinary.

As well in the grievance I cite to forwarding a DC135A to the Education Department regarding the Tutor status, for which I received no reply.

In the Initial review Response Ms. Delliponti stated: "The work assignment you had been given also has you at your pay rate at your last employment at your previous institution." Contrary to Ms. Delliponti's findings Culinary placed me in Class 3, Step C status and failed to make the correction.

@ the Facility Manager's Appeals Response Supt. Sorber did not acknowledge Ms. Delliponti's stating I was @ maximum pay scale...though he adopted her findings. To adopt her findings means I am @ maximum pay scale, of which translates to monies owed for services performed: Pay period 12/28-1/17/2022 where I was @.38/hr & not @ .42/hr.

As to the medical restrictions Ms. Delliponti stated that the DOC's CAPTOR System does not show any physical restrictions when in

1

**JA 373**

fact I am limited by medical. To this point I sought confirmation @ mailing a copy of the 1st level appeal to SCI Albion's Supt. To date no confirmation received.

Supt. Sorber state that on 10/7/21 any and all medical restriction had expired. This information is new to me as I've not been advised of such by medical.

As stated herein, while in the grievance process I was hurt on-the-job. This injury is a direct result of Culinary placing me is a situation to be injured. Culinary is [responsible] for the injury and as such I seek compensation for injury(s) suffered as relates to the "Continual Violation Doctrine", for which no new complaint need be filed (although one has been). The local decision must be overturned in favor of inmate.


Sincerely,


cc:TVL

---------
12/2/21 Block Tutor @ SCI Albion & promoted to Class 3 Step D pay @ .42¢/hr. 12/28/21 trans. to SCI-PHX & placed on IBT-GLP with payrate of Class 3 Step C @ .38¢/hr, not Class 3 Step D @ .42¢/hr as stated by Policy DC'ADM 816(1)(V)(4) & confirmed by Ms. Delliponti above. Policy 13.2.1 Sec. 17(A)(2) & Sec. 17(A)(2)(d) state the med. dept. is responsible to ensure med. record is maintained in a confidential fashion & accompanies the inmate to the trans. dept. facility.

Inmate Handbook Sec. VI(A)(1) states a "qualified healthcare professional will give you a medical, dental & mental health screening/appraisal, including if you are an intra-system transfer within 14 days of commitment." Such screening/appraisal was not granted here.

Inmate Handbook Sec. VI(A)(2) states "the facility healthcare dept. shall make the diagnosis of a qualified disability , unless previously diagnosed & provided the appropriate medical treatment & accomodations." SCI-PHX displayed intentional indifference & reckless disregard to my disability. Final Compensation warranted.

2

**JA 374**



**pennsylvania**
DEPARTMENT OF CORRECTIONS

**TO:**     Lewald, Troy; NS1262; SCI Phoenix; E/B 2007

**FROM:**   M. Tharp, CSA

**DATE:**   March 11, 2022

**RE:**     Return of Grievance Appeals — 966040 & 966041

I am returning your appeal for Grievances #966040 and #966401. These appeals were initiated at SCI Phoenix and you must submit your appeal to the Facility Manager there.

I will note that if you are appealing more than one grievance, you must submit a separate appeal for each one.

Please refer to the DC-ADM 804, Section 2 in regards to how to properly file a grievance appeal.

Thank you.

MLT/aae

cc:   File

---

SCI-Albion | 10745 State Route 18 | Albion, PA 16475 | 814.756.5778 | www.pa.gov

**JA 375**



# Final Appeal Decision

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

04/25/2022 11:39

*EB20079*

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | | NS1262 | |
| Sci Filed: | Phoenix | Current Sci: | | Phoenix | |
| Grievance #: | 964348 | | | | |

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted above. In accordance with the provisions of DC-ADM 804, Inmate Grievance System Policy, the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

**Decision: Uphold Response**

It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

In this grievance, you indicate that you were transferred from ALB to PHX on an Incentive Based Transfer (IBT) and you were a Class 3 block tutor with top pay at ALB prior to your transfer. You indicate that when you arrived at PHX you were demoted to a Class 1 job that does not account for your medical disabilities. You indicate that policy states that you are to keep your Class 3 job assignment with an Incentive Based Transfer.

This office finds the responses provided to you thoroughly and appropriately addressed your concerns. Despite your claims, there is no policy requirement for an inmate on an IBT to keep their same work class, just the same rate of pay that pay. Records reflect that when you started in the kitchen you were being compensated with the same rate of pay you left ALB making, $0.38. While you indicate in your appeal to this office that you were making $0.42 an hour, records do not support this. In addition, the concerns with your medical restrictions not being followed at PHX has been explained to you and this office has nothing further to add with regard to those concerns. Based on the aforementioned information, this office upholds the responses provided to you. Any issues raised in your appeal to this office that were not raised in your initial grievance will not be addressed.

| Signature: | *Keri Moore for* | |
| Name: | D. Varner | |
| Title: | Chief Grievance Officer | |
| Date: | 04/25/22 | |

cc: DC-15/Superintendent - Phoenix
Grievance Office

---

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-F

Issued: 1/26/2016  Effective: 2/16/2016

NS1262   Grievance #:964348

**JA 376**

# EXHIBIT P-12

| Title | Patient Name | Patient Location | Patient Number | Start Date | End Date | Occurrence Count | Category | Priority | Users Assigned | Roles Assigned | LastCompletedDate | LastCompletedByName |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

*(Table contents illegible at available resolution.)*

JA 378

DOC-001255



# EXHIBIT P-14

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
467268
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

TO: FACILITY GRIEVANCE COORDINATOR

FACILITY: PHX

DATE: 02/04/2022

FROM: (INMATE NAME & NUMBER)
Troy Lewald / NS1262

SIGNATURE OF INMATE:

WORK ASSIGNMENT:
Kitchen

HOUSING ASSIGNMENT:
EB2007-1

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

Today, 02/04/2022 @ 08:15 hours in the kitchen, my Supervisor said I was required to do heavy-duty work. I told her I am lite-duty and she stated her Supervisor told her there are no lite-duty workers on her line and not performing the tasks she requested would constitute disobeying a direct order. I told her they need to investigate what happened to my medical restrictions that have been in the computer since January 2019 and I cannot perform heavy-duty tasks. Nothing in my spine condition has improved.

B. List actions taken and staff you have contacted, before submitting this grievance.

Supervisor De Shields, Supervisor Poli, Deputy Sipple

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____     Date _____
Signature of Facility Grievance Coordinator

WHITE Facility Grievance Coordinator Copy     CANARY File Copy     PINK Action Return Copy
GOLDEN ROD Inmate Copy



## Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

03/03/2022 03:34

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | E/B |
| Grievance #: | 967268 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision:Grievance Denied**
It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

In your grievance you claimed that on 2/4/22 CFSI Deshield ordered you to do heavy duty work. You stated that you were light duty and unable to preform these tasks. You went on to claim that Ms. Deshield told you that you were disobeying a direct order. You claimed that you brought this up to CFSS Poli and he agreed to look into your medical restrictions. You claimed that you have been on medical restrictions since Jan 2019 and cannot preform heavy duty work. I looked at your restrictions and the employment restrictions lasted from 5/24/19 until 10/6/21 only. More employment restrictions have since been added on 2/15/22. You had no active employment restrictions on 2/4/22. This grievance is denied.

| Signature: | |
|---|---|
| Name: | B. Kline |
| Title: | |
| Approver: | G. Orlando |
| Date: | 3/3/2022 |

CC: Facility Grievance Coordinator
DC-15

---

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 1 - Grievances & Initial Review, Attachment 1-D

Issued: 1/26/2016 Effective: 2/16/2016

NS1262 Grievance #:967268

LEWALD, TROY VINCENT

**JA 382**

Page1 of 1

First-Level Appeal #967268

To: Facility Manager, SCI-Phoenix

**Superintendent's Office**
**SCI Phoenix**

Troy Vincent Lewald / NS1262      MAR 9 2022      03/07/2022      pg#1/2

Received

This appeal is for where my medical restrictions were not properly implemented upon my arrival to SCI-Phoenix for a permanent incentive-based transfer on December 28, 2021.

Inmate Handbook Section VI (A)(2) Accomodations for Inmates with Disabilities (DC-ADM006) states: "The facility healthcare department shall make the diagnosis of a qualified disability, <u>unless previously diagnosed</u> and shall determine the level of accomodations you may need, and provide the appropriate medical treatment...."

I was diagnosed with a <u>chronic life-long disability</u> in January 2019, upon my initial commitment to this facility, SCI-PHX.

Inmate Handbook Section VI (A)(1) Accomodations for Inmates with Disabilities (DC-ADM006) states: "Qualified health care personnel will give you a medical, dental, and mental health screening/appraisal, <u>including if you are an intra-system transfer,</u> within 14 days of your commitment."

I was never given such appraisal. I wrote inmate employment on December 29th 2021 to advise of my arrival and lite-duty work restriction. I wrote inmate employment and Deputy Sipple on January 14th 2022 to again advise of my lite-duty work medical restrictions. Both requests were ignored.

**JA 383**

First-Level Appeal #967268

To: Facility Manager, SCI-Phoenix

Troy Vincent Leueld / NS1262                    03/07/2022   pg #2/2

Policy 13.2.1, Section 17 (A)(2)(d) states: "The original medical record is maintained in a confidential fashion and accompanies the inmate to the transferring facility."

Policy 13.2.1, Section 17 (B)(a) states: "When an inmate is a permanent transfer, entire medical record and xray file, shall be prepared for movement to receiving facility."

Therefore, per policy, it is the Department's responsibility to maintain medical records of previously diagnosed life-long disabilities and work restrictions. If there is necessary maintenance to keep these records fresh, they are also the Department's responsibility.

CFSI Deshield, CFSS Poli and SCI-Phoenix had intentional indifference and displayed gross negligence, reckless disregard and conscious disregard, even after verbally stating my physical disability and severe pain condition, on several occassions. New medical restrictions were eventually entered on 02/15/2022 after putting in weekly sick-calls to complain about my pain and suffering, cruel and unusual punishment, and missing medical restrictions, which caused me to suffer further injury while on the job.

I kindly request you re-implement my original restrictions which B.Kline has stated expired on 10/6/2021 and are responsibility of the Department to maintain, as specified in Policy 13.2.1 and DC-ADM-006.

**JA 384**



## Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

03/24/2022 10:09

| Inmate Name: | LEWALD, TROY VINCENT. | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | B/B |
| Grievance #: | 967268 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision: Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss or, Uphold in part/Deny in part. This response will include a brief rationale summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim on 2/4/2022, at 8:15 AM, you were required to do heavy duty work in the kitchen. You claimed that you were light duty and unable to perform heavy duty tasks. You claim that your medical restrictions have been in the computer since 1/2019. You claim that you cannot perform heavy duty tasks and nothing in your spine condition has improved.

In my investigation, I find that the response by Mr. Kline is appropriate. As of 10/7/2021, any/all restrictions that you had, had been expired. As such, you were placed on GLP on 12/29/2021 and in Food Services on 1/17/2021. You were seen by Medical and your employment restrictions: no high risk of injury, no intensive labor, no lifting more than 15 pounds, and no work at heights/elevations, were again listed with a start date of 2/15/2022. Employment restriction -- no work/medically unemployed was listed with a start date of 2/23/2022. However, on 2/4/2022, you had no active restrictions.

Additional information will not be addressed as it was not included in the initial grievance.

I must therefore, uphold the decision of the grievance officer and deny your appeal and all requested relief.

| Signature: | |
|---|---|
| Name: | M. Sorber |
| Title: | Facility Manager |
| Date: | |

CC: DC-15
    File

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B

NS1262   Grievance #: 967268

LEWALD, TROY VINCENT

Issued: 1/26/2016  Effective: 2/16/2016

**JA 385**      Page1 of 1

Troy Vincent Lewald/ NS1262                                    pg# 1/2
SCI-PHX
03/29/2022

Final Appeal #967268

This appeal is for where my medical restrictions
from SCI-Albion were not properly implemented upon my arrival to
SCI-Phoenix for permanent incentive-based transfer and I was
not assessed by SCI-Phoenix medical department within 14 days
of arrival as Policy DC-ADM006 (A)(1) dictates.

Facility Manager K. Sorber states my medical
restrictions expired on 10/1/2021, the day I was approved for
incentive-based transfer at SCI-Albion my work restrictions auto-
expired in the SAPPHIRE system. No notice for renewed assessment
was given by either SCI-Albion or SCI-Phoenix prior to job placement
assignment in culinary to perform heavy-duty work, which was
specifically forbidden by medical restriction stating "NOT MEDICALLY
CLEARED FOR FOOD SERVICES."

Facility Manager K. Sorber states my new
medical restrictions placed on 02/15/2022, but ignores the fact it
was after placing weekly sickcalls and after being injured while on
the job. This injury is a direct result of being placed in a situation

**JA 386**

Troy Vincent Lewald / NS1262          PS #2/2
SCI-PHX
03/29/2022

Final Appeal # 967268

As such, I seek compensation for injury(s)
suffered as related to the "Continual Violation Doctrine" for which
no new complaint need be filed. The local decision must be
overturned in favor of the inmate due to SCI-Phoenix's failure to
follow DC-ADM006 (A)(1) and assess with 14 days of transfer.

