IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

**No. 25-2166**

———————

**TROY LEWALD,**

**Appellant**

v.

**PENNSYLVANIA DEPARTMENT
OF CORRECTIONS, *et al.***

———————

**BRIEF FOR APPELLEE
PENNSYLVANIA DEPARTMENT OF CORRECTIONS**

———————

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
ENTERED JUNE 3, 2025, AT NO. 2:22–CV–4625

DAVID W. SUNDAY, JR.
*Attorney General*

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 530-0886
Fax: (717) 772-4526

BY:   BRETT GRAHAM
*Deputy Attorney General*

DANIEL B. MULLEN
*Chief Deputy Attorney General*
*Chief, Appellate Litigation Section*

DATE: April 20, 2026

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF JURISDICTION ................................................................. 1

STATEMENT OF ISSUES ............................................................................. 2

STATEMENT OF THE CASE ........................................................................ 3

STATEMENT OF RELATED CASES ............................................................ 8

SUMMARY OF ARGUMENT ....................................................................... 9

ARGUMENT ................................................................................................ 11

I.    THE DISTRICT COURT APPLIED THE PROPER STANDARD TO LEWALD'S
      RA CLAIM .......................................................................................... 11

      A.    Section 504 Liability for Compensatory Damages Requires a
            Finding of Intentional Discrimination, Which Includes
            Deliberate Indifference .......................................................... 12

            1.    The District Court Asked the Right Question ............ 14

            2.    Lewald Asks the Wrong Question ............................. 17

      B.    Nothing in the Record Reflects Deliberate Indifference by the
            Department ............................................................................ 21

            1.    Lewald Did Not Satisfy the Objective Standard for
                  Deliberate Indifference ............................................. 22

            2.    Even If It Applied, Lewald Did Not Establish Subjective
                  Deliberate Indifference ............................................. 26

II.   THIS COURT SHOULD NOT REACH THE ISSUE OF SOVEREIGN IMMUNITY ....... 30

      A.    Lewald's ADA Claims Fail as a Matter of Law ................ 30

      B.    If This Court Does Reach this Unraised Issue, It Should Affirm ....... 32

i

CONCLUSION ........................................................................................33

CERTIFICATE OF COUNSEL .............................................................34

CERTIFICATE OF SERVICE ...............................................................35

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.J.T. by and through A.T. v. Osseo Area Sch., Ind. Sch. Dist. No. 279*,
   605 U.S. 335 (2025) ............................................................................... 13, 14

*Alexander v. Choate*,
   469 U.S. 287 (1985) ...................................................................... 12, 13, 15, 19

*Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*,
   835 F.3d 388 (3d Cir. 2016) ................................................................... 11

*Beers-Capitol v. Whetzel*,
   256 F.3d 120 (3d Cir. 2001) ................................................................ 22, 23

*Berardelli v. Allied Serv. Inst. of Rehabilitation Med.*,
   900 F.3d 104 (3d Cir. 2018) ................................................................... 12

*Berg v. County of Allegheny*,
   219 F.3d 261 (3d Cir. 2000) ................................................................... 24

*Board of Cnty. Cmm'rs of Bryan County v. Brown*,
   520 U.S. 397 (1997) ............................................................................. 24

*Bostock v. Clayton Cnty., Georgia*,
   590 U.S. 644 (2020) ............................................................................. 21

*Bowers v. Nat'l Collegiate Athletic Ass'n*,
   475 F.3d 524 (3d Cir. 2007) ................................................................... 31

*Caiby v. Haidle*,
   No. 3:18–CV–1120, 2022 WL 2987908 (M.D. Pa. July 27, 2022) ..................... 25

*CG v. Pennsylvania Dep't of Educ.*,
   734 F.3d 229 (3d Cir. 2013) ................................................................ 14, 15

*Connelly v. Lane Constr. Corp.*,
   809 F.3d 780 (3d Cir. 2016) ................................................................... 11

iii

*D.E. v. Central Dauphin Sch. Dist.*,
   765 F.3d 260 (3d Cir. 2014)..............................................................11

*DiFraia v. Ransom*,
   __ F.4th __, 2026 WL 878627 (3d Cir. Mar. 31, 2026) .............................. passim

*Doe v. County of Centre*,
   242 F.3d 437 (3d Cir. 2001)..............................................................30

*Doe v. University of Scis.*,
   961 F.3d 203 (3d Cir. 2020)..............................................................11

*Durham v. Kelley*,
   82 F.4th 217 (3d Cir. 2023) ............................................. 7, 12, 29, 31

*Duvall v. County of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001) ........................................................27

*Estate of A.R. v. Muzyka*,
   543 Fed. Appx. 363 (5th Cir. 2013).................................................11

*Farmer v. Brennan*,
   511 U.S. 825 (1994).......................................... 21, 26, 27, 28

*Forestal Guarani S.A. v. Daros Inten., Inc.*,
   613 F.3d 395 (3d Cir. 2010).............................................................32

*Furgess v. Department of Corrections*,
   933 F.3d 285 (3d Cir. 2019)................................................ 14, 15, 20

*Haberle v. Borough of Nazareth*,
   936 F.3d 138 (3d Cir. 2019)...................................................... 21, 26

*Haberle v. Troxell*,
   885 F.3d 170 (3d Cir. 2018)..................................................... 18, 24

*Helen L. v. DiDario*,
   46 F.3d 325 (3d Cir. 1995)................................................. 12, 13, 15

*Hope v. Pelzer*,
   536 U.S. 730 (2002)......................................................................26

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010)............................................................32

*Kneipp v. Tedder*,
  95 F.3d 1199 (3d Cir. 1996)...........................................................25

*Lamberson v. Pennsylvania*,
  561 Fed. Appx. 201 (3d Cir. 2014)................................................20

*Leslie v. United States*,
  438 Fed. Appx. 103 (3d Cir. 2011) (*per curiam*) ........................17

*Lewis v. Humboldt Acquisition Corp.*,
  681 F.3d 312 (6th Cir. 2012) .........................................................20

*Liese v. Indian River Cnty. Hosp. Dist.*,
  701 F.3d 334 (11th Cir. 2012) .......................................................19

*Matthews v. Pennsylvania Dep't of Corr.*,
  613 Fed. Appx. 163 (3d Cir. 2015).................................................25

