No. 25-2166

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Troy Lewald,

Plaintiff-Appellant,

v.

Pennsylvania Department of Corrections, et al.,

Defendants-Appellees.

On Appeal from a Final Judgment of the
United States District Court for the Eastern District of Pennsylvania
Case No. 2:22-cv-04625, Hon. Chad F. Kenney

## REPLY BRIEF FOR PLAINTIFF-APPELLANT TROY LEWALD

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street, NW, FNT 1
  #33821
Washington, D.C. 20033

Trent Dowell
Lindsey Gradowski
Galen K. Green
  *Student Counsel*

Becca Steinberg
D.C. Bar No. 1736190
Brian Wolfman
Natasha R. Khan
GEORGETOWN LAW APPELLATE
  COURTS IMMERSION CLINIC
600 New Jersey Ave., NW,
  Suite 312
Washington, D.C. 20001
(202) 662-9549

Counsel for Plaintiff-Appellant Troy Lewald

May 15, 2026

## Table of Contents

Argument.......................................................................................... 1

   I.   The district court erred in granting summary judgment to
      PADOC on Lewald's Rehabilitation Act claim............................ 1

     A. Lewald's disability was the sole cause of his inability to
        safely access the prison work program. .................................... 1

     B. A jury could find that Lewald is entitled to
        compensatory damages. ......................................................... 6

  II.   The district court erred in dismissing Lewald's ADA claim. ....... 12

Conclusion ..................................................................................... 14

Certificate of Compliance.........................................................................

i

# Table of Authorities

**Cases** **Page(s)**

*A.J.T. v. Osseo Area Schs.,*
605 U.S. 335 (2025)................................................................3

*Beers-Capitol v. Whetzel,*
256 F.3d 120 (3d Cir. 2001) ...........................................10

*Bowers v. NCAA,*
475 F.3d 524 (3d Cir. 2007) .................................. 12, 13, 14

*DiFraia v. Ransom,*
171 F.4th 622 (3d Cir. 2026)..................................... 4, 5, 6

*Durham v. Kelley,*
82 F.4th 217 (3d Cir. 2023)............................... 3, 6, 7, 8, 11

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.,*
729 F.3d 248 (3d Cir. 2013) ........................................ 7, 10

*Furgess v. Pa. Dep't. of Corr.,*
933 F.3d 285 (3d Cir. 2019) ............................. 1, 2, 3, 4, 5, 7, 11, 14

*Leslie v. United States,*
438 F. App'x 103 (3d Cir. 2011) .......................................2

*Montanez v. Price,*
154 F.4th 127 (3d Cir. 2025)............................. 6, 7, 8, 9, 10

*Tennessee v. Lane,*
541 U.S. 509 (2004)................................................. 12, 13

**Statutes**

29 U.S.C. § 794(a) ........................................................ 3, 9, 10

42 U.S.C. § 12202 ...............................................................12

**Other Authority**

*Corrections, Part VIII, Prisons, Prison Reform, and Prisoners' Rights: Michigan: Hearings Before Subcomm. No. 3 of the H. Comm. on the Judiciary*, 92d Cong. 136, 153-54, 159-60 (1972)........................................................................14

## Argument

### I.   The district court erred in granting summary judgment to PADOC on Lewald's Rehabilitation Act claim.

PADOC does not dispute that Lewald is (1) a qualified person (2) with a disability who has (3) been denied the benefits of a public program. He has therefore satisfied the first three elements of a Rehabilitation Act claim. *See* Opening Br. 17-18.

A jury could also find that Lewald's disability was the sole reason he could not safely access the prison work program, *see Furgess v. Pa. Dep't. of Corr.*, 933 F.3d 285, 291 (3d Cir. 2019), and that PADOC acted with deliberate indifference, entitling him to compensatory damages, *see id.* at 292. None of PADOC's counterarguments succeed, so reversal is required.