Respectfully,

**JA 387**



## pennsylvania
### DEPARTMENT OF CORRECTIONS

**TO:**     Lewald, Troy; NS1262; SCI Phoenix; E/B 2007

**FROM:**   M. Tharp, CSA

**DATE:**   March 11, 2022

**RE:**     Return of Grievance Appeals – 966040 & 966041

I am returning your appeal for Grievances #966040 and #966401. These appeals were initiated at SCI Phoenix and you must submit your appeal to the Facility Manager there.

I will note that if you are appealing more than one grievance, you must submit a separate appeal for each one.

Please refer to the DC-ADM 804, Section 2 in regards to how to properly file a grievance appeal.

Thank you.

MLT/aae

cc:   File

---

SCI-Albion | 10745 State Route 18 | Albion, PA  16475 | 814.756.5778 | www.pa.gov

## JA 388



**Final Appeal Decision**

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

05/16/2022 11:48

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| SCI Filed: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 967268 | | |

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted above. In accordance with the provisions of DC-ADM 804, Inmate Grievance System Policy, the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

**Decision:Uphold Response**

It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

In this grievance, you indicate that on 2/4/22, Ms. Deshields said that you were required to do heavy duty work at which time you told her that you are light duty and unable to perform heavy duty tasks. You indicate that Ms. Deshields advised you that there was no light duty workers on her line and not performing the tasks she requested would constitute disobeying a direct order. You indicate that you addressed your concerns with CFSS Poli who indicated that he would look into your medical restrictions. You indicate that you have been on restrictions since 2019. You requested no type of relief within your initial grievance.

This office finds the responses provided to y9u appropriately addressed your concerns. Despite your claims, on 2/4/22, you had no work restrictions in place from medical; however, as of 2/15/22, work restrictions were ordered by medical staff. This office has nothing further to add to the responses already provided to you; therefore, this office upholds those responses.

It is noted that any issues raised within your appeal to final review, to include requested relief, that was not raised within your initial grievance will not be addressed. In addition, you are encouraged to send this office legible copies of your grievance documents. The pink copy of your initial grievance that you provide to this office in very light and difficult to read, in the future, any appeals that do not include legible copies of grievance documents could result in the dismissal of your appeal.

| Signature: | *Keri Moore for* |
|---|---|
| Name: | D. Varner |
| Title: | Chief Grievance Officer |
| Date: | 05/16/22 |

---

**DC-ADM 804, Inmate Grievance System Procedures Manual**

**Section 2 - Appeals, Attachment 2-F**

NS1262    Grievance #:967268

Issued: 1/26/2016  Effective: 2/16/2016

**JA 389**

# EXHIBIT P-15

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   Deputy Sipple

2. Date: 02/07/2022

3. By: (Print Inmate Name and Number)
   Troy Lewald / NS1262

   _____ Inmate Signature

4. Counselor's Name:
   Stimmel

5. Unit Manager's Name:
   Ski

6. Work Assignment:
   Kitchen

7. Housing Assignment:
   EB8084

RECEIVED
FEB 10 REC'D
DEPUTY SUPERINTENDENT
FOR CENTRALIZED SERVICES

8. Subject: State your request completely but briefly. Give details.

Deputy Sipple:   I need your assistance setting my medical restrictions transferred from SCI-Albion medical system. I submitted multiple sick calls and this is my second request to you. All staff has stated you are the only person that can help me.

Per policy, please reply within (7) working days.

Thank you so much,

Troy

9. Response: (This Section for Staff Response Only)

Restrictions were updated 2/15/22

To DC-14 CAR only ☐

To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _____ B. Huner, CHCA PHY
Print

_____ DATE 4/27/22
Signature

# EXHIBIT P-16

**Form DC-135A**

## INMATE'S REQUEST TO STAFF MEMBER

**Commonwealth of Pennsylvania**
**Department of Corrections**

### INSTRUCTIONS
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
Ms Huner / Medical Director

2. Date: 02/18/2022

3. By: (Print Inmate Name and Number)
Troy Lewald / NS1262

Inmate Signature

4. Counselor's Name: Stimmel

5. Unit Manager's Name: Ski

6. Work Assignment: Kitchen

7. Housing Assignment: EB2007-1

*Medical Department* *RECEIVED FEB 24 2022*

8. Subject: State your request completely but briefly. Give details.

Ms Huner: My back is killing me and I am in a lot of pain! Today at work something popped in my lower back and is causing me pain. I asked my Supervisor Ms. Deshields to send me to medical as emergency, and she said no, she will send me back to the block. I asked the block C.O. Ms. G to call medical as emergency and when she called, they told her to have me fill out a sick call! If it is a holiday weekend and I am in so much pain and they won't even call me till next Wednesday!!! I told these people I am lite-duty and they will not listen. They keep pushing me to do heavy-duty work and I have to refuse and they keep pushing me past my limits. I saw Ms. Tara in medical on 02/15/2022 at 10:40AM and she said she doesn't know how to get my lite-duty and my bottom-bunk status back in the computer. She is using Sapphire and Inmate Employment is using CAPTOR and Inmate Employment doesn't see lite-duty in their system. Please help! I'm in so much pain and don't know what to do!

9. Response: (This Section for Staff Response Only)

been lite-duty & bottom-bunk status my entire incarceration the past 3 years. I don't know why since my transfer all my medical restrictions have been deleted.

— for evaluation —

**PLEASE SEE SICK CALL PHYSICIAN**

* NO Work/medically unemployed 2/23/22 - 3/16/22

To DC-14 CAR only ☐      To DC-14 CAR and DC-15 IRS ☐

FEB 24 2022

STAFF MEMBER NAME  M. Savage, ARNS
Print                    Signature          DATE

# EXHIBIT P-17

Due! 3/15/22

Savage                    H/C

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
968 790
GRIEVANCE NUMBER

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: PHX | DATE: 02/18/2022 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) Troy Lewald / NS1262 | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: Kitchen | HOUSING ASSIGNMENT: EB2007-1 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

Tuesday, 02/15/2022 at 10:40 I was seen by Ms. Tara in medical to have my restrictions/lite-duty medical restrictions transferred from SCI-Albion. Ms. Tara stated she does not know how to get my lite-duty medical restrictions and bottom-bunk status back in the computer. She stated she uses software called Sapphire and Inmate Employment uses software called CAPTOR and she doesn't know how to get records into those systems. I wrote Deputy Ms Sipple twice since 01/27/2022 and have not been seen or given a reply since my last request on 02/07/2022.

B. List actions taken and staff you have contacted, before submitting this grievance.

Ms. Tara, Medical ; Ms. Sipple.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

N. Alando                              2/22/2022

Signature of Facility Grievance Coordinator              Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

Superintendent's Office
SCI Phoenix

FEB 2 2 2022

**DC-ADM 804, Inmate Grievance System Procedures Manual**
**Section 1 – Grievances & Initial Review**    **JA 395**

Attachment 1-A
Received

## Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

03/08/2022 10:37

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
| Facility: | Phoenix | Unit Location: | E/B |
| Grievance #: | 968790 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision: Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance and the relief sought.

**Response:**

Mr. Lewald you stated, "Grieves on 2/15/22 he was seen in medical by Ms Tara and she was unable to have his restrictions/light duty transferred from SCI ALB'.

<u>02/15/2022</u> – Westside sick call; patient is requesting work restriction due to history of spinal disc replacement at L5-S1. <u>Restriction completed</u>. has a history of low back pain, currently c/o low back pain, constant, worse after working.

Comments: Ambulating independent no device, steady gait, normal pace. Assessment: Decrease ROM hip and back

Plan Information: Continue work restriction, warm compresses to the area before and after work.

Medications: None Needed. Line follow-up needed: No.

<u>No work/medically unemployed.</u>

Grievance Denied - Completed day of sick call visit.

| Signature: | |
| Name: | M. Savage |
| Title: | |
| Approver: | G. Orlando |
| Date: | 3/8/2022 |

cc: Facility Grievance Coordinator
    DC-15

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 1 - Grievances & Initial Review, Attachment 1-D

Issued: 1/26/2016  Effective: 2/16/2016

NS1262    Grievance #:968790

**JA 396**

Page1 of 1

LEWALD, TROY VINCENT

First-Level Appeal #968940

To: Facility Manager, SCI-Phoenix

Troy Vincent Lewald/NS1262                03/11/2022      pg #1/2

This appeal is for where my medical restrictions were not properly maintained by the medical department upon my arrival to SCI-Phoenix, nor when complaining to medical staff to transfer my pre-existing medical restrictions from SCI-Albion while being re-evaluated on Westside sickcall on 02/15/2022.

Per Policy 13.2.1 Section 17 (A)(2)(d) "The <u>original medical record is maintained</u> ... and accompanies the inmate to transferring facility."

Superintendent's Office
SCI Phoenix

MAR 1 4 2022

Received

Ms. Tara entered <u>new</u> work restrictions, which do not match the pre-existing medical restrictions I had been previously assigned per my disability. These new medical restrictions were eventually entered only after putting in weekly sickcalls to complain about pain and suffering, cruel and unusual punishment, reckless endangerment and missing medical restrictions, which caused me further injury. I was seen by Ms Tara <u>several times</u> to inquire about pre-existing restrictions being transferred. Ms. Tara stated my pre-existing medical restrictions expired on 10/6/2021, when my approval for transfer to SCI-Phoenix was approved and she does not know how to get those pre-existing restrictions back into the SAPPHIRE system, as <u>she is not a records specialist</u>. Ms. Tara stated the new restrictions she entered are specific, but only partial lite-duty work assignment.

**JA 397**

First-Level Appeal # 968790
To: Facility Manager, SCI-Phoenix

Troy Vincent Lewald/ NS1262                    03/11/2022    pg#2/2

Ms. Tara stated a medical records specialist would need
to transfer my pre-existing restrictions into SAPPHIRE.
Ms. Tara also stated her medical restrictions don't expire and
doesn't know why my pre-existing medical restrictions <u>expired</u>
<u>the day I was approved for transfer</u>, as there are no notes
about expiration, on the day of expiration or before expiration,
in the SAPPHIRE system and there was <u>no pre-determined</u>
<u>expiration assigned.</u>

I kindly request a medical records specialist review my
pre-existing medical restrictions and transfer them to
SCI-Phoenix for proper implementation as Policy 13.2.1
Section 17 which states it is the responsibility of the
Department to maintain, in original form, upon transfer
and DC-ADM 006 which states inmates with disabilities
will be provided the appropriate medical treatment.

                    Respectfully,
                    Troy Vincent Lewald

**JA 398**

# Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

03/30/2022 03:48

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | F/B |
| Grievance #: | 968790 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision:Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim on 2/15/2022, you were seen by Ms. Tara in medical to have your restrictions/lite-duty medical restrictions reapplied. You state that she does not know how to get your lite-duty medical restrictions and bottom bunk status back in the computer. You claim that you wrote to Deputy Sipple twice since 1/27/2022 and have not received a response. You claim your last request was on 2/7/2022.

In my investigation, I find that the response by RN Savage is appropriate. Your requested employment restrictions were reinstated on 2/15/2022, the same date as sick call visit. Documentation does not indicate that you mentioned lower bunk status at that time, but was reinstated on 2/23/2022.

Additional information will not be addressed as it was not included in the initial grievance.

I must therefore, uphold the decision of the grievance officer and deny your appeal and requested relief.

| Signature: | |
|---|---|
| Name | K. Sorber |
| Title: | Facility Manager |
| Date: | |

cc: DC-15
File

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B

NS1262    Grievance #:968790

Issued: 1/26/2016  Effective: 2/16/2016

**JA 399**

Page1 of 1

Final Appeal #968790

Troy Vincent Lewald/NS1262                    04/05/2022    pg #1/a

This appeal is for where my medical restrictions were not properly
transferred to SCI-Phoenix, nor when requesting SCI-Phoenix medical
staff to transfer my pre-existing medical restrictions from SCI-Albion
while being re-evaluated on Westside sick cell on 02/15/2022.

Per Policy DC-ADM006(A)(1); (A)(2), I was to be given an appraisal
by qualified health care personnel within 14 days of arrival and,
as previously diagnosed, provided the appropriate level of medical
treatment, as required by my medical condition. I was not seen
within 14 days of transfer for such assessment, nor was the
appropriate level of treatment provided for my condition. No notice
for renewed assessment was given by either SCI-Albion or SCI-Phoenix
prior to job placement placing me in food services to perform heavy-duty
work, which was specifically restricted by SCI-Albion medical personnel
restriction stating: "NOT MEDICALLY CLEARED FOR FOOD SERVICES,"
entered on 05/29/2019, including bottom bunk, lite-duty work
assignment, no standing/sitting for more than 4 hours, no lifting more
than 10 pounds, no impact jobs/sports, no jumping/climbing/excessive bending.
Half of these restrictions were entered into SAPPHIRE during my
confinement to SCI-Phoenix in January 2019, which have followed me
the past 3 years of my commitment, except when transferring back
to SCI-Phoenix. After placing weekly sick calls for 6 weeks, new
medical restrictions were eventually entered and I was not removed

**JA 400**

Final Appeal #968790

Troy Vincent Lenald / NS1262                      04/04/2022        pg #2/2

my monthly salary, sustaining pain and suffering, cruel and unusual punishment, and paying copays. This injury is a direct result of being placed in a situation to be injured with reckless disregard and deliberate indifference to my disability.

As such, I seek compensation for injury(s) suffered as related to the "Continual Violation Doctrine." The local decision must be overturned in favor of the inmate due to SCI-Phoenix's failure to follow DC-ADM006 (A)(1); (A)(2) which states I will be assessed within 14 days and accommodated per previous medical assessment; Policy 13.2.1 Section 17 which states the medical department is responsible to maintain records; and intentional disregard by job placement, medical personnel and food services not heeding my several verbal and written warnings and not verifying my statement by simply looking in the "restriction history" tab to confirm my lite-duty only work assignment prior to transfer approval.