*McDonald v. Commonwealth of Pennsylvania, Dep't of Pub. Welfare*,
  62 F.3d 92 (3d Cir. 1995)) .............................................................31

*Menkowitz v. Pottstown Mem'l Med. Ctr.*,
  154 F.3d 113 (3d Cir. 1998)...........................................................12

*Montanez v. Price*,
  154 F.4th 127 (3d Cir. 2025) .........................................................19

*Natale v. Camden Cnty. Corr. Facility*,
  318 F.3d 575 (3d Cir. 2003)...........................................................23

*New Directions Treatment Servs. v. City of Reading*,
  490 F.3d 293 (3d Cir. 2007)...........................................................16

*P.P. v. West Chester Area Sch. Dist.*,
  585 F.3d 727 (3d Cir. 2009)...........................................................13

*Pearson v. Prison Health Serv.*,
  850 F.3d 526 (3d Cir. 2017)...........................................................26

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ................................................................................18

*Reynolds v. Giuliani*,
   506 F.3d 183 (2d Cir. 2007) ...............................................................19

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*,
   729 F.3d 248 (3d Cir. 2013) ......................................... 13, 18, 19, 27

*Sample v. Diecks*,
   885 F.2d 1099 (3d Cir. 1989) .................................................. 22, 24

*Serafin v. City of Johnstown*,
   53 Fed. Appx. 211 (3d Cir. 2002) .......................................... 25, 27

*Serwatka v. Rockwell Automation, Inc.*,
   591 F.3d 95 (7th Cir. 2010) ...............................................................21

*Spruill v. Gillis*,
   372 F.3d 218 (3d Cir. 2004) ...............................................................25

*Startzell v. City of Phila.*,
   533 F.3d 183 (3d Cir. 2008) ...............................................................11

*Stone v. City of Mount Vernon*,
   118 F.3d 92 (2d Cir. 1997) .................................................................18

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019) ...............................................................11

*Tennessee v. Lane*,
   541 U.S. 509 (2004) .......................................................... 31, 32

*United States v. Georgia*,
   561 U.S. 151 (2006) ............................................................................31

**Statutes**

28 U.S.C. § 1291 ....................................................................................1

vi

28 U.S.C. § 1331 ..............................................................................................1

29 U.S.C. § 794 ..........................................................................................1, 17

42 U.S.C. § 12111 ...........................................................................................18

42 U.S.C. § 12132 .......................................................................................1, 30

## STATEMENT OF JURISDICTION

This is a civil rights action brought pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, over which the District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

This appeal is from a final order, over which this Court has jurisdiction by virtue of 28 U.S.C. § 1291. The District Court entered its order on June 3, 2025, and the notice of appeal was filed on June 12, 2025.

## STATEMENT OF ISSUES

*In this action brought pursuant to the Rehabilitation Act and the Americans with Disabilities Act, the District Court dismissed all but one claim for various legal insufficiencies. It then granted summary judgment to the Department of Corrections on that remaining claim. On appeal, the issues are:*

1. Whether the District Court erred in granting summary judgment against a Rehabilitation Act claimant who failed to demonstrate that he was denied a reasonable accommodation "solely by reason of" his disability.

2. Whether the District Court correctly declined to address the well-settled question of whether Title II of the ADA abrogates state sovereign immunity in the prison context where there was no valid constitutional claim.

**STATEMENT OF THE CASE**

**Factual Background**

Troy Vincent Lewald began his term of incarceration with the Pennsylvania Department of Corrections (DOC) on January 24, 2019, when he completed intake at State Correctional Institution (SCI) – Phoenix. *See* JA185–JA186.[1] After transfers to SCI–Camp Hill and SCI–Albion in February and May 2019, respectively, Lewald returned to SCI–Phoenix on December 28, 2021. *See* JA186–JA188.

Lewald suffers from a "atherosclerosis" and "[a] degenerative disc disease," for which he had surgery in 2015. JA022–JA023. During intake in 2019, the Department's DC–440 "Initial Examination" form stated his diagnosis as "chronic back pain." JA327. Beginning in May 2019, Lewald secured various housing recommendations and employment restrictions in his file. *See, e.g.*, JA040 ¶ 69; JA171 ("No intensive labor" from "5/24/2019" to "10/6/2021"). They included, among others, "no food service-handle/janitor," "no high risk of injury," "no intensive labor," and "no lifting." *See* JA171.

---

[1] Lewald appears to now dispute that he was the subject of any "screening" or "intake" when he transferred to SCI–Phoenix in December 2021. *See* Appellant Br. at 1, 7. As support, though, he cites only a single statement made in his deposition and the Department's policy generally. *See id.*

That statement is belied by the record, which contains an "Intra-system Transfer Reception Screening" form, electronically signed at SCI–Phoenix the day after his transfer. *See* JA355–JA362. Per that form, medical staff took vital signs, explained sick call and emergency procedures, and reviewed records. *See* JA361.

Lewald's then-existing restrictions all expired on or before October 6, 2021. *See id.* Pursuant to DC–ADM 006, which governs accommodations for inmates with disabilities, Lewald was required to complete a disability accommodation request form to reinstate those conditions. JA238. Despite having received and acknowledged this policy, he never did so. JA173.

When Lewald arrived at SCI–Phoenix in December 2021, he requested to be assigned as a block tutor, the position he held at SCI–Albion. JA043. Assuming that the employment restrictions that had expired months earlier were still in effect, he began to protest when he was instead assigned to Food Services. *See* JA044. He talked to his unit counselor and unit manager, completed an inmate employment form, filed a grievance,[2] and spoke with the Food Services Supervisor and the Food Services Instructor. JA044–JA046.

On January 25, 2022, Lewald spoke to Tara Jackson, a non-DOC employee and medical assistant, who told him that "there [was] no documentation of any disability in her system" and that he would have to contact SCI–Albion to get his

---

[2] Lewald averred that he initially filed a grievance on January 14, 2022, but it was rejected for failure to comply with internal policy. *See* JA045–JA046. After he revised it to comply with the DOC's grievance procedures, this grievance became No. 964348.

records transferred. *See* JA121.[3] Following this interaction, Lewald lodged Grievance No. 964348. *See* JA368. He requested that staff at SCI–Phoenix contact SCI–Albion "as perhaps that Facility will confirm what has been (inadvertently) omitted" from his file. *See* JA370–JA371. DOC officials responded to Lewald's grievance on January 31, 2022, informing him that his file did not reflect any current "medical restrictions or limitations" because "any/all restrictions that [he] had, had been expired." *See* JA369, JA372.