### A.   Lewald's disability was the sole cause of his inability to safely access the prison work program.

**1.** Under the Rehabilitation Act's sole-cause standard, Lewald must show that "the sole cause of [his] deprivation ... was his disability." *Furgess v. Pa. Dep't. of Corr.*, 933 F.3d 285, 291 (3d Cir. 2019). PADOC doesn't deny the causal link between Lewald's disability and his inability to safely access the prison work program. *See* PADOC Br. 17-18. Nor could it: Because PADOC did not accommodate Lewald's disability, he was forced to participate in the unsafe work program that caused his injury. *See* Opening Br. 27-29.

Instead of grappling with the correct causal connection, PADOC repeatedly argues that it had a non-discriminatory motive for denying Lewald accommodations. PADOC Br. 14-17. As we've already explained, that's irrelevant under the proper causation inquiry. *See* Opening Br. 19-21. Because the correct causal link is between Lewald's disability and his inability to access the prison work program—and is not premised on PADOC's motivation for denying Lewald's accommodations—this Court should reverse.[1]

**2.** PADOC confuses the Rehabilitation Act's causation requirement with the Act's deliberate-indifference requirement. *See* PADOC Br. 11-14, 17-19. Below, the district court reached only the causation issue and did not decide whether PADOC acted with deliberate indifference. Add. 34 n.5.

Causation and deliberate indifference are different. *See Furgess*, 933 F.3d at 291-92. Causation concerns the degree of connection between a plaintiff's disability and his deprivation. *Id.* at 291. Deliberate indifference, on the other hand, is a level of intent. *Id.* at 292.

---

[1] Relying on *Leslie v. United States*, 438 F. App'x 103 (3d Cir. 2011), PADOC asserts that if the Court agrees with Lewald's causation analysis, the "most appropriate course of action would ... likely be a remand." PADOC Br. 17. But here, unlike in *Leslie*, the district court has already considered Lewald's Rehabilitation Act claim in the first instance, *compare* Add. 25-34, *with Leslie*, 438 F. App'x at 106, so outright reversal on the causation issue is appropriate.

In line with this difference, causation and deliberate indifference serve different functions in Rehabilitation Act analysis. Causation is used to determine whether an entity is liable for its failure to accommodate, regardless of the type of relief sought. 29 U.S.C. § 794(a); *see Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023). Once liability is established, a Rehabilitation Act plaintiff must establish the defendant's deliberate indifference only if the plaintiff seeks compensatory damages. *Furgess*, 933 F.3d at 289; *Durham*, 82 F.4th at 226; Opening Br. 32.

Put the other way around, a plaintiff who seeks only injunctive relief need show only causation, not deliberate indifference. *A.J.T. v. Osseo Area Schs.*, 605 U.S. 335, 344-45 (2025); *see Durham*, 82 F.4th at 225-26. PADOC acknowledges as much. PADOC Br. 13. For instance, if a person with a disability can't access a public building because there's no ramp, that person is entitled to an injunction. That's true because of the causal link between the person's disability and his lack of access; it has nothing to do with the defendant's reason for not installing the ramp.

PADOC's improper conflation of the Rehabilitation Act's requirements leads it to argue that Lewald can't establish causation if PADOC lacked knowledge that he needed accommodations. PADOC Br. 18-19. That's wrong. Knowledge about a claimant's need for accommodations speaks to deliberate indifference, not causation. *See infra* at 6-7. (And regardless, Lewald did show that medical staff and prison officials knew of his need for accommodations. *See infra* at 7-11.)

3

**3.** This Court's decision in *Furgess*, 933 F.3d 285, is instructive. *Furgess* stands for the proposition that, in a reasonable-accommodations case, the Rehabilitation Act's causation inquiry centers on a plaintiff's inability to access services, not on the defendant's reason for denying accommodations. *Id.* at 291. There, "the sole cause of Furgess's deprivation of a shower was his disability," not "his own misconduct" or prison officials' intentional discrimination. *Id.*