I kindly request re-implementation of my pre-existing medical restrictions from previous assessment at SCI-Albion on 05/29/2019.

Respectfully,

**JA 401**



# Final Appeal Decision

**Secretary's Office of Inmate Grievances & Appeals**
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

06/30/2022 11:18

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| SCI Filed: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 968790 | | *EB.1018'* |

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted above. In accordance with the provisions of DC-ADM 804, Inmate Grievance System Policy, the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

## Decision: Uphold Response

It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate or uphold in part/Deny in part. This response will include a brief rationale summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

## Response:

In this grievance, you indicate that on 2/15/22, you were seen by Ms. Tara in medical to have your restrictions/light duty restrictions transferred from ALB; however, Ms. Tara indicated that she did not know how to get your light duty restrictions and bottom bunk status back into the computer. You indicate that you wrote Deputy Sipple twice since 1/27/22, and have not been seen or given a reply since your last request on 2/7/22. You requested no type of relief within your initial grievance.

This office finds the responses provided to you appropriately addressed your concerns. Records reflect that your employment restrictions expired in October of 2021, approximately two months prior to your transfer to SCI PHX. Records further reflect that when you were seen in medical on 2/15/22, employment restrictions were provided to you. If you feel that the restrictions are not correct, you are encouraged to sign up for sick call for evaluation.

Based on the aforementioned information, this office upholds the responses provided to you. Additionally, any issues raised in your appeal to final review that were not raised within your initial grievance, including requested relief, will not be addressed.

| Signature: | *Keri Moore for* |
|---|---|
| Name: | D. Varner |
| Title: | Chief Grievance Officer |
| Date: | 06/30/22 |

CC: DC-15/Superintendent - Phoenix
Grievance Office

# EXHIBIT P-18

Due: 3/24    C Kline    C Work

DC-804
Part 1

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
968960
GRIEVANCE NUMBER

## OFFICIAL INMATE GRIEVANCE

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: 02/18/2022 |
|---|---|---|

FROM: (INMATE NAME & NUMBER)
Troy Lewald / NS12162

SIGNATURE OF INMATE:

WORK ASSIGNMENT:
Kitchen

HOUSING ASSIGNMENT:
EB2007-1

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

Today, 02/18/2022 at 07:45, Supervisor Ms. Deshields in the kitchen asked me to perform heavy-duty work. I explained to her I am partially disabled, in pain and unable to perform heavy-duty work. I requested to be seen by medical staff for my severe pain and she refused, but sent me back to the block. The kitchen supervisors are treating me with reckless disregard, gross negligence, intentional indifference. They have conscious disregard to my documented medical restrictions and disability.

B. List actions taken and staff you have contacted, before submitting this grievance.
Supervisor Ms. Deshields, Unit C.O. Ms. G, UM Ski, Deputy Sipple, Medical Administrator

Your grievance has been received and will be processed in accordance with DC-ADM 804.

Signature of Facility Grievance Coordinator      Date: 3/3/2022

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

***DC-ADM 804, Inmate Grievance System Procedures Manual***
***Section 1 – Grievances & Initial Review***      *Attachment 1-A*
Issued: 1/26/2016
Effective: 2/16/2016



## Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

03/28/2022 03:53

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
| --- | --- | --- | --- |
| Facility: | Phoenix | Unit Location: | E / B 2007 |
| Grievance #: | 968960 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision:Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

In your grievance you claimed that you were ordered to do work by CFSI Deshield on 2/18/22. You stated that you were in pain and partially disabled. You claimed that you requested to go to medical and CFSI Deshield refused and sent you back to your housing unit. You went on state that the kitchen supervisors are treating you with reckless disregard to your documented medical restrictions. You have been removed from employment in the kitchen. This grievance is resolved.

| Signature: | |
| --- | --- |
| Name: | B. Kline |
| Title: | |
| Approver: | G. Orlando |
| Date: | 3/28/2022 |

CC: Facility Grievance Coordinator
DC-15

---

First-Level Grievance Appeal #968960
To: Facility Manager

Troy Vincent Lewald /NS1262                    04/03/2022    Pg #1/2

This appeal is for where my medical restrictions were not properly
implemented upon my arrival to SCI-Phoenix, I was not assessed
by SCI-Phoenix medical department within 14 days of arrival, per
Policy DC-ADM006(A)(1), I was placed in food services to
perform heavy-duty work where I was injured and placed on
medical lay-in pay on reduced earnings.

Initial respons by B.Kline from food services was due on
3/24/2022 and was not provided till 3/28/2022 and given to me
on 3/31/2022. Mr. Kline notes I was removed from employment
in the kitchen, but does not note I had to sustain an injury
and be cared for by medical staff in order to be released from
food services, nor does he acknowledge the pain and suffering I
had to endure or the loss of salary by the reduction of pay from
$0.42 per hour times 140 hours ($58.80) to $0.50 per day
medical lay-in pay for 15 days ($7.50), causing me a loss of $51.30
for the month and an additional $5.00 to see medical and
another $5.00 for medication to reduce pain and stop back
spasms, for a total monthly loss of $61.30.

Mr. Kline also fails to state CFSI Deshield's failure to complete
an incident report documenting the injury and referencing the
medical department's examination, as per Policy DC-ADM816(F)(1).
This injury is a direct result of being placed in a situation to be
injured with intentional disregard to my medical disability.

**Superintendent's Office**
**SCI Phoenix**
APR 7 2022
**Received**

JA 406

First-Level Grievance Appeal #968960
To: Facility Manager

Troy Vincent Lewald / NS1262                    04/03/2022        pg#2/2

As such, I am due a <u>minimum compensation</u> for loss wages ($51.30), medical attention ($5.00) and prescriptions ($5.00), totally $61.30 total loss in monies, not including pain and suffering for the injury(s) suffered as related to the "Continual Violation Doctrine" for which no new complaint need be filed. Policy DC-ADM 816 (F)(1) states: "If you suffer a job-related injury, as verified by the medical department, you are eligible to continue to be <u>paid at the rate earned on the day prior to the injury.</u>" Policy DC-ADM 820 (1)(B)(15) states: "medical services provided as a result of an injury or illness arising from inmate's facility work assignment, <u>shall not result in a charge to the inmate.</u>"

I kindly request an immediate credit to my account for lost earnings during the past pay period per Policy DC-ADM 816 (F)(1) and co-payments taken from my account by medical to address said injury per Policy DC-ADM 820(1)(B)(15).

                          Respectfully,
                          Troy Vincent Lewald / NS1262



## Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

04/21/2022 08:05

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | E / B |
| Grievance #: | 968960 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision:Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim on 2/18/2022, at 0745 hrs., Ms. Deshields, Kitchen Supervisor, asked you to perform heavy-duty work. You told her that you are partially disabled, in pain, and unable to perform heavy-duty work. You requested to be seen by medical staff for your pain and she refused, but sent you back to your unit. You claim that Kitchen Supervisors are treating you with reckless disregard, gross negligence, and intentional indifference. You claim that they have a conscious disregard for your documented medical restrictions and disability.

In my investigation, I find that the response by Mr. Kline is accurate, as you were removed from employment in the kitchen on 2/22/2022. No one was aware that you had gone to Medical to request employment restrictions. When you arrived at SCI PHX on 12/29/2021, you had no employment restrictions; as any restrictions held previously, had expired on 1/28/2019, 5/22/2019, 10/20/2020, & 10/6/2021. If restrictions are necessary to be reinstated, it is the inmate's responsibility to follow the sick call process to request renewal through the Medical department. Ms. Deshields was correct in sending you back to your unit, so that you could send a sick call request to be seen by a provider. I will note that by your own account, you were asked to perform heavy-duty work and you told her that you are partially disabled, in pain, and unable to perform heavy-duty work. You were then sent back to your unit. You have not included any mention of a work-related injury. However, you have been untruthful with Food Services from 2/15/2022 to 2/18/2022.

I see no evidence of staff treating you with reckless disregard or gross negligence, or intentional indifference as staff were not aware that you had gone to Medical and requested to reinstate previously expired employment restrictions effective 2/15/2022.

Additional information will not be addressed as it was not included in the initial grievance.

I will uphold the decision of the grievance officer and deny your appeal and all requested relief.

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B

NS1262    Grievance #:968960

LEWALD, TROY VINCENT

Issued: 1/26/2016 Effective: 2/16/2016

Page1 of 2

**JA 408**

Final Appeal # 968960

Troy Vincent Lewald / NS1262                 05/01/2022    pg#1/2

This appeal is for where kitchen supervisors were treating me with reckless disregard and intentional indifference by showing conscious disregard to my documented medical restrictions and disability.

Facility Manager's appeal response falsely claims "No one was aware that you had gone to medical to request employment restriction." Please see Exhibit 'A' and Exhibit 'B'' notifying Inmate Employment of my pre-existing lite-duty status dated 12/28/2021 and 01/13/2022, prior to performing work in food services. I notified Inmate Employment twice about my disability prior to being placed in food services and they did nothing to address the issue. Also, looking through my medical record shows I was called to sick call 7 times in less than 4 weeks to complain about missing medical restrictions, which were deleted the day my I.B.J approval was cleared. Facility Manager also appears to have dates confused, as no restrictions expired on 01/28/2019, as that was my initial comittment date to the PADOC at SCI-Phoenix where intake added the initial restrictions, which had no problem following me to SCI-Camphill and no problem again following me to SCI-Albion. Facility Manager also confuses the 05/22/2019 date with a removal without acknowledging the 05/24/2019 date that even further restrictive restrictions were added by Stroup, Daniel at 07:40 AM, who properly assessed me within 14 days of transfer, as policy states is the due process. Had SCI-Phoenix properly assessed me within 14 days of arrival as policy dictates, it would have worked as the "fail-safe"

**JA 409**

Final Appeal #968960

Troy Vincent Lewald / NS1267                    05/01/2022    pg #2/2

it was designed to work as and they would have recognized the restriction "Not Medically cleared for food services" restriction I had prior to I.B.T. Facility Manager does inadvertently raise a valid point by highlighting the removal of restriction dates, as these dates correspond with my transfer dates and show it is the Department's internal policy to remove restrictions prior to transfer at the sending facility and rely on the receiving facility's compliance to adhere to Policy DC-ADM006(A)(1) and evaluate inmates within 14 days of transfer, in which SCI-Phoenix failed to do in this case. To further note notification of individuals, I notified Inmate Employment (in writing), CFSI Deshields, CFSS Poli, CFSS Choate (verbally), Medical Director Huner (in writing) (Exhibit 'C'), Deputy Sipple (in writing three times) (Exhibit 'D'), Unit Manager Durand, Unit Manager Strenkoski, Unit Counselor Stimmel, Unit C.O. Grennon (all verbally), PSS Sheeran (in writing), LPM Nardella and PSA Drummond (both verbally and in writing) and there are at least 7 grievances beyond first-level appeal highlighting my missing work restriction, which were read and processed by the Facility Manager directly in his responses. Per Policy 13.2.1 Section 17, the onerous of medical restriction continuity is the Department's obligation, SCI-Phoenix failed to adhere to policy and inmate has gone above and beyond reasonable limits of due diligence to notify key personell. As such, I seek a minimum compensation for injury(s) suffered as related to the "Continual Violation Doctrine" and #61.30 of lost wages due to SCI-Phoenix's intentional indifference and conscious disregard toward my documented disability initiated at SCI-Phoenix January 2019.

Exhibit 'A'

Grievance # 968960

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   Inmate Employment

2. Date:
   12/29/2021

3. By: (Print Inmate Name and Number)
   Troy Lewald / NS1262

   _____
   Inmate Signature

4. Counselor's Name:

5. Unit Manager's Name:

6. Work Assignment:
   Block Tutor

7. Housing Assignment:
   EB2007-1

8. Subject: State your request completely but briefly. Give details.

I was transferred to SCI-PHX from SCI-ALB on a promotional transfer. At SCI-ALB, I was a block tutor on an honor block with other outside workers. I was told I would keep my job and pay-rate when at SCI-PHX. Could you please confirm I am still a block tutor and will be provided the GED books to help students on the block? If not, I would like to interview for the block tutor job, or an in-class tutor job if the block tutor job is not available to me. I'm also willing to move to a new block if necessary to keep my block tutor job. I am light-duty assigned and in need of work.

    Thank you so much for your assistance.
    Troy

9. Response: (This Section for Staff Response Only)

All go on GTP until work Assignment placement is made into work Assignment. Write to Education Principal to be considered for Block tutor.

To DC-14 CAR only ☐                To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _M Kellips_____ DATE _____
                              Print                    Signature

Exhibit 'A'   DOC-001293

f: 5450180 pg 40 of 43 for TROY LEWALD

Exhibit 'B'

Grievance #968960

| Form DC-135A | Commonwealth of Pennsylvania |
| | Department of Corrections |

**INMATE'S REQUEST TO STAFF MEMBER**

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, It can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
M. Dellipanti, CFVC

2. Date: 01/13/2022

3. By: (Print Inmate Name and Number)
Troy Lewald/NS13l02

Inmate Signature

4. Counselor's Name: Stimmel

5. Unit Manager's Name: Durand

6. Work Assignment: I-BT-GLP

7. Housing Assignment: EB2001-1

8. Subject: State your request completely but briefly. Give details.

I wrote a request to you about getting my block tutor job back and you replied to write education, but you assigned me to the kitchen? I was transferred here on an Incentive Based Transfer from Albion, where I was a block tutor - CLASS III Job, at top pay of $0.42 per hour. I was not demoted to a CLASS I job I also am lite-duty with medical disabilities and unable to work in a kitchen job or perform those duties. Could you please fix this and assign me a CLASS III job at top pay that can be performed by someone with lite duty medical restrictions?