Lewald visited Jackson again on February 15, 2022. *See* JA191–JA192. On that date, work restrictions were entered on Lewald's file, including "no high risk of injury," "no intensive labor," "no lifting more than 15 points," and "no work at heights/elevations." *See* JA056, JA389. These restrictions did not include "no food service-handle/janitor." *See* JA171.

Purportedly unaware of these conditions, Lewald reported to Food Services duty on February 18, 2022. *See* JA053; JA408. While carrying food trays, he allegedly "felt a pop in his back" and experienced considerable pain. *Id.* Lewald filed a sick call, as well as multiple grievances. JA053–JA054. Five days later, a prison medical official prescribed him Motrin three times a day, bottom bunk status for six

---

[3] The District Court terminated Jackson from the case below by order dated August 31, 2023. *See* JA013. Lewald does not challenge that dismissal. *See* Appellant Br. at 12 n.3.

months, and three weeks of no work. JA055. Lewald was then released from his assignment with Food Services on February 25, 2022. JA056.

In April 2022, Lewald filed a DC–ADM 006 request for accommodation form for the *first* time. JA124–JA125. Therein, he requested supplemental bedding. *Id.*

**Procedural History**

Lewald filed his initial complaint on November 16, 2022. JA020–JA096. Therein, he named as defendants thirty-six individuals employed by the Department the Department itself, and several licensed medical providers. *Id.* On November 29, 2023, the District Court dismissed all but Lewald's RA claim against the Department. Add. 19. It reasoned that, despite "list[ing] many names throughout his complaint," Lewald alleged personal involvement in a constitutional violation with respect to only two medical providers. Add. 5–6. And it dismissed the supervisory liability claims against the Department because he had not alleged any sort of "permanent and well-settled custom" to do with medical treatment in general or the deletion of records. *See id.*

The District Court also dismissed all claims against individual defendants on the grounds that they were improper defendants under the ADA and the RA. Add. 12. Lewald's claim for injunctive relief against the Department under the ADA was moot, it determined, because "his work restrictions were eventually restored" and officials "explained how Lewald can ensure that they are renewed" in the future.

Add. 13 (citing Dist. Ct. ECF 1 ¶ 235). And the District Court dismissed his claim for compensatory damages under the ADA because he failed to allege a companion constitutional violation that would pierce the protection of sovereign immunity. Add. 12 (citing *Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023)).

Accepting all factual allegations of Lewald's complaint as true, the District Court determined that his claim for compensatory damages under the RA remained, because he had sufficiently pleaded the necessary elements of a deliberate indifference claim. Add. 14–15. Invoking *Durham*, it thus allowed that claim to proceed past the motion to dismiss stage. *Id.*

After the close of discovery, the sole remaining defendant—the Department—filed a motion for summary judgment, which Lewald opposed. JA097–JA106; JA175–JA227. The District Court granted that motion by memorandum and order dated June 3, 2025. Add. 34–35. It reasoned that the record could not support a finding that Lewald's disability was the "sole cause of a discriminatory action," Add. 32, because it reflected instead at most inadvertence on behalf of the Department and its staff.

This timely appeal followed.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court. There are no pending or completed cases to which it is related.

## SUMMARY OF ARGUMENT

Lewald attacks the disposition below on two primary grounds. *First*, he suggests that the District Court applied the wrong standard when it granted the Department's motion for summary judgment as to his RA claims. *Second*, he contends that the District Court erred in dismissing Lewald's ADA claims as barred by sovereign immunity, because Title II waived that immunity, such that this Court should remand or address that question in the first instance.

These positions face several hurdles, both legal and factual. Practically speaking, the record reflects—at most—that Lewald was unaware that his work restrictions had expired, and that he failed to request that they be reinstated through proper channels. Lewald acknowledges that the Department generally offered him accommodations and that his work restrictions were reinstated shortly after his asserted injury. Those concessions fatally undermine the notion that the Department's actions resulted from a deliberate choice, or solely because of his disability.

As to the standard for causation under Section 504 of the RA, the District Court's recitation cohered with binding case law. Lewald spends a significant portion of his brief raising the novel claim that causation is wholly "irrelevant" for purposes of Section 504 liability. But in begrudgingly articulating the governing standard—deliberate indifference—and attempting to apply it to the facts, he

9

appears to acknowledge what the District Court plainly understood. The deliberate indifference standard turns on difficult questions about knowledge and notice, not the mere fact that an accommodation was denied.

As to the question of Title II's waiver of sovereign immunity, the District Court properly determined that resolving the RA claim left no occasion to address Title II claims. Without a parallel constitutional violation, there was no reason to engage in that analysis, and this Court should decline Lewald's invitation to do so.

**ARGUMENT**

*Standard of Review:* This Court's review of a district court's grant of summary judgment is *de novo*. *See Startzell v. City of Phila.*, 533 F.3d 183, 192 (3d Cir. 2008). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there are no genuine issues "as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).

Likewise, this Court's review of a district court's decision to dismiss a case for failure to state a claim is *de novo*. *Doe v. University of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2016)). This Court may affirm "on any basis supported by the record, even if it departs from the [d]istrict [c]ourt's rationale." *TD Bank N.A. v. Hill*, 928 F.3d 259, 270, 276 n.9 (3d Cir. 2019).

## I.    THE DISTRICT COURT APPLIED THE PROPER STANDARD TO LEWALD'S RA CLAIM

In neither Section 504 of the RA nor Title II of the ADA did Congress "intend … to create general tort liability for the government." *Estate of A.R. v. Muzyka*, 543 Fed. Appx. 363, 365 (5th Cir. 2013); *cf. D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014). Lewald invites this Court to do just that by breaking new ground and declaring that causation is "irrelevant" to RA claims. Appellant Br. at 22–23, 31. But he struggles against the statute's plain text, its robust legislative

11

history, the facts below, and this Court's precedent. Ultimately, he arrives at the same place the District Court did: the deliberate indifference standard. *Id.* at 32; Add. 15–16 (citing *Durham*, 82 F.4th at 226). And because the record falls short of demonstrating that the Department was deliberately indifferent under any colorable application of that standard, this Court should affirm.