PADOC argues that, in *Furgess*, the prisoner's own misconduct was not a viable alternate cause for the deprivation because that "alternative cause ... *itself* amount[ed] to" deliberate indifference. PADOC Br. 15 (citation omitted). That misreads *Furgess*. PADOC acknowledges that the plaintiff in *Furgess* met the sole-cause standard because he "faced worse conditions than other prisoners in disciplinary confinement" due to his disability. *Id.* (quoting *DiFraia v. Ransom*, 171 F.4th 622, 632 (3d Cir. 2026)); *see* Opening Br. 20-21. Non-disabled prisoners in disciplinary confinement had access to a shower. *Furgess*, 933 F.3d at 291. Furgess did not. *Id.* Therefore, "prisoner[] misconduct" was an improper alternate cause because it had nothing to do with the actual cause of Furgess's deprivation of access to a shower: his disability. *Id.*

PADOC's reliance on this Court's recent decision in *DiFraia*, 171 F.4th 622, is puzzling. *DiFraia* supports Lewald's position—not PADOC's— because *DiFraia* understands *Furgess* exactly as we do. As *DiFraia* explained, causation was met in *Furgess* because the plaintiff "faced

4

worse conditions than other prisoners in disciplinary confinement—he was locked up with no usable shower, while they were locked up with showers that they could use." *DiFraia*, 171 F.4th at 632. That's just like Lewald's situation: Lewald faced worse conditions than non-disabled prisoners in the work program because those prisoners could complete their jobs safely while Lewald, because of his disability, could not.

PADOC asserts that *Furgess* and *DiFraia* are different because the deprivation in *DiFraia*—removal from a prison drug-treatment program after diverting his medication, 171 F.4th at 626-27—was specific to DiFraia, whereas Furgess's deprivation applied "*in toto*" to all disabled prisoners in the Restricted Housing Unit. PADOC Br. 16. That's wrong.

Here's the actual distinction between *Furgess* and *DiFraia*: In *Furgess*, "the results for the disabled and non-disabled wrongdoers differed." *DiFraia*, 171 F.4th at 632-33. In *DiFraia*, on the other hand, both disabled and non-disabled inmates could lose access to the program if they diverted medication. *Id.* at 632. In both cases, this Court conducted the proper causation analysis: looking to whether the prisoner's disability was the sole cause of the prisoner's deprivation.

**4.** PADOC says that Lewald's understanding of causation "would reduce courts' analyses of RA and ADA claims to bare tautologies," meaning, it seems, that whenever a disabled prisoner cannot access a service, he would have shown causation. PADOC Br. 17. That's not correct, as this Court's recent decision in *DiFraia* illustrates. As

indicated, DiFraia—who was disabled on account of his addiction—was denied access to a drug-treatment program because he diverted medication to other inmates. *DiFraia*, 171 F.4th at 626-27. His disability was not the cause of his exclusion. When a person diverted medication, "[b]oth the addict and non-addict wrongdoers would experience the same result": removal from the program. *Id.* at 632.

We acknowledge, however, that in the context of accommodation claims, the Rehabilitation Act's causation standard is not burdensome. But that's by design: The Act imposes affirmative accommodation obligations on covered entities such as prisons. *See* Opening Br. 21-22. So, when a covered entity fails to provide accommodations that a disabled person needs to access a generally available program or benefit, the causation analysis would typically be complete. *See, e.g.*, *Durham*, 82 F.4th at 226.[2]

## B.   A jury could find that Lewald is entitled to compensatory damages.

To recover compensatory damages, a Rehabilitation Act plaintiff must show that the defendant acted with deliberative indifference. *Montanez v. Price*, 154 F.4th 127, 148-49 (3d Cir. 2025). Deliberate indifference "consists of (1) knowledge that the plaintiff's federally protected right to

---

[2] That's generally not the end of the inquiry. A finding of liability does not lead to a damages award unless the plaintiff proves the defendant's deliberate indifference. *See infra* at 6-7.

be free from disability discrimination was likely to be violated, and (2) 'failure to act despite that knowledge.'" *Id.* at 149 (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263-65 (3d Cir. 2013)). Our opening brief showed (at 32-33) that a jury could find for Lewald on both elements. None of PADOC's responses undermines that showing.

**1. Knowledge.** A defendant has knowledge that a plaintiff's federally protected right to be free from disability discrimination would likely be violated when the defendant knew that the plaintiff needed an accommodation that had not been provided. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 292 (3d Cir. 2019).