"Thanks so much,
Troy

9. Response: (This Section for Staff Response Only)

Mr. Lewald, You can be placed in any job regardless of pay offered. If you refuse you are placed without pay and lose your paygrate. if EDUC. fires you you will change jobs

To DC-14 CAR only ☐     To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _____ Print _____ Signature _____ DATE _____

**7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips**    **Attachment 3-A**

CC: File

DOC-001294
Exhibit 'B'

**JA 412**

Exhibit 'C'

Grievance # 968960

**Form DC-135A**

**INMATE'S REQUEST TO STAFF MEMBER**

**Commonwealth of Pennsylvania**
**Department of Corrections**

**INSTRUCTIONS**
Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
Ms Huner / Medical Director

2. Date:
02/18/2022

3. By: (Print Inmate Name and Number)
Troy Lewald / NS1262

Inmate Signature

4. Counselor's Name:
Stimmel

5. Unit Manager's Name:
Ski

6. Work Assignment:
Kitchen

7. Housing Assignment:
EB2007-1

*(stamped vertically)* Medical Department FEB 28 2022 RECEIVED

8. Subject: State your request completely but briefly. Give details.

Ms Huner:
   My back is killing me and I am in a lot of pain! Today at work something popped in my lower back and is causing me pain. I asked my Supervisor Ms. Deshields to send me to medical as emergency, and she said no, she will send me back to the block. I asked the block C.O. Ms. G to call medical as emergency and when she called they told her to have me fill out a sick call! It is a holiday weekend and I am in so much pain and they won't even call me till next Wednesday!!! I told these people I am lite-duty and they will not listen. They keep pushing me to do heavy-duty work and I have to refuse and they keep pushing me past my limits. I saw Ms. Tern in medical on 02/15/2022 at 10:40AM and she said she doesn't know how to get my lite-duty and my bottom-bunk status back in the computer. She is using Sapphire and Inmate Employment is using CAPTOR and Inmate Employment doesn't see lite-duty in their system. Please help! I'm in so much pain and don't know what to do!

9. Response: (This Section for Staff Response Only)
I transferred from SCI-Albion and have been lite-duty, bottom-bunk status my entire incarceration the past 3 years I don't know why since my transfer all my medical restrictions have been deleted.

~~PLEASE SEE SICK CALL PHYSICIAN~~ - for evaluation -

* No Work / medically unemployed
2/23/22 - 3/16/22

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME ___M. Savage, ARNS___
                           Print                    Signature          DATE FEB 2 4 2022

**7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips**

**Attachment 3-A**

DOC-001295

Exhibit 'C'

**Exhibit 'D'**

| Form DC-135A | Commonwealth of Pennsylvania |
| --- | --- |
| **INMATE'S REQUEST TO STAFF MEMBER** | **Department of Corrections** |

**INSTRUCTIONS**
Complete Items number 1-8. If you follow instructions in preparing your request, It can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)  **Deputy Sipple**

2. Date:  **02/07/2022**

3. By: (Print Inmate Name and Number)  **Troy Lewald / NS1262**

Inmate Signature

4. Counselor's Name:  **Stimm**

5. Unit Manager's Name:  **Ski**

6. Work Assignment:  **Kitchen**

7. Housing Assignment  **EB 6004**

RECEIVED  MAR 01 2022  Medical Department

FEB 10 REC'D

DEPUTY SUPERINTENDENT FOR CENTRALIZED SERVICES

8. Subject: State your request completely but briefly. Give details.

Deputy Sipple:

I need your assistance getting my medical restrictions transfered from SCI-Albion medical system. I submitted multiple sick calls and this is my second request to you. All staff has stated you are the only person that can help me.

Per policy, please reply within (7) working days.

Thank you so much,

Troy

9. Response: (This Section for Staff Response Only)

Restrictions were updated 2/5/22

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME ___**B. Huner, CHCA** PHY___  ___signature___ DATE **4/27/22**
                           Print                                    Signature

*7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips*          **Attachment 3-A**

CC: File, Supervisor DeShields, Supervisor Poli

**Exhibit 'D'**

DOC-001296

Grievance # 968960

**JA 414**

# EXHIBIT P-19

**NOTIFICATION OF**
**INMATE RELEASED FROM**
**WORK ASSIGNMENT**
Issued by: Inmate Employment Office



Inmate #:

# NS1262

Commit Name:

**LEWALD,**
**Troy**

*EB 2007*

Photo Date: 2/24/2021

You are being released from
Current work assignment
*Q1-Kitchen*
Effective: *2/22/2022*
as a result of reason listed below:

- ☐ Housing Change
- ☐ Job Change
- ☐ TC Placement
- ☐ Unit Team Action
- ☐ 2M/2R Placement
- ☒ Medical Restrictions/Limitations
- ☐ Misconduct Sanction via Hearing Examiner or Informal Resolution
- ☐ Not Reporting to work – not eligible for GLP
- ☐ Inmate Requested Release from Work – not eligible for GLP
- ☐ Education - Non-Compliant with Mandated Educational Programming
- ☐ Other:

**JA 416**

# EXHIBIT P-20

LEWALD, TROY VINCENT  #NS1262

DOB: 4/17/1979 (45y)   Location: J-A-1002-01

## DC-472 - Progress Note Medical Provider

**Date/Time:**
02/23/2022 14:15

**Facility:**
SCI PHOENIX

**Type of Progress Note:**

☑ SOAP Note

**Subjective:**
WSC  43 YOWM is C/O cervical spine pain in back, radiating to his shoulders and arms, also c/o sciatica pain from low back to mid-calf areas, describes pain sharp , stabbing type at times and dull pain all the times, some swelling and stiffness in his  hands in mornings . LOwer extremities stiff if sits long.  C/P numbness and tingling in lower extremities.

### Objective

| VaxName | LotNumber | Manufacturer | AdminDate | AdminByName | AdminNotes | Temp | AdminSite |
|---------|-----------|--------------|-----------|-------------|------------|------|-----------|
| COVID-19 vaccine, vector-nr, rS-Ad26, PF, 0.5 mL | 202A21A | JANSSEN | 8/5/2021 3:40:00 PM | GRINNELL, | ADMINISTER 0.5ML(S) INTRAMUSCULARLY (IM) X 1 DOSE | | DELTOID LEFT |

**Have you had any adverse reactions to the Johnson & Johnson (Janssen) COVID-19 Vaccine:**

☑ No

### Vitals

**Temp:**
NO ANSWER PROVIDED

**Respirations:**
NO ANSWER PROVIDED

**Blood Pressure:**
NO ANSWER PROVIDED

**O2 Sats:**
NO ANSWER PROVIDED

**Pulse:**
NO ANSWER PROVIDED

**Objective Comments:**
A+OX3, MAE but weak.  Grips, biceps and triceps weak, strength +2 only.

Lower extremities weak to dorsi and plantar flexions, straight leg raising.. Sensation intact. Bilateral multiple Varicous veins  noted.

### On-site Labs Performed at This Visit

#### On-site Lab Results (Previous Three Months)

**Select all On-site Labs that are being performed at the visit:**
NO ANSWER PROVIDED

**Assessment:**
Arthritis,  S/P sports injuries, Sciatica

---

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SAFAK-TEZCAN,                on 02/23/2022
14:33:39

**JA 418**

DOC-001016

## Plan

**Information:**

Motrin 600 mg Po TID X 14 days by mouth PRN will be ordered by ■ Kaminsky, PA..

Buttom bunk ordered x 6 months

3 weeks of work.

**Medications:**
☑Renewed

**Select all that apply:**
*NO ANSWER PROVIDED*

### On-Site Lab to be Performed After the Visit on One Occasion

**Select Labs:**
*NO ANSWER PROVIDED*

**New Chronic Care Clinic Patient (Select all Chronic Clinics that apply):**
*NO ANSWER PROVIDED*

**Discontinue Chronic Care Clinic(s):**
*NO ANSWER PROVIDED*

Selecting Discontinue all Chronic Care Clincs above will remove the patient from the Chronic Clinic hotlist

**Refer to (check all that apply):**
*NO ANSWER PROVIDED*

**Request Outside Medical Records:**
*NO ANSWER PROVIDED*

**Did you review Special Needs and Restrictions:**
☑Yes

**Provider Line follow-up needed:**
☑No

**Additional Comments:**
*NO ANSWER PROVIDED*

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| SAFAK-TEZCAN ■■■■■, CRNP | 02/23/2022 14:33:39 |

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By SAFAK-TEZCAN, ■■■■■■ on 02/23/2022
14:33:39

**JA 419**          DOC-001017

# EXHIBIT P-21

**Form DC-135A**

## INMATE'S REQUEST TO STAFF MEMBER

**Commonwealth of Pennsylvania**
**Department of Corrections**

**INSTRUCTIONS**

Complete Items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)

M. Savage, ARNS

2. Date: 02/28/2022

3. By: (Print Inmate Name and Number)

Troy Lewald / NS1262

Inmate Signature

4. Counselor's Name: Stimmel

5. Unit Manager's Name: Ski

6. Work Assignment: Kitchen

7. Housing Assignment: EB2007

8. Subject: State your request completely but briefly. Give details.

Ms. Savage:

Thank you so much for your reply to my request on February 21st. Yes, I am currently on medical layin set to expire on 03/16/2022. I have been seen on several sick calls and staff said they cannot help with the issue. I was transferred here from SCI-Albion and all my medical restrictions for the past 3 years were removed. I am bottom bunk, lite-duty, no standing/sitting more than 4 hours, no impact work/sports, no lifting more than 10 pounds, no jumping/heights.

Policy 13.2.1 Section 17 (A) (2) (D) "The original medical record is maintained in a confidential fashion and accompanies the inmate to the transferring department facility."

Policy 13.2.1 Section 17 (B) (2) (A) "When an inmate is a permanent transfer, the entire medical record, and x-ray file, shall be prepared for movement to the receiving facility."

**9. Response: (This Section for Staff Response Only)**

Ms. Tara in the medical department has seen me twice and said she does not know how to get my medical restrictions back into the computer, she does not deal with records.

* No Work / Medically unemployed 2/23/22 - 3/16/22
entered by Ms. TARA

To DC-14 CAR only ☐          To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _____ M. Savage, ARNS _____
Print

_____ ✓ _____          DATE MAR 0 8 2022
Signature

7.2.1. Counseling Services Procedures Manual - Section 3, Request Slips          Attachment 3-A

# EXHIBIT P-22

**LEWALD, TROY VINCENT**  #NS1262

DOB: 4/17/1979 (45y)   **Location:** J-A-1002-01

## DC-472 - Progress Note Medical Provider

**Date/Time:**
03/03/2022 13:18

**Facility:**
SCI PHOENIX

**Type of Progress Note:**
☑ SOAP Note

**Subjective:**

WSC in medical department

Thoracic area pain. reportedly had injury at work - seen on 2/23/22 - Motrin was supposed to be ordered but was not.

### Objective

| VaxName | LotNumber | Manufacturer | AdminDate | AdminByName | AdminNotes | Temp | AdminSite |
|---------|-----------|--------------|-----------|-------------|------------|------|-----------|
| COVID-19 vaccine, vector-nr, rS-Ad26, PF, 0.5 mL | 202A21A | JANSSEN | 8/5/2021 3:40:00 PM | GRINNELL, ▮▮▮ | ADMINISTER 0.5ML(S) INTRAMUSCULARLY (IM) X 1 DOSE | | DELTOID LEFT |

**Have you had any adverse reactions to the Johnson & Johnson (Janssen) COVID-19 Vaccine:**
☑ N/A

### Vitals

**Objective Comments:**

WDWN, NAD, alert, speech clear, communicative

Gait WNL

### On-site Labs Performed at This Visit

#### On-site Lab Results (Previous Three Months)

**Assessment:**
back pain

### Plan

**Information:**
RTC PRN - purchase from commissary

**Medications:**
☑ Start New

---

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

**Patient Name:** LEWALD, TROY VINCENT
**Patient Number:** NS1262
**Location:** J-A-1002-01
**DOB:** 4/17/1979
**Facility:** SCI PHOENIX
**Electronically Signed By** ANNINO▮▮▮▮, DO on 03/03/2022 13:24:41

1 of 2

DOC-001200

LEWALD, TROY VINCENT  #NS1262                    **DOB:** 4/17/1979 (45y)   **Location:** J-A-1002-01

| On-Site Lab to be Performed After the Visit on One Occasion

Selecting Discontinue all Chronic Care Clincs above will remove the patient from the Chronic Clinic hotlist

Did you review Special Needs and Restrictions:

☑ Yes

Provider Line follow-up needed:

☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| ANNINO███, DO | 03/03/2022 13:24:41 |

## Notes List

| Created On | Description | Category Name | Created By |
|---|---|---|---|
| 2022-03-03 13:28:53 | IM decided that he did not want to pay 5 for Motrin - order cancelled | ADDENDUM | ANNINO███ DO |

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By ANNINO███, DO on 03/03/2022 13:24:41

**JA 424**
2 of 2

DOC-001201

# EXHIBIT P-23

**LEWALD, TROY VINCENT**  #NS1262

## DC-472 - Progress Note Medical Provider

| Date/Time: | Facility: |
|---|---|
| 03/14/2022 10:00 | SCI PHOENIX |

**Type of Progress Note:**

☑ SOAP Note

**Subjective:**

WSC: Patient c/o lower back pain and spasms getting worse. Pain today 8/10. He can not sleep due to the pain.