**A.    Section 504 Liability for Compensatory Damages Requires a Finding of Intentional Discrimination, Which Includes Deliberate Indifference**

Enacted in 1973, the RA "was the first broad federal statute aimed at eradicating discrimination against individuals with disabilities." *Berardelli v. Allied Serv. Inst. of Rehabilitation Med.*, 900 F.3d 104, 114 (3d Cir. 2018) (quoting *Helen L. v. DiDario*, 46 F.3d 325, 330 (3d Cir. 1995), *as amended* (Feb. 2, 1995)). Its "heart," Section 504, includes an "affirmative obligation" for "federally funded programs … to make reasonable accommodations or reasonable modifications … when necessary to assure … meaningful access" for otherwise qualified individuals. *Id.* (cleaned up) (citing *Alexander v. Choate*, 469 U.S. 287, 300 (1985)).

Congress then "designed the ADA to fit hand in glove with the RA," by reaching "beyond federally funded programs" to other aspects of public life. *Id.* (citing *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 120 (3d Cir. 1998)). To that end, Congress added statutory language "to ensure that the precepts and values embedded in the ADA were reflected [in the RA]," and would "guide"

12

interpretation of the RA. *Id.* (cleaned up). Both statutes sprung from the recognition that disability discrimination was rarely the product of "invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Helen L.*, 46 F.3d at 334 (quoting *Choate*, 469 U.S. at 295) (cleaned up). The ADA "attempts to eliminate the effects of that benign neglect, apathy, and indifference." *Id.* (cleaned up). And Section 504 makes clear that "the unnecessary segregation of individuals with disabilities in the provision of public services is itself a form of discrimination," which is distinct from pure disparate treatment. *Id.*

As the United States Supreme Court recognized in an opinion published just after the District Court's order, the "general approach of the courts of appeals" allows plaintiffs to obtain injunctive relief without proving intentional discrimination. *A.J.T. by and through A.T. v. Osseo Area Sch., Ind. Sch. Dist. No. 279*, 605 U.S. 335, 344 (2025). To obtain compensatory relief, by contrast, the courts of appeals "generally agree that a plaintiff must show intentional discrimination." *Id.* (citing, *inter alia*, *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013)).

This Court follows that approach. *See S.H.*, 729 F.3d at 261; *P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3d Cir. 2009). Discrimination may result from deliberate indifference where a defendant (1) knew that harm to a plaintiff's federally protected right was "substantially likely" and (2) failed to act upon that

13

likelihood. *See S.H.*, 729 F.3d at 262–63. In *A.J.T.*, the unanimous Supreme Court observed that lower courts "derived this standard from [its] caselaw applying Title IX," which—like the RA and the ADA—"was modeled after Title VI." *See* 605 U.S. at 344 & n.4 (citation omitted).

### 1.    The District Court Asked the Right Question

To reiterate, all that remained at summary judgment was Lewald's RA claim for compensatory relief. *See* Add. 13. The District Court noted that, under this Court's case law, "[a]n alternative cause" for plaintiff's treatment "is *fatal* under the Rehabilitation Act 'because disability would no longer be the sole cause'" of the harmful act. Add. 26 (quoting *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 n.11 (3d Cir. 2013)) (emphasis added). Lewald nonetheless faults the District Court for considering "irrelevancies" in determining causation, based upon his flawed reading of this Court's opinion in *Furgess v. Department of Corrections*, 933 F.3d 285 (3d Cir. 2019).

In *Furgess*, "a disabled prisoner [who] misbehaved … was put into disciplinary confinement, where none of the showers were handicapped-accessible." *DiFraia v. Ransom*, __ F.4th __, 2026 WL 878627, at *3 (3d Cir. Mar. 31, 2026) (discussing *Furgess*). The prisoner brought claims under the ADA and the RA, seeking compensatory damages under a deliberate indifferent standard—the test Lewald acknowledged, *see* JA205–JA207, as applicable when he opposed DOC's

14

motion for summary judgment. *See Furgess*, 933 F.3d at 289. In *Furgess*, "the prison asserted there was no causation, claiming that the prisoner had lost the ability to shower only because he had misbehaved, not because he was disabled." *DiFraia*, 2026 WL 878627, at *3. But this Court *did* find that Furgess sufficiently alleged causation under both the but-for *and* sole cause standards because "[he] faced worse conditions than other prisoners in disciplinary confinement—he was locked up with no usable shower, while they were locked up with showers that they could use." *Id.*; *see also Furgess*, 933 F.3d at 291 n.25 (citing *CG*, 734 F.3d at 236 n.11).

In other words, *Furgess* establishes that an alternative cause that *itself* amounts to "thoughtlessness … indifference … [or] benign neglect," *Helen L.*, 46 F.3d at 334 (quoting *Choate*, 469 U.S. at 295) (cleaned up), cannot save a defendant from liability under the RA or the ADA. Indeed, the allegation there was that the prison's superintendent "*knew* that [the prisoner] had not been able to shower *because* the … showers were not handicapped accessible," but still took no action. *Furgess*, 933 F.3d at 292 (emphases added). It twists *Furgess* beyond recognition to read it as reducing the causation inquiry down to the binary of whether or not a given plaintiff was deprived of a benefit. *See id.* at 291 n.25.

The District Court thus did not err in asking whether "Lewald's disability was the sole reason [the Department] denied his accommodations." Appellant Br. at 18. That is the correct question under the RA. *See Furgess*, 933 F.3d at 291 n.25, 292;

15

*New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 n.4 (3d Cir. 2007) (acknowledging distinction in causation standard between ADA and RA). And this Court should acknowledge the critical distinction between this case and *Furgess*, just as it did in *DiFraia*.