**a.** PADOC knew that Lewald lacked accommodations that he needed. *See* Opening Br. 33. At the time of his injury, Lewald's file contained active restrictions: no high-risk-of-injury employment and no lifting of more than fifteen pounds. *See* JA 171, 382. That fact alone suffices to show PADOC's knowledge. *See Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023). PADOC is responsible for knowing what it placed in its own files. *See id.* (finding that a prescription for a cane showed that the prison knew the plaintiff needed one).

Beyond these restrictions in his file, Lewald repeatedly notified medical staff and prison officials of his need for accommodations, further demonstrating PADOC's knowledge. *See* Opening Br. 8-11. PADOC argues that this evidence doesn't count because some of the staff to whom Lewald gave notice were contractors, not prison employees. PADOC Br.

7

23 n.7. That doesn't matter. *See Montanez*, 154 F.4th at 149-51. PADOC cannot "insulate itself from liability simply by contracting out the operation of all its programs, services, and activities." *Id.* at 151.

PADOC also suggests that Lewald's verbal and written requests to prison staff do not imbue PADOC with knowledge because Lewald did not use a specific complaint form. PADOC Br. 27-28. That's incorrect. A prison must accommodate a known disability regardless of how the request is made. *See Durham*, 82 F.4th at 226; Opening Br. 26. After all, Lewald had previously received accommodations without following the procedure PADOC now demands. *See* Opening Br. 26. Besides, Lewald wasn't asking for a *new* disability accommodation (which is the purpose of the form PADOC refers to, *see* JA 238, 242); he was instead complaining that his *preexisting* accommodations had been improperly rescinded. *See* Opening Br. 7-11. So, the proper form was the prison grievance form, which Lewald filled out and submitted multiple times. *See* JA 370-71, 381, 391.

PADOC suggests that even if Lewald's verbal and written alerts were sufficient to provide it with knowledge, that knowledge is legally irrelevant because medical staff and prison officials did their due diligence when they checked Lewald's files and found no active restrictions. PADOC Br. 27. But, to begin with, Lewald's file *did* contain active job restrictions before Lewald suffered an on-the-job injury. *See supra* at 7. And during the period that the restrictions had been removed

8

(improperly) from his file, Lewald made PADOC aware of his need for accommodations. *See* JA 366; JA 45 ¶ 97; JA 46 ¶ 98; JA 51-52 ¶ 129; JA 52 ¶ 131; Opening Br. 25. PADOC should have heeded Lewald's repeated requests for accommodations.

**b.** PADOC insinuates that Lewald was not genuinely requesting accommodations because he sought a different job within the prison work program and complained about his loss of pay. *See* PADOC Br. 29. As to the former, Lewald asked to work as a block tutor because he had previously held that position and knew that it accommodated his disability. JA 120. If anything, then, Lewald's request for a different job underscores that his request for accommodations was genuine.

Lewald's complaints about his pay don't negate his repeated requests for disability accommodations or PADOC's knowledge that Lewald needed them. *See* Opening Br. 30-31. A jury could certainly reject PADOC's suggestion that Lewald filed grievances, entered medical calls, and made verbal requests, all to obtain a four-cent increase in his hourly pay. *See id.*

But it wouldn't matter even if Lewald had been motivated by the potential for higher pay. Lewald's reason for seeking accommodations is irrelevant. 29 U.S.C. § 794(a); *see Montanez*, 154 F.4th at 148. If Lewald needed accommodations—and PADOC doesn't dispute that he did— Lewald's motivation for asking for them doesn't excuse PADOC's refusals to provide them.

9

**c.** PADOC improperly imports substantive standards from the Eighth Amendment context to argue that a plaintiff must show either (1) "an awareness of a pattern of such injuries" or (2) that "the risk of constitutionally cognizable harm [was] *so great and so obvious*" that failing to respond to that risk would sufficiently show "knowledge of that unreasonable risk." PADOC Br. 22-23 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001)).