He has Hx: herniated disc surgery lower back 2016.

### Objective

| VaxName | LotNumber | Manufacturer | AdminDate | AdminByName | AdminNotes | Temp | AdminSite |
|---|---|---|---|---|---|---|---|
| COVID-19 vaccine, vector-nr, rS-Ad26, PF, 0.5 mL | 202A21A | JANSSEN | 8/5/2021 3:40:00 PM | GRINNELL, ▇ | ADMINISTER 0.5ML(S) INTRAMUSCULARLY (IM) X 1 DOSE | | DELTOID LEFT |

**Have you had any adverse reactions to the Johnson & Johnson (Janssen) COVID-19 Vaccine:**

☑ No

### Vitals

| | |
|---|---|
| **Temp:** | **Respirations:** |
| *NO ANSWER PROVIDED* | *NO ANSWER PROVIDED* |
| **Blood Pressure:** | **O2 Sats:** |
| *NO ANSWER PROVIDED* | *NO ANSWER PROVIDED* |
| **Pulse:** | |
| *NO ANSWER PROVIDED* | |

**Objective Comments:**

Patient alert oriented x 3 able to ambulate for appointment.

Patient able to bend over and expand spine with some tenderness.

Lower back Scar + tattoo C/D/I

### On-site Labs Performed at This Visit

#### On-site Lab Results (Previous Three Months)

Select all On-site Labs that are being performed at the visit:

*NO ANSWER PROVIDED*

**Assessment:**

---

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CAMPOS, ▇ on 03/14/2022 13:17:58

Chronic back pain

## Plan

**Information:**

Ibuprofen 600 mg TID x 7 days

Baclofen 10 mg at night PRN

Start stretching exercises.

**Medications:**
☑ Start New

**Select all that apply:**
*NO ANSWER PROVIDED*

### On-Site Lab to be Performed After the Visit on One Occasion

**Select Labs:**
*NO ANSWER PROVIDED*

**New Chronic Care Clinic Patient (Select all Chronic Clinics that apply):**
*NO ANSWER PROVIDED*

**Discontinue Chronic Care Clinic(s):**
*NO ANSWER PROVIDED*

Selecting Discontinue all Chronic Care Clincs above will remove the patient from the Chronic Clinic hotlist

**Refer to (check all that apply):**
*NO ANSWER PROVIDED*

**Request Outside Medical Records:**
☑ No

**Did you review Special Needs and Restrictions:**
☑ Yes

**Provider Line follow-up needed:**
☑ No

**Additional Comments:**
*NO ANSWER PROVIDED*

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CAMPOS, ▮ on 03/14/2022 13:17:58

LEWALD, TROY VINCENT  #NS1262

DOB: 4/17/1979 (45y)  Location: J-A-1002-01

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| CAMPOS, ▮▮▮▮ CRNP | 03/14/2022 13:17:58 |

---

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By CAMPOS, ▮▮▮▮ on 03/14/2022 13:17:58

**JA 428**

DOC-001010

# EXHIBIT P-24

Ms. Delliponti                    Work

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF CORRECTIONS**

FOR OFFICIAL USE
**973890**
GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: PHX | DATE: 3/29/2022 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) Troy Vincent Lewald / NS1262 | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: GLP | HOUSING ASSIGNMENT: EB 2007-1 | |

**INSTRUCTIONS:**
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

On 03/28/2022, I was paid for "No Work/Medical" medical lay-in after being injured at work on 02/18/2022. This pay does not match my previous CLASS 3 STEP D pay rate of $0.42/hr times approximately 140 hours of work, per DC-ADM 816(F)(1) to continue at the rate earned on the day prior to the injury.

B. List actions taken and staff you have contacted, before submitting this grievance.
Contacted Inmate Employment, Inmate Accounting and Unit Counselor Stimmel.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_____                    13/30/2022
Signature of Facility Grievance Coordinator                Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

Superintendent's Office
SCI Phoenix
MAR 3 0 2022
Received

Attachment 1-A



## Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

04/18/2022 03:48

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | E/B/2/007 |
| Grievance #: | 973840 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision: Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

In your grievance you state that on 3/28/2022 you were paid for No Work Not Medically cleared medical lay-in after being injured at work on 2/18/2022. This pay does not match your previous class 3 step D pay rate of .42/hr times approximately 140 hours of work per DC ADM816 (F)(1) to continue at the rate earned on the day prior to the injury.

Per DC-ADM 816 Inmate Compensation Manual

Section 1 – General Procedures

O. Illness or Injury

1. An inmate who suffers a work-related injury, as verified by the Medical Department, is eligible to receive compensation at the rate he/she earned on the last workday prior to the injury. The supervisor must complete an incident report documenting the injury for use by the Medical Department. The medical pay period shall not exceed 90 calendar days and each case will be reviewed every 30 days to determine if the medical pay should continue. After 90 days, the inmate shall be paid the Medical Allowance compensation rate.

2. The Medical Department must complete a Medical Lay-In Report (attachment 1-F) for an inmate who is unable to work for medical/mental health reasons, indicating the date the lay-ion begins and the date it ends.

In the CAPTOR system you are not listed as Injured Job Related you are simply listed as No WORK Medically not cleared. Inmate Employment did not receive a Medical Lay-in Report indicating you were injured at work. Therefore, the Inmate Employment Office can only rely on the information that is communicated to them thru the specific departments to pay inmates.

This grievance and requested relief are denied based on the fact that there is nothing indicating you were injured at work to support your grievance.

**DC-ADM 804, Inmate Grievance System Procedures Manual**

**Section 1 - Grievances & Initial Review, Attachment 1-D**

NS1262    Grievance #:973840

LEWALD, TROY VINCENT

Issued: 1/26/2016  Effective: 2/16/2016

Page1 of 2

**JA 431**

First-Level Appeal #973840
To: Facility Manager

Troy Vincent Lewald / NS1262                    04/24/2022    pg #1/2

This appeal is for where my pay rate was reduced from
$0.42)hr to $0.50/day for 15 days of Medical Lay-in, after
being injured on the job at Food Services.

Superintendent's Office
SCI Phoenix
APR 27 2022
Received

Food Services supervisors CFSI Deshield and CFSS Poli
failed to submit an incident report as required by DC-ADM 816(O)(1)
on the date of the incident, on 02/18/2022. When I was sent back
to the block without medical assistance, I notified Block Officer
Ms G. and Unit Manager Ms. Ski, who attempted to get me immediate
medical attention and were told to have me submit a sick call. I
immediate wrote the Medical Director, Ms. Huner on Form DC-135A
to notify her of the situation and her reply on 02/24/2022 was I
need to submit a sick call to be seen. (Exhibit 'A') I was seen
by medical 5 days later on 02/23/2022 at 14:33 by
Ms. Ayse Nermin Safak-Tezcan, who evaluated me and entered
the medical restrictions and Medical Lay-in, but failed to create a
Medical Lay-in Report (attachment 1-F) for the incident, as she
was new and unfamiliar with the procedures of the Department.

I kindly request proper pay adjustment per Policy DC-ADM 816(F)(1)
to continue at the rate earned on the day prior to the injury and not
be punished for the failures of Food Services supervisors and
medical staff for not properly following procedures outlined in
Policy DC-ADM 816(O)(1) ;(2), respectfully.

JA 432

Exhibit 'A'     First Level Appeal #973840     pg #2/2

Troy Vincent Lewald/NS1262     To: Facility Manager     04/24/2022

Form DC-135A

**Commonwealth of Pennsylvania**
**Department of Corrections**

## INMATE'S REQUEST TO STAFF MEMBER

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   Ms Huner / Medical Director

2. Date:
   02/18/2022

3. By: (Print Inmate Name and Number)
   Troy Lewald / NS1262

   _Inmate Signature_

4. Counselor's Name:
   Stimmel

5. Unit Manager's Name:
   Ski

6. Work Assignment:
   Kitchen

7. Housing Assignment:
   EB2007-1

*Medical Department   FEB 24 2022   RECEIVED*

8. Subject: State your request completely but briefly. Give details.

Ms Huner: My back is killing me and I am in a lot of pain! Today at work something popped in my lower back and is causing me pain. I asked my supervisor Ms. Deshields to send me to medical as emergency, and she said no, she will send me back to the block. I asked the block C.O. Ms. G to call medical as emergency and when she called, they told her to have me fill out a sick call! It is a holiday weekend and I am in so much pain and they won't even call me till next Wednesday!!! I told these people I am lite-duty and they will not listen. They keep pushing me to do heavy-duty work and I have to refuse and they keep pushing me past my limits. I saw Ms. Tara in medical on 02/15/2022 at 10:40AM and she said she doesn't know how to get my lite-duty and my bottom-bunk status back in the computer. She is using Sapphire and Inmate Employment is using CAPTOR and Inmate Employment doesn't see lite-duty in their system. Please help! I'm in so much pain and don't know what to do!

9. Response: (This Section for Staff Response Only) I transferred from SCI-Albion and have been lite-duty, bottom-bunk status my entire incarceration the past 3 years. I don't know why since my transfer all my medical restrictions have been deleted.

PLEASE SEE SICK CALL PHYSICIAN — for evaluation

\* No work/medically unemployed 2/23/22 - 3/16/22

To DC-14 CAR only ☐     To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME ___ M. Savage, ARNS ___   DATE FEB 24 2022
Print      Signature

**JA 433**



# Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

05/13/2022 09:21

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| Facility: | Phoenix | Unit Location: | E/A |
| Grievance #: | 973840 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

**Decision:Uphold Response**

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

I am in receipt of your grievance appeal in which you claim on 2/18/2022, you were injured at work on 2/18/2022, and your pay for "No work/Medical" does not match your previous Class 3 Step D pay rate of $0.42/hr. x 140 hours of work (approximately), to continue at the rate earned on the day prior to injury.

In my investigation, I find that the response by Ms. Delliponti is appropriate. There is no incident report documenting an injury. The Medical department has not completed a Medical Lay-in report for an inmate who is unable to work for medical/mental health reasons. You are not listed as "Injured Job Related" in the Captor system.

You have not provided evidence to substantiate your claims.

Additional information will not be addressed as it was not included in the initial grievance.

I will uphold the decision of the grievance officer and deny your appeal and all requested relief.

Signature:

| Name: | M. Scherer |
|---|---|
| Title: | Facility Manager |
| Date: | |

cc: DC-15
File

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B

Issued: 1/26/2016  Effective: 2/16/2016

NS1262    Grievance #:973840

LEWALD, TROY VINCENT

Page1 of 1

**JA 434**

Final Appeal #973840

Troy Vincent Lewald/NS1262                    05/22/2022    pg#1/2

This appeal is for where my pay-rate was reduced from
$0.42/hr to $0.50/day, for 15 days of Medical Lay-in,
after being injured on the job in Food Services.

Food Services supervisors CFSI Deshield and CFSS Poli
failed to submit an incident report as required by
DC-ADM 816(0)(1) on the date of the incident, 02/18/2022.
When I was seen by medical, Mr. Ayse Nermin Safak-Tezcan
documented the incident, prescribed medication and gave me
3 weeks of Medical Lay-in, but failed to create a Medical
Lay-in Report (attachment 1-F). I continue to be punished
for the failures of staff to follow DOC policies.

Kitchen supervisors, (Exhibit 'A'), Inmate Employment,
(Exhibit 'B') (Exhibit 'C'), and SCI-Phoenix medical department
were all fully aware of my disability prior to being hurt on
the job on 02/18/2022, yet none of those individuals
acknowledged my disability or took preventive measures to
prevent me from injury as required by USCS Title 42 Subsection
12101 et seq and DC-ADM 006. Once I was injured, staff
failed to follow policy again by failing to file an incident
report or attach a Medical Lay-in report. If I wasn't hurt
by work injury, why was I given Medical Lay-in for 3 weeks,
prescribed medication and seen again on 03/14/2022 and

JA435

Final Appeal # 973840

Troy. Vincent Lewald [NS1262                    05/22/2022  pg#2/2

prescribed even more powerful medication by Ms. Corina Campos?
Why does the camera show me bent over a spilled pile of trays
on the floor on the date in question? After 15 days of
Medical Lay-in were complete where I was paid approximately
$6.50 for the month, I was placed on GLP and paid
approximately $16.50 for the month. Why do I continue to be
punished for being disabled and being approved for incentive-
based transfer? What incentive is this to be a model inmate,
follow the rules and work on my rehabilitation? In the
approximate 5 months of incarceration at SCI-Phoenix,
I have not received even 1 pay equivalent to my pay
while incarcerated at SCI-Albion prior to my incentive-
based transfer, as Policy DC-ADM 816 (1)(U)(4) dictates,
approximately $55.00/month. Even today, 05/22/2022, I
continue to be paid at $0.12/day and not $0.42/hr on
Incentive-Based Transfer (IBT-GLP), even after completing
Medical Lay-in as prescribed by medical.


I kindly request proper pay adjustment per Policy DC-ADM (1)(U)(4)
to receive equivalent pay prior to incentive-based transfer,
Policy DC-ADM 816(E)(1) to continue at the rate earned on
the day prior to the injury and not be further punished for
the failures of staff to follow DOC procedures.