In *Furgess*, *even accepting the facially neutral explanation*, the lack of accommodation for disabled prisoners *in toto* in the Restricted Housing Unit (RHU) reflected deliberate indifference; "the [disabled] prisoner faced worse conditions than other prisoners in disciplinary confinement." *DiFraia*, 2026 WL 878627, at *6. Here, the facially neutral explanation—i.e., the timing and form of Lewald's grievances, as well as confusion on the part of Lewald and the individuals with whom he spoke, *see infra* I(B)(2)—presents an alternative cause that does not demonstrate deliberate indifference.[4] Thus, the District Court properly factored what it termed "[i]nadvertence," *see* Add. 34, into its analysis and *Furgess* is distinguishable.

In its thorough examination of Lewald's RA claim at the motion to dismiss stage, *see* Add. 5–19, and its well-reasoned opinion at summary judgment, *see* Add. 27–34, the District Court cut to the heart of the matter by looking for sole causation.

---

[4] Had the Department suggested that it did not accommodate a disability by virtue of Lewald's assignment to the kitchen, *Furgess* would devastate that argument because Lewald would still have faced worse conditions compared to other prisoners with kitchen duty. In this case, the Department's argument was very different. *See* JA103–JA105.

Nevertheless, as he acknowledges in this appeal, it explicitly did not address other elements of his claim. *See* Add. 34 n.5; Add. 26–57. Though Lewald offers a few lines of argument on this point, *see* Appellant Br. at 17–18, it bears mention that should this Court take issue with the sole cause analysis, the most appropriate course of action would be likely be a remand. *See, e.g.*, *Leslie v. United States*, 438 Fed. Appx. 103, 106 (3d Cir. 2011) (*per curiam*).

### 2.    Lewald Asks the Wrong Question

The RA provides that no "otherwise qualified individual shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance[.]" 29 U.S.C. § 794. Lewald repeatedly insists that "[t]he inquiry … is about the deprivation of a benefit *rather than* the reason accommodations were denied." Appellant Br. at 21 (emphasis added). But he offers no authority for imposing this binary. And doing so would reduce courts' analyses of RA and ADA claims to bare tautologies.

On its face, the RA requires claimants to establish *both* that they were deprived of a benefit *and* that this deprivation was "solely by reason of [a] disability," not one or the other. 29 U.S.C. § 794. In fact, Lewald's understanding is inherently circular—by definition, RA claimants are "otherwise qualified individual[s]" who can participate in federally-funded programs activities with

17

reasonable accommodations. *See* 42 U.S.C. § 12111(b); *Stone v. City of Mount Vernon*, 118 F.3d 92, 96 (2d Cir. 1997). Where an entity denies a reasonable accommodation, inability to safely participate in the federally-funded public program follows. That is not the causal link with which Section 504 is concerned.

Rather, courts reviewing RA and ADA claims interrogate knowledge and notice—for good reason. Both statutes emanate "from Congress's Spending Clause power," meaning that they function "'much in the nature of a contract' between the federal government and recipients of federal funds." *S.H.*, 729 F.3d at 264 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). Deliberate indifference by its very definition requires "(1) knowledge that a federally protected right is substantially likely to be violated … and (2) failure to act despite that knowledge." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (quoting *S.H.*, 729 F.3d at 265). It thus cannot be true that the District Court's invocation of supposed "inadvertence and negligence" are "irrelevant," or that negligence "has nothing to do with causation." Appellant Br. at 23. Instead, the inadvertence and miscommunications the record reflects here demonstrate *the lack of* deliberate indifference.

Lewald even acknowledges that the protections of the RA attach once an institution has "an obligation to accommodate the plaintiffs disabilities" and "refuse[s] to do so," implicitly conceding that knowledge of a required obligation is

18

what triggers an entity's affirmative duties. *Id.* at 24 (citing *Montanez v. Price*, 154 F.4th 127, 148 (3d Cir. 2025)). As this Court has explained, while courts may infer intentional discrimination where a defendant acts with deliberate indifference—and such cases do not require a "showing of personal ill will or animosity"—deliberate indifference must stem from a "deliberate choice, *rather than negligence or bureaucratic inaction*." *S.H.*, 749 F.3d at 263 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007)) (emphasis added).

The deliberate indifference standard coheres with "the remedial goals of the RA," which aimed to "end systematic neglect" while still providing "notice-and opportunity requirements to RA defendants." *Id.* at 264–65 (quoting *Choate*, 469 U.S. at 295; *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012)). Accordingly, the question Lewald encourages this Court to consider as dispositive, *see* Appellant Br. at 18, is incorrect and does not alter the District Court's analysis. To the contrary, finding statutory liability simply by virtue of a claimed accommodation denial would have run afoul of binding case law.

Lewald's arguments on this point are sometimes difficult to pin down. He acknowledges that "refusing to make reasonable accommodations is tantamount to denying access," but later claims that the denial of accommodations is irrelevant to causation. *Compare* Appellant Br. at 19, *with id.* at 20. He acknowledges that "[u]nlike the [RA], the [ADA] uses a but-for causation standard," but also claims

19

that causation under the RA and the ADA "operate[] in the same way." *See id.* at 21. Lewald does not cite any authority to support the proposition that the causation standards are identical under the ADA and RA. Nor can he given this Circuit's case law. *See Furgess*, 933 F.3d at 291 n.25; *Lamberson v. Pennsylvania*, 561 Fed. Appx. 201, 207 (3d Cir. 2014).

Even accepting *arguendo* Lewald's premise that there is no distinction between sole cause under the RA and but-for causation under the ADA, the District Court's rationale holds.[5] That is, setting aside the fact that opinion below proceeds from the correct causation standard, *see* Appellant Br. at 19; Add. 26, the Department was not deliberately indifferent under any applicable test.

What Lewald seeks is, in truth, a motivating factor test, as in Title VII discrimination actions. But neither the RA nor the ADA contain motivating factor language. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (refusing to import motivating factor test from Title VII to ADA); *Serwatka v.*

---

[5] Lewald's arguments on this point are sometimes difficult to pin down. *Compare* Appellant Br. at 19 (acknowledging that "refusing to make reasonable accommodations is tantamount to denying access"), *and* 21 (acknowledging that "[u]nlike the [RA], the [ADA] uses a but-for causation standard"), *with id.* at 20 (asserting that the denial of accommodations is irrelevant to causation), *and* 21 (claiming that causation under the RA and the ADA "operate[] in the same way"). Lewald does not cite any authority to support the proposition that the causation standards are identical under the ADA and RA. Nor can he given this Circuit's case law. *See Furgess*, 933 F.3d at 291 n.25; *Lamberson v. Pennsylvania*, 561 Fed. Appx. 201, 207 (3d Cir. 2014).