The Eighth Amendment's standards have no bearing on the inquiry here. An individual who is "excluded from participation in or denied the benefits of" a program even once may proceed under the Rehabilitation Act; the plaintiff doesn't need to prove a pattern of exclusion. 29 U.S.C. § 794(a); *see Montanez*, 154 F.4th at 148. Nor must the plaintiff prove constitutionally cognizable harm, *see* 29 U.S.C. § 794(a), as one must do, by definition, in a case brought under the Eighth Amendment, *see Beers-Capitol*, 256 F.3d at 134. The deliberate-indifference standard here aligns with the Eighth Amendment standard in just one respect: both require that the defendant (1) have knowledge and (2) fail to adequately respond. *See S.H.*, 729 F.3d at 263 & n.23. That means that a plaintiff need show only that the defendant knew the plaintiff needed an accommodation and had not received it. *Furgess*, 933 F.3d at 292. Nothing further is required.

Even if Lewald had to show that he faced a risk of great and obvious harm, he could do so. One of Lewald's own supervisors insinuated that no one restricted to light-duty work should have a job in the kitchen.

JA 381. That obvious risk of harm became reality when Lewald was injured. *See* JA 393, 404.

**2. Failure to act.** Prison officials failed to act despite knowing that Lewald's rights were substantially likely to be violated. *See* Opening Br. 32-33. This element is met when a defendant's failure to provide accommodations results in the violation of a plaintiff's rights. *Durham*, 82 F.4th at 226; *Furgess*, 933 F.3d at 292; Opening Br. 33. In *Durham*, the plaintiff was "continuously denied his cane and shower accommodations" and so could not access the showers. 82 F.4th at 226. That was "alone was sufficient to allege a deliberate indifference claim." *Id.* And in *Furgess*, the defendant failed to act because "[f]or three months, the PDOC did not provide him with any accommodation that would allow him to shower." 933 F.3d at 292.

Similarly, PADOC did not accommodate Lewald, so Lewald's right to be free from disability discrimination was violated. *See* Opening Br. 33. He was forced to either work in food services, which was incompatible with his disability that prevented him from carrying heavy loads, JA 171, 366, or to refuse orders to do so, risking discipline, JA 370. And even after work restrictions were added on February 15, PADOC did not actually implement the accommodations. *See* JA 52-53 ¶¶ 131-33. Because Lewald could not safely access the prison work program, PADOC violated his federal right to access that program.

II.   **The district court erred in dismissing Lewald's ADA claim.**

**A.** Title II of the ADA—which protects individuals with disabilities from exclusion from participation in public programs—contains a clear expression of congressional intent to abrogate state sovereign immunity. 42 U.S.C. § 12202; *see Tennessee v. Lane*, 541 U.S. 509, 518 (2004); Opening Br. 34. PADOC does not dispute that.

Instead, PADOC challenges Congress's authority to abrogate in the first place. PADOC maintains that Congress had the authority, under Section 5 of the Fourteenth Amendment, to abrogate the states' immunity only for suits alleging constitutional violations. PADOC Br. 31.

That's flatly inconsistent with this Court's precedent. In *Bowers v. NCAA*, 475 F.3d 524 (3d Cir. 2007), the plaintiff "state[d] a claim for violation of Title II" but did not allege a constitutional violation. *Id.* at 554. Nonetheless, this Court held that Congress validly abrogated sovereign immunity because the ADA's remedy under Title II was congruent and proportional to Congress's objective: addressing the "history and pattern of disability discrimination with respect to public services." *Id.* at 554.

**B.** PADOC also argues that abrogation of state sovereign immunity for violations of a prisoner's right to be free from disability discrimination is not a congruent and proportional response to the history and pattern of abuse of people with disabilities in institutional settings. PADOC Br.

32-33. In making this argument, PADOC ignores our extensive congruence-and-proportionality analysis. *See* Opening Br. 37-48.

Instead, PADOC asserts that Lewald must "equate [his] experience at SCI-Phoenix with the abuses that animated passage of the ADA." PADOC Br. 32. That's not correct. The test is whether Congress's *response* (that is, Title II writ large as applied to the prison context) was congruent and proportional to the problem Congress identified. *See, e.g., Lane*, 541 U.S. at 530-31; *Bowers*, 475 F.3d at 555.