Respectfully,

**JA 436**

Exhibit 'A'

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |

INSTRUCTIONS

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
   Deputy Sipple

2. Date: 02/09/2022

3. By: (Print Inmate Name and Number)
   Troy Lewald / NS1262

   _____
   Inmate Signature

4. Counselor's Name:
   Stimm___

5. Unit Manager's Name:
   Ski

FEB 10 REC'D

6. Work Assignment:
   Kitchen

7. Housing Assignment:
   EB2004

RECEIVED MAR ?? 2022 Medical Department

DEPUTY SUPERINTENDENT CENTRALIZED SERVICES

8. Subject: State your request completely but briefly. Give details.

Deputy Sipple:   I need your assistance setting my medical
restrictions transferred from SCI-Albion medical system. I submitted
multiple sick calls and this is my second request to you. All staff has
stated you are the only person that can help me.

Per policy, please reply within (7) working days.

Thank you so much,

Troy

**9. Response: (This Section for Staff Response Only)**

Restrictions were updated 2/5/22

To DC-14 CAR only ☐        To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _____ B. Huner, CHCA PHY _____   _____ bc _____ DATE 4/27/22
                              Print                              Signature

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer)<br>M. Delliponti, CFVC | 2. Date:<br>01/13/2022 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Troy Lewald / NS12202<br><br>_____<br>Inmate Signature | 4. Counselor's Name:<br>Stimmel |
| | 5. Unit Manager's Name:<br>Durand |
| 6. Work Assignment:<br>IBT-GLP | 7. Housing Assignment:<br>EB2004-1 |

8. Subject: State your request completely but briefly. Give details.

I wrote a request to you about getting my block tutor job back and you replied to write education, but you assigned me to the kitchen? I was transferred here on an Incentive Based Transfer from Albion, where I was a block tutor - CLASS III Job, at top pay of $0.42 per hour. I was not demoted to a CLASS I job I also am lite-duty with medical disabilities and unable to work in a kitchen job or perform those duties. Could you please fix this and assign me a CLASS III job at top pay that can be performed by someone with lite-duty medical restrictions?

Thanks so much,

Troy

9. Response: (This Section for Staff Response Only)

Per policy, you can be placed in any job regardless of pay offered. If you refuse you are placed without pay and lose your payrate. If EDUC hires you you will change jobs

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME _____ Print / Signature _____ DATE _____

**JA 438**

Exhibit 'C'

Grievance # 968960

Form DC-135A

**INMATE'S REQUEST TO STAFF MEMBER**

Commonwealth of Pennsylvania
Department of Corrections

**INSTRUCTIONS**

Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently.

1. To: (Name and Title of Officer)
Ms Huner / Medical Director

2. Date: 02/18/2022

3. By: (Print Inmate Name and Number)
Troy Lewald / NS1262

4. Counselor's Name: Stimmel

Inmate Signature

5. Unit Manager's Name: Ski

6. Work Assignment:
Kitchen

7. Housing Assignment: EB2007-1

*Medical Department* *RECEIVED FEB 24 2022*

8. Subject: State your request completely but briefly. Give details.

Ms Huner: My back is killing me and I am in a lot of pain! Today at work something popped in my lower back and is causing me pain. I asked my Supervisor Ms. DeShields to send me to medical as emergency, and she said no, she will send me back to the block. I asked the block C.O. Ms. G to call medical as emergency and when she called, they told her to have me fill out a sick call! It is a holiday weekend and I am in so much pain and they won't even call me till next Wednesday!!! I told these people I am lite-duty and they will not listen. They keep pushing me to do heavy-duty work and I have to refuse and they keep pushing me past my limits. I saw Ms. Tom in medical on 02/15/2022 at 10:40AM and she said she doesn't know how to get my lite-duty and my bottom-bunk status back in the computer. She is using Sapphire and Inmate Employment is using CAPTOR and Inmate Employment doesn't see lite-duty in their system. Please help! I'm in so much pain and don't know what to do!

9. Response: (This Section for Staff Response Only) I transferred from SCI-Albion and have been lite-duty, bottom-bunk status my entire incarceration the past 3 years. I don't know why since my transfer all my medical restrictions have been deleted.

PLEASE SEE SICK CALL PHYSICIAN — for evaluations —

* NO Work / medically unemployed 2/23/22 - 3/14/22

To DC-14 CAR only ☐    To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _____ M. Savage, ARNS _____
Print

DATE FEB 24 2022

Signature

Exhibit 'D'

| Form DC-135A **INMATE'S REQUEST TO STAFF MEMBER** | Commonwealth of Pennsylvania Department of Corrections |
|---|---|
| | **INSTRUCTIONS** Complete Items number 1-8. If you follow Instructions in preparing your request, it can be responded to more promptly and Intelligently. |

1. To: (Name and Title of Officer)
   Deputy Sipple

2. Date: 02/09/2022

3. By: (Print Inmate Name and Number)
   Troy Lewald / NS1262

   _(Inmate Signature)_

4. Counselor's Name:
   Stimmit

5. Unit Manager's Name:
   Ski

   RECEIVED
   FEB 1 0 REC'D
   DEPUTY SUPERINTENDENT
   CT. SERVICES

6. Work Assignment:
   Kitchen

7. Housing Assignment:
   EB-2004-1

8. Subject: State your request completely but briefly. Give details.

Deputy Sipple:
          I need your assistance setting my medical restrictions transferred from SCI-Albion medical system. I submitted multiple sick calls and this is my second request to you. All staff has stated you are the only person that can help me.

Per policy, please reply within (7) working days.

Thank you so much,

Troy

**9. Response: (This Section for Staff Response Only)**

Restrictions were updated 2/5/22

To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME ___ B. Huner, CHCA PHY ___
                          Print                    Signature         DATE 4/27/22

*7.2.1, Counseling Services Procedures Manual - Section 3, Request Slips*     **Attachment 3-A**

CC: File, Supervisor DeShields, Supervisor Poli

**JA 440**

Exhibit 'D'   DOC-001296



**Final Appeal Decision**

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

07/08/2022 11:07

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| SCI Filed: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 973840 | | |

This serves to acknowledge receipt of your appeal to the Secretary's Office of Inmate Grievances and Appeals for the grievance noted above. In accordance with the provisions of DC-ADM 804, Inmate Grievance System Policy, the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to the Facility Manager, the Facility Manager's response, the issues you raised to final review, and (when applicable) any revised institutional responses required as a result of a subsequent remand action by this office. As necessary, input from appropriate Central Office Bureaus (e.g., Health Care Services, Chief Counsel, Office of Special Investigations and Intelligence, etc) may have been solicited in making a determination in response to your issue as well.

**Decision: Uphold Response**

It is the decision of the Secretary's Office of Inmate Grievances and Appeals to uphold the initial response, uphold the inmate or Uphold in part/Deny in part. This response will include a brief rationale summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

**Response:**

In this grievance, you indicate that on 3/28/22, you were paid for medical lay-in after being injured at work on 2/18/22; however, the pay does not match your previous pay rate of $0.42 an hour per the DC ADM 816. For relief, you request to continue at the rate earned on the day prior to your injury.

This office finds the responses provided to you appropriately addressed your concerns. Despite your claims, no evidence was found to suggest that you were on a Medical Lay-In as you suggest; therefore, you were compensated appropriately. Issues raised in your appeal to this office that were not raised within your initial grievance, included requested relief, will not be addressed. Therefore, this office upholds the responses provided to you and your requested relief is denied.

| Signature: | Keri Moore for |
|---|---|
| Name: | D. Varner |
| Title: | Chief Grievance Officer |
| Date: | 07/08/22 |

CC: DC-15/Superintendent - Phoenix
Grievance Office

---

**DC-ADM 804, Inmate Grievance System Procedures Manual**

**Section 2 - Appeals, Attachment 2-F**

Issued: 1/26/2016 Effective: 2/16/2016

NS1262    Grievance #:973840

**JA 441**

# EXHIBIT P-26

**LEWALD, TROY VINCENT** #NS1262

**DOB:** 4/17/1979 (45y)   **Location:** J-A-1002-01

---

## DC-472 - Progress Note Medical Provider

| Date/Time: | Facility: |
|---|---|
| 04/22/2022 09:32 | SCI PHOENIX |

**Type of Progress Note:**

☑ SOAP Note

### Subjective:

S/C: Pt requesting medication renewal for ibuprofen for chronic LBP ==> medication renewal was completed.

### Objective

| VaxName | LotNumber | Manufacturer | AdminDate | AdminByName | AdminNotes | Temp | AdminSite |
|---|---|---|---|---|---|---|---|
| COVID-19 vaccine, vector-nr, rS-Ad26, PF, 0.5 mL | 202A21A | JANSSEN | 8/5/2021 3:40:00 PM | GRINNELL, | ADMINISTER 0.5ML(S) INTRAMUSCULARLY (IM) X 1 DOSE | | DELTOID LEFT |

**Have you had any adverse reactions to the Johnson & Johnson (Janssen) COVID-19 Vaccine:**

☑ N/A

### Vitals

| | |
|---|---|
| **Temp:** | **Respirations:** |
| NO ANSWER PROVIDED | NO ANSWER PROVIDED |
| **Blood Pressure:** | **O2 Sats:** |
| NO ANSWER PROVIDED | NO ANSWER PROVIDED |
| **Pulse:** | |
| NO ANSWER PROVIDED | |

**Objective Comments:**

n/a

### On-site Labs Performed at This Visit

#### On-site Lab Results (Previous Three Months)

**Select all On-site Labs that are being performed at the visit:**
NO ANSWER PROVIDED

**Assessment:**

n/a

### Plan

**Information:**

n/a

---

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By AMOAH OTI-AKENTEN, ▇▇▇ on 04/22/2022 09:33:01

**JA 443**

DOC-000996

**LEWALD, TROY VINCENT**  #NS1262        DOB: 4/17/1979 (45y)  Location: J-A-1002-01

**Medications:**
*NO ANSWER PROVIDED*

**Select all that apply:**
*NO ANSWER PROVIDED*

### On-Site Lab to be Performed After the Visit on One Occasion

**Select Labs:**
*NO ANSWER PROVIDED*

**New Chronic Care Clinic Patient (Select all Chronic Clinics that apply):**
*NO ANSWER PROVIDED*

**Discontinue Chronic Care Clinic(s):**
*NO ANSWER PROVIDED*

Selecting Discontinue all Chronic Care Clincs above will remove the patient from the Chronic Clinic hotlist

**Refer to (check all that apply):**
*NO ANSWER PROVIDED*

**Request Outside Medical Records:**
*NO ANSWER PROVIDED*

**Did you review Special Needs and Restrictions:**
☑Yes

**Provider Line follow-up needed:**
☑No

**Additional Comments:**
*NO ANSWER PROVIDED*

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| AMOAH OTI-AKENTEN, ███████, PA | 04/22/2022 09:33:01 |

---

**DC-472 - Progress Note Medical Provider**
DC-472 - Progress Note - For Medical Provider use only

Patient Name: LEWALD, TROY VINCENT
Patient Number: NS1262
Location: J-A-1002-01
DOB: 4/17/1979
Facility: SCI PHOENIX
Electronically Signed By AMOAH OTI-AKENTEN, ██████ on 04/22/2022 09:33:01

**JA 444**
     DOC-000997

# EXHIBIT P-31

Case 2:22-cv-02465-CB Document 62 Filed 03/10/2026 Page 449 of 471

MEDICAL SICK CALL REQUEST

DATE: 04/12/2023      TIME: 1800

INMATE NAME: Troy Lewald   NUMBER: NS1262

HOUSING UNIT: EB1018

PROBLEM: Chronic Care Follow-up
Severe spine pain, running down
back of right leg. can't sleep and
Ibuprofen no longer working.
Still no medical mattress
Injured spine at work

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

* *PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY -
EITHER MEDICAL OR DENTAL. * *

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

**JA 446**

## MEDICAL SICK-CALL REQUEST

DATE: 7/16/2023     TIME: 1300

INMATE NAME: Troy Lewald     NUMBER: NS1262

HOUSING UNIT: RB-1023-1

PROBLEM: Follow-up chronic spine pain for more than
1 year. 120 days Ibuprofen 600mg and 90 days
Celebrex 200mg not working. Sciatic pain running down
right leg and two areas of spine very sore and painful
with daily muscle spasms. Per E. Caligiuri, I need to
order X-RAY, CAT, MRI, Ultrasound and any other tests
available to diagnose and treat degenerative disc disease & nerve pain.
I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

**\* PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY -
EITHER MEDICAL OR DENTAL. \*\***

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | |
|---|---|---|
| **1. REQUISITIONING INMATE** | | |
| INSTITUTIONAL NUMBER | LOCATION | DATE |
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

- ☐ Sick Call ($5.00)
- ☐ Prescription # _____ ($5.00 Each)
- ☐ Self-Inflicted Injury ($5.00)
- ☐ Assaulted by # _____
- ☐ Sports Injury ($5.00)
- ☐ Sports Physical ($5.00)
- ☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

| 5. BUSINESS OFFICE'S SPACE | | |
|---|---|---|
| CHARGE ENTERED | DATE | BOOKKEEPER |
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

**JA 447**

MEDICAL SICK CALL REQUEST

DATE 8/10/23     TIME: 1300

INMATE NAME: Troy Lewald    NUMBER: NS1262

HOUSING UNIT: RB1023-1

PROBLEM: Follow-up work injury. Daily spine pain, shooting sciatic nerve pain, muscle spasms, two sore areas on spine in a lot of pain. Numbness, coldness, itchiness, restlessness, throbbing, pulsating, shooting and cramping leg pains. Per Caligiuri, I need to order: XRAY, CAT, MRI, Ultrasound and any other tests available to diagnose and treat nerve pain.