*Rockwell Automation, Inc.*, 591 F.3d 957, 961–62 (7th Cir. 2010) (same). And the but-for causation standard this Court applies in ADA cases still requires that the illicit factor go beyond merely "play[ing] a role in [an] employer's decisionmaking process," and have "a *determinative* effect on the outcome of that process." *New Directions Treatment Servs.*, 490 F.3d at 300 n.4 (emphasis added); *CG*, 734 F.3d at 236 n.11; *see also Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020) ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause."). Lewald's approach of grafting the "but-for" causation standard onto the RA's plain text and then lowering that bar is inconsistent with both binding authority and the RA's plain language. It therefore cannot be correct.

### B. Nothing in the Record Reflects Deliberate Indifference by the Department

There are, in effect, two kinds of deliberate indifference claims: those against entities, and those against individuals. In *Farmer v. Brennan*, the United States Supreme Court explained that "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity." 511 U.S. 825, 841 (1994). Rather than engage in this philosophical mire, courts require plaintiffs suing state entities, such as the Department, to make an *objective* showing of deliberate indifference instead. *See, e.g.*, *Haberle v. Borough of Nazareth*, 936 F.3d 138, 141 (3d Cir. 2019) (hereinafter, *Borough of Nazareth*) (discussing deliberate indifference

in context of ADA claims against police department). Lewald thus faces a significant hurdle. His arguments at summary judgment concerned the one remaining defendant, an entity: the Department. *See* Add. 20. And his arguments on appeal address only the other variety of deliberate indifference: the subjective kind that applies to individuals. *Cf.* Appellant Br. at 32–33.

If this Court does not affirm based on the District Court's rationale that Lewald's claim fails because the record pointed to an alternative cause, it should affirm on the alternative grounds that what he presented fell short of demonstrating deliberate indifference under either the objective or subjective understanding of that term. Through both lenses, the District Court properly granted summary judgment as to Lewald's RA claim.

## 1. <u>Lewald Did Not Satisfy the Objective Standard for Deliberate Indifference</u>

The "easiest way" to establish liability on a deliberate indifference claim is to show that (1) a defendant "failed to respond appropriately in the face of an awareness of a pattern of such injuries." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). But plaintiffs may also succeed where (2) "the risk of constitutionally cognizable harm [was] *so great and so obvious*" to policymakers that the failure to respond "will alone support findings of … an unreasonable risk, of knowledge of that unreasonable risk, and of

22

indifference to it." *Id.* (emphasis added).[6] This understanding of "deliberate indifference in the RA and the ADA context is consistent with [this Court's] standard of deliberate indifference in the context of [Section] 1983 suits by prison inmates." *S.H.*, 729 F.3d at 263 n.23 (citing, *inter alia*, *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003)).

Lewald did not establish any pattern or practice of violations by the Department, nor did he plausibly assert that the risk of harm to him was "so great and so obvious" to the Department as to give rise to liability. The record contains declarations from other inmates at SCI–Phoenix complaining of delayed or insufficient medical care; but those statements focus on the behavior of individuals not employed by the Department, and impute no wrongdoing to the Department itself. *See* JA092–JA095.[7] Lewald has specifically indicated that his medical care while incarcerated has "been phenomenal" and "above what you'd expect for an inmate," with the exception of his transfer to SCI–Phoenix. *See* JA128. And as the

---

[6] *See also Beers-Capitol*, 256 F.3d at 133 (explaining that indifference claims implicating agencies are inherently "more complicated than the other, more direct deliberate indifference claims" because they "add another level to the analysis").

[7] None of the individuals named in these statements (e.g., Tara Jackson, Dr. Anthony Letitzio, Carol Annino) are employed by the Department, with the lone exception of Jason Stimmel, who Lewald represents is a unit counselor. *See* JA095, JA043. But the declaration regarding Stimmel is barebones and does not concern accommodation requests. *See* JA095.

District Court noted, "[a] prison official … explained how Lewald can ensure that [his restrictions] are renewed" in the future. *See* Add. 13.

Although it is possible to maintain a deliberate indifference claim based on a government entity's policy or custom by reference to a single event—that is, without demonstrating a pattern of violations— "the burden on the plaintiff in such a case is high." *See Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (discussing *Board of Cnty. Cmm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). Because Lewald's complaint implicates, at best, an isolated instance of confusion or miscommunication, which he largely attributes to non-Department staff, he came nowhere close to demonstrating that the Department was aware of and failed to address a systemic insufficiency at SCI–Phoenix.

Lewald did not assert, much less establish, that the risk of harm to him in doing kitchen work was "'so great and so obvious' as to obviate the need for [him] to allege facts pertaining to the [Department's] knowledge." *Haberle*, 885 F.3d at 182 (indirectly quoting *Sample*, 885 F.2d at 1118).[8] In general, the Department and its employees are "justified in relying on the expertise and care of prison medical

---

[8] In *Haberle*, the claim centered on training police officers "to refrain from so much as knocking on [a] door when they receive a call that a mentally ill individual has stolen a firearm [and] is contemplating suicide." *Haberle*, 885 F.3d at 183. As the District Court explained, it was "not so obvious [a deficiency]" that the municipality employing those officers "could be said to have been deliberately indifferent to the need for that training." *Id.*

24

providers," and cannot be liable for deliberate indifference "absent a reason to believe (or actual knowledge)" that those providers "are mistreating (or not treating) a prisoner." *Matthews v. Pennsylvania Dep't of Corr.*, 613 Fed. Appx. 163, 166 (3d Cir. 2015) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).