When determining congruence and proportionality, courts construe the injury to be prevented in general terms. In *Bowers*, the injury was "the unconstitutional discrimination that Congress found to exist both in education and in other areas of governmental services." 475 F.3d at 555. And in *Lane*, it was "[t]he unequal treatment of disabled persons in the administration of judicial services." 541 U.S. at 531. In neither case did the plaintiffs have to show that their injuries were similar to the injuries that led to Title II's enactment. So, too, here, Lewald need not show that his particular injury was foreseen by Congress or was the subject of the congressional inquiry that led to the abrogation of the states' immunity. Lewald needs to show—more generally—that Congress sought to prevent the abuse of people with disabilities in state prisons. He's made that showing. *See* Opening Br. 37-48.

In any event, Lewald's injuries are not far afield from "the abuses that animated passage of the ADA." PADOC Br. 32. The harms suffered

13

because of PADOC's illegalities were severe, causing him to "scream in pain" and to suffer enduring anguish. JA 53 ¶ 133; *see* Opening Br. 11-12. These are the kinds of injuries that spurred Congress to address the widespread abuse and neglect of disabled prisoners. *Corrections, Part VIII, Prisons, Prison Reform, and Prisoners' Rights: Michigan: Hearings Before Subcomm. No. 3 of the H. Comm. on the Judiciary*, 92d Cong. 136, 153-54, 159-60 (1972); Opening Br. 40-46.

**C.** PADOC next asserts that the district court was justified in declining to address the ADA claim because the Rehabilitation Act and the ADA impose the same liability standards. PADOC Br. 31. The standards may be "substantially similar," but they are not identical. *Bowers*, 475 F.3d at 550. For instance, the ADA has a more lenient but-for causation standard than the Rehabilitation Act's sole-causation standard. *See Furgess*, 933 F.3d at 291 n.25. Regardless, this Court has already held that the presence of an alternative Rehabilitation Act claim does not justify "abrogating [the] right to bring a claim under Title II." *Bowers*, 475 F.3d at 550.

## Conclusion

The Court should reverse the district court's grants of dismissal and summary judgment and remand for further proceedings on each of Lewald's claims.

14

Respectfully submitted,

Samuel Weiss                    /s/ Becca Steinberg
RIGHTS BEHIND BARS              Becca Steinberg
1800 M Street, NW, FNT 1        D.C. Bar No. 1736190
  #33821                Brian Wolfman
Washington, D.C. 20033          Natasha R. Khan
                                GEORGETOWN LAW APPELLATE
Trent Dowell                      COURTS IMMERSION CLINIC
Lindsey Gradowski               600 New Jersey Ave., NW,
Galen K. Green                    Suite 312
  Student Counsel      Washington, D.C. 20001
                                (202) 662-9549

                                Counsel for Plaintiff-Appellant
                                Troy Lewald


May 15, 2026

15

## Certificate of Compliance

1. I certify that this document complies with Federal Rule of Appellate Procedure 32(g)'s type-volume limitations. In compliance with Rule 32(a)(7)(B), it contains 3,300 words, excluding the parts exempted by Rule 32(f) and Circuit Rule 32(e)(1), and it has been prepared in proportionally spaced typeface using Century Schoolbook, 14-point, in Microsoft Word 2021.

2. I certify that, on May 15, 2026, this brief was filed via CM/ECF. All participants in the case are registered CM/ECF users and will be served electronically via that system. Seven paper copies of this brief will also be filed with the Clerk of this Court.

3. In accordance with Local Rule 28.3(d), I certify that I am a member of the bar of the Third Circuit in good standing.

4. In accordance with Local Rule 31.1(c), I certify that (i) this brief has been scanned for viruses using McAfee LiveSafe and is free of viruses; and (ii) when paper copies are required by this Court, the paper copies will be identical to the electronic version of the brief filed via CM/ECF.

/s/ Becca Steinberg
Becca Steinberg

Counsel for Plaintiff-Appellant
Troy Lewald