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT TO THE FEES CONTAINED IN REGULATION 37 PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON THE HOUSING UNIT.

\* *PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY - EITHER MEDICAL OR DENTAL.* \*\*

APPENDIX B

---

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call slip in box.

APPENDIX B

**JA 448**

# EXHIBIT P-33

Superior Court
St. Phoenix

RNS Caligiuri                    h/c

DC-804
Part                                COMMONWEALTH OF PENNSYLVANIA
**Received**                        DEPARTMENT OF CORRECTIONS        FOR OFFICIAL USE
APR 2 0 2023                                                         10301 77
                                        Pg #1/2                      GRIEVANCE NUMBER

**OFFICIAL INMATE GRIEVANCE**

| TO: FACILITY GRIEVANCE COORDINATOR | FACILITY: | DATE: 4|14|2023 |
|---|---|---|
| FROM: (INMATE NAME & NUMBER) Troy Lewald NS1262 | SIGNATURE OF INMATE: | |
| WORK ASSIGNMENT: GLP | HOUSING ASSIGNMENT: EB1018 | |

INSTRUCTIONS:
1. Refer to the DC-ADM 804 for procedures on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. List in Block B any action you may have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief that you are seeking.

On April 14, 2023 at 1015 hours, I was _denied timely and appropriate access to medical_ care in violation of the American with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Protection and Advocacy of Mentally Ill Individuals Act ("PAMII"), the 8th Amendment of the United States Constitution, the Pennsylvania Human Relations Act ("PHRA"), neglect of a care-dependent person, negligence and malpractice under Pennsylvania Tort law.

see page 2

B. List actions taken and staff you have contacted, before submitting this grievance.

Your grievance has been received and will be processed in accordance with DC-ADM 804.

_M. Orlando_                              4/20/23
Signature of Facility Grievance Coordinator        Date

WHITE Facility Grievance Coordinator Copy    CANARY File Copy    PINK Action Return Copy
GOLDEN ROD Inmate Copy

*DC-ADM 804, Inmate Grievance System Procedures Manual*
*Section 1 – Grievances & Initial Review*                    *Attachment 1-A*
Issued: 1/26/2016
Effective: 2/16/2016

**JA 450**

Pg #2/2   #1020122

page 2

I was called to sick call to be seen by medical and explained I was in severe spine pain every day with sciatic nerve pain running down the back of my leg since hurting my spine over 1 year ago at work and the medical providers only prescribe me ibuprofen for 30 days and then tell me to order it on commissary. I have never been examined, never been checked, never been tested, denied timely access to prescribed medicine, having to deal with unnecessary pain causing serious mental and emotional illness, medical staff failed to act despite knowledge of the problem and deprived the minimal civilized measure of life's necessities. I explained the ibuprofen has not been working, I can't sleep, tossing and turning all night long, hip pain on both hips and restless leg syndrome with iching in my legs that never stops.

The medical staff knew by way of their professional medical training, had a duty to look into risk, purposefully avoiding knowledge, subjecting this grievant to conditions that are objectively cruel and failed to remedy, had a personal duty to ensure adequate medical services, inadequate facilities showing repeated examples of negligent acts disclosing a pattern of conduct, failure to respond and review medical complaints depsite knowledge of a breakdown in services, knowingly acquiesced in unconstitutional behavior, cauing damage to prisoners' future health and I am being treated with deliberate indifference and the SCI-Phoenix facility is failing to accommodate for my documented disability. I was told to drink more water and given another prescription for 90 days. I requested a medical mattress, or egg carton mattress topper and was denied. I asked for any other method of relief from my daily severe pain and I was told there in no other relief they can provide.

This is a violation of the American with Disabilities Act, the Rehabilitation Act, the Protection and Advocacy of Mentally Ill Individuals Act, the 8th Amendment of the United States Constitution, the Pennsylvania Human Relations Act, and my right to be free from intentional infliction of emotional, physical and psychological distress, neglect of a care-dependent person, negligence and malpractice under Pennsylvania Tort law.

As such, I am seeking compensatory damages in the amount of $10,000,000.00, including all other damages allowable under law, both jointly and severally, including the costs of litigation, court cots, delay damages, attorney fees, and any other relief a court of law may grant for this instance of intentional infliction of constitutional torts against me.



# Initial Review Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

05/10/2023 02:33

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
| Facility: | Phoenix | Unit Location: | E / B |
| Grievance #: | 1030177 | | |

This serves to acknowledge receipt of your grievance to the assigned Grievance Officer. The response is as follows:

**Decision: Grievance Denied**

It is the decision of this Grievance Officer to uphold, deny, or uphold in part/deny in part the inmate's initial grievance. This response will include a brief rationale, a summary of the conclusion, any action taken to resolve the issue(s) raised in the grievance, and the relief sought.

**Response:**

Mr. Lewald,
You grieve that on 4/14/23 that you were denied timely and appropriate access to medical care. You state that you have had severe spine pain every day with sciatic nerve pain running down the back of my left since hurting my spine over one year ago at work. You are requesting monetary compensation in the amount of 10,000,000.00. I was able to review the sick call note from 4/14/23. You saw PA Kaminsky that day with the complaint of chronic back pain that Ibuprofen does not always help. PA Kaminsky decided he was going to start you on a new medication called Celebrex on that day for your back pain. Your medical record as far back as December of 2022 does not show that your chronic back pain has been addressed recently. There were two recent sick calls on 3/27/23 and 2/28/23 that were no shows. The medical record shows that the sick call was addressed, you were seen/evaluated, then prescribed medication. This is not considered a denial of medical care. Your request for 10,000,000.00 is denied. Your grievance and requested relief are denied.

| | |
| Signature: | |
| Name: | E. Caligiuri |
| Title: | |
| Approver: | G. Orlando |
| Date: | 5/10/2023 |

cc: Facility Grievance Coordinator
DC-15

FIRST-LEVEL APPEAL #1030177

TO FACILITY MANAGER:                                                      05/16/2023

This is an appeal from the initial review of Respondent E. Caligiuri, as dated May 10, 2023, and underline received on May 15, 2023, which denied all requested redress from which claims were raised.  Grievant incorporates all new and previously filed documents, and sets forth the same herein at length. Grievant avers that the Respondent failed to provide adequate reasoning and/or justification for the failure to provide redress for the claims raised herein. Therefore, Grievant appeals the initial review response, and all findings contained therein. The facts to this grievance are undisputable.

**E. Caligiuri has not submitted any evidence supporting their frivolous claims. Caligiuri by way of fraud and misrepresentation outside of their job duties, are discriminating against me, retaliating against me, and making it unusually difficult for me to access the medical program of a public entity that receives federal funding.** I was not called to sick call on either 03/27/2023 or on 02/28/2023 as the Medical Sick Call Request submitted was for ***medication refill stickers*** and not to be seen by a provider, since this facility refuses to provide inmates with Medication Refill Request forms that other facilities provide and advise inmates to submit medication refill requests via Medical Sick Call Request forms. I also submitted Medication Refill Stickers on 02/22/2023, 01/05/2023, 01/03/2023, 12/29/2022, and 11/27/2022. I also put in a Medical Sick Call Request on 12/28/2022 to be seen for blood work taken and never called to discuss the results, 12/07/2022 and 12/12/2022 for a medical wedge ordered and never provided which complained of severe spine pain and in need of help. **Since E. Caligiuri opened the door for this information, it is now incorporated into this grievance.** Caligiuri still fails to confirm or deny my claims that I have been suffering for the past one (1) year and have submitted multiple sick calls stating such, as their reference only goes back to "December of 2022." **[See Exhibits "A" through "J" attached herein]**

On April 14, 2023 at 1015 hours, I was *denied timely and appropriate access to medical* care in violation of the American with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Protection and Advocacy of Mentally Ill Individuals Act ("PAMII"), the 8th Amendment of the United States Constitution, the Pennsylvania Human Relations Act ("PHRA"), and negligence and malpractice under Pennsylvania Tort law. E. Caligiuri and SCI-Phoenix are interfering with my freedom of speech and denying me due process and equal protection in violation of the 1st, 5th, 6th, and 14th Amendments of the United States Constitution and Article I §9 of the Pennsylvania Constitution. I was performing protected conduct under PADOC Policy DC-ADM 804, the United States Constitution, and the Pennsylvania Constitution and taking adverse action against me.

**Superintendent's Office**
**SCI Phoenix**

MAY 1 6 2023

**Received**

**JA 453**

I was called to sick call to be seen by medical and explained I was in severe spine pain every day with sciatic nerve pain running down the back of my leg since hurting my spine over 1 year ago at work and the medical providers only prescribe me ibuprofen for 30 days and then tell me to order it on commissary. **I have never been examined, never been checked, never been tested, denied timely access to prescribed medicine, having to deal with unnecessary pain causing serious mental and emotional illness, medical staff failed to act despite knowledge of the problem and deprived the minimal civilized measure of life's necessities.** I explained the ibuprofen has not been working, I can't sleep, tossing and turning all night long, hip pain on both hips and restless leg syndrome with iching in my legs that never stops. The medical staff knew by way of their professional medical training, had a duty to look into risk, purposefully avoiding knowledge, subjecting this grievant to conditions that are objectively cruel and failed to remedy, had a personal duty to ensure adequate medical services, inadequate facilities showing repeated examples of negligent acts disclosing a pattern of conduct, failure to respond and review medical complaints despite knowledge of a breakdown in services, knowingly acquiesced in unconstitutional behavior, causing damage to prisoners' future health and I am being treated with deliberate indifference and the SCI-Phoenix facility is failing to accommodate for my documented disability. **I was told to drink more water and given another prescription for 90 days.** I requested a medical mattress, or egg carton mattress topper and was denied. I asked for any other method of relief from my daily severe pain and I was told there in no other relief they can provide.

The law is clear that while the PLRA requires that prisoners comply with the procedural demands of a system created by their jailors, those jailors must also comply with the demands of the system they created. Consequently, as soon as a prison fails to repond within the the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement. *Shiftlett v. Korszniak 934 F.3d 356, 365 (3d Cir. 2019)*. **The Initial Reply was outside of PADOC Policy timeline for the 30 days allowed for the Initial Response Review and therefore this grievance has been exhausted since SCI-Phoenix has made the grievance system unavailable.**

Redress: As such, I am seeking compensatory damages in the amount of $10,000,000.00, including all other damages allowable under law, both jointly and severally, including the costs of litigation, court cots, delay damages, attorney fees, and any other relief a court of law may grant for this instance of intentional infliction of constitutional torts against me.

Respectfully submitted,

Troy Vincent Lewald/NS1262

**JA 454**

MEDICAL SICK CALL REQUEST

DATE: 03/21/2023          TIME: 0800

INMATE NAME: Troy Lewald     NUMBER: NS1262

HOUSING UNIT: EB1016

PROBLEM: Medication Refill (4) Stickers

Levothyroxin Stkr.

Aspirin Stkr.

Omeprazole Stkr.

Atorvastatin Stkr.

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

* *PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY -
EITHER MEDICAL OR DENTAL.* *

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | |
|---|---|---|
| **1. REQUISITIONING INMATE** | | |
| INSTITUTIONAL NUMBER | LOCATION | DATE |
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

JA 455

Case 2:22-cv-01601-CB Document 21 Filed 09/18/2026 230

MEDICAL SICK CALL REQUEST

DATE: 02/23/2023       TIME: 1500

INMATE NAME: Troy Lewald   NUMBER: NS1262

HOUSING UNIT: EB1018

PROBLEM: Follow-Up
Chronic Care Medication renewal.
Please renew and give 30 day
supplies. KOP only gave 7 day
supply and I have none. This
is Chronic Care medications

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

**PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY
EITHER MEDICAL OR DENTAL.**

APPENDIX B

---

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | |
|---|---|---|
| 1. REQUISITIONING INMATE | | |
| INSTITUTIONAL NUMBER | LOCATION | DATE |
| | | |

2. ITEMS TO BE CHARGED TO MY ACCOUNT

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

5. BUSINESS OFFICE'S SPACE

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

JA 456

DATE: 2/22/2023          TIME: 1300

INMATE NAME: Troy Lewald          NUMBER: NS1262

HOUSING UNIT: EB1018

PROBLEM:

Levothyroxin Refill Sticker

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

* *PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY -
EITHER MEDICAL OR DENTAL.* *

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | |
|---|---|---|
| 1. REQUISITIONING INMATE | | |
| INSTITUTIONAL NUMBER | LOCATION | DATE |
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

| 5. BUSINESS OFFICE'S SPACE | | |
|---|---|---|
| CHARGE ENTERED | DATE | BOOKKEEPER |
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

Case 2:22-cv-02466-CB Document Page 460 Filed Date Filed: 03/10/2026 230

Case 2:22-cv-01024-CB Document 46 Filed 03/03/2025 Page 461 of 471

MEDICAL SICK CALL REQUEST

DATE: 01/05/2023          TIME: 0700

INMATE NAME: Troy Lewalk   NUMBER: NS1262

HOUSING UNIT: EB/018

I have ∅ of my meds

PROBLEM: Follow-up: Meds renewed on 12/21/2022
never issued. Seen by Vanessa Oti-A Kenten on
12/30/2022 and said were refilled, still never issued.
Stickers attached for refills here and I now
am completely out of medications! Help!
refill omeprazole sticker          refill Gas-X sticker

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

These two medications are working!

** PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY-
EITHER MEDICAL OR DENTAL **

APPENDIX B

JA 458

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS | |
|---|---|---|
| **1. REQUISITIONING INMATE** | | |
| INSTITUTIONAL NUMBER | LOCATION | DATE |
| **2. ITEMS TO BE CHARGED TO MY ACCOUNT** | | |
| ☐ Sick Call ($5.00) | | |
| ☐ Prescription # _____ ($5.00 Each) | | |
| ☐ Self-Inflicted Injury ($5.00) | | |
| ☐ Assaulted by # _____ | | |
| ☐ Sports Injury ($5.00) | | |
| ☐ Sports Physical ($5.00) | | |
| ☐ Other _____ | | |
| Total Amount Charged $ _____ | | |
| **3. INMATE'S SIGNATURE** | **4. MEDICAL STAFF SIGNATURE** | |
| **5. BUSINESS OFFICE'S SPACE** | | |
| CHARGE ENTERED | DATE | BOOKKEEPER |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

DATE: 1/3/2023     TIME: 0700

INMATE NAME: Troy Lewald NUMBER: NS1262

HOUSING UNIT: EB1018

PROBLEM: Follow-Up : KOP Meds
Need Pass For KOP Medications
Refilled 12/20/2022
5 Medications Completely out!

I have Ø Medications !

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

** PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY
EITHER MEDICAL OR DENTAL **.

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

**JA 459**

DATE: 12/29/2022     TIME: 0800

INMATE NAME: Troy Lewald     NUMBER: NS1262

HOUSING UNIT: EB101B

PROBLEM: Follow-Up: 5 KOP refill stickers submitted 12/20/2022, now nearly out of medications! Omeprazole 20mg, Aspirin 325mg (GGS-YES, Atorvastatin 10mg, + Ibuprofen 600mg

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT TO THE FEES CONTAINED IN REGULATION 37 PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON THE HOUSING UNIT.

** PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY EITHER MEDICAL OR DENTAL **

APPENDIX B

---

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call slip in box.

APPENDIX B

**JA 460**

MEDICAL SICK CALL REQUEST

DATE: 12/28/2022     TIME: 1800

INMATE NAME: Troy Lewald     NUMBER: N51262

HOUSING UNIT: EB018

PROBLEM: Follow-Up: Blood work taken
12/16/2022. Need Results and
Consultation

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

** PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY
EITHER MEDICAL OR DENTAL **.

APPENDIX B

Case 2:22-cv-04663-CB Document Page 464   Filed Date Filed: 01/01/2026   230

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

**JA 461**

DATE: 12/12/22     TIME: 1300

INMATE NAME: Troy Lewald     NUMBER: NS1262

HOUSING UNIT: FB1018

PROBLEM: Follow-Up: Medical Wedge Matress ordered by Steven Kaminsky on 11/28/22 never called to pickup. Spine Pain is severe, need help.

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT TO THE FEES CONTAINED IN REGULATION 37 PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON THE HOUSING UNIT.

** PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY - EITHER MEDICAL OR DENTAL. **

APPENDIX B

---

**MEDICAL CO-PAY CASH SLIP**

COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call slip in box

APPENDIX B

**JA 462**

MEDICAL SICK CALL REQUEST

DATE: 1/7/2022     TIME: 1300

INMATE NAME: Troy Lewald    NUMBER: N51262

HOUSING UNIT: EB1018

PROBLEM: Follow Up: Medical Matress
Wedge Pillow ordered by Dr.
Steven Kaminsky on 11/28/2022
never called to pickup.

_____

_____

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

*_* PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY -
EITHER MEDICAL OR DENTAL. *_*

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

**1. REQUISITIONING INMATE**

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

**2. ITEMS TO BE CHARGED TO MY ACCOUNT**

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

**5. BUSINESS OFFICE'S SPACE**

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

**JA 463**

Case 2:22-cv-24665-CDM Document Page 466 Filed Date Filed: 03/14/2026 230

MEDICAL SICK CALL REQUEST

DATE: 1/27/22                    TIME: 1000

INMATE NAME: Troy Newald    NUMBER: NS1262

HOUSING UNIT: EB1018

PROBLEM: Medication Refill
Submitted stickers over a
week ago and never given
refill.
Omeprazole 20mg
Simethicone 125mg
Motrin 600mg

I UNDERSTAND THAT THIS SICK CALL VISIT MAY BE SUBJECT
TO THE FEES CONTAINED IN REGULATION 37
PA CODE § 93.12 ET. SEQ.

_____
INMATE SIGNATURE

PLACE THIS REQUEST FORM IN THE LOCKED MEDICAL BOX ON
THE HOUSING UNIT.

** PLEASE SIGN UP FOR ONLY ONE SICK CALL PER DAY -
EITHER MEDICAL OR DENTAL. **

APPENDIX B

| MEDICAL CO-PAY CASH SLIP | COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS |
|---|---|

1. REQUISITIONING INMATE

| INSTITUTIONAL NUMBER | LOCATION | DATE |
|---|---|---|
| | | |

2. ITEMS TO BE CHARGED TO MY ACCOUNT

☐ Sick Call ($5.00)

☐ Prescription # _____ ($5.00 Each)

☐ Self-Inflicted Injury ($5.00)

☐ Assaulted by # _____

☐ Sports Injury ($5.00)

☐ Sports Physical ($5.00)

☐ Other _____

Total Amount Charged $ _____

| 3. INMATE'S SIGNATURE | 4. MEDICAL STAFF SIGNATURE |
|---|---|
| | |

5. BUSINESS OFFICE'S SPACE

| CHARGE ENTERED | DATE | BOOKKEEPER |
|---|---|---|
| | | |

Inmate should complete shaded areas prior to placing sick call
slip in box.

APPENDIX B

Case 2:22-cv-24665-CD Document Page 467 filed Date Filed: 09/07/2022 230

**JA 464**



# Facility Manager's Appeal Response

SCI Phoenix
1200 Mokychic Drive
Collegeville, PA, 19426

06/06/2023 03:51

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
| Facility: | Phoenix | Unit Location: | A / C |
| Grievance #: | 1030177 | | |

This serves to acknowledge receipt of your grievance appeal to the Facility Manager for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", the following response is being provided based on a review of the entire record of this grievance. The review included your initial grievance, the Grievance Officer's response, your appeal to me and any other documents submitted.

Decision:Uphold Response

It is the decision of this Facility Manager to uphold the initial response, uphold the inmate, dismiss, or Uphold in part/Deny in part. This response will include a brief rationale, summarizing the conclusion, any action taken to resolve the issue(s) raised in the grievance and your appeal and relief sought.

Response:

I am in receipt of your grievance appeal in which you claim on 4/14/2023, you claim you were denied timely access to medical care. You were called to sick call to be seen by medical and explained you were in pain every day since hurting your spine 1 year ago at work. You were prescribed ibuprofen for 30 days and told to order in on commissary thereafter. You explained that the ibuprofen has not been working. You claim that you are being treated with deliberate indifference and the SCI Phoenix facility is failing to accommodate for your documented disability. You were told to drink more water and given another prescription for 90 days. You requested a medical mattress or egg carton mattress topper, and was denied. You were told there is no other relief they can provide. Requested relief: compensatory damages in the amount of $10,000,000.00 including all other damages allowable under law, both jointly and severally, costs of litigation; court costs, delay damages, attorney fees, and any other relief a court of law may grant for this instance of intentional infliction of constitutional torts against me.

In my investigation, I find that the response by RNS Caligiuri is appropriate. Documentation indicates that as far back as 12/2022, your chronic back pain has not been addressed recently. Two recent sick calls: 4/14/2023 - you saw a medical provider with the complaint of chronic back pain and that ibuprofen does not always help; you were issued a new medication. On 3/27/2023 – scheduled sick call – no-show, and 2/28/2023 – scheduled sick call – no-show.

Additional information will not be addressed as it was not included in the initial grievance.

I will uphold the decision of the grievance officer and deny your appeal and all requested relief.

| Signature: | |
| Name | J. Terra |
| Title: | Facility Manager |
| Date: | 6-6-23 |

CC: DC-15
    File

---

DC-ADM 804, Inmate Grievance System Procedures Manual

Section 2 - Appeals, Attachment 2-B                 Issued: 1/26/2016 Effective: 2/16/2016

NS1262    Grievance #:1030177

LEWALD, TROY VINCENT                                     Page1 of 1

*Rec'd*
*06/8/23 C 1:30 PM*

| Form DC-135A | Commonwealth of Pennsylvania |
|---|---|
| **INMATE'S REQUEST TO STAFF MEMBER** | Department of Corrections |
| | **INSTRUCTIONS** |
| | Complete items number 1-8. If you follow instructions in preparing your request, It can be responded to more promptly and intelligently. |

| | |
|---|---|
| 1. To: (Name and Title of Officer) <br> Ms. Orlando / Grievance Coordinator | 2. Date: <br> 5/28/23 |
| 3. By: (Print Inmate Name and Number) <br> Troy Lewald     NS1262 <br> _____ <br> Inmate Signature | 4. Counselor's Name: <br> Stimmel |
| | 5. Unit Manager's Name: <br> Ski |
| 6. Work Assignment: <br> None | 7. Housing Assignment: <br> AC-2008-1 |

*Superintendent's Office*
*SCI Phoenix*
*JUN 0 1 2023*
*Received*

8. Subject: State your request completely but briefly. Give details.

Please may I have a 30 day extension of time to respond to all open grievances? I was given 30 day hole time and do not have any documentation to respond properly.

Thank you!

Troy

9. Response: (This Section for Staff Response Only)

Extensions are considered on a case-by-case basis: a temporary transfer from the facility where grievance should be filed; a permanent transfer to another facility where grievance should be filed; An authorized temporary transfer (ATA) for an extended period; a delay with mail delivery; or any other reason the Facility Grievance Coordinator/designee deems appropriate.

You received a misconduct and are now housed on A Unit — an extension is not appropriate for this request.

| To DC-14 CAR only ☐ | To DC-14 CAR and DC-15 IRS ☐ |
|---|---|

STAFF MEMBER NAME  G. Orlando _____ Print  _____ Signature  DATE 6/5/2023

2023

# FINAL REVIEW EXTENSION
## Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

In accordance with the provisions of DC-ADM 804, Inmate Grievance System policy, this notification either responds to your recent communication expressing an interest in extending the established timeline for submitting the below noted grievance (or appeal), or provides notice that staff requires an extension for responding to your grievance.

| Inmate Name: | Troy Lewald | Inmate Number: | NS1262 |
|---|---|---|---|
| SCI Filed at: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 1030177 | | |

| Action: | | |
|---|---|---|
| **X** | **Inmate Request Denied** – Your request for an extension of time to file a grievance or an appeal has been denied. |
| | **Inmate Request Approved** – Your request for an extension of time to file a grievance or an appeal has been approved. You have been granted 10 additional working days to submit your grievance (or appeal). |
| | **Notice of Staff Extension** – This serves as written notification that an extension is necessary in order to appropriately investigate and respond to your grievance (or appeal). Staff has been authorized to extend the response time by 10 additional working days. |
| | **Notice of Investigation** – This serves as written notification that an extension is necessary in order to appropriately investigate and respond to your allegations of abuse. Staff has been authorized to extend the response time in accordance with DC ADM 001. |

| Comments: |
|---|
| Your confinement in the RHU is not a valid reason to approve your request. Therefore, your request is denied. |

| Signature: | Keri Moore   KM |
|---|---|
| Title: | Assistant Chief Grievance Officer |
| Date: | 06/29/23 |

KLM/TAK

*Rec'd 07/06/23 @ 1100AM*

cc:   DC-15/Superintendent – PHX
      Grievance Office

**JA 467**



# Grievance Referral
## (Notice to Inmate)

Secretary's Office of Inmate Grievances & Appeals
Pennsylvania Department of Corrections
1920 Technology Parkway
Mechanicsburg, PA 17050

08/14/2023 03:50

| Inmate Name: | LEWALD, TROY VINCENT | DOC #: | NS1262 |
|---|---|---|---|
| SCII Filed: | Phoenix | Current SCI: | Phoenix |
| Grievance #: | 1030177 | | |

This serves to acknowledge receipt of your appeal to final review for the grievance noted above. In accordance with the provisions of DC-ADM 804, "Inmate Grievance System Policy", this Office has reviewed the documents submitted; including your initial grievance, the grievance officer's response, your appeal to the facility manager, the facility manager's response, and the issues you raised to final review. Upon completion of this review, it is the determination of this Office to solicit input from an appropriate Central Office Bureau relative to the issue(s) raised in your grievance. Therefore, please be advised that the final review decision will be delayed pending review by the office to which it has been referred. Upon completion of this review, however, a determination will be made and you will be provided with a final appeal decision in writing.

**Action: Referral**

**Bureau/Office:**

- Health Care - Referral Date : 08/14/2023

| Signature: | *Keri Moore for* |
|---|---|
| Name: | D. Varner |
| Title: | Chief Grievance Officer |
| Date: | 08/14/23 |

cc: DC-15/Superintendent - Phoenix
Grievance Office

---

**DC-ADM 804, Inmate Grievance System Procedures Manual**

**Section 2 - Appeals, Attachment 2-I**  Issued: 1/26/2016  Effective: 2/16/2016

NS1262  Grievance #:1030177

LEWALD, TROY VINCENT  Page1 of 1

# JA 468