The record demonstrates that medical providers met with Lewald on numerous occasions and that he received responses to his letters and grievances. He underwent physical therapy following his surgery in 2015, and the restrictions in his file expired. *See* JA022–JA023; JA 171. Even when some returned or were reinstated, they did not include a restriction on kitchen duty specifically. *See* Add. 23 (citing Dist. Ct. ECF 130–7 at 3). Thus, from the Department's perspective, there was no "great" and "obvious" risk associated with Lewald reporting to his kitchen shift on February 18, 2022. *Cf. Kneipp v. Tedder*, 95 F.3d 1199, 1201–03 (3d Cir. 1996) (holding that inference of actual or constructive knowledge was appropriate given "obviousness of risk" when police sent woman home "unescorted in a visibly intoxicated state in cold weather").[9]

---

[9] *Cf. Serafin v. City of Johnstown*, 53 Fed. Appx. 211, 215 (3d Cir. 2002) (finding no deliberate indifference with regard to monitoring pretrial detainees "believed to be suicidal" where "there was little evidence of any past suicide attempts, much less a pattern"); *Caiby v. Haidle*, No. 3:18–CV–1120, 2022 WL 2987908, at *10 (M.D. Pa. July 27, 2022) (finding no deliberate indifference with regard to inmate violence where claimant "point[ed] to no prior incidents from which [the Court] might reasonably infer … actual or constructive knowledge of the purported policy deficiencies" upon which his claim was premised).

**2.    Even If It Applied, Lewald Did Not Establish Subjective Deliberate Indifference**

The second element of the deliberate indifference inquiry "'requires something more than mere negligence, and is a subjective standard[.]" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 835–37). That is, an official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists … [and] also draw the inference." *Id.* But even accepting Lewald's framing, and applying the subjective standard to the Department itself as if it were an individual, *but see Farmer*, 511 U.S. at 841; *Borough of Nazareth*, 936 F.3d at 141, his arguments fail in light of the record.

As this Court recently explained, "[a]ll too often, courts focus … on the noun 'indifference' at the expense of the adjective 'deliberate.'" *DiFraia*, 2026 WL 878627, at *3. Neither negligence, nor "even gross negligence" is sufficient to establish the type of "subjective blameworthiness" that demonstrates prison officials "acted with deliberate indifference to [an inmate's] health or safety." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002); *Farmer*, 511 U.S. at 835–37 & n.4)). Rather, an official "must be *at least* subjectively reckless," meaning that he "consciously disregard[ed] a substantial risk of serious harm" by being aware of relevant facts and actually drawing the inference that the risk existed. *Id.* (citing *Farmer*, 511 U.S. at

26

839, 837) (emphasis added).[10] Some events are "attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction," and courts have therefore refrained from finding deliberate indifference "where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001); *see also S.H.*, 729 F.3d at 265 (citing *Duvall*).

The record before the District Court evinced the *opposite* of the sort of deliberate or subjective choices that give rise to liability. As it explained, Department employees "tried to explain prison policies to [Lewald]," repeatedly checked his files, and reported seeing no active restrictions. *See* Add. 32; Add. 33 n.3. Lewald plainly perceived the issue to be that his restrictions should have been transferred, but were not. *See, e.g.*, JA366, JA368. As the record reflects, however, all restrictions had expired in October 2021, meaning that there were no active limitations or conditions for SCI–Albion to transfer. *See* JA171. He understood the policy (DC-ADM 006) requiring that a form be submitted for disability accommodations to continue or remain in his file, but failed to submit one. *See* JA173, JA238. And, ultimately, "[r]estrictions were in fact added" to Lewald's file "after making a request to a staff member," on February 15, 2022. *See* Add. 33 n.4.

---

[10] *Cf. Serafin*, 53 Fed. Appx. at 215 ("The fact that the City's policy was not the most effective policy possible … does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk").

Lewald raises two subsidiary arguments on this point, but neither has merit. *First*, he suggests that the District Court could have inferred subjective deliberate indifference from the failure to notify Lewald or Department staff of the restrictions added to his file on February 15, 2022, before his shift on February 18, 2022. Appellant Br. at 1. *Second*, Lewald claims that his failure to fill out a DC-ADM 006 accommodation request form is irrelevant because verbally alerting various medical personnel and prison staff was sufficient to establish their knowledge. *Id.* at 26.

Cases like this one—in which the dispositive question has to do with knowledge and the scheme in place to acquire that knowledge—epitomize the difficulty the Supreme Court mentioned in *Farmer*. *See Farmer*, 511 U.S. at 841 (explaining the inherent difficulty in "any search for the subjective state of mind of a governmental entity"). But even through a subjective lens, the District Court's logic holds. Lewald spoke with Department staff and medical personnel who "did not know what to do when he asked them for assistance … told [him] his requests were beyond the scope of their employment … or would 'look into it' and find no restrictions on the file." Add. 31 (citations omitted). The likely explanation for these responses is that the appropriate forum for Lewald's concerns was the DC–ADM 006 reasonable accommodation form, which he filled out for the first time two months *after* the alleged incident. *See* JA124–JA125.

28

It is unclear why Lewald, who was repeatedly asking for Department employees to check his file for restrictions over the course of January and February 2022, never did so after his appointment on February 15, 2022. *See generally* JA352–JA391 The record is devoid of any indication whatsoever that Lewald asked the employees with whom he interacted on February 18, 2022, to check for restrictions. *See also supra* n.4. And even if they had checked for restrictions, it is far from clear that the February 15, 2022, additions would have excused him from kitchen duty entirely, as none of them included "no food service-handle/janitor." Add. 33 (citing Dist. Ct. ECF 130–7).

While verbal alerts may be sufficient in some cases—especially those concerning claims against individuals, *see, e.g.*, *Durham*, 82 F.4th at 223[11]—they were not here. The balance of Lewald's grievances concerned his former position as a block tutor and his rate of pay. *See, e.g.*, JA366 ("I was not demoted to a Class I job"); JA368 ("I was essentially demoted by employment because of my incentive-based transfer to SCI–[Phoenix]"). And the record evinces no point at which any Department employee, much less the Department itself, actually drew the inference that Lewald was at risk. *See DiFraia*, 2026 WL 878627, at *3. Because Lewald

---

[11] In *Durham*, the claim concerned various individual corrections officers and nurses. That suit did <u>not</u> address a claim of deliberate indifference leveled directly against the state agency for which those officials worked, New Jersey State Prisons. *Cf.* Add. 20 (noting that the District Court "dismissed all claims except a claim against the [Department] under [the RA]" before summary judgment).

demonstrated, at most, a single instance of miscommunication in securing and effectuating a work restriction, which has been addressed, *see* Add. 13, he fell considerably short of establishing deliberate indifference.

## II.　THIS COURT SHOULD NOT REACH THE ISSUE OF SOVEREIGN IMMUNITY

Like the RA, Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Doe v. County of Centre*, 242 F.3d 437, 446 (3d Cir. 2001). The District Court reasoned that because Lewald failed to demonstrate deliberate indifference, it did not need to address whether the ADA abrogated state sovereign immunity for purposes of liability. *See* Add. 12. Though Lewald encourages this Court to address that question "in the first instance," Appellant Br. at 34–35, that exercise is pointless without a valid constitutional claim.

### A.　Lewald's ADA Claims Fail as a Matter of Law

According to Lewald, the District Court invented a requirement when it determined that his ADA claims were barred by sovereign immunity. *Id.* ("That's not a requirement."). Pleading "a companion constitutional claim arising from the same facts" is just one way to arrive at the question of abrogation. The "other way," he notes, is to follow the three-step method contemplated by *Tennessee v. Lane*, 541

30

U.S. 509, 533–34 (2004). But that is no basis for accusing the District Court of ignoring *Lane*.

The District Court's summation—that the ADA only abrogated sovereign immunity for constitutional violations—holds true for both methods. Articulating the first element of the *Lane* test in his brief, Lewald acknowledges that "Congress must have identified the *constitutional right or rights it sought to enforce*." Appellant Br. at 38 (citing *Lane*, 541 U.S. at 522–24, 529–30) (emphasis added). Thus, whether abrogation arises in the context of a particular set of facts, or an overarching legislative goal to respond "a history and pattern of state violations to [constitutional] rights," *see Lane*, 541 U.S. at 522–34; *Durham*, 82 F.3d at 228 (discussing *United States v. Georgia*, 561 U.S. 151, 158 (2006)), the common denominator is the same: a constitutional violation.

As discussed, "the standards for determining liability under the [RA and the ADA] are," generally speaking, "identical." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n.12 (3d Cir. 2007) (citing *McDonald v. Commonwealth of Pennsylvania, Dep't of Pub. Welfare*, 62 F.3d 92, 94 (3d Cir. 1995)). Given its finding that Lewald had not established deliberate indifference in the RA context, nor any constitutional claim, Add. 5–9; Appellant Br. at 12 n.3, the District Court was justified in declining to address the ADA claim.

31

**B.**　　**If This Court Does Reach This Issue, It Should Affirm**

Assuming this Court reaches the issue of whether Title II of the ADA validly abrogated sovereign immunity—as opposed to remanding for the District Court to address it in the first instance, *see* Appellant Br. at 3, 15, 34—it should reject Lewald's overreading of legislative history. [12] As he appears to recognize, the ADA is aimed to address "*systematic* deprivations" of rights, Appellant Br. at 45 (quoting *Lane*, 541 U.S. at 524) (emphasis added), and Congress has worked diligently to identify "*persistent* abuse of prisoners with disabilities" and "*persistent* discrimination." *Id.* at 45–46 (emphases added). To the extent *Lane* applies, then, Lewald's argument falls short on congruence and proportionality.

It strains credulity to equate Lewald's experience at SCI–Phoenix with the abuses that animated passage of the ADA. *Compare* Appellant Br. at 42 (discussing "a paralyzed prisoner whose bedsores grew infected with maggots when the prison did not clean or move him" and "a prisoner with a wheelchair locked in a cell for years, unable to move"), *with* JA128 (Lewald stating that medical care has generally "been phenomenal" and "above what you'd expect for an inmate"). As the District Court described, Lewald demonstrated "[a]t most … that his work restrictions *may*

---

[12] This Court does not "ordinarily … consider issues not addressed by the district court in the first instance." *Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 n.6 (3d Cir. 2010). Its usual course is to "allow [the district court] to consider them," rather than "wade into matters" that have yet to be raised. *Forestal Guarani S.A. v. Daros Inten., Inc.*, 613 F.3d 395, 401 (3d Cir. 2010).

have been *inadvertently* removed." Add. 34 (emphases added). And that showing falls well short of establishing causation under the ADA or a constitutional violation. The District Court therefore did not err when it declined to address whether the ADA abrogated state sovereign immunity for purposes of liability.

## CONCLUSION

For these reasons, this Court should affirm the judgment of the District Court.

Respectfully submitted,

DAVID W. SUNDAY, JR.
Attorney General

By:    */s/ Brett Graham*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 530-0886
Fax: (717) 772-4526

DATE: April 20, 2026

BRETT GRAHAM
Deputy Attorney General
Bar No. 330556 (Pa.)

DANIEL B. MULLEN
Chief Deputy Attorney General
Chief, Appellate Litigation Section

# CERTIFICATE OF COUNSEL

I, Brett Graham, Deputy Attorney General, hereby certify as follows:

1. That I am a member of the bar of this Court.

2. That the text of the electronic version of this brief is identical to the text of the paper copies.

3. That a virus detection program was run on the file and no virus was detected.

4. That this brief contains 7,313 words within the meaning of Fed. R. App. Proc. 32(a)(7)(B). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

*/s/ Brett Graham*

_____

BRETT GRAHAM
Deputy Attorney General

## CERTIFICATE OF SERVICE

I, Brett Graham, Deputy Attorney General, do hereby certify that I have this day served the foregoing Brief For Appellees, via electronic service, on the following:

Brian S. Wolfman, Esq.
Becca Steinberg, Esq.
Kiarra Alleyne, Lindsey Gradowski & Galen Green*
GEORGETOWN UNIVERSITY LAW CENTER
Appellate Courts Immersion Clinic
600 New Jersey Avenue NW, Suite 312
Washington, D.C. 20001

Samuel Weiss, Esq.
RIGHTS BEHIND BARS
1800 M Street NW, Front 1 #33821
Washington, DC 20033

Seven copies were also sent by first class mail to the Clerk of the United States Court of Appeals for the Third Circuit in Philadelphia, Pennsylvania.

*/s/ Brett Graham*

BRETT GRAHAM
Deputy Attorney General

DATE: April 20, 2026

*Appearance of qualified law students pursuant to Local Rule 46.3, granted by clerk order dated March 31, 2026. *See* ECF 